# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| ROBERT POTTS, | )<br>) |
|     Plaintiff/Counter-Defendant, | )<br>) |
| v. | )<br>)  Case No. 5:12-CV-02688-JRA<br>) |
| AMERICAN BOTTLING COMPANY d/b/a<br>7-UP. | )  Judge John R. Adams<br>)<br>) |
|     Defendant/Counter-Plaintiff | )  **DEFENDANTS' JOINT MOTION AND**<br>)  **MEMORANDUM OF POINTS AND**<br>)  **AUTHORITIES IN SUPPORT OF** |
| INTERNATIONAL BROTHERHOOD OF<br>TEAMSTERS, LOCAL UNION NO. 377, | )  **THEIR MOTION FOR SANCTIONS**<br>)  **UNDER RULE 11**<br>) |
|     Defendant. | )<br>) |

Defendants The American Bottling Company ("ABC") and Teamsters Local No. 377 ("the Union" or "Local 377"), pursuant to Rule 11 of the Federal Rules of Civil Procedure, respectfully move this Court to impose sanctions against Plaintiff and his attorney, David Engler, for asserting claims without a factual and legal basis. In support of this Motion, ABC and the Union state as follows:

## FACTUAL BACKGROUND

1. ABC employed Plaintiff Robert Potts as a Warehouse Loader at its Youngstown, Ohio facility from July 2007 through December 2010.

2. Plaintiff was a member of the Union, and therefore his employment at ABC was governed, in part, by a collective bargaining agreement (the "CBA").

3. Article 14, Section 1 of the CBA provides that, "in the event of temporary layoffs classification seniority shall prevail." Classification seniority refers to the department in which an employee worked, such as warehouse, delivery, merchandising. An employee on temporary

layoff could not lose his or her seniority until after a period of one year from the date of the temporary layoff. (Dkt. 1, Cmpl. Ex. 1 & 2, Art. 14, Sec. 13/Sec. 10.) Only in the event of a permanent layoff does plant-wide seniority govern. (Dkt. 1, Cmpl. Ex. 1 & 2, Art. 14, Sec. 1.)

4. On September 21, 2009, ABC placed Plaintiff on a temporary layoff due to a lack of work. (Dkt. 1, Cmpl. ¶5.)

5. On August 30, 2010, Plaintiff filed Grievance No. 11823, claiming back wages owed as a result of an alleged improper temporary layoff. (Dkt. 1, Cmpl. Ex. 4.)

6. A grievance meeting was held on September 14, 2010 between ABC and Local 377, with Plaintiff in attendance. (Ex. A, Sept. 14, 2010 grievance meeting notes.)

7. On September 21, 2010, Plaintiff filed Grievance No. 11824 claiming ABC terminated his seniority without cause and wrongfully discharged him. (Dkt. 1, Cmpl. Ex. 5.)

8. On September 30, 2010, ABC made an employment offer to Plaintiff in writing. Specifically, ABC offered to convert Plaintiff's temporary layoff into a permanent layoff effective October 15, 2010 and give Plaintiff the opportunity to exercise his contractual rights to "bump by seniority" based on his plant-wide seniority. (Ex. B, ABC's Sept. 30, 2010 Correspondence.) In the offer letter, ABC stated that based on seniority the position would be a Merchandiser position. (*Id.*) ABC's offer letter required Plaintiff to respond, in writing, within 15 working days whether he intended to accept the offer. (*Id.*)

9. On October 2 and 6, 2010, Plaintiff wrote to Local 377 and requested that the Union withdraw Grievance No. 11823. (Ex. C, Oct. 2 and 6, 2010 Correspondence.) In his October 2, 2010 correspondence, Plaintiff also stated: "This serves to advise that I am in receipt of the Company's letter date 9/30/2010, mailed via USPS Certified Mail #7002-0510-000-7491-2152, postmarked October 1, 2010." (*Id.*)

10. On October 12, 2010, Local 377 confirmed in writing that Grievance No. 11823 had been withdrawn. (Ex. D, Oct. 12, 2010 Correspondence.)

11. On October 15, 2010, Plaintiff wrote to ABC, but did not state his intention, one way or another, concerning the Merchandising position. (Ex. E, Plaintiff's July 6, 2011 Deposition (Pl. Dep.), 228:8-229:14; Ex. F, Oct. 15, 2010 correspondence).

12. As of October 21, 2010, ABC had still not received an answer from Plaintiff concerning its employment offer (15 working days after ABC's September 30, 2010 correspondence). Therefore, ABC extended Plaintiff's deadline to respond to the offer. (Ex. G, Nov. 10, 2010 correspondence). However, ABC still received no response from Plaintiff concerning the offer.

13. On October 22, 2010, Plaintiff wrote to the Union accusing the Union of "failing to act solely in the interest of the grievant, and refusing to protect my interest in all dealings with my Employer by way of refusing to process my grievance #11824 . . .." (Ex. H, October 22, 2010 Correspondence.)

14. Having never received a response from Plaintiff to the offer, effective December 1, 2010, ABC terminated Plaintiff's employment pursuant to Article 14, Section 7, point D of the CBA, which provides:

> Any employee shall lose his seniority (terminated from employment):
>
> . . .
>
> D. If he fails to return to work within three (3) days after notice from the Company to return unless circumstances beyond his control prevent him from notifying the Company within three (3) days. Such notice shall be made by registered letter.

(Ex. I, Dec. 13, 2010 correspondence; Dkt. 1, Ex. 1 & 2, Art. 14, Sec. 9/Sec.7.)

15. During his deposition in Case No. 4:11-cv-00149-KSM, Plaintiff testified that:

- He could not identify a single employee having less seniority than he did and who was hired into the Warehouse Department during Plaintiff's temporary layoff, and conceded that, as of September 14, 2010, he remained the least senior employee in the Warehouse Department. (Ex. E, Pl. Dep., 194:13-196:21; 209:20-211:21; 220:21-221:16.)

- He had received ABC's September 30, 2010 offer letter and never responded to ABC's offer, even though he *did* correspond with ABC after receiving the offer letter. (Ex. E, Pl. Dep. 197:11-198:1; 228:8-229:14.)

- He withdrew Grievance No. 11823. (Ex. E, Pl. Dep. 196:22-198:1; 225:2-226:10; 230:13-22; 233:8-9.)

- He knew as of November 17, 2010 that the Union had allegedly ceased acting on his behalf. (Ex. E, Pl. Dep. 243, 249-250.)

16. On May 7, 2011, Plaintiff filed a charge with the National Labor Relations Board in which he signed a Declaration asserting, among other things, that the Union had allegedly "failed to represent him." (Ex. J, Pl. NLRB Charge.)

17. On or about October 26, 2011, Plaintiff and ABC entered into a settlement agreement for Case No. 4:11-cv-00149-KSM, whereby Potts released all claims that he had or may have had against ABC, subject to certain specific and delineated exceptions. Specifically, only Grievances 11823 and 4956 were excluded from the release. (Dkt. 20, Sealed Settlement Agreement.) Therefore, all other grievances, including Grievance No. 11824, were waived and released by the settlement agreement.

18. Despite the above evidence, Plaintiff (through his counsel Mr. Engler) filed the present action under 29 U.S.C. §185, alleging that ABC breached the CBA by failing to provide Plaintiff with his contractual rights to exercise his plant-wide seniority, that Plaintiff was improperly subjected to a temporary layoff and permanent layoff, and that the Union breached its duty to fairly represent him. Plaintiff bases his claims on Grievance Nos. 11823 and 11824; however, Plaintiff voluntarily withdrew Grievance No. 11823 and voluntarily settled Grievance No. 11824.

19. On February 5, 2013, ABC's counsel advised Mr. Engler that Plaintiff's claims lacked a proper factual and legal basis. Further, on April 22, 2013, ABC's and the Union's counsel sent Mr. Engler letters pursuant to Rule 11 and included a substantially similar draft of this joint Motion.[1] (Exs. K & L, April 22, 2013 Correspondence from C. McArdle and G. Faulkner, respectively.) Despite counsel's acknowledged receipt of this correspondence, Plaintiff did not file a motion to dismiss his claims within the requisite twenty-one days.

20. Additionally, on April 30, 2013, Plaintiff's counsel and Defendants' counsel discussed the issues raised in the Defendants' Rule 11 correspondence. This meeting occurred at the close of Plaintiff's deposition, during which he was defended by Mr. Engler. Accordingly, Mr. Engler had the benefit of hearing Plaintiff's responses to the various questions posed by opposing counsel. At the close of the meeting between counsel, Plaintiff's counsel represented that a response to the Rule 11 correspondence would be provided within the safe harbor period. No such response was received.

21. As a result, Defendants' counsel attempted to contact Plaintiff's counsel on May 6, 2013 and May 7, 2013 and sought an extension of the dispositive motion deadline in this case in an effort to avoid incurring the significant expenses associated with these filings. Plaintiff's counsel did not respond.

22. On May 14, 2013, the day after the safe harbor expired, Defendants' counsel again contacted Plaintiff's counsel regarding Plaintiff's overdue response to the Rule 11 correspondence. In response, Plaintiff's counsel requested an extension of until 5:00 pm Eastern Time on Friday, May 17, 2013, at which time Plaintiff's counsel stated that he would provide a written response to Defendants' Rule 11 correspondence .

---

[1] Defendants' made minor modifications to the Motion based on Plaintiff's deposition, and also added the events that transpired between the parties with respect to Defendants' Motion.

23. After no response was received, on May 21, 2013, Defendants' counsel again contacted Plaintiff's counsel regarding Plaintiff's overdue response to the Rule 11 correspondence. In response, Plaintiff's counsel stated that Defendants would have Plaintiff's written response by the end of that same day. Plaintiff's counsel did not send the promised written response that day, or on any other day.

24. On May 28, 2013, the date that all dispositive motions were due to be filed in this case, Plaintiff's counsel contacted ABC counsel asserting:

> I have a few questions that I need answered before a decision to dismiss. I will forward my request, but it has to do with the nature if the job offer and whether it was clear that a CDL was not required.
>
> Please give me until end of week to determine action.

(Ex. M, Counsels' May 28, 2013 correspondence.)

25. ABC counsel responded immediately to Plaintiff's counsel with the following:

> Please forward your request; however, two things:
>
> 1) We told you on April 30, 2013 what the qualifications for the Merchandiser position are. This was in response to a request for that information made by you on that date during our meeting. A CDL license was not required to be hired as a Merchandiser.
>
> 2) As you know the [dispositive motion] deadline is today and both ABC and the Union are filing [dispositive motions], as well as the Rule 11 motions. We attempted to reach you several times to address any issues associated with the Rule 11 motion so that we could avoid the significant expense of preparing [dispositive] motions. We never received a response. We also contacted your office when the 21-day safe harbor period had expired without receiving a response (despite your assurances during the April 30 meeting that we would have a response before the end of the safe harbor period). [Your colleague's] response to us was to request an extension of time to respond until May 17, 2013, which we agreed to. When that date came and went, we again contacted your office and we were told that we would have something by the end of the day on May 21, 2013. Still nothing was sent to us.
>
> Since the [dispositive motion] filing deadline is today, the time has already been spent on this case. As a result, we must proceed with filing.

6

(Ex. M, Counsels' May 28, 2013 correspondence.)

26. As of this time of this filing, Plaintiff's counsel still has not responded to Defendants' Rule 11 correspondence.

## MEMORANDUM OF POINTS AND AUTHORITIES

27. This Court has jurisdiction to impose sanctions under Fed. R. Civ. P. 11 against Plaintiff and his counsel. Rule 11 provides, in relevant part:

(a) Representations to the Court. By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, -

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

28. Rule 11 requires that an attorney certify to the best of his or her "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . [that] the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." FED. R. CIV. P. 11(b).

29. In the Sixth Circuit, the test for imposing Rule 11 sanctions is whether the individual's conduct was reasonable under the circumstances. *Apostolic Pentecostal Church v.*

17148840v.1

*Colbert*, 169 F.3d 409, 417 (6th Cir. 1999). Not only does Rule 11 measure what was reasonable conduct at the time of pleading, it imposes a "continuing responsibility to review and reevaluate . . . pleadings and where appropriate modify them to conform to Rule 11." *Merritt v. International Ass'n of Machinists and Aerospace Workers*, 613 F.3d 609, 626 (6th Cir. 2010) (citing *Runfola & Assoc., Inc. v. Spectrum Reporting II, Inc.*, 88 F.3d 368, 374 (6th Cir. 1996)).

30. Sanctions imposed under Rule 11 are intended to be an integral aspect of the judicial process, and the Sixth Circuit has shown no reluctance to impose them where counsel failed to properly investigate the factual basis of a client's claims after a reasonable opportunity to do so. *See Merritt*, 613 F.3d at 626; *Andretti v. Borla Performance Indus., Inc.*, 426 F.3d 824, 835 (6th Cir. 2005); *Mann v. G & G Mfg., Inc.*, 900 F.2d 953, 960 (6th Cir. 1990) (in affirming award of sanctions, noting, "[a] reasonable pre-filing inquiry would have revealed these facts to plaintiff's counsel.").

31. In this lawsuit, Plaintiff claims that ABC hired new employees with "less plant-wide seniority" (Dkt. 1, Cmpl. ¶ 7), but plant-wide seniority does not govern temporary layoffs, as plainly stated in Article 14 Section 1 of CBA. (Dkt. 1, Exs. 1&2). Further, even after engaging in discovery through the prior lawsuit (which concerned the same common facts), Plaintiff could not identify any employees with less seniority (either classification or plant-wide seniority) who were placed into the Warehouse Loader position during his temporary layoff. (Ex. E, Pl. Dep., 194:13-196:21; 209:20-211:21; 220:21-221:16). Plaintiff conceded that even as of September 14, 2010, he was the least senior employee in the Warehouse Department. (Ex. E, Pl. Dep., 209:20-211:2). In addition, as set forth in ABC's contemporaneously filed Memorandum of Points And Authorities In Support Of Its Motion for Summary Judgment (which is incorporated herein), Plaintiff's manager during his employment with ABC (John

Taraba) testified in the prior lawsuit that ABC did not hire any Warehouse employees to replace Plaintiff; his duties were performed by another Warehouseman.[2] (Dkt. 28.) Thus, Plaintiff has no legitimate factual basis to assert that his temporary layoff was improper.

32. Plaintiff further claims that "[ABC] failed and refused to afford Potts his contractual rights to avoid being placed on permanent lay-off by exercising his plant-wide seniority." (Dkt. 1, Cmpl. ¶ 8). This allegation also has no basis in fact. It is undisputed that ABC offered Plaintiff the opportunity to use his plant-wide seniority to "bump" into a Merchandiser position , and that Plaintiff received ABC's offer and did not act upon it.

33. Even so, there is no active grievance supporting his claim under 29 U.S.C. §185. As to Grievance 11824, the Settlement Agreement that Plaintiff executed in Case No. 4:11-cv-00149-KSM, unambiguously provides that the only grievances that survive are Grievance Nos. 11823 and 4956. As such, Grievance 11824 is a nullity.

34. As to Grievance 11823, Local 377 withdrew this grievance at Plaintiff's request. Indeed, in correspondence dated October 2 and 6, 2010 to the Union, Plaintiff requested that the Union withdraw this grievance, and the Union confirmed the withdrawal of this grievance in correspondence dated October 12, 2010. (Ex. C, October 2, 2010, October 6, 2010, and October 12, 2010 Correspondence.) Moreover, Plaintiff admitted under oath that he withdrew this grievance. (Ex. E, Pl. Dep., 196:22-198:1; 225:2-226:10; 230:13-22; 233:8-9). As such, Grievance No. 11823 is also a nullity. In sum, by virtue of Plaintiff's own conduct, he has no active grievances upon which he can pursue his §301 claim and therefore the claim is barred by his failure to exhaust the grievance procedure. *Burneson v. Thistledown, Inc.*, 2007 U.S. App. LEXIS 11038, at *4 (May 7, 2007); *see also DelCostello v. International Brotherhood of*

---

[2] Defendants' arguments in support of their Rule 11 Motion are elaborated upon in their respective Motions for Summary Judgment. (Dkt. 28, 29.) Defendants' expressly incorporate those arguments herein as if fully set forth.

*Teamsters*, 462 U.S. 151, 163 (1983); *Chapman v. UAW Local 1005*, 670 F.3d 677, 681 (6th Cir. 2012) (*citing Republic Steel v. Maddox*, 379 U.S. 650, 652-53 (1965).

35. Even setting aside the above facts, Plaintiff's claims are without merit for the simple fact that his claims are time barred. The statute of limitations for hybrid §301 claims is six months. It is well settled that the statute begins to run when an employee knew or should of known of the alleged acts given rise to the cause of action. *Garrish v. Int'l Union, United Automobile, Aerospace, and Agricultural Implement Workers of America*, 417 F.3d 590, 594 (6th Cir. 2005).

36. Plaintiff's own admissions and conduct reveal that he knew of the Union's alleged breach of duty by October 22, 2010, as evidenced by Plaintiff's letter of that date wherein he filed internal Union charges against Union Business Representative Justin Averell, the Union official who was representing Plaintiff with respect to Grievance 11823 and 11824. Among other things, Plaintiff's October 22, 2010 letter accuses Averell and the Union of "failing to act solely in the interest of the grievant, and refusing to protect my interest in all dealings with my Employer by way of refusing to process my grievance #11824 . . .." (Ex. H, October 22, 2010 Correspondence.) Plaintiff also testified under oath that he knew as of November 17, 2010 that the Union had allegedly ceased acting on his behalf. (Ex. E, Pl. Dep., 243, 249-250.) Furthermore, on May 7, 2011, Plaintiff filed a charge with the National Labor Relations Board in which he signed a Declaration asserting, among other things, that the Union had allegedly "failed to represent him." (Ex. J, NLRB Charge.) Given these facts, Plaintiff had until either April 2011 or, at the latest, November 2011, to file his action. As he did not file the Complaint until October 26, 2012, his claims are time barred.

17148840v.1

37. As evidenced herein, by maintaining his claims, Plaintiff and Plaintiff's counsel failed to comply with standards of legal practice in this Circuit, and thus sanctions are appropriate under Rule 11.

38. After having made more than one unsuccessful attempt to persuade Plaintiff's counsel to voluntarily dismiss Plaintiff's claims, ABC and Local 377 jointly request that the Court impose sanctions against Plaintiff and Plaintiff's counsel pursuant to Fed. R. Civ. P. 11(c), including, but not limited to, dismissal of the Complaint. Defendants further requests that those sanctions include an award of reasonable costs and attorneys' fees associated with their efforts to resolve this without court intervention and their preparation of this motion.

39. In addition, as a result of Plaintiff's counsel's ongoing delay in either dismissing this action or in responding to Defendants' Rule 11 correspondence, Defendants also seek an award of reasonable costs and attorneys' fees associated with taking Plaintiff's deposition to prepare for filing summary judgment, as well as for the preparation of their respective motions for summary judgment and all documents in support of their respective motions.

WHEREFORE, Defendants The American Bottling Company and Teamsters Local 377 respectfully request that this Court impose sanctions against David L. Engler and Plaintiff for maintaining the claims in Plaintiff's Complaint, that Plaintiff's claims be dismissed in their entirety, that Defendants be awarded reasonable costs and attorneys' fees, and any other relief that the Court deems appropriate.

**DATED: April 21, 2014**  Respectfully submitted,

AMERICAN BOTTLING COMPANY

By     s/ Cintra B. McArdle
          One of Its Attorneys

11

17148840v.1

TEAMSTERS LOCAL NO. 377

By    s/  Joseph D. Mando (with permission)
                      One of Its Attorneys

Richard P. McArdle (admitted pro hac vice)
Cintra B. McArdle (admitted pro hac vice)
SEYFARTH SHAW LLP
131 South Dearborn Street - Suite 2400
Chicago, Illinois 60603
rmcardle@seyfarth.com
cmcardle@seyfarth.com

Joel R. Hlavaty
Frantz Ward
2500 Key Center
127 Public Square
Cleveland, OH 44114
(216) 515-1660
jhlavaty@frantzward.com

George H. Faulkner (0031582)
Joseph C. Hoffman, Jr. (0056060)
Joseph D. Mando (0082835)
Faulkner, Hoffman & Phillips, LLC
20445 Emerald Parkway, Suite 210
Cleveland, Ohio 44135
Faulkner@fhplaw.com
Hoffman@fhplaw.com
Mando@fhplaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 21, 2014, a copy of the foregoing DEFENDANTS' JOINT MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR SANCTIONS UNDER RULE 11 was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

                                            s/Cintra B. McArdle
                                              Cintra B. McArdle