# FAULKNER, HOFFMAN & PHILLIPS, LLC

## ATTORNEYS AT LAW

GEORGE H. FAULKNER
MAIN: 216.781.3600
FAX: 216.781.8839
Faulkner@fhplaw.com

April 22, 2013

<u>**VIA E-MAIL (DAVIDENGLER@DAVIDENGLER.COM) AND CERTIFIED MAIL**</u>

David L. Engler, Esq.
100 DeBartolo Place - Suite 315
Boardman, Ohio 44512

David L. Engler, Esq.
839 Southwestern Run
Youngstown, Ohio 44514

**Re:** **Potts v. American Bottling Company, et al.**
**Case No. 5:12-cv-02688-JRA**

Dear Mr. Engler:

As you know, we represent Teamsters Local Union No. 377 ("Local 377" or the "Union") in connection with the lawsuit filed on behalf of Robert Potts. I am writing this letter pursuant to Federal Rule of Civil Procedure 11. I understand that you will soon receive, or already have received, a similar letter from counsel for The American Bottling Company ("ABC"). The purpose of this letter is to inform you that the claims against ABC and the Union are without legal or factual basis. As such, if you do not voluntarily dismiss these claims within the next twenty-one (21) days, ABC and the Union may file the attached joint motion, requesting all available sanctions against both Plaintiff and your firm.

The utter lack of support for Plaintiff's claims is clear. First, Plaintiff's September 2009 temporary layoff complied with the terms of the applicable collective bargaining agreement. Second, the uncontroverted facts show that ABC offered to convert Plaintiff's temporary layoff to a permanent layoff so that, under Article 14, Section 1 of the collective bargaining agreement, he could "bump" into another position based on plant seniority, but Mr. Potts failed to respond to ABC's offer which was repeated numerous times. Third, Plaintiff waived, released, or withdrew the grievances upon which he has based his claims. Finally, Plaintiff's claims are barred by the six month statute of limitations for hybrid §301 actions. For any or all of these reasons, Plaintiff's lawsuit must be dismissed.

**FAULKNER, HOFFMAN & PHILLIPS, LLC**
ATTORNEYS AT LAW

## I. Plaintiff's Grievances Are Baseless

### A. Plaintiff's Temporary Layoff Complied With The CBA

On September 21, 2009, in accordance with the terms of the CBA, ABC placed Plaintiff on temporary layoff due to significant decline in its business. Specifically, Article 14, Section 1 of the applicable CBA provides that "in the event of temporary layoffs **classification seniority** shall prevail." Plaintiff admitted under oath that as of September 21, 2009 he was the least senior employee in the Warehouse Department. (Ex. E to Rule 11 Mot., Plaintiff's July 6, 2011 Deposition ("Pl. Dep."), 209:20-211:2.) As such, his claim that "his temporary lay-off did not conform to the provisions of the collective bargaining agreement" is simply without merit. (Dkt.1, Cmpl. ¶8.)

Also flawed is Plaintiff's claim that ABC "did not have a lack of work" in September 2009 because "during the one year period after the effective date of Potts' [sic] temporary layoff, [ABC] hired new employees to handle jobs for which Potts was qualified" [and] "[e]ach of those new hires had less plant-wide seniority than did Potts." (Dkt. 1, Cmpl. ¶ 7.) This claim is both immaterial and false. Plant-wide seniority does not govern temporary layoffs, as clearly stated in Article 14 Section 1 of the CBA, classification seniority does. Moreover, Plaintiff admitted under oath (i) that as of September 2010 he remained the least senior employee in his classification and (ii) when asked to identify any employee with less classification seniority than Plaintiff but who was hired into the Warehouse Department after his September 21, 2009 temporary layoff, Plaintiff could not identify a single individual.[1] (Ex. E to Rule 11 Mot., Pl. Dep., 194:13-196:21; 209:20-211:2; 210:7-211:21; 220:21-221:16.)

### B. ABC Offered Plaintiff The Opportunity To "Bump By Seniority" Into A Merchandising Position, But Plaintiff Failed To Respond To ABC's Offer

Plaintiff's claim that "[ABC] failed and refused to afford Potts his contractual rights to avoid being placed on permanent lay-off by exercising his plant-wide seniority to return to work for [ABC]" is also without merit. (Dkt. 1, Cmpl. ¶ 8.) No less than four times, ABC offered Plaintiff the opportunity to "bump by seniority" into a Merchandising position based on his plant-wide seniority. Plaintiff admitted under oath that he received ABC's offer and failed to act on it.

Specifically, during a September 14, 2010 grievance meeting, ABC offered Plaintiff a Merchandising position. (Ex. A to Rule 11 Mot., Sept. 14, 2010 grievance meeting notes.) ABC reduced this offer to writing on September 30, 2010, stating that effective October 15, 2010 it would convert Plaintiff's temporary layoff into a permanent layoff to allow him the opportunity to exercise his contractual rights to "bump by seniority" into the Merchandising Department.

---

[1] In fact, the evidence establishes that the only new hires were for Merchandising positions. Given that Plaintiff also admitted under oath that ABC offered him the opportunity to bump one of these individuals and assume a Merchandising position (see infra Section B), his claim is immaterial for this reason as well.

**FAULKNER, HOFFMAN
& PHILLIPS, LLC**
ATTORNEYS AT LAW

(Ex. B to Rule 11 Mot., September 30, 2010 Correspondence.) ABC requested that Plaintiff respond to this offer in writing within 15 working days, and after not receiving a response from Plaintiff ABC extended this deadline by approximately two months. *Id.* Despite acknowledging receipt of ABC's offer, Plaintiff never communicated his intentions to ABC concerning whether he planned to exercise his bumping rights to move into a new position. (Ex. E to Rule 11 Mot., 197:11-192:2; 228:8-229:14; Ex. F to Rule 11 Mot., October 15, 2010 Correspondence; Ex. C to Rule 11 Mot., October 2, 2010 Correspondence.) Only after Plaintiff failed to respond to ABC's offer despite having three months to consider it, did ABC terminate his employment effective December 1, 2010 in accordance with Article XIV, Section 7, paragraph D of the CBA. (Ex. I to Rule 11 Mot., December 13, 2010 Correspondence.)

Notably, with regard to Plaintiff's failure to respond, Judge John R. Adams stated during the February 5, 2013 Case Management Conference:

> If the plant and the company and the union negotiated a process for a return by the plaintiff to his employment, giving him a right to bump plant-wide back into his old job or to a job period, what are we here about?

. . .

> With all due respect, sir, if it becomes readily apparent that there was a process in place to allow the plaintiff to return to his employment in some capacity, it's pretty hard to argue or it will be very difficult to argue the union in some way, shape or form didn't meet its obligation to fairly represent the plaintiff. What is the goal here? The goal would be for any union to try to afford a process for the employee to keep his job. If they did that, and the plaintiff chose, for whatever reason not to avail himself of that, one can be -- it would be very hard pressed to say that the union didn't do their job.

. . .

> If, in fact, plaintiff acknowledges his knowledge of that offer and the company has agreed to it, acceded to it, then that puts the case in a very challenging position for the plaintiff. And I would strongly encourage you, sir, because the costs of all this litigation, if it becomes patently clear that this case is -- the merits of the case are not what they should be, then obviously, I will have two defendants here clamoring for costs and maybe fees, so someone better take a careful look.

(Dkt. 24, 17:22-25, 19:22-20:8, 20:19-21:2.)

## II. Plaintiff Released/Withdrew the Grievances Forming The Basis Of His Claims

Irrespective of the above facts, Plaintiff's claims are barred because he cannot establish that he exhausted the applicable grievance procedure with respect to the grievances forming the

**FAULKNER, HOFFMAN
& PHILLIPS, LLC**

ATTORNEYS AT LAW

basis for his claims. Plaintiff expressly relies on Grievance numbers 11823 and 11824 to support his claims against the Employer and the Union. (Dkt. 1, Cmpl. ¶¶8, 9.) He cannot do so. As to Grievance 11824, the Settlement Agreement that Plaintiff executed in Case No. 4:11-cv-00149-KSM with ABC, unambiguously provides that the only grievances that survive are Grievances 11823 and 4956. As such, Grievance 11824 is a nullity. Unfortunately, at no time after entering the Settlement Agreement in 2011 did Mr. Potts advise the Union that he waived and released Grievance 11824. In fact, your client's letter to the Union dated January 3, 2012, effectively misrepresents that Grievance 11824 was pending at that time when, in fact, it had been released in settlement of litigation between your client and ABC.

As to Grievance 11823, Plaintiff withdrew this grievance. Indeed, in correspondence dated October 2 and 6, 2010 to the Union, Plaintiff requested that the Union withdraw this grievance, and the Union confirmed the withdrawal of this grievance in correspondence to him dated October 12, 2010. (Exs. C & D to Rule 11 Mot., October 2, 2010, October 6, 2010, and October 12, 2010 Correspondence.) Moreover, Plaintiff admitted under oath that he withdrew this grievance. (Ex. E to Rule 11 Mot., 196:22-198:1; 225:2-226:10; 230:13-22; 233:8-9). As such, Grievance 11823 is also a nullity.

In sum, by virtue of Plaintiff's own conduct, he has no active grievances upon which he can pursue his §301 claim and therefore the claim is barred by his failure to exhaust the grievance procedure. *Delcostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 163 (1983); *Winston v. General Drivers, Warehousemen & Helpers, Local 89*, 93 F.3d 251, 255 (6th Cir. 1996); *Poole v. Budd Co.*, 706 F.2d 181, 183 (6th Cir. 1983) ("It is axiomatic that an aggrieved employee must exhaust any exclusive grievance and arbitration procedures in a collective bargaining agreement prior to bringing a §301(a) suit against the employer."); *Aaron v. Ford Motor Company*, 2011 WL 2149419, *2 (N.D. Ohio) (*citing Wiggins v. Chrysler Corp.*, 728 F. Supp. 463, 466 (N.D. Ohio, 1989)).

## III.    Plaintiff's Claims Are Time Barred

Even setting aside the above facts, Plaintiff's claims are without merit for the simple fact that his claims are time barred. The statute of limitations for hybrid §301 claims is six months. It is well settled that the statute begins to run when an employee knew or should of known of the alleged acts given rise to the cause of action. *Garrish v. Int'l Union, United Automobile, Aerospace, and Agricultural Implement Workers of America*, 417 F.3d 590, 594 (6th Cir. 2005).

However, Plaintiff's own admissions and conduct reveal that he actually knew of the alleged conduct long before this. On October 22, 2010, Plaintiff wrote to the Union accusing the Union of "failing to act solely in the interest of the grievant, and refusing to protect my interest in all dealings with my Employer by way of refusing to process my grievance #11824 . . . ." (Ex. H to Rule 11 Mot., October 22, 2010 Correspondence.) Plaintiff further wrote a second letter to the Union, dated October 27, 2010, in which he accused the Union's Business Agent of "failing to perform your duties as a Business Agent . . . " Plaintiff also testified under oath that he knew as of November 17, 2010 that the Union had allegedly ceased acting on his behalf. (Ex. E to Rule 11 Mot., Pl. Dep. 243, 249-250.) Furthermore, on May 7, 2011, Plaintiff filed a charge

FAULKNER, HOFFMAN
& PHILLIPS, LLC
ATTORNEYS AT LAW

with the National Labor Relations Board in which he signed a Declaration asserting, among other things, that the Union had allegedly "failed to represent him." (Ex. J to Rule 11 Mot., Pl. NLRB Charge.) Given these facts, Plaintiff had until either May 2011 or, at the latest, October 2011, to file his action. As he did not file the Complaint until October 26, 2012, his claims are clearly time barred.

**Rule 11 Standard**

Rule 11 provides, in relevant part:

(b)     Representation to the Court. By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, -

(1)     it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2)     the claim, defenses, and other legal contention therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3)     the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4)     the denials of factual contentions are warranted on the evidence or, if specifically, so identified, are reasonably based on a lack of information or belief.

As set forth in detail, it is clear that you failed to do a proper factual investigation prior to filing Plaintiff's Complaint. We understand that at the February 5, 2013, Case Management Conference, ABC attorney Cintra McArdle advised you of this. Now there can be no question that you are aware of these facts. A refusal to dismiss these meritless, factually unsupported claims in light of Plaintiff's own admissions and the undisputed facts would only serve to intensify this sanctionable conduct.

If you would like to meet to discuss the content of this letter, we are willing to do so; however, if you do not dismiss Plaintiff's claims before the end of the "safe harbor" period, we may file the attached Joint Motion for Sanctions against both Plaintiff and your firm and seek any and all remedies available under Rule 11 (or other available statutory vehicles). Further, we sent you a subpoena for your client's appearance at a deposition scheduled for Tuesday, April 30, 2013, and be aware that counsel for ABC will be traveling from Chicago to attend that deposition. Therefore, the further costs of preparing for, and conducting, Plaintiff's deposition on his meritless claims will be factored into the Rule 11 relief we may seek from the Court as well.



**FAULKNER, HOFFMAN**
**& PHILLIPS, LLC**

ATTORNEYS AT LAW

Sincerely yours,

FAULKNER, HOFFMAN & PHILLIPS, LLC, by

George H. Faulkner

GHF:sm

cc:     Cintra B. McArdle, Esq.

Enclosures

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

☐ Agent
☐ Addressee

B. Received by (Printed Name)     C. Date of Delivery

5-2-13

1. Article Addressed to:

David L. Engler, Esq.
100 DeBartolot Place, Ste. 315
Boardman, OH  44512

22-74

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

839 South Westerly Run
Poland, Ohio 44514

3. Service Type
☐ Certified Mail    ☐ Express Mail
☐ Registered       ☐ Return Receipt for Merchandise
☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)     ☐ Yes

2. Article Number
(Transfer from service label)

7012 3050 0001 8154 1026

PS Form 3811, February 2004        Domestic Return Receipt        102595-02-M-1540

---

7012 3050 0001 8154 1026

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark
Here

Sent To

Boardman 44513

Street, Apt. No.; or PO Box No.

City, State, ZIP+4

PS Form 3800, August 2006        See Reverse for Instructions



EXHIBIT A

# ROBERT POTTS

**4143 Jeanette Drive**
**Warren, Ohio 44484**
**(330) 856-6103**

September 14, 2010

TEAMSTERS LOCAL 377
*Attn: Justin Averell*
1223 Teamster Drive
Youngstown, Ohio 44502

### RE:    *Grievance # 11823*
### *POSITION STATEMENT OF GRIEVANT*

My position is indicated hereunder:

The Company did not apply plant wide seniority for purpose of permanent lay-off.

<u>ISSUE</u>

My name is not last on the plant wide seniority list.

Respectfully submitted,

Robert Potts


EXHIBIT
34

9/14/10

t-town grievance meeting

M.B            John L
Bill Staunl    Justin A
John Tuesley   Roberto Botti

Botti provides preliminary statement

? of March job
            - offer verbal
            - attaching permanent
              layoff language

ABC 000259

EXHIBIT B



**DR PEPPER**
**SNAPPLE** GROUP

14301 Industrial Avenue North
Maple Heights, OH 44137
216.475.4477 ext 4754102
216.475.1053 fax

| To: | Robert Potts (via certified mail) |
| --- | --- |
| CC: | Teamsters Local 377; William Stimmel, Branch Manager; John Taraba, |
| | Distribution Supervisor (all via email) |
| From: | Mike Bobal, Associate HR Manager |
| Date: | 9/30/10 |
| Re: | Grievance #11823 Unjust Involuntary Layoff |



A grievance was received claiming the Company violated Articles 14, 10, 9, 8, 7, 2 of the contract by involuntarily laying off the grievant.

A meeting was held at the Union Hall on 9/14 to discuss this matter. Present for this meeting for the Union was John Lesicko, Justin Averell, and Robert Potts (grievant). Present for the Company were William Stimmel, John Taraba and Mike Bobal.

The Company points out that the grievant was properly laid-off effective 9/21/09 as he was the least senior person in the department that was over-staffed. Specifically, that though Article 14 section 1 points out that permanent layoffs need to follow plant-wide seniority, Article 14, Section 1 also clearly states "in the event of temporary layoffs classification seniority shall prevail." As this was, at the time, a temporary layoff and he had the least seniority, there was no contractual violation.

The process of laying off the grievant was the same method used to temporarily lay off the grievant both on 1/14/08 & 1/12/09. In both of those cases, the grievant was recalled to employment (3/31/08 & 6/8/09, respectively). None of the three layoff letters indicated he was being permanently laid-off. Each letter indicated that the layoff was for an undetermined length of time. The difference is that unlike 2008 and 2009, business needs did not pick-up enough to require a recall to work.

The Company acknowledges that with nearly a year now passing, the situation may result in a loss of seniority. To avoid this possibility (and in consideration of the fact that it has been over a year), the Company is willing to now consider this a "permanent layoff," effective 10/15/10. This will allow the grievant the opportunity to exercise his contractual rights to "bump by seniority and classifications until the least senior employee is displaced" (per Article 14, Section 1). This would, most logically be a Merchandiser position.

Should the grievant wish to pursue this course of action he needs to contact the Company in writing expressing the desire within the 15 working day period that this grievance answer is up for review. His letter should also contain a good phone number in order to be reached. He would then be contacted by a member of the Corporate Talent/ Recruitment team by phone so the driving record can be checked/ reviewed and proof of auto insurance obtained (qualifications).

If the grievant declines this opportunity, then the Company will deal with the grievant's time away from work and possible loss of seniority.

Therefore this grievance is denied.

One last item: The Company and Union Representatives have agreed to hold Grievance #11824 in abeyance until Grievance #11823 is closed. The grievant (same in both items) has **NOT** been terminated by the Employer at this point and no paperwork stating that he has been termed from employment has been sent out. Once Grievance #11823 is finalized, all parties could move onto this new grievance if it is necessary.

# EXHIBIT C

# Robert Potts

4143 Jeanette Drive
Warren, Ohio 44484
(330) 856-6103

October 2, 2010



TEAMSTERS LOCAL 377
*Attn: JUSTIN AVERELL*
1223 Teamster Drive
Youngstown, Ohio 44502

Dear Justin:

This serves to advise that I am in receipt of the Company's letter dated 9/30/2010, mailed via USPS Certified Mail # 7002-0510-0000-7491-2152, postmarked 10/1/2010.

To begin, I hereby reiterate/assert that grievance # 11823 is only a wage claim.

Next, as evidenced, the Company's letter is dated 9/30/2010, and over a year has lapsed in time. The loss of my seniority/discharge already occurred about (10) ten days ago on 9/21/2010; defer to (CBA) Article 14, section (10) and Article 7, section (1).

Moreover, on 9/21/2010, I already had dialogue with both John Taraba and Bill Stimmel by way of my personal appearance at 1142 North Meridian Road, Youngstown, Ohio location, as I signed-in on the Company's sign-in record/log, and presented/submitted my grievance # 11824. I indicate that no union representative/steward was available at the time; defer to the Company's log or sign-in/record or "sheet" at its front door. I now herein request that my timely grievance # 11824 be processed at this time-regarding my improper layoff, discharge or loss of entitled seniority. I'm ready for our discussion.

Despite the above, at all times relevant, I assert that I was improperly laid-off in violation of the labor contract (s); defer to Company payroll records; and also at all times relevant I was not the least senior person in classification/department at any incident.

With that said, any issue regarding my lay-off (s) has never been remedied because of the past internal union matters regarding the suspension of Teamster Local 377 officials and the jurisdiction/trusteeship of Charlie Byrnes. The same issues remain at this date.

In closing, the Company's correspondence dated 9/30/2010, recorded as served via USPS Certified Mail, is pertinent evidence of my loss of seniority, termination, or discharge on 9/21/2010. I suggest we withdraw grievance # 11823, so that we may focus on and duly process my grievances (# 11824 and # 7680) at this time, as I believe the Company's letter dated 9/30/2010 was not in good faith, and is an example of fraud.

Sincerely,

Robert Potts



EXHIBIT
3b

# Robert Potts

4143 JEANETTE DRIVE
WARREN, OHIO 44484
(330) 856-6103

October 6, 2010

TEAMSTERS LOCAL 377
*Attn: JUSTIN AVERELL*
1223 Teamster Drive
Youngstown, Ohio 44502

### RE:     <u>*Request for Status Update-REPORT*</u>

Dear Justin:

I have assumed that you received and completed your duly review of my correspondence dated 10/2/2010 and 10/4/2010 in preservation of my right to the protection of the contract. I am available for any discussion.

As such, <u>at this time</u>, I hereby respectfully make request for a status update regarding the following identified/itemized grievances:

1.    *Grievance # 11823, date WITHDRAWN per my request/DISPOSITION;*

2.    *Grievance # 11824, ACTIVITY/STATUS UPDATE;*

3.    *Grievance # 7680, ACTIVITY/STATUS UPDATE;*

4.    *"NEW" Grievance, as requested-that you prepare, sign, and file on my behalf;*

5.    *ANY OTHER GRIEVANCE, filed on my behalf/STATUS UPDATE.*

In closing, thank you in advance for any duly assistance and *TEAMSTER REPRESENTATION* in this matter, as I await your informative status/report or update.

Sincerely,

Robert Potts



# EXHIBIT D



## Chauffeurs, Teamsters, Warehousemen & Helpers
## Local Union No. 377

AFFILIATED WITH THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS

**JOHN J. ANGELO MEMORIAL HALL**
PHONE: 330-743-3111 OR 1-800-783-6320   1223 TEAMSTERS DR.  YOUNGSTOWN, OHIO 44502-1348
FAX: 330-743-1821

**JOHN LESICKO**
*Secretary-Treasurer*
*Principal Officer*

**SAM PROSSER**
*President*

**KEVIN KOUBECK**
*Vice President*

**MELODY CAMPBELL**
*Recording Secretary*

**ROBERT BONHOFF**
*Trustee*

**DANIEL NODAY**
*Trustee*

**DARRELL ZEH**
*Trustee*

**JUSTIN AVERELL**
*Business Representative*

**GERALD SANDERS**
*Business Representative*

October 12, 2010

Mr. Robert Potts
4143 Jeanette Drive
Warren, OH 44484

Dear Robert,

I am in receipt of your correspondence regarding grievance # 11823, 11824, 7680 and the request of a new grievance to be filed on your behalf covering all differences between yourself and the Employer.

Also, per your request dated October 5, 2010, I will withdraw grievance # 11823 without prejudice and file the new grievance on or about October 13, 2010, at which time I will also request a meeting to bring all parties to the table to remedy contractual violations.

Fraternally yours,

*Justin Averell*
/rs

Justin Averell
Business Representative
Teamsters Local No. 377

Certified Mail:  7010 0290 0003 6116 9733

093008



EXHIBIT E

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

ROBERT A. POTTS,

    Plaintiff,

  vs.          Case No. 4:11-CV-00149-KSM

AMERICAN BOTTLING CO., dba 7-UP,

aka DR. PEPPER SNAPPLE GROUP,

aka DR. PEPPER/SEVEN UP, INC.,

fka CADBURY SCHWEPPES

BOTTLING GROUP, INC.,

    Defendant.

- - - - -

DEPOSITION OF ROBERT A. POTTS

Taken on Wednesday, July 6, 2011, at 9:15 a.m.

At the offices of:

Baker Hostetler

3200 PNC Center

1900 East 9th Street

Cleveland, Ohio 44114

Before Steven H. Henschel, a Registered Professional Reporter

in and for the State of Ohio



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787    www.cefgroup.com    fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 · 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 · 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

**Page 2**

1 APPEARANCES:
2 .
3 On behalf of the Plaintiff:
4 Guarnieri and Secrest, P.L.L., by
5 MICHAEL D. ROSSI, ESQ.
6 151 East Market Street
7 P.O. Box 4270
8 Warren, Ohio 44482
9 (330)393-1584
10 mrossi@gsfirm.com
11 On behalf of the Defendant:
12 Seyfarth Shaw, LLP, by
13 CINTRA BENTLEY MCARDLE, ESQ.
14 131 South Dearborn Street
15 Suite 2400
16 Chicago, Illinois 60603
17 (312)460-5000
18 cmcardle@seyfarth.com
19
20 .
21
22
23
24
25 .

**Page 3**

1 ROBERT A. POTTS, of lawful age,
2 called for examination, as provided by
3 the Federal Rules of Civil Procedure,
4 being by me first duly sworn, as
5 hereinafter certified, deposed and said
6 as follows:
7 EXAMINATION OF ROBERT A. POTTS
8 BY-MS.MCARDLE:
9 Q. Good morning, Mr. Potts. My
10 name is Cintra McArdle, we met just a
11 few minutes ago out on the lobby. I'm
12 here today to take your deposition in a
13 case being filed against the American
14 Bottling Company, do you understand
15 that?
16 A. Yes.
17 Q. And I represent the
18 defendant, the American Bottling
19 Company, which I will refer to
20 interchangeably as ABC, DPSG or the
21 company, is that okay with you?
22 A. Sure.
23 Q. So if I use DPSG or the
24 company you'll understand that I mean
25 the American Bottling Company?

**Page 4**

1 A. Sure.
2 Q. Today we're going to be
3 asking you a series of questions about
4 the claims that you filed relating to
5 your employment with ABC, the layoffs
6 that you incurred and your subsequent
7 termination of employment, okay?
8 A. Yes.
9 Q. Please state your full name.
10 A. Robert A. Potts.
11 Q. What does the A stand for?
12 A. Anthony.
13 Q. Have you ever gone by any
14 other name?
15 A. No.
16 Q. Have you ever had your
17 deposition taken before?
18 A. No.
19 Q. Today, since you haven't had
20 your deposition taken before, we'll go
21 over some ground rules which you may
22 have already covered with your attorney
23 but I think it's helpful to do this
24 morning as well. You have been placed
25 under oath and you understand that means

**Page 5**

1 you're to tell the truth under penalty
2 of perjury today, correct?
3 A. Yes.
4 Q. Today I'll ask you a series
5 of questions for which you will be
6 providing answers. Since we have a
7 court reporter, not a videographer, I
8 would request that you wait until my
9 question is complete before giving your
10 answer and I will endeavor to do the
11 same, wait until your answer is complete
12 before I start another question, is that
13 fair?
14 A. Can you repeat that, please?
15 Q. Sure. All I'm saying is
16 let's not step on each other, make sure
17 that I've finished asking my question
18 before you start answering. I know
19 sometimes people think, oh, I know where
20 this question is going so they start
21 answering. And I'll do the same, I'll
22 wait until you finish your answer until
23 I ask another question, is that fair?
24 A. Fair enough.
25 Q. Also, we don't have a



# Cefaratti Group
THE LITIGATION SUPPORT COMPANY

1.800.694.4787    www.cefgroup.com    fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

**Page 6**

1 videographer, as I said, so the court
2 reporter will need audible responses
3 from you meaning a yes or a no if
4 appropriate to the question, not a shake
5 of the head, that won't be able to be
6 picked up by the court reporter.
7     **A.** Understood.
8     **Q.** Today I'm asking for your
9 personal knowledge about facts in this
10 case so I would request that you don't
11 speculate or guess about any
12 information, is that correct fair?
13     **A.** Fair enough.
14     **Q.** If you don't understand a
15 question I would like you to please ask
16 me as you just did earlier, but if you
17 don't ask me and you don't ask me to
18 clarify that question I'll assume you've
19 understood it, is that fair?
20     **A.** Fair.
21     **Q.** At this point I wanted to
22 ask you, are you on any medications?
23     **A.** No.
24     **Q.** Is there any reason you
25 can't answer my questions today?

**Page 7**

1     **A.** I don't understand, what do
2 you mean?
3     **Q.** Is there anything that would
4 prevent you from providing full and
5 complete answers to my questions today?
6     **A.** No.
7     **Q.** What I'd like to do first is
8 introduce some preliminary exhibits and
9 identify them and then we'll start into
10 the line of questioning.
11     **A.** Sure.
12     - - - - -
13     (Thereupon, Deposition
14     Exhibit-1 was marked for
15     purposes of identification.)
16     - - - - -
17     **Q.** Handing you what's been
18 marked Deposition Exhibit 1, do you know
19 what this document is?
20     **A.** Yes.
21     **Q.** What is it?
22     **A.** The second amended complaint.
23     **Q.** This is the second amended
24 complaint that you filed on or about
25 March 1st, 2011 against the American

**Page 8**

1 Bottling Company, is that correct?
2     **A.** Let me review the pages.
3     **Q.** Sure. Take whatever time
4 you need during the deposition, if I
5 give you a document, to review the
6 document.
7     **A.** Okay.
8     **Q.** Now, are you able to answer
9 the question whether this is the second
10 amended complaint that you filed on or
11 about March 1st, 2011 against the
12 American Bottling Company?
13     **A.** It is.
14     - - - - -
15     (Thereupon, Deposition
16     Exhibit-2 was marked for
17     purposes of identification.)
18     - - - - -
19     **Q.** I'm handing you what's been
20 marked Deposition Exhibit 2, have you
21 seen these documents before?
22     **A.** Yes, I have.
23     **Q.** And do you know what these
24 documents are?
25     **A.** Yes.

**Page 9**

1     **Q.** What are they?
2     **A.** Intercorrespondence between
3 my counsel and yourself, and Michelle, I
4 can't pronounce her last name.
5     **Q.** Anselmo?
6     **A.** Anselmo.
7     **Q.** A N S E L M O?
8     **A.** Yes.
9     **Q.** Do you have an understanding
10 that these represent what are called
11 initial disclosures in this case,
12 meaning that you've set forth certain
13 individuals that you believe have
14 knowledge concerning your claims in this
15 case?
16     **A.** Yes.
17     - - - - -
18     (Thereupon, Deposition
19     Exhibit-3 was marked for
20     purposes of identification.)
21     - - - - -
22     **Q.** Showing you what's been
23 marked Deposition Exhibit 3, do you
24 recognize this document?
25     **A.** Yes.



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787      www.cefgroup.com      fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

**Court Reporting • Video Conferencing • Legal Video Production • Investigations**
**Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics**

**Page 10**

1 Q. What is this document?
2 A. It's an answer to the first
3 set of interrogatories to plaintiff.
4 Q. And did you provide --
5 without telling me the substance of
6 those communications, did you provide
7 certain information to your attorney so
8 that questions from the company could be
9 answered during the course of discovery?
10 A. Yes.
11 Q. And in providing that
12 information, if we could flip to the
13 seventh page from the back, roughly,
14 it's a page that I believe bears your
15 signature?
16 A. Yes.
17 Q. Is that your signature?
18 A. Yes.
19 Q. Pursuant to Federal Rule of
20 Civil Procedure 33 you are required to
21 answer interrogatories served to you by
22 the defendant under oath under penalty
23 of perjury. I notice you have signed
24 pursuant to a notary signature but I'm
25 going to ask you, is the information

**Page 11**

1 that you provided to your attorney and
2 set forth in this document true and
3 accurate under penalty of perjury?
4 A. Yes.
5 - - - - -
6 (Thereupon, Deposition
7 Exhibit-4 was marked for
8 purposes of identification.)
9 - - - - -
10 Q. Handing you what's been
11 marked Deposition Exhibit 4, it's a
12 multiple document exhibit that appear to
13 look the same but you can tell me if I
14 understand this correctly, the first set
15 has some handwritten notes, if you flip
16 through the documents clipped together,
17 if you flip through them there are
18 some handwritten notes. I think I've
19 clipped mine differently than yours so
20 please look at the second clipped
21 document.
22 A. Two documents clipped
23 together?
24 Q. Correct. And there's some
25 handwritten notes in that second

**Page 12**

1 document?
2 A. Okay.
3 Q. Do you see those?
4 A. Yes.
5 Q. And, again, feel free to
6 flip through the entire document but my
7 question is, are those your handwritten
8 notes?
9 A. They appear to be.
10 Q. And the information that you
11 provided in the handwriting of
12 Deposition Exhibit 4, which are your
13 handwritten notes, that is information
14 designating certain documents as
15 responsive to the American Bottling
16 Company's document request in this case,
17 is that right?
18 A. Repeat that, please.
19 Q. Sure. The handwritten notes
20 that you have set forth in a portion of
21 Deposition Exhibit 4 are your answers to
22 designate certain documents as
23 responsive to the American Bottling
24 Company's document request, is that
25 right?

**Page 13**

1 A. Appears correct.
2 - - - - -
3 (Thereupon, Deposition
4 Exhibit-5 was marked for
5 purposes of identification.)
6 - - - - -
7 Q. Showing you what's been
8 marked Deposition Exhibit 5, have you
9 ever seen this document before?
10 A. I don't think so.
11 Q. Deposition Exhibit 5 appears
12 to be a correspondence from Mike Rossi
13 to myself dated May 3rd, 2007.
14 A. Okay.
15 Q. In it it refers to certain
16 discovery issues that were presented and
17 provides some, what appears to be,
18 information about discovery. My question
19 for you is, on the second page it
20 states, item 7, request number 42,
21 "Plaintiff has not incurred any out of
22 pocket medical expenses not covered by
23 insurance. I'll let you know if and
24 when he does." Is that an accurate
25 statement as of today, this is dated May



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787     www.cefgroup.com     fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

**Page 14**

1  3rd, 2011, but as of today have you
2  incurred any out of pocket expenses that
3  are not covered by insurance?
4      A. Not at this time.
5      - - - - -
6      (Thereupon, Deposition
7      Exhibit-6 was marked for
8      purposes of identification.)
9      - - - - -
10     Q. Showing you what's been
11 marked Deposition Exhibit 6, have you
12 seen this document before?
13     A. Yes.
14     Q. And this document is
15 correspondence from Mr. Rossi to myself
16 this time dated May 25th, 2011, is that
17 correct?
18     A. Say that again, please.
19     Q. Sure. Deposition Exhibit 6
20 is correspondence from Mr. Rossi to
21 myself dated May 25th, 2011, is that
22 correct?
23     A. That's correct.
24     Q. There's an attachment to this
25 correspondence, if you look at the

**Page 15**

1  attachment, is that your signature on
2  the lower right-hand portion of the
3  document?
4      A. Yes.
5      Q. We looked at Deposition
6  Exhibit 4, which were your responses to
7  document requests issued by the American
8  Bottling Company in this case. I'm not
9  going to ask you any specific questions
10 about the document but certainly feel
11 free to pull it out if you'd like to
12 look at it. My question for you is
13 more general, how did you go about
14 searching for documents to provide to
15 your attorney in this case?
16     A. Please expand, what do you
17 mean?
18     Q. How did you -- I'm assuming
19 you received some information from your
20 attorney. Again, I don't want to know
21 what the conversations were, but in
22 response to those questions or
23 information how did you go about
24 gathering documents to provide them to
25 your attorney for purposes of this case?

**Page 16**

1      A. Whatever I had in my storage
2  box.
3      Q. And that's what I'm getting
4  at. So you had a storage box?
5      A. Just like a Kinko style box,
6  bunch of paperwork in it.
7      Q. How many storage boxes did
8  you have, just the one?
9      A. For this matter.
10     Q. Yes. And I am speaking of
11 this matter. So just for this matter
12 you had one storage box?
13     A. Yes.
14     Q. Where did you keep that
15 storage box?
16     A. At the residence.
17     Q. Is that your Jeanette
18 Drive --
19     A. Correct.
20     Q. -- residence? And in that
21 box is it fair to say that you kept
22 copies of documents that you sent to the
23 American Bottling Company in part?
24     A. Some.
25     Q. And other documents were

**Page 17**

1  documents you received from the American
2  Bottling Company, is that correct?
3      A. I received some documents,
4  yes.
5      Q. So the box contained at
6  least correspondence that you sent to
7  the American Bottling Company and
8  correspondence you received from the
9  American Bottling Company, are there any
10 other categories of documents that
11 existed within that storage box?
12     A. Paperwork in general, yes.
13     Q. I'm sorry, paperwork in
14 general, yes, I'm not sure what you
15 mean?
16     A. Just paperwork in general as
17 documents, referring to documents, the
18 term documents.
19     Q. What type of paperwork are
20 you referring to?
21     A. Eight and a half by 11 and a
22 half, just papers.
23     Q. Did they relate to your
24 employment with the American Bottling
25 Company?



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787   www.cefgroup.com   fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

## Page 18

1  A. Yes.
2  Q. Did you maintain this storage
3  box because you wanted to keep a record
4  of events that occurred during your
5  employment with the American Bottling
6  Company?
7  A. I generally just throw stuff
8  in boxes, if it's needed I got somewhere
9  to look for it.
10  Q. How do you determine what
11  you will retain and what you will throw
12  away for purposes of the storage box
13  that related to documents concerning the
14  American Bottling Company?
15  A. Based on my opinion.
16  Q. And what opinion is that,
17  sir?
18  A. If I just decide to keep
19  something I throw it in a box. If not,
20  I don't think it's necessary to keep, I
21  just throw it away, trash.
22  Q. So is it fair to say that
23  you made some determination that items
24  that you did not retain were not
25  important or relevant to your employment

## Page 19

1  at the American Bottling Company?
2  A. Say that again, please.
3  Q. Sure. Is it fair to say
4  then documents that you chose not to
5  retain and that you chose to throw away
6  as trash were not important to your
7  employment at the American Bottling
8  Company?
9  A. You could say that. I kept
10  whatever I thought that I should keep.
11  Q. And how did you decide what
12  documents to provide to your counsel
13  from that storage box?
14  A. I just give him everything.
15  Q. And I didn't ask you this so
16  I'll ask you now, were there any other
17  locations that you maintained documents
18  relating to your employment at the
19  American Bottling Company other than the
20  storage box?
21  A. No.
22  Q. Do you have an e-mail
23  account that you use?
24  A. No.
25  Q. Before we get into detail

## Page 20

1  questions concerning your employment I
2  want to go over generally the claims
3  that you've asserted against the
4  American Bottling Company, okay?
5  A. Okay.
6  Q. My understanding is that
7  you've asserted two claims against the
8  American Bottling Company. One is an
9  Ohio Whistleblower Statute claim and one
10  relates to a COBRA notice violation, is
11  that correct?
12  A. I didn't hear the first
13  part.
14  Q. Sure. And I did notice you
15  put your hand up to your ear, please
16  let me know if at any time you cannot
17  hear the questions I've asked you. If
18  you don't let me know that I'll
19  certainly assume you have so I'd like to
20  make sure we're on the same page.
21  A. Sure.
22  Q. And I do sometimes talk
23  softly, so please let me know.
24  A. Absolutely.
25  Q. Fair?

## Page 21

1  A. Fair enough.
2  Q. All right. My understanding
3  of the claims that you've asserted in
4  this case are that you've asserted two
5  claims, one is an Ohio Whistleblower
6  Statute claim and one is a COBRA notice
7  violation claim, is that correct?
8  A. Correct.
9  Q. You have no other claims
10  asserted against the American Bottling
11  Company in this litigation, correct?
12  A. At this time, no.
13  Q. Is there a time that you
14  anticipate adding additional claims to
15  your lawsuit against the American
16  Bottling Company?
17  A. Not that I know of. If my
18  attorney suggests anything I'm open to
19  any legal advice, counsel.
20  Q. So let's talk in a little
21  bit more detail about the two claims
22  that you've asserted against the
23  American Bottling Company. I'd like to
24  talk first about the whistleblower
25  claim, okay?


Cefaratti Group
THE LITIGATION SUPPORT COMPANY

1.800.694.4787    www.cefgroup.com    fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

**Page 22**

1      A. Okay.
2      Q. Your claim essentially is
3 that you engaged in certain conduct and
4 ABC took certain actions as a result of
5 that conduct, is that generally correct?
6      A. Define conduct.
7      Q. We'll get into the definition
8 of conduct, we're going to drill down a
9 little bit more but I'm looking globally
10 right now. Essentially your
11 whistleblower claim is you engaged in
12 some conduct, as a result of that
13 conduct ABC took some action?
14      A. I'm not understanding
15 conduct.
16      Q. Well, I believe you made
17 some kind of complaint, and we'll drill
18 down again and get into the specifics of
19 the complaint, but just in a very
20 general level your whistleblower act
21 claim is that you made a complaint and
22 then ABC took some kind of action in
23 retaliation for that complaint, is that
24 it?
25      A. Yes.

**Page 23**

1      Q. Specifically your claim is
2 that you made a complaint concerning the
3 operation of powered industrial vehicles
4 without operative horns or lights and
5 with slipping brakes, engine stalls or
6 cut-offs without warning and fluid
7 leaks, is that correct?
8      A. Yes.
9      Q. Any other complaint that
10 you're claiming forms the basis of your
11 whistleblower claim in this case?
12      A. No.
13      Q. Is it okay if we -- since
14 that's a lot of words, is it okay if we
15 refer to that complaint as the vehicle
16 issue?
17      A. If you like.
18      Q. But if I use the term the
19 vehicle issue you'll understand that I'm
20 referring to your complaint concerning
21 the operation of powered industrial
22 vehicles without operative horns or
23 lights and with slipping brakes, engine
24 stalls or cut-offs without warning and
25 fluid leaks?

**Page 24**

1      A. You said you would like to
2 say vehicle what?
3      Q. Issue.
4      A. Okay.
5      Q. So you'll understand when I
6 say vehicle issue, that's the complaint
7 I'm referring to?
8      A. Yes.
9      Q. To whom, and let's start
10 with a list, we'll, again, drill down
11 into details, but to whom did you
12 complain about the vehicle issue?
13      A. At what time?
14      Q. Any time.
15      A. Ryan Cozart, John Taraba,
16 Mike Bobal and OSHA agency and Agent
17 Janell and Agent Joe Warner.
18      Q. And you referred to agent
19 Janell and Agent Joe Warner, are those
20 individuals at OSHA?
21      A. Yes.
22      Q. Anyone else that you
23 complained to about the vehicle issue?
24      A. Just the in-house and agency.
25      Q. And when we say in-house

**Page 25**

1 you're referring to Ryan Cozart, John
2 Taraba and Mike Bobal, is that right?
3      A. Yes, even though Mike Bobal
4 is off-site.
5      Q. You used the term in-house,
6 any other in-house individuals that you
7 complained to about the vehicle issue?
8      A. Just those authorities.
9      Q. And, again, those authorities
10 being the individuals you identified at
11 the American Bottling Company as well as
12 OSHA, is that right?
13      A. Yes.
14      Q. With regards to Mr. Taraba,
15 and Mr. Taraba is the distribution
16 manager of the Youngstown facility for
17 the American Bottling Company, is that
18 right?
19      A. Vending warehouse -- vending
20 manager, warehouse manager.
21      Q. And you're looking at a
22 business card you just pulled out of
23 your wallet, is that Mr. Taraba's
24 business card?
25      A. Yes.



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787    www.cefgroup.com    fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

**Page 26**

1　　Q. And I believe you produced a
2 copy of that in discovery, correct?
3　　A. Yes.
4　　Q. When did you complain to Mr.
5 Taraba about the vehicle issue?
6　　A. Taraba? Let's see, August
7 11th, 2010.
8　　Q. Any other time you complained
9 to Mr. Taraba about the vehicle issue?
10　　A. Back in 2007.
11　　Q. And the 2007 complaint is
12 not part of your litigation, is that
13 right?
14　　A. That's true.
15　　Q. And that's a good
16 clarification, so at this point the
17 subject of this litigation or for
18 purposes of this litigation, I should
19 say, you're speaking of an August 11th,
20 2010 complaint to Mr. Taraba, correct?
21　　A. That's correct.
22　　Q. What form did your complaint
23 to Mr. Taraba take? And Taraba is
24 T A R A B A.
25　　A. Is that a question?

**Page 27**

1　　Q. Yes. What form did your
2 complaint to Mr. Taraba take?
3　　A. Handwritten.
4　　Q. Any other form of complaint
5 to Mr. Taraba?
6　　A. Not to Taraba, no.
7　　Q. And when I say form of
8 complaint, I'm referring again to the
9 vehicle issue, you understood that,
10 correct?
11　　A. Absolutely.
12　　Q. What did you tell Mr. Taraba
13 about the vehicle issue in your written
14 complaint?
15　　A. Health and safety issues
16 regarding substandard equipment, need of
17 maintenance, unsafe, no horns, no
18 lights, brake issues, maybe electronic
19 starting. I said -- I think my words
20 were something like stall and cut-off or
21 something. The electronic starting, I
22 just said that today, but I think my
23 exact words were stall, cut-off engine.
24　　Q. Anything else that you said
25 to Mr. Taraba in your written complaint

**Page 28**

1 of August 11th, 2010?
2　　A. Not to Taraba, no.
3　　Q. Did you identify any specific
4 vehicles in your written complaint to
5 Mr. Taraba of August 11th, 2010?
6　　A. I believe so.
7　　Q. Do you recall what those
8 vehicles were?
9　　A. I know they was gas fork
10 truck towmotors.
11　　Q. Anything more specific about
12 which gas truck fork towmotors -- excuse
13 me, I inverted that, gas fork truck
14 towmotors?
15　　A. I think I had some numbers,
16 reference numbers.
17　　Q. Anything else that you recall
18 -- strike the question, please.
19 Anything else that you said to Mr.
20 Taraba in your written complaint
21 concerning the vehicle issue of August
22 11, 2010?
23　　A. Nothing else to Taraba.
24　　Q. Do you know whether Mr.
25 Taraba told anyone else at the American

**Page 29**

1 Bottling Company that you complained?
2　　A. You'd have to ask him.
3　　Q. So the answer to my question
4 is no, you don't know whether he told
5 anyone at the American Bottling Company
6 that you had complained?
7　　A. I don't have any knowledge.
8 I can assume.
9　　Q. So, again, the answer to my
10 question is no?
11　　A. That's right.
12　　Q. Do you know whether Mr.
13 Taraba had authority to lay you off?
14　　A. I assume.
15　　Q. Do you have any personal
16 knowledge that Mr. Taraba had the
17 authority to lay you off?
18　　A. I believe so.
19　　Q. What's that personal
20 knowledge based on?
21　　A. Him being a manager.
22　　Q. So you're assuming that
23 because he's a manager he had authority
24 to lay you off, is that correct?
25　　A. Unless corporate HR advised



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY
1.800.694.4787　　www.cefgroup.com　　fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

**Page 30**

1  him otherwise.
2      Q. Again, my question was, so
3  you're assuming because Mr. Taraba was a
4  manager he had authority to lay you off,
5  is that correct?
6      A. As a manager if he has
7  authority to lay off, yes.
8      Q. And that's your assumption,
9  correct?
10     A. I assume so, yes, he's --
11     Q. Do you know whether Mr.
12 Taraba had authority to terminate your
13 employment?
14     A. I'm not sure.
15     Q. Do you know whether Mr.
16 Taraba made a decision to lay you off?
17     A. Say that again, please.
18     Q. Do you know whether Mr.
19 Taraba, in fact, made a decision to lay
20 you off?
21     A. You'd have to ask him. I
22 don't know if he made a decision or he
23 was told.
24     Q. So do you know whether Mr.
25 Taraba participated in any decision to

**Page 31**

1  lay you off?
2      A. I know he subscribed his
3  signature to a document with layoff.
4  Other than that, you'd have to ask him.
5      Q. Do you know whether Mr.
6  Taraba made a decision to terminate your
7  employment?
8      A. Again, you'd have to ask
9  him. I don't know where his authority
10 is in the company.
11     Q. Do you know whether Mr.
12 Taraba participated in a decision to
13 terminate your employment?
14     A. I believe he did.
15     Q. What's that based on?
16     A. Him being a manager, agent
17 of the company.
18     Q. So, again, you're assuming
19 because he's a manager he participated
20 in the decision to terminate your
21 employment?
22     A. You could say that.
23     Q. You also indicated that you
24 complained to Ryan Cozart, C O Z A --
25 actually is it Cozart or Cozant, let me

**Page 32**

1  ask you that?
2      A. I believe it's Cozart.
3      MR. ROSSI: Do you have a
4  spelling for that?
5      Q. Well, I thought it was
6  Cozart so perhaps I read that
7  incorrectly. I would think it's
8  C O Z A R T, if it's Cozart, it's in
9  your initial disclosures. Thank you.
10 When did you complain to -- we'll use
11 Ryan for ease, when did you complain to
12 Ryan about the vehicle issue?
13     A. I complained to the acting
14 supervisor, Ryan Cozart, August 11th,
15 2010.
16     Q. In what form did your
17 complaint to Ryan take?
18     A. Verbal and written.
19     Q. Well, let's start with the
20 verbal complaint about the vehicle
21 issue. What did you say to Ryan
22 verbally about the vehicle issue?
23     A. In conversation and
24 discussing my dialogue, our dialogue, I
25 stated that the problems again with the

**Page 33**

1  fork trucks, I'd see the lights aren't
2  working, I see there's oil on the floor,
3  I see they're stalling again,
4  substandard maintenance issues, again,
5  consistent, before I returned to work
6  they need corrected and be addressed.
7      Q. You just referred to the
8  items that you complained to Mr. --
9  Ryan about as substandard maintenance
10 issues. So is it your understanding
11 that the items you're complaining about
12 related to the maintenance of the
13 vehicles?
14     A. Say that again, please.
15     Q. Sure. You just referred to
16 substandard maintenance issues that you
17 spoke to Ryan about. So is it then
18 your understanding that these issues you
19 were raising, the vehicle issues, were
20 maintenance issues?
21     A. Yeah, the discussion was
22 safety or unsafe, to both public and
23 employees as other vendors frequent the
24 facility.
25     Q. Anything else that you said



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787    www.cefgroup.com    fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

**Page 34**

1　to Ryan in your verbal complaint of
2　August 11, 2010 about the vehicle issue?
3　　　A.　Just that dialogue and I
4　wrote him a note the same, left him a
5　note on the clipboard, that's it.
6　　　Q.　Was anyone else present when
7　you spoke with Ryan about the vehicle
8　issue on August 11, 2010?
9　　　A.　What do you mean present?
10　　　Q.　Was anyone else within five
11　feet of your conversation with Ryan on
12　August 11, 2010 about the vehicle issue?
13　　　A.　Not that I'm aware of.
14　　　Q.　About how long would you say
15　that conversation with Ryan was on
16　August 11, 2010 about the vehicle issue?
17　　　A.　Minutes.
18　　　Q.　Did Ryan say anything to you
19　in response to your complaint about the
20　vehicle issue on August 11, 2010?
21　　　A.　Just pretty much, yeah, yeah,
22　yeah.
23　　　Q.　Do you have any specific
24　recollection of what Ryan said to you in
25　response to your complaint about the

**Page 35**

1　vehicle issue on August 11, 2010?
2　　　A.　He just appeared to blow me
3　off.
4　　　Q.　When you say he appeared to
5　blow you off, what was Ryan doing that
6　you interpreted as blowing you off?
7　　　A.　Just sitting on a forklift,
8　I was out on the floor in the warehouse
9　and no conflict, just civil discussion
10　on the floor and that's it.
11　　　Q.　You said sitting on a
12　forklift, was Ryan on a forklift?
13　　　A.　Yes.
14　　　Q.　And you approached him while
15　he was on the forklift?
16　　　A.　Yes.  Yes, he's the acting
17　supervisor when John is not there.
18　　　Q.　You worked the second shift
19　at the American Bottling Company
20　Youngstown facility?
21　　　A.　I assume so, they don't ever
22　refer to shifts.
23　　　Q.　What time did your shift
24　start?
25　　　A.　They changed several times.

**Page 36**

1　Pending change I guess it's fair to say
2　at one time 4:00.
3　　　Q.　Did you ever start at 9:00
4　in the morning?
5　　　A.　No.
6　　　Q.　And using 4:00, would you
7　then work an eight-hour shift starting
8　at 4:00?
9　　　A.　They're supposed to be
10　eight-hour shifts Monday through Friday.
11　　　Q.　Not counting overtime?
12　　　A.　Not counting overtime, breaks
13　are paid.
14　　　Q.　So generally, if we're not
15　discussing overtime, you were working
16　4:00 p.m., starting at 4:00 p.m. and
17　then working approximately an eight-hour
18　shift?
19　　　A.　Say that again, please.
20　　　Q.　Sure.  Not discussing
21　overtime right now, generally you were
22　starting approximately 4:00 p.m. and
23　working an eight-hour shift Monday
24　through Friday?
25　　　A.　Monday through Friday unless

**Page 37**

1　they changed the schedule or you had to
2　come in early for something.
3　　　Q.　Let's talk about the written
4　complaint that you gave to Ryan, that
5　was the same day, correct, August 11,
6　2010?
7　　　A.　Yes.
8　　　Q.　What did you place in
9　writing to Ryan on August 11, 2010?
10　　　A.　Unsafe fork trucks,
11　towmotors, tell John to be aware of
12　this, maintenance, same problem
13　continued again as before, in the past,
14　ongoing.
15　　　Q.　You mentioned same problem as
16　continued before ongoing, are you
17　referring to the complaint you made in
18　2007?
19　　　A.　Referring to multiple times.
20　It was always some type of industrial
21　fork truck problem, maintenance, safety
22　issues.  I mean, the workers sometimes
23　have to hit the battery with a steel
24　pole and hammer to start them.
25　　　Q.　I'm referring to the vehicle



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787　www.cefgroup.com　fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

**Page 38**

1 issue though.
2     A. Yeah, that's right.
3     Q. So the specific complaint you
4 were making on August 11, 2010 was
5 something that had been ongoing for a
6 period of time?
7     A. Repeat, yes. Here and
8 there.
9     Q. Then you said a moment ago
10 that in your written complaint to Mr.
11 Cozart of August 11, 2010 that you
12 mentioned that he should let or tell
13 John to be aware of the problem, is
14 that right?
15     A. Yeah, just a reminder, the
16 note was definitely a reminder. Because
17 when John is not there Ryan is the
18 acting supervisor in charge, open,
19 close, lock, the higher rate of pay,
20 he's the authority in place of John.
21     Q. You testified earlier that
22 you issued a written complaint to Mr.
23 Taraba on that same date of August 11,
24 2010, approximately when in relation to
25 the written complaint you made to Mr.

**Page 39**

1 Cozart of that same date did you make
2 the complaint to Mr. Taraba?
3     A. About the same time.
4     Q. Was it simultaneous, were you
5 writing two letters at the same time?
6     A. Yeah.
7     Q. One to Ryan and one to John?
8     A. Yes, I sat down and grabbed
9 a paper and pen and started writing.
10     Q. Well, if you were leaving
11 Mr. Taraba a note why did you also
12 leave one for Mr. Cozart?
13     A. To remind him, plus he's the
14 acting supervisor.
15     Q. To remind him of what?
16     A. The power and practice.
17 What it is when Ryan is in charge
18 there's a clipboard that he leaves his
19 notes for John and in good faith and a
20 courtesy, double courtesy in the
21 interest of safety I just provided him a
22 reminder.
23     Q. And I think you actually
24 testified earlier that you placed your
25 written complaint to Mr. Cozart on that

**Page 40**

1 clipboard, is that right?
2     A. There's a clipboard, yes.
3     Q. So you placed the written
4 complaint to Mr. Cozart of August 11,
5 2010 on the clipboard that Ryan leaves
6 notes for for John Taraba, is that
7 right?
8     A. That's right.
9     Q. And in addition to that you
10 also completed a written complaint to
11 Mr. Taraba that you placed where?
12     A. On his desk.
13     Q. Mr. Taraba's desk?
14     A. Yes. That's the standard
15 pattern and practice through all my
16 experience in 2007.
17     MR. ROSSI: Wait for a question.
18     Q. I'm not sure, I'm not
19 understanding, you're using a term
20 called pattern and practice, I'm not
21 understanding that term, what do you
22 mean by that?
23     A. That's the usual course of
24 business, leave notes for John.
25     Q. That's the usual course of

**Page 41**

1 your business to leave notes for John?
2     A. John's policy.
3     Q. And in your experience, times
4 you've left notes for Mr. Taraba on his
5 desk, he's responded to those notes to
6 you?
7     A. Sometimes.
8     Q. Can you think of a specific
9 occasion when he didn't respond to the
10 note that you left for him on his desk?
11     A. Vacation issues, wage issues,
12 overtime issues. He's hit or miss, got
13 to remind him a lot.
14     Q. You testified about some
15 categories. I'm looking for a specific
16 occasion that you recall leaving Mr.
17 Taraba a note and that he did not
18 respond to you?
19     A. Well, a specific occasion
20 would be maybe in 2007 misclassifying me
21 as seasonal, wrong pay rate, wrong
22 status.
23     Q. Are those different items or
24 are they all part of the classification
25 seasonal?



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787    www.cefgroup.com    fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

**Page 42**

1     A. You'd have to ask him. I
2 was hired as a warehouse employee. Just
3 the wrong pay rate was remedied upon
4 grievance in 2008, 2007, the end of 2007
5 going into January of 2008. Chris
6 Colello, Teamsters 377 remedied.
7     Q. I'm sorry, he remedied what?
8     A. Paying me my wages.
9     Q. Anything else that you placed
10 in your written complaint of August 11,
11 2010 to Mr. Cozart?
12     A. Say that again, please.
13     Q. Anything else that you placed
14 in your written complaint of August 11,
15 2010 to Mr. Cozart?
16     A. I think I covered it.
17     Q. You referred to Mr. Cozart a
18 number of times as an acting supervisor
19 today, do you recall that?
20     A. Yes.
21     Q. You didn't actually consider
22 Mr. Cozart to be a supervisor though,
23 correct?
24     A. Define supervisor.
25     Q. In your terms you didn't

**Page 43**

1 consider Mr. Cozart to actually be a
2 supervisor for the American Bottling
3 Company, is that right?
4     A. He's a supervising authority
5 at all times at nights.
6     - - - - -
7     (Thereupon, Deposition
8     Exhibit-7 was marked for
9     purposes of identification.)
10     - - - - -
11     Q. Handing you what's been
12 marked Deposition Exhibit 7, this
13 appears to be a handwritten note dated
14 August 6, 2008 addressed to John G.
15 Lesicko, L E S I C K O --
16     A. Yes.
17     Q. -- Teamsters Local 377 from
18 Robert Potts. Is this your handwriting,
19 sir?
20     A. Yes.
21     Q. In this correspondence to the
22 union you say, "In short, I brought a
23 concern upon my ergonomic issue to the
24 attention of a supervisory member of
25 management or who some others call a

**Page 44**

1 "working supervisor" (Ryan Cozart) on
2 August 5th, 2008, but this CBA defined
3 "supervisor" got out of line regarding
4 Section 2 of Article 17 conduct," and
5 then it goes on. Did I read that
6 correctly?
7     A. Appears so.
8     Q. You then in the next
9 paragraph, I guess it's fair to say
10 third paragraph that starts under
11 Section 1 of Article 1, CBA, do you see
12 that?
13     A. Where are you at?
14     Q. You have a line that says
15 "despite the above."
16     A. Oh, yes, yes.
17     Q. And then there's a paragraph
18 underneath it?
19     A. Yes.
20     Q. Okay, great. Is it fair to
21 say that you're disputing that Mr.
22 Cozart is a supervisor for purposes of
23 the collecting bargaining agreement in
24 this correspondence?
25     A. I never got an answer to

**Page 45**

1 this.
2     Q. I'm not asking about whether
3 you got an answer. I'm asking, is it
4 fair to say in this paragraph that
5 you're disputing that Mr. Cozart is a
6 supervisor as defined in the term of the
7 collective bargaining agreement in
8 existence at that time?
9     A. No. It says he's a
10 supervisor. It says, "I brought the
11 concern upon my ergonomic issue to the
12 attention of a supervisory member of
13 management."
14     Q. Again, looking at the next
15 paragraph of the letter starting, "Under
16 Section 1 of Article 1, CBA,
17 "supervisory" is an excluded position
18 for Teamsters membership of Local 377
19 and any supervisory employee as a member
20 of the union conflicts with Article II,
21 Sections 1-2 of the IBT International
22 Brotherhood of Teamsters Constitution
23 adopted by the 27th International
24 Convention June 26 through 30, 2006."
25 Did I read that correctly?



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787    www.cefgroup.com    fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

**Page 46**

1    A. Yes.
2    Q. So, in other words, you are
3  stating to your union representative
4  that as the term supervisor is defined
5  in the collective bargaining agreement
6  those individuals are not members of the
7  Teamsters, right?
8    A. I believe there's a conflict,
9  yes.
10    Q. Do you know, was Mr. Cozart
11  a Teamster, do you know?
12    A. I only assume. We're all
13  Teamsters, supposed to be. I don't know
14  any private information.
15    Q. Do you know whether Ryan
16  passed your complaint along to any
17  member of ABC Youngstown management?
18    A. You'd have to ask him, I
19  don't know.
20    Q. Do you know whether, assuming
21  Mr. Cozart did pass your complaint
22  along, whether he identified you as the
23  individual complaining?
24    A. I'm sure he has because I
25  was there and it was me talking to him

**Page 47**

1  in dialogue. So I would say yes, I
2  would say he'd have to say me.
3    Q. I understand that you believe
4  that it should have occurred. I'm
5  asking, do you have any personal
6  knowledge of whether, assuming Mr.
7  Cozart did pass your complaint along to
8  ABC Youngstown management, he identified
9  you as the person complaining?
10    A. Again, I can't answer for
11  him, you have to talk to him.
12    Q. So you don't know whether he
13  did or not?
14    A. I don't know what he did.
15    Q. Do you know whether Mr.
16  Cozart had authority to discipline you?
17    A. I assume he did.
18    Q. But you don't know?
19    A. He sent me home in the past.
20    Q. What are you referring to?
21    A. In relation to work, eight-
22  hour days. Two separate issues, he
23  always let people go home when he felt
24  certain work was done or if his
25  authority chose to send someone home. I

**Page 48**

1  had a disagreement with him before and
2  he sent me home before, despite of just
3  regular work schedules, you go, he goes,
4  that person goes. He's the boss.
5    Q. I'm sorry, go ahead.
6    A. He's the boss.
7    Q. And what date did he send
8  you home after you had an interaction
9  with him?
10    A. I can't recall.
11    Q. Did you lose any pay the day
12  that he sent you home?
13    A. Yeah, if he sent me home I
14  didn't get a complete eight-hour day,
15  yes.
16    Q. Do you recall that being the
17  case?
18    A. Of course, I didn't get paid
19  for it.
20    Q. What time was left on your
21  eight-hour shift when Mr. Cozart sent
22  you home on the date you can't recall?
23    A. I can't recall.
24    Q. Do you know whether Mr.
25  Cozart placed any information in your

**Page 49**

1  personnel file relating to the date that
2  you can't recall that Mr. Cozart sent
3  you home?
4    A. You'd have to ask him. I
5  don't know what he puts in, didn't put
6  it or if he can or can't, I don't know.
7    Q. Do you know whether Mr.
8  Cozart had authority to lay you off?
9    A. Possible.
10    Q. Do you know whether Mr.
11  Cozart had authority to lay you off?
12    A. I don't know, you'd have to
13  ask him.
14    Q. Do you know whether Mr.
15  Cozart had authority to terminate your
16  employment?
17    A. I don't believe so.
18    Q. Do you know whether Mr.
19  Cozart made a decision at any time to
20  lay you off?
21    A. You have to ask him, I'm not
22  sure.
23    Q. Do you know --
24    A. Don't know. Sorry.
25    Q. Do you know whether Mr.



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787    www.cefgroup.com    fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

**Page 50**

1 Cozart participated in any decision to
2 lay you off?
3       **A.** I don't know. It's
4 possible.
5       **Q.** But you don't know?
6       **A.** Don't know.
7       **Q.** Do you know whether Mr.
8 Cozart made a decision to terminate your
9 employment?
10       **A.** You have to ask him.
11       **Q.** You don't know?
12       **A.** I don't know.
13       **Q.** Do you know whether Mr.
14 Cozart participated in the decision to
15 terminate your employment?
16       **A.** Don't know, you have to ask
17 him.
18       **Q.** You also testified that you
19 raised the vehicle issue to Mike Bobal,
20 is that right?
21       **A.** Yes.
22       **Q.** And I think you said that
23 Mr. Bobal, he's in the human resources
24 department for the American Bottling
25 Company but not located at the

**Page 51**

1 Youngstown facility, is that right?
2       **A.** Yes, he's not local,
3 off-site.
4       **Q.** And when did you complain to
5 Mr. Bobal about the vehicle issue?
6       **A.** August 12th, 2010.
7       **Q.** What form did your complaint
8 to Mr. Bobal take? B O B A L.
9       **A.** Say that again, please.
10       **Q.** What form did your complaint
11 to Mr. Bobal take?
12       **A.** Handwritten.
13       **Q.** Any other form your complaint
14 to Mr. Bobal took?
15       **A.** No.
16       **Q.** So talking about your written
17 complaint to Mr. Bobal about the vehicle
18 issue, what did you say in your
19 handwritten complaint of August 12, 2010
20 to Mr. Bobal?
21       **A.** Pretty much the same as the
22 others. Unsafe fork trucks, horns not
23 working, lights not working, stalls,
24 cut-off, oil leaking. Same. Repeat.
25 Duplicate.

**Page 52**

1       **Q.** So, and I know this sounds
2 basic, but essentially you complained to
3 Mr. Cozart on August 11, 2010 both
4 verbally and then you left a note for
5 him as well, is that right?
6       **A.** That's correct.
7       **Q.** Then you also left a note
8 for Mr. Taraba on August 11, 2010, is
9 that right?
10       **A.** That's right.
11       **Q.** And then you sent a note to
12 Mr. Bobal on August 12, 2010 setting
13 forth the vehicle issue, is that right?
14       **A.** Yes.
15       **Q.** Did you mail the handwritten
16 report to Mr. Bobal?
17       **A.** Yeah, mailed him a letter.
18       **Q.** What time of day did you
19 mail the letter, do you recall?
20       **A.** I don't know. Late, late
21 day, after 4.
22       **Q.** Did you sign the handwritten
23 note to Mr. Bobal?
24       **A.** I always just like this,
25 referring to the document, Exhibit 7 you

**Page 53**

1 showed me, handwriting.
2       **Q.** I'm sorry, you always what?
3       **A.** Always -- when I handwrite
4 this is the same form or scratch paper
5 or whatever, I don't subscribe a
6 signature upon it. I just -- when I
7 handwrite, that's the way it is. To,
8 from.
9       **Q.** So you put from Robert
10 Potts --
11       **A.** Yes.
12       **Q.** -- on the correspondence?
13       **A.** Yes.
14       **Q.** Do you know whether Mr.
15 Bobal passed along your August 12, 2010
16 correspondence to anyone at ABC
17 management?
18       **A.** You have to ask him, I don't
19 know.
20       **Q.** Do you know, assuming Mr.
21 Bobal did pass along your August 12,
22 2010 handwritten correspondence to
23 someone at ABC management, that he
24 identified you as the person providing
25 that information?



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787      www.cefgroup.com      fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

**Page 54**

1      A. Can you repeat that, please?
2      Q. Assuming Mr. Bobal informed
3 somebody at ABC management that he
4 received a complaint about the
5 Youngstown vehicle issue, do you know
6 whether he identified you as the person
7 who raised the issue?
8      A. You're saying assuming, I
9 guess I don't know, you have to ask him
10 what he did.
11      Q. Do you know whether Mr.
12 Bobal had authority to discipline you?
13      A. I don't know. I assume he
14 does, he's a manager.
15      Q. But you don't know?
16      A. I don't know who's the
17 authority locally, regionally,
18 headquarters, Texas, Cleveland, I don't
19 know.
20      Q. Do you know whether Mr.
21 Bobal had authority to lay you off?
22      A. It's possible. It's fair
23 enough to say he does.
24      Q. What I'm asking is, do you
25 have any personal knowledge that Mr.

**Page 55**

1 Bobal had authority to lay you off?
2      A. Personal knowledge, I don't
3 know if he did or not.
4      Q. And, again, all the questions
5 I'm asking today, I'm looking for your
6 personal knowledge, okay?
7      A. Repeat the question, please.
8      Q. All the questions I'm asking
9 you today, I'm looking for your personal
10 knowledge, okay?
11      A. Okay. The other question
12 before you said personal.
13      Q. Sure. Do you know whether
14 Mr. Bobal had authority to lay you off?
15      A. I believe so. I don't know.
16      Q. When you say I believe so,
17 you're making an assumption that he had
18 authority, correct?
19      A. He's a manager. I can in
20 good faith say yes, he has authority.
21      Q. And, again, your basis for
22 your statement is that you assume
23 because he's a manager he has authority
24 to lay you off, is that correct?
25      A. It's possible.

**Page 56**

1      Q. What's possible, that you're
2 assuming it or that he had authority?
3      A. He's a manager, member of
4 the management team, you could say he
5 has authority to make a decision,
6 company decision, layoff.
7      Q. And I'm asking whether you
8 know that to be a factually accurate
9 statement that he does have authority to
10 lay you off?
11      A. You'd have to ask him.
12      Q. You don't know?
13      A. I don't know.
14      Q. Do you know whether Mr.
15 Bobal made any decision to lay you off?
16      A. I don't know if he's the
17 solo, I don't know if he's directed, you
18 have to ask him, I don't know.
19      Q. Do you know whether he
20 participated in any way concerning the
21 decision to lay you off?
22      A. Yeah, he participated.
23      Q. What's that based on?
24      A. A member of the management,
25 member of the company.

**Page 57**

1      Q. So, again, you're assuming
2 because he's a member of management,
3 member of company, he participated in a
4 decision to lay you off?
5      A. Yes.
6      Q. Do you know whether Mr.
7 Bobal made a decision to terminate your
8 employment?
9      A. I don't know if he's the
10 authority to terminate or someone tells
11 him or directs him. It's a corporation.
12 I don't know who the board of directors
13 or anybody is. I don't know who's the
14 authority.
15      Q. So the answer to my question
16 is no, you don't know whether Mr. Bobal
17 made the decision to terminate your
18 employment?
19      A. No, I don't know who is the
20 actual individual agent, company agent.
21      Q. So similarly you don't know
22 whether Mr. Bobal participated in any
23 decision to terminate your employment?
24      A. Sure, he participated.
25      Q. What's that based on?

**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787    www.cefgroup.com    fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

**Page 58**

1     A. Member of the management.
2     Q. So, again, it's an assumption
3 because he's a member of management he
4 participated in the decision to
5 terminate your employment?
6     A. Of course.
7     Q. Of course what, that you're
8 making an assumption?
9     A. That he's a member of
10 management with authority.
11     Q. And that's really what I'm
12 trying to get at, okay. My question
13 is, do you know whether in fact Mr.
14 Bobal, in fact, participated in a
15 decision to terminate your employment?
16     A. Absolutely he participated.
17     Q. And how do you know that,
18 what fact are you basing that on?
19     A. He's employed as an HR
20 assistant.
21     Q. So again --
22     A. Or associate.
23     Q. I apologize. Were you
24 finished?
25     A. Go ahead.

**Page 59**

1     Q. So, again, you're assuming
2 because he's in human resources he
3 participated in the decision to
4 terminate your employment?
5     A. He's a member of the
6 American Bottling Company, he's got
7 authority.
8     Q. Mr. Potts, we can sit here
9 all day and go back and forth but my
10 question is really simple. I'm just
11 asking, do you have personal knowledge,
12 not an assumption because he's in
13 management or an assumption because he's
14 in HR, but whether you, in fact, have
15 any personal knowledge that Mr. Bobal
16 participated in a decision to terminate
17 your employment?
18     A. Personally, no.
19     - - - - -
20     (Thereupon, Deposition
21     Exhibit-8 was marked for
22     purposes of identification.)
23     - - - - -
24     Q. Handing you what's been
25 marked Deposition Exhibit 8, this is a

**Page 60**

1 document that we received from your
2 counsel as part of your production in
3 this case. It's a multipage document
4 with handwritten notes on it and I'll
5 tell you that the front page was an
6 envelope and the subsequent pages were
7 inside the envelope. My question for
8 you is, do you recall providing this
9 information to the American Bottling
10 Company in discovery?
11     A. Yes.
12     Q. There appears to be some
13 highlights on the document, we had these
14 photocopied in color. My understanding
15 is the highlighted portions were things
16 that you yourself highlighted, is that
17 correct?
18     A. Sure.
19     Q. On the first page of the
20 document you've entitled it -- well, it
21 appears to say in your handwriting,
22 "Miscellaneous notes/reports, some
23 examples of notes/reports. This is how
24 all the workers communicate with
25 supervisor John Taraba." And then you

**Page 61**

1 go on. Is that your handwriting?
2     A. Yes.
3     Q. And then flipping through the
4 document it looks like there are a
5 couple of items in here, one appears to
6 relate to floating holidays you were
7 requesting and one appears to relate to
8 payment of sick days, is that right?
9     A. Notes on a copy of a payroll
10 check, sick days, undated correspondence
11 from John, yeah, yeah, sure.
12     Q. And the handwriting on that
13 second page looks like a note from you
14 to Mr. Taraba, October 8, 2008. At the
15 bottom portion of that page do you
16 recognize that handwriting to be John
17 Taraba's?
18     A. It appears to be.
19     Q. Second page -- excuse me,
20 third page of the exhibit, Deposition
21 Exhibit 8, do you recognize that
22 handwriting to be Mr. Taraba's? Third
23 page, sir.
24     A. This one?
25     Q. Yes. Correct. I didn't


**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787    www.cefgroup.com    fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

**Page 62**

1 realize you had taken it apart, yes.
2     A. Appears to be.
3    - - - - -
4     (Thereupon, Deposition
5     Exhibit-9 was marked for
6     purposes of identification.)
7    - - - - -
8     Q. Handing you what's been
9 marked Deposition Exhibit 9, do you know
10 what this document is?
11     A. Yes, it's a copy of two
12 receipts.
13     Q. Do you understand these
14 receipts to relate to -- well, strike
15 the question, please. My understanding
16 of this document is that this is --
17 these are receipts from the post office
18 in Warren, Ohio concerning a certified
19 mailing from you to Mr. Bobal in Maple
20 Heights on August 12, 2010, is that
21 right?
22     A. It's a certificate of
23 mailing.
24     Q. And my question is, my
25 understanding, you can tell me if I'm

**Page 63**

1 right or wrong, is that these receipts
2 relate to a certified mailing that you
3 sent to Mr. Bobal on or about August
4 12, 2010?
5     A. Certificate of mailing, yes.
6     Q. What does this document
7 relate to, what do these receipts relate
8 to?
9     A. Just a receipt of my
10 mailing.
11     Q. What mailing?
12     A. Notes to Mike Bobal, the
13 company.
14     Q. What did those notes concern?
15     A. Fork trucks, defect, safety
16 issues, same thing, horns not working,
17 brakes slipping, stall off.
18     Q. So are you asserting that
19 this document, Deposition Exhibit 9, is
20 the receipt for the letter that you sent
21 to Mr. Bobal on August 12, 2010?
22     A. Yeah, I sent Mr. Bobal a
23 letter August 12, 2010, yes.
24     Q. And what I'm asking you is,
25 is it your testimony that Deposition

**Page 64**

1 Exhibit 9 are the receipts for the
2 written correspondence you sent to Mr.
3 Bobal on August 12, 2010 concerning the
4 vehicle issue?
5     A. Appears to be, yes.
6     Q. Well, I'm not asking you
7 what it appears to be, I'm asking you
8 is that a fact?
9     A. Yes.
10     Q. Do you recall sending Mr.
11 Bobal any other communication around
12 that time?
13     A. Yes, I sent him other stuff,
14 of course.
15     Q. What other stuff are you
16 referring to?
17     A. What do you mean?
18     Q. You said you sent him other
19 stuff --
20     A. Yeah.
21     Q. -- around that time, what
22 other stuff are you referring to?
23     A. I sent him a computer typed
24 note or letter, correspondence,
25 regarding payroll.

**Page 65**

1     Q. I'm sorry, anything else that
2 you were referring to?
3     A. That should cover it.
4    - - - - -
5     (Thereupon, Deposition
6     Exhibit-10 was marked for
7     purposes of identification.)
8    - - - - -
9     Q. Showing you Deposition
10 Exhibit 10, is this the correspondence
11 that you're referring to? This is a
12 document bearing, for the record, Bates
13 label ABC 5 through ABC 6. Two-page
14 document, cover sheet appears to be a
15 letter from you dated August 11th, 2010.
16 Second page appears to be an enclosure
17 to that letter dated July 16th, 2010,
18 addressed to you regarding an
19 outstanding payroll check. And, again,
20 for clarification my question is, is
21 this the correspondence you were just
22 referring to concerning a payroll issue?
23     A. It appears to be.
24     Q. You did not send this
25 document certified mail to Mr. Bobal --



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787     www.cefgroup.com     fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

**Page 66**

1  excuse me, to Mr. Taraba?
2      A. To Taraba? No, I left this
3  in the warehouse.
4      Q. And then if you look at the
5  cc on the bottom, did you -- let me ask
6  you this first: You drafted this
7  document, correct?
8      A. Yes.
9      Q. And the cc listed William C.
10  Stimmel, S T I M M E L, and Michael L.
11  Bobal, correct?
12      A. Yes.
13      Q. By this were you indicating
14  that you had sent carbon copies to each
15  of these gentlemen?
16      A. I put the copies with the
17  originals for them.
18      Q. And you were indicating that
19  you were providing copies of Deposition
20  Exhibit 10 to Mr. Stimmel and to Mr.
21  Bobal, is that right?
22      A. In-house, yes.
23      Q. And how did you send Mr.
24  Bobal his copy?
25      A. I believe I mailed it.

**Page 67**

1      Q. Did you send Mr. Bobal's
2  copy certified mail?
3      A. No, regular mail, ordinary
4  mail.
5      Q. Why did you not send Mr.
6  Bobal's copy certified mail?
7      A. Because this is a payroll
8  issue and if he didn't deal with it the
9  union can deal with it.
10      Q. Is it possible that
11  Deposition Exhibit 10 is actually the
12  letter for which Deposition Exhibit 9 is
13  a receipt?
14      A. Nope.
15      Q. Because you produced no copy
16  of any written document whatsoever
17  setting forth the vehicle issue?
18      A. Repeat that, please.
19      Q. You've produced no document
20  concerning any correspondence, whether
21  it be to Mr. Cozart, Mr. Taraba or Mr.
22  Bobal about the vehicle issue?
23      A. What do you mean produce?
24      Q. You didn't provide it to us
25  during discovery, us being the American

**Page 68**

1  Bottling Company?
2      A. I don't have any.
3      Q. So you chose not to retain
4  copies of the August 11th, 2010 and
5  August 12th, 2010 correspondence to Mr.
6  Cozart, Mr. Taraba and Mr. Bobal, is
7  that right?
8      A. They're handwritten directly
9  to the company, they have them, they
10  should have them.
11      Q. And you didn't retain any
12  copies for yourself?
13      A. Handwritten, no. I don't
14  copy everything.
15      MR. ROSSI: Wait for a question.
16      THE WITNESS: Sorry.
17      Q. If you can pull out
18  Deposition Exhibit 7, it's the
19  handwritten note dated August 6, 2008.
20      A. Yes.
21      Q. It's a document you produced
22  to us and that's handwritten in your
23  handwriting, correct?
24      A. Yes.
25      Q. And you retained a copy of

**Page 69**

1  that, correct?
2      A. It looked that way because
3  it was a fax transmission before it,
4  yes.
5      Q. So what is your practice
6  when you submit handwritten documents or
7  correspondence to the company, do you
8  retain copies or not?
9      A. Sometimes.
10      Q. And how do you determine
11  whether you're going to retain a copy of
12  a handwritten document you've submitted
13  to the company?
14      A. If I'm going to fax it or if
15  I type it on the computer.
16      Q. I asked about handwritten
17  document.
18      A. Oh, I'm sorry. I apologize.
19  It just depends on the circumstance. If
20  I'm in-house, if it's there, during the
21  day if it's a note, you write it on the
22  floor, changes all the time. And when
23  I fax I always photocopy so the fax
24  machine can take it easy.
25      Q. Because you want to make


Cefaratti Group
THE LITIGATION SUPPORT COMPANY

1.800.694.4787    www.cefgroup.com    fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

**Page 70**

1 sure that you have accurate records of
2 correspondence that you submitted?
3      A. No. When I fax the fax
4 machine doesn't take notebook paper and
5 other stuff and plus it looks different
6 when it's a different color so when I
7 send a fax I always copy, photocopy.
8      Q. Oh, you're saying that you
9 photocopy the handwritten note so that
10 the fax machine can transmit the
11 document more easily?
12      A. When my faxes, yes, if it's
13 on regular paper.
14      Q. On August 12th, 2010, before
15 you sent the correspondence to Mr. Bobal
16 did you call Mr. Taraba and ask what
17 the status was of your written note to
18 him of August 11, 2010?
19      A. No.
20      Q. Before you sent the August
21 12th, 2010 correspondence to Mr. Bobal
22 did you call Mr. Cozart and ask him
23 what the status was of the verbal
24 conversation about the vehicle issue and
25 the written correspondence that you left

**Page 71**

1 for Mr. Cozart?
2      A. No, I don't even know his
3 phone number.
4      Q. So you didn't call, fair to
5 say you didn't call anyone at the
6 Youngstown facility prior to sending
7 your letter to Mr. Bobal on August 12,
8 2010?
9      A. They have my phone number,
10 no.
11      Q. You say they have my phone
12 number and that's because you were not
13 actively working at the Youngstown
14 facility in August of 2010, correct?
15      A. I was active.
16      Q. You were active in seniority
17 but you were not working a day-to-day
18 basis, correct?
19      A. I didn't clock in and clock
20 out, no.
21      Q. Were you performing work as
22 a warehouse person and you just weren't
23 clocking in and out in August of 2010?
24      A. No.
25      Q. No, in fact, you had been on

**Page 72**

1 layoff since September 21st of 2009,
2 correct?
3      A. Layoff, yes.
4      Q. How is it that you happened
5 to be at the Youngstown facility on
6 August 11, 2010 approaching Mr. Cozart
7 was while he was sitting on a forklift?
8      A. Well, because John wasn't
9 there.
10      Q. How were you -- why were you
11 at the Youngstown facility on August 11,
12 2010 since you had been on layoff since
13 September 21st of 2009?
14      A. Well, several reasons. I
15 wanted to look at the board and see if
16 they had my union dues receipts, they
17 usually post them on the board or leave
18 them there. Drop a note off for John I
19 pretyped for payroll issues and I
20 observed the fork issues again.
21      Q. So I want to make sure I
22 understand. You went to the Youngstown
23 facility on August 11th, 2010 at
24 approximately what time?
25      A. I can't recall.

**Page 73**

1      Q. Obviously it was after Mr.
2 Taraba had left for the day?
3      A. He wasn't there, no.
4      Q. And you were not currently
5 working somewhere else on August 11,
6 2010, correct?
7      A. Correct.
8      Q. So you went to the
9 Youngstown facility on August 11, 2010
10 to look at the board to see if a union
11 dues receipt had been posted for you?
12      A. That's one of the reasons,
13 yes.
14      Q. And then the other reason
15 you said was to deliver a pretyped note
16 for Mr. Taraba about a payroll issue,
17 correct?
18      A. That's another reason, yes.
19      Q. Any other reasons other than
20 looking for the union dues receipt and
21 to deliver the pretyped note for Mr.
22 Taraba on the payroll issue that you
23 were at the Youngstown facility on
24 August 11, 2010?
25      A. Please repeat that.



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787    www.cefgroup.com    fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

**Page 74**

1     Q. Any other reasons that you
2 went to the Youngstown facility on
3 August 11, 2010 other than to look at
4 the board to see if your union dues
5 receipt was posted and to deliver a
6 pretyped note to Mr. Taraba about
7 payroll issues?
8     A. Not really.
9     Q. And the pretyped note to Mr.
10 Taraba about payroll issues, that's
11 Deposition Exhibit 10, is that right?
12     A. Say that again, please.
13     Q. The pretyped note that you
14 were delivering to Mr. Taraba on August
15 11, 2010, that is Deposition Exhibit 10,
16 is that right?
17     A. It's a copy, yes.
18     Q. That's the letter that you
19 were going to Youngstown to deliver to
20 Mr. Taraba on August 11, 2010?
21     A. I don't see my signature
22 subscribed to it but it's the same
23 writing, correspondence, yes.
24     Q. I'm sorry, maybe I
25 misunderstood. Are you saying that you

**Page 75**

1 didn't write this letter?
2     A. I didn't say that.
3     Q. You did write this letter?
4     A. Yes.
5     Q. When you left the note for
6 Mr. Taraba concerning the vehicle issue
7 on August 11, 2010 did you -- on his
8 desk I think is what you testified to,
9 did you leave that note together with
10 Deposition Exhibit 10?
11     A. Say that again, please.
12     Q. When you left Mr. Taraba the
13 note concerning the vehicle issue on
14 August 11, 2010, did you leave that note
15 on Mr. Taraba's desk together with
16 Deposition Exhibit 10?
17     A. No, I put it in his mailbox.
18     Q. Put which in his mailbox?
19     A. The Exhibit 10. I believe
20 so.
21     Q. So to make sure I
22 understand, you put Deposition Exhibit
23 10 in Mr. Taraba's mailbox but you put
24 the handwritten note concerning the
25 vehicle issue on his desk?

**Page 76**

1     A. That's correct. This is
2 pretyped to save time.
3     Q. I'm not sure what that has
4 to do with my question. I'm just
5 asking simply, you're saying that on
6 August 11, 2010 you placed Deposition
7 Exhibit 10 in Mr. Taraba's mailbox but
8 placed the handwritten note about the
9 vehicle issue on his desk?
10     A. Yes.
11     Q. You also testified that you
12 complained to OSHA in 2010 about the
13 vehicle issue?
14     A. Correct.
15     Q. You placed a phone call to
16 OSHA on August 20th, 2010, is that
17 right?
18     A. Telephone communications,
19 yes.
20     - - - - -
21     (Thereupon, Deposition
22     Exhibit-11 was marked for
23     purposes of identification.)
24     - - - - -
25     Q. Handing you what's been

**Page 77**

1 marked Deposition Exhibit 11, I don't
2 think you've seen this document before.
3 This is a document that OSHA provided to
4 us in response to our FOIA request.
5 What I'm really looking for from this
6 is, does this document accurately
7 reflect in paragraph 1 the vehicle issue
8 that you communicated to OSHA on August
9 20th, 2010?
10     A. Yes.
11     Q. Going back to something you
12 actually said a few moments ago, I think
13 you said while you were at the
14 Youngstown facility on August 11th, 2010
15 to check to see if your unions receipt
16 receipt was on the board and to deliver
17 Deposition Exhibit 10 to Mr. Taraba you
18 said you noticed the forklift issues?
19     A. When I went out on the
20 floor.
21     Q. Were the forklifts that you
22 were referring to having issues, those
23 were in use at that time?
24     A. Yes.
25     Q. Does Deposition Exhibit 11


**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787     www.cefgroup.com     fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

**Page 78**

1　refresh your recollection about which
2　forklifts you were identifying as having
3　the issues that were in service on
4　August 11th, 2010?
5　　　A. Repeat that.
6　　　Q. Does Deposition Exhibit 11
7　refresh your recollection about the
8　forklift trucks that you were
9　complaining about that were in service
10　as you witnessed them on August 11,
11　2010?
12　　　A. Sure.
13　　　Q. And how does that refresh
14　your recollection, what trucks were
15　those?
16　　　A. Fork trucks, the gas fork
17　trucks need attention, not safe, not
18　working properly.
19　　　Q. Sir, maybe I wasn't clear,
20　maybe it was a bad question. I'm
21　looking, and I'll point to it because
22　maybe this will be helpful.
23　　　A. Sure.
24　　　Q. There's a notation there that
25　says location fork trucks number 23, 25

**Page 79**

1　and 40, do you see that?
2　　　A. Oh, yeah, yeah, yeah.
3　　　Q. Are those the trucks that
4　you were complaining to OSHA that
5　were in service on August 11, 2010 that
6　you saw vehicle issues with?
7　　　A. One of the numbers I don't
8　believe was a correct number. I think
9　I might have used 40. I think it was a
10　bigger number, but yeah.
11　　　Q. So understanding that 40 may
12　not have been correct you were
13　identifying for OSHA the trucks that you
14　witnessed as being in service on August
15　11, 2010 that had the issues that you
16　identified to OSHA?
17　　　A. Yes, I remember and recollect
18　now. Thank you.
19　　　Q. OSHA then sent you
20　correspondence confirming that you had
21　submitted a complaint, do you recall
22　that?
23　　　A. Yes, August 20th, 2010,
24　absolutely.
25　　　　　- - - - -

**Page 80**

1　　　(Thereupon, Deposition
2　　　Exhibit-12 was marked for
3　　　purposes of identification.)
4　　　　- - - - -
5　　　Q. Showing you what's been
6　marked Deposition Exhibit 12, this is a
7　document that you produced -- sorry,
8　Mike -- to us in discovery. Again,
9　there's some highlighted portions that
10　we copied as is for purposes of the
11　document, that's highlighting that you
12　placed on the document, Mr. Potts?
13　　　A. Sure, for my lawyer to look
14　at.
15　　　Q. Looking at Deposition Exhibit
16　12 that you have in front of you,
17　you've highlighted, as you said the
18　letter was dated August 20th, 2010,
19　addressed to you and it starts off by
20　saying, "The purpose of this letter is
21　to acknowledge the receipt of your
22　formal complaint and to inform you that
23　an inspection of your workplace will be
24　scheduled as soon as possible, in
25　accordance with the priorities

**Page 81**

1　established by the agency." Did I read
2　that correctly?
3　　　A. Yes.
4　　　Q. Did you tell OSHA when you
5　called on August 20th, 2010 that you
6　were on layoff status since September
7　21st of 09?
8　　　A. No.
9　　　Q. Letter goes on to say,
10　second paragraph, let's skip to -- well,
11　strike that. Second paragraph starts,
12　"Section 11(c) of the OSH Act provides
13　protection for employees against
14　discrimination because of their
15　involvement in protected safety and
16　health related activity. If you are
17　being treated differently or action is
18　being taken against you because of your
19　safety or health activity, you may file
20　a complaint with OSHA. You should file
21　this complaint as soon as possible since
22　OSHA normally can accept only those
23　complaints filed within 30 days of the
24　alleged discriminatory action." Did I
25　read that correctly?



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787　　www.cefgroup.com　　fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 · 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 · 330.253.8119

Court Reporting · Video Conferencing · Legal Video Production · Investigations
Claims Services · Process Service · Record Retrieval · Document Management · Trial Graphics

1 A. Word for word.
2 Q. So when you received this
3 correspondence you understood that if
4 ABC engaged in some action that you
5 thought was directly related to your
6 complaint to OSHA you could file a
7 complaint with OSHA, is that right?
8 A. Repeat that, please.
9 Q. When you received this letter
10 and read it you understood that if ABC
11 took some action in relation to your
12 employment that you believed was because
13 of this complaint to OSHA, that you
14 could file a complaint with OSHA?
15 A. I've been informed of Section
16 11(c), yes.
17 Q. Did you file a complaint
18 with OSHA in relation to any conduct
19 that ABC engaged in as a result of your
20 complaint about the vehicle issue?
21 A. No.
22 Q. Do you recall that OSHA also
23 sent you correspondence informing you
24 that they had notified ABC a complaint
25 had been filed?

1 A. Say that again, please.
2 Q. Do you also recall that OSHA
3 sent you correspondence informing you
4 that the agency had notified ABC a
5 complaint had been filed?
6 A. Yes.
7 - - - - -
8 (Thereupon, Deposition
9 Exhibit-13 was marked for
10 purposes of identification.)
11 - - - - -
12 Q. Deposition Exhibit 13, this
13 is correspondence from OSHA dated
14 September 17th, 2010 to you enclosing a
15 copy of what appears to be
16 correspondence of the same date,
17 September 17, 2010, to a Derick Bogard,
18 B O G A R D, of the American Bottling
19 Company in Youngstown. Would you agree
20 with that characterization of this
21 document?
22 A. Clarify, repeat.
23 Q. I'm just asking, am I
24 accurately representing that this is a
25 letter to you dated September 17th, 2010

1 that encloses a letter to ABC of that
2 same date, September 17th, 2010?
3 A. Yes, I received this
4 material.
5 Q. Looking at the first
6 paragraph of this letter to you you
7 highlighted, "In response to your
8 complaint of health and safety hazards
9 at American Bottling Company the
10 Occupational Safety and Health
11 Administration (OSHA) has notified
12 American Bottling Company requesting
13 that the appropriate action be taken to
14 correct the situation. Enclosed is a
15 copy of that letter for your
16 information." Did I read that
17 correctly?
18 A. Word for word.
19 Q. Next paragraph that you
20 didn't highlight says, "We have not
21 revealed your identity to the employer."
22 Do you see that?
23 A. Yes.
24 Q. Any reason to believe that
25 OSHA wasn't telling you the truth that

1 they had not informed ABC that you had
2 filed a complaint on August 20th, 2010
3 related to ABC Youngstown?
4 A. Repeat the question.
5 Q. Any reason to believe OSHA
6 wasn't telling you the truth that they
7 had not revealed your identity to ABC
8 concerning the complaint you submitted
9 on August 20th, 2010 about the
10 Youngstown facility vehicle issue?
11 A. Discussion with the assistant
12 area director Joseph Warner.
13 Q. What did Mr. Warner say to
14 you that led you to believe OSHA was
15 not telling you the truth in this
16 letter, that they had not revealed your
17 identity to ABC?
18 A. On August 26th, 2010 he said
19 he's not going to inspect the place.
20 Q. I'm sorry, I'm not sure you
21 answered my question. Maybe you have
22 and we just need to probe it a little
23 bit more, but what I'm asking you is,
24 there's a conversation you said you had
25 with Mr. Warner --


**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY
1.800.694.4787    www.cefgroup.com    fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

**Page 86**

1  A. Yes.
2  Q. -- on August 26th that leads
3  you to believe that OSHA is not telling
4  you the truth in the September 17th
5  letter that they have not revealed your
6  identity to ABC?
7  A. True.
8  Q. What did Mr. Warner say on
9  August 26th that led you to believe that
10  OSHA is not telling you the truth in
11  the September 17, 2010 correspondence?
12  A. Again, Mr. Warner said he's
13  not going to conduct an inspection, at
14  that --
15  Q. Anything else? I'm sorry.
16  Go ahead.
17  A. At that site.
18  Q. Anything else Mr. Warner said
19  that leads you to believe OSHA is not
20  telling you the truth on September 17th,
21  2010 that they did not reveal your
22  identity to ABC?
23  A. He said my employment was
24  terminated or I was fired or terminated,
25  so obviously there's dialogue about me,

**Page 87**

1  somebody is talking about me between
2  them.
3  Q. I'm sorry. So Mr. Warner
4  said, best as you can recall his exact
5  words about your employment status?
6  A. You have to ask him.
7  Q. Well, I'm asking what you
8  recall from that conversation. So what
9  do you recall, as best you can, were
10  Mr. Warner's exact words during the
11  August 26th, 2010 conversation you had
12  with him about your employment status?
13  A. What sticks out, he says I'm
14  not an employee.
15  Q. Did you ask him how he knew
16  that information?
17  A. No.
18  Q. Anything else Mr. Warner said
19  to you on August 26th, 2010 that led
20  you to believe OSHA was not telling you
21  the truth on September 17th, 2010 that
22  they had not revealed your identity to
23  ABC?
24  A. He said something about he
25  can't get a federal judge to grant him

**Page 88**

1  something. You have to ask, it's
2  probably recorded, being a government
3  agency.
4  Q. I'm sorry. He said that he
5  couldn't get a federal judge to what?
6  A. You have to ask him, I don't
7  remember what he said, to get something
8  to go in there. I was shocked.
9  Q. Anything else that Mr. Warner
10  said to you on August 26th, 2010 that
11  leads you to believe that OSHA was not
12  being truthful in its September 17th,
13  2010 correspondence that they had not
14  revealed your identity to ABC?
15  A. I just find it odd that on
16  the next page he says, "On September
17  17th the Occupational Safety and Health
18  Administration received a notice of
19  safety and health hazards at your work
20  site."
21  Q. And you'd agree with me on
22  that page your name is nowhere
23  mentioned, correct?
24  A. That's correct.
25  Q. Do you have any knowledge of

**Page 89**

1  OSHA internal operating procedures that
2  forbids them from disclosing your name?
3  A. I don't know.
4  Q. Strike the question, please.
5  Do you have any knowledge of OSHA
6  internal procedures that forbids OSHA
7  from disclosing the name of a
8  complainant?
9  A. Say that again.
10  Q. Do you have any knowledge of
11  internal procedures at OSHA that forbids
12  OSHA from disclosing the name of a
13  complainant who filed a complaint with
14  OSHA?
15  A. No, I don't know what their
16  policies and practices are.
17  Q. I don't think I asked you
18  this question, I think I asked you just
19  as it relates to that page of that
20  attachment addressed to Mr. Bogard.
21  A. Which --
22  Q. Please take the time to look
23  through it if you'd like, but would you
24  agree with me that your name is nowhere
25  mentioned in that letter to Mr. Bogard



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787    www.cefgroup.com    fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

**Court Reporting • Video Conferencing • Legal Video Production • Investigations**
**Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics**

**Page 90**

1  of September 17th, 2010 that is part of
2  Deposition Exhibit 13?
3      A. You saying the attachment to
4  your Exhibit 13?
5      Q. Correct.
6      A. I don't see my name, no.
7      Q. Looking back at the first
8  page of -- actually strike the question,
9  please. You said that your recollection
10 is that Mr. Warner said to you you were
11 not an employee, right?
12     A. That's correct.
13     Q. Earlier you said that he
14 made a comment that your employment had
15 been terminated, is that something you
16 also recall Mr. Warner saying?
17     A. Something like that I recall.
18     Q. So as of at least August
19 26th, 2010 you had learned or had been
20 told from someone at OSHA that they
21 believed your employment had been
22 terminated?
23     A. Hearsay, yes.
24     Q. Correct, you didn't hear that
25 from ABC, you were hearing that from

**Page 91**

1  someone at OSHA?
2      A. Third party, yes.
3      Q. Did you contact ABC to find
4  out what the heck he was talking about?
5      A. Just waited on them. Wait a
6  minute, waiting on them for the OSHA
7  stuff but let me rephrase or correct
8  that and expand. I filed a wage claim,
9  grievance number 11823, because I was
10 puzzled and surprised by his statement.
11 So if they hired anybody, if there's
12 anybody working my job I'm due to get
13 paid under any circumstances. So I
14 said, might as well get paid and sort
15 it out later. So I filed a wage claim
16 August 30th, 2010, grievance number
17 11823.
18     Q. So if I understand your
19 testimony, based on what Mr. Warner
20 shared with you on August 26, 2010 you
21 filed grievance 11823, is that right?
22     A. Repeat that.
23     Q. Based on what Mr. Warner
24 said to you on August 26, 2010 you
25 filed grievance number 11823?

**Page 92**

1      A. After the shock set in and
2  it was a little confusing, I was
3  perplexed for a while, but reviewing the
4  contract, the collective bargaining
5  agreement looking to see what remedies
6  were available and I said, well, let's
7  do the wage claim and get paid.
8      Q. And why do you believe that
9  someone was working your job?
10     A. Well, if they said that I'm
11 -- if he instead of they, you can say
12 they also, if Mr. Warner said or alleged
13 that I've been fired, terminated or
14 whatever, I assume I'd have to be
15 replaced.
16     Q. So you filed a grievance
17 because you assumed someone had replaced
18 you in your position and you wanted to
19 get paid?
20     A. Fair enough. Even if any
21 other worker from another department
22 worked, I'm entitled to pay too.
23 Anybody already a member of the
24 bargaining unit, I'm still entitled to
25 pay if they worked my job, my place, et

**Page 93**

1  cetera, et cetera.
2      Q. And your statement you're
3  entitled to get paid, you're deriving
4  that conclusion from the terms of the
5  collective bargaining agreement, is that
6  right?
7      A. Well, I just looked at that
8  as a vehicle to address and remedy the
9  wage issue and discussion in relating to
10 Mr. Warner saying that there's a
11 termination issue. It surprised me,
12 puzzled me, scared me, made me nervous.
13 So I'm trying to figure out, might as
14 well get paid, just look at the
15 grievance process for a wage claim.
16 Because in the past, when somebody else
17 works overtime and there's seniority
18 issues, they got to pay everybody. So
19 I says, I might as well get paid.
20     Q. And going back to my
21 question which is, you derived your
22 understanding about when you had a right
23 to be paid from the terms of the
24 collective bargaining agreement which
25 governs your employment, correct?



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787    www.cefgroup.com    fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

**Page 94**

1     A. Partially, yes. The
2 separation of company policies and
3 whatever they do.
4     Q. What company policies
5 dictates your wages and when you're
6 entitled to be paid that you're
7 referring to?
8     A. They made a mistake before
9 with pay rates or something, they didn't
10 pay people right. So, you know, with
11 the CBA it just sets wages for certain
12 employees and certain departments, kind
13 of like a guideline. Like an employee
14 works so much an hour, per hour, rate.
15     Q. I'm sorry. Are you saying
16 that ABC doesn't have to comply with the
17 terms of the collective bargaining
18 agreement?
19     A. It's a shame that they don't
20 in a lot of cases.
21     Q. My question is a little
22 different. Are you saying they don't
23 have to comply with the terms of the
24 collective bargaining agreement, that
25 it's just a guide?

**Page 95**

1     A. Well, they can do -- they
2 have the opportunity to choose what they
3 want to do and what they don't.
4     Q. So you filed this grievance
5 11823 on August 30th, 2010?
6     A. Yes.
7     Q. But you did not file the
8 complaint with OSHA at that time
9 concerning your termination as it may
10 have related to your complaint to them
11 of August 20th, 2010?
12     A. Well, everything there is
13 confusing, it needs to be sorted out
14 with regard to pay rates. In other
15 words, I'm hearing hearsay, I don't know
16 if I believed the guy, I don't know
17 what to believe at that point, fired or
18 not.
19     Q. Well, you certainly filed a
20 grievance based on what he said,
21 correct?
22     A. Well, I filed a grievance
23 for wages.
24     Q. Based on what Mr. Warner
25 told you, correct?

**Page 96**

1     A. Just hearsay, yes. Entitled
2 to pay.
3     Q. Looking back at Deposition
4 Exhibit 13, third paragraph of that
5 letter, I'm happy to read it again, I
6 think it's probably very similar to what
7 we've already seen in Deposition Exhibit
8 12, but my question to you is, you
9 understood from this correspondence that
10 if you believed some action was taken by
11 ABC against you that some way related to
12 your August 20, 2010 complaint to OSHA,
13 that you could file a complaint with
14 OSHA?
15     A. Same as it was on the August
16 20th, 2010 letter, yes.
17     Q. So you understood that from
18 receiving the September 17th, 2010
19 letter as well?
20     A. Correct.
21     Q. And you didn't file a
22 complaint with OSHA after you received
23 the September 17th, 2010 correspondence
24 either, did you?
25     A. Not at that time.

**Page 97**

1     Q. Well, I think you testified
2 earlier but maybe I got it wrong, have
3 you ever filed a complaint with OSHA
4 concerning action taken by ABC that you
5 felt was a result of your August 20th,
6 2010 complaint?
7     A. No.
8     Q. Now, OSHA subsequently
9 informed you, and maybe this is the
10 phone call but I think you received
11 correspondence too, that an
12 investigation was conducted and that any
13 alleged violation had been corrected or
14 no longer existed, do you recall that?
15     A. Repeat that, please.
16     Q. Do you recall receiving
17 information from OSHA in which they
18 informed you that an investigation had
19 been conducted and any alleged violation
20 was either corrected or no longer
21 existed?
22     A. Yes, after the August 20th,
23 2010 --
24     MR. ROSSI: I didn't hear you,
25 Robert, speak up.



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787    www.cefgroup.com    fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

1      A. Yes, after the August 20th,
2 2010 correspondence, yes. Sorry, I'll
3 get another drink.
4     - - - - -
5      (Thereupon, Deposition
6      Exhibit-14 was marked for
7      purposes of identification.)
8     - - - - -
9      Q. Showing you what's been
10 marked Deposition Exhibit 14, a document
11 produced by you to us in this
12 litigation. Again, the highlighted
13 copies, my understanding, are your
14 highlights, and this is correspondence
15 dated October 1st, 2010 to you, signed
16 by Joseph Warner with an attachment that
17 appears to be correspondence from Bill
18 Stimmel, branch manager, to Joe Warner
19 at the Department of Labor dated
20 September 23rd, 2010, is that right?
21      A. What did you say about dated
22 23rd?
23      Q. That simply this is appears
24 to be a document sent to you on August
25 1st, 2010 that has an enclosure of

1 correspondence sent to OSHA by Mr.
2 Stimmel on September 23rd, 2010?
3      A. Oh, yes, correct.
4      Q. So in this October 1st, 2010
5 correspondence to you from Mr. Warner he
6 states in the first paragraph, "American
7 Bottling Company has advised me that the
8 hazards you complained about have been
9 investigated. A copy of the employer's
10 letter is enclosed. With this
11 information OSHA feels the case can be
12 closed on the grounds that the hazardous
13 conditions have been corrected or no
14 longer exist." Did I read that
15 correctly?
16      A. Word for word.
17      Q. It says, "If you do not
18 agree that the hazards you complained
19 about have been satisfactorily abated,
20 please contact us by October 12, 2010."
21 Did I read that correctly?
22      A. Correct.
23      Q. So you understood at the
24 time you received Deposition Exhibit 14
25 that if you disagreed with OSHA's

1 findings that the hazardous conditions
2 have been corrected or no longer
3 existed, that you could let OSHA know
4 that?
5      A. Sure.
6      Q. Did you contact OSHA and let
7 them know you disagreed?
8      A. No.
9      Q. You would agree with me that
10 there's nothing in the correspondence
11 from Mr. Warner to you that references
12 your employment status with the American
13 Bottling Company, is that right?
14      A. I don't see anything, no.
15      Q. Going back to discussing your
16 claims in a little more detail,
17 specifically still the whistleblower
18 claim, who do you claim retaliated
19 against you?
20      A. The complaint says American
21 Bottling Company dba 7-Up, Dr. Pepper
22 Snapple Group aka Cadbury Schweppes fka
23 7-Up, I don't know if it say Cadbury
24 Adams, I don't have the complaint, you
25 have it. May I look?

1      Q. If you'd like but I think
2 maybe you're answering a different
3 question. I'm asking who within the
4 company are you claiming retaliated
5 against you, what individual?
6      A. On its face the complaint
7 says the company, American Bottling
8 Company, dba 7-Up, aka Dr. Pepper
9 Snapple Group, aka Dr. Pepper/Seven Up,
10 fka Cadbury Schweppes Bottling Group.
11      Q. I understand what the
12 complaint says but, respectfully, who
13 within the organization, what individual
14 are you claiming retaliated against you
15 for the vehicle issue complaint?
16      A. Any of the agents.
17      Q. Can you identify one person
18 at the company that you claim took some
19 conduct against you in retaliation for
20 you complaining about the vehicle issue?
21      A. Michael Bobal.
22      Q. Anyone else?
23      A. That's good.
24      Q. No one else other than Mr.
25 Bobal, is that correct?



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787    www.cefgroup.com    fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

**Page 102**

1    **A.** Any agent in the company,
2  you can list them all.
3    **Q.** Well, for purposes of your
4  claim I need to understand who
5  specifically at the company, what
6  individual?
7    **A.** Let's see, John Taraba, Bill
8  Stimmel, Michael Bobal, any other names
9  involved with management had input.
10    **Q.** And presumably you have facts
11  upon which you're basing your assertion
12  that Mr. Bobal, Mr. Taraba and Mr.
13  Stimmel engaged in some conduct that you
14  considered retaliation for your vehicle
15  issue complaint?
16    **A.** Sure.
17    **Q.** Well, why don't we talk
18  about Mr. Bobal first. What did Mr.
19  Bobal do that you consider retaliation?
20    **A.** You know, on September 14th,
21  2010, upon entering the union hall
22  meeting he was together with John Taraba
23  and Bill Stimmel. Upon entering Taraba
24  greeted me, we shook hands. Stimmel
25  greeted me, we shook hands. I extended

**Page 103**

1  my hand to Mr. Bobal, he didn't shake
2  my hand and I made a comment, I says,
3  oh, you don't want to shake my hand.
4  And then he says we got a harassment
5  issue to deal with.
6    **Q.** Anything else that Mr. Bobal
7  did that you consider retaliation for
8  your 2010 vehicle issue complaint?
9    **A.** Well, part of the group, you
10  got termination --
11    **Q.** No, Mr. Bobal, I'm asking
12  you, let's talk about Mr. Bobal and if
13  we could -- I'm sorry to interrupt but
14  I think we can streamline this if you
15  just tell me the specific conduct and
16  then we can flesh it out so you'll have
17  a chance to explain?
18    **A.** Participated in the
19  termination.
20    **Q.** So Mr. Bobal didn't extend
21  his hand to shake your hand and said we
22  have a harassment issue to deal with and
23  then your termination. Any other
24  conduct that you assert Mr. Bobal
25  engaged in that you considered to be

**Page 104**

1  retaliation for your 2010 vehicle issue
2  complaint?
3    **A.** Bad demeanor and conduct in
4  the meeting that day and leaving pretty
5  angrily and mad.
6    **Q.** Any other conduct other than
7  what you've already testified to that
8  you believe Mr. Bobal engaged in that
9  you considered retaliation for your 2010
10  vehicle issue complaint?
11    **A.** Permanent layoff.
12    **Q.** Anything else?
13    **A.** Separation from employment.
14    **Q.** Is that different from
15  termination?
16    **A.** Depends.
17    **Q.** With regard to you is that
18  different from termination?
19    **A.** Well, I mean, I still have
20  certain benefits that's still ongoing.
21  I got health care coverage, so obviously
22  that's not...
23    **Q.** And the health care coverage
24  is under COBRA, is that right?
25    **A.** At this time, yes.

**Page 105**

1    **Q.** So other than -- and maybe I
2  should list them so we know the universe
3  and you tell me if there's anything
4  else. You have stated that Mr. Bobal
5  did not shake your hand at the September
6  14th, 2010 meeting at the facility, you
7  said we have a harassment issue to deal
8  with, you said your termination, Mr.
9  Bobal's bad demeanor, conduct and
10  leaving the meeting, your permanent
11  layoff and your separation from the
12  company.
13    Other than those items are you
14  asserting Mr. Bobal engaged in any
15  conduct that you deem to be in
16  retaliation for your 2010 complaint
17  about the vehicle issue?
18    **A.** Specifically permanent layoff
19  and discharge, yes.
20    **Q.** So are we taking the other
21  items off the table or are you just
22  reasserting those two items?
23    **A.** Everything is together.
24    **Q.** So we've covered the universe
25  of conduct that you're saying Mr. Bobal



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787   www.cefgroup.com   fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

1  engaged in that you believe was
2  retaliation for your 2010 vehicle issue
3  complaint?
4      A.  Again, I repeat and I said
5  specifically, the permanent layoff and
6  the termination.
7          MS. MCARDLE:  Could you repeat my
8  question, please?
9      (Record read.)
10     A.  Is that question directed to
11  me?
12     Q.  Yes, that's the pending
13  question.
14     A.  Yes, sure, fair enough.
15     Q.  And why do you think Mr.
16  Bobal -- strike the question, please.
17  Why do you think that conduct by Mr.
18  Bobal was done in retaliation for your
19  2010 vehicle issue complaint?
20     A.  Because I'm not working with
21  American Bottling Company anymore.
22     Q.  Any other reason?
23     A.  That should cover it.
24     Q.  With regards to your
25  permanent layoff, and I believe you're

1  referring to the October 15th, 2010
2  date, correct?
3      A.  Yes.
4      Q.  Do you know who made the
5  decision to label that a permanent
6  layoff as of that date?
7      A.  I don't know, but Mr. Bobal
8  had part in it.
9      Q.  Okay.  And why do you
10  believe Mr. Bobal had part in it?
11     A.  He's a manager.
12     Q.  Again, so you're assuming
13  because he's a manager he had a role in
14  the October 15, 2010 permanent layoff
15  designation?
16     A.  He had the role in the
17  9-14-2010 discussions in which he left,
18  any grievances and wage claims he's got
19  roles in.
20     Q.  Okay.  But we're sticking
21  with the October 15th, 2010 designation
22  of a permanent layoff.
23     A.  Yes.
24     Q.  And you said that you don't
25  know who made that decision but you

1  believe Mr. Bobal was part of it, is
2  that right?
3      A.  Yes.
4      Q.  And I'm asking for the facts
5  on which you base your belief that Mr.
6  Bobal was part of that October 15, 2010
7  layoff designation decision?
8      A.  Yes, it's a fact Mr. Bobal
9  had part in it.  I don't know who he
10  answers to or who tells him to make the
11  decision.
12     Q.  And I'm asking for the basis
13  for your statement that it's a fact he
14  took part in that decision?
15     A.  Repeat that.
16     Q.  I'm asking for the basis for
17  your statement that it's a fact Mr.
18  Bobal took part in that decision?
19     A.  The union guys told me I'm
20  permanently laid off.
21     Q.  So union guys told you you
22  were permanently laid off, they didn't
23  tell you and Mr. Bobal made that
24  decision, correct?
25     A.  He's part of it, correct.

1      Q.  So we go back to this is an
2  assumption that he's a manager in HR
3  that you believe he must have had part
4  of that decision?
5      A.  He's in the grievance process
6  and in the wage claims he signed off on
7  it.
8      Q.  Well, I understand that
9  that's your position and that you're
10  drawing an assumption from that
11  position.  My question is very simple.
12  Do you have any personal knowledge that
13  Mr. Bobal took part in the decision to
14  designate your layoff as permanent on
15  October 15, 2010?
16     A.  Permanent knowledge, no.
17     Q.  I'm sorry?
18     A.  Permanent knowledge, no.
19     Q.  Personal knowledge?
20     A.  Personal knowledge, I'm
21  sorry.
22     Q.  That's okay.  Do you know
23  who was consulted in connection with the
24  October 15, 2010 designation of your
25  layoff as permanent?



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787     www.cefgroup.com     fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

**Page 110**

1    A.  Meaning consulting whom?
2    Q.  You're right, it's a bad
3  question.  Do you know who was consulted
4  in making the decision to designate your
5  layoff as permanent on October 15, 2010?
6  Personal knowledge?
7    A.  Personal knowledge, I don't
8  know a lot of the people in the high
9  positions in the company, so no.
10    Q.  Do you know what information
11  was considered in reaching the decision
12  to designate your layoff as permanent on
13  October 15, 2010?
14    A.  One of the reasons is on
15  9-14-2010 he claimed a harassment issue.
16    Q.  Do you ask Mr. Bobal what he
17  meant by that?
18    A.  He departed from the meeting,
19  didn't finish it, they left.
20    Q.  Did you ask Mr. Bobal what
21  he meant by a harassment issue?
22    A.  I didn't get the opportunity
23  because he left.
24    Q.  Did you ever contact him and
25  ask him what he meant about that issue?

**Page 111**

1    A.  He told me never to contact
2  him, don't write him, don't telephone
3  him, he won't accept letters from me,
4  phone calls, e-mails, everything.
5    Q.  And do you know whether or
6  not that was in connection with
7  counsel's direction after you had filed
8  your lawsuit?
9    A.  No, it was before he was
10  involved.
11    Q.  What date did Mr. Bobal
12  begin telling you not to send him
13  letters and correspondence?
14    A.  Probably October 25th, 2010.
15    Q.  Probably?
16    A.  Well, if you give me the
17  initial disclosures, based on my memory
18  in good faith I'll say October 25th,
19  2010.
20    Q.  And he told you to bring
21  those issues to your union, correct?
22    A.  I believe so, yes.
23    Q.  Just quickly looking at
24  Deposition Exhibit 9, it's your
25  certificate of mailing for the letter to

**Page 112**

1  Mr. Bobal on August 12th, 2010.
2    A.  Okay.
3    Q.  Did you ever receive a
4  confirmation of delivery for that?
5    A.  No, it was ordinary mail.
6    I kind had messed these documents
7  up.
8    Q.  So you paid $1.15 to the
9  post office to send something ordinary
10  mail?
11    A.  I know, it was kind of
12  expensive, it used to be 90 cents.
13    Q.  What purpose does a
14  certificate of mailing serve, in your
15  mind?
16    A.  I don't know.  I just know
17  that they have a certificate of mailing
18  and I used them here and there before,
19  so once in a while I'll use them.
20    Q.  Any particular reason when
21  you decide to use them versus not use
22  the certificate of mailing?
23    A.  I first started using them
24  maybe in the 80's, 1980's or something,
25  or 90's.  I can't remember.

**Page 113**

1    Q.  So did you ever receive any
2  confirmation from the post office or
3  otherwise that Mr. Bobal received your
4  August 12, 2010 correspondence?
5    A.  That's all I got for
6  confirmation, they stamped it.
7    Q.  And they stamped that at the
8  time that you mailed the letter,
9  correct?
10    A.  Yeah.
11    Q.  Let's talk about Mr. Taraba,
12  you identified him as somebody that you
13  consider engaged in retaliation for your
14  2010 vehicle issue complaint.  What did
15  Mr. Taraba do that you considered
16  retaliation?
17    A.  Repeat that, please.
18    Q.  You mentioned Mr. Taraba as
19  an individual who you believed engaged
20  in retaliation for your 2010 vehicle
21  issue complaint, what did Mr. Taraba do
22  that you considered retaliation?
23    A.  Well, during the 9-14-2010
24  meeting, you know, we -- everybody
25  witnessed and caught him in a lie saying



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787    www.cefgroup.com    fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

**Page 114**

1 he recalled me to work.
2     Q. Anything else that Mr. Taraba
3 did that you considered retaliation?
4     A. Misleading all on the
5 9-14-2010 meeting.
6     Q. I'm sorry, misleading what?
7     A. Misleading their positions on
8 my wage claim and...
9     Q. To what are you referring
10 when you say misleading concerning their
11 position on your wage claim at the
12 9-14-2010 meeting?
13     A. On the 9-14-2010 meeting he
14 was lying about things and I told him
15 don't do that.
16     Q. What was Mr. Taraba lying
17 about?
18     A. He said he called for me to
19 return to work.
20     Q. What else was Mr. Taraba
21 lying about, in your opinion?
22     A. He said he -- he said he
23 left messages, he said he talked to my
24 grandmother. I said, my grandmother is
25 85, she would tell me if you called,

**Page 115**

1 she's been wanting me to go back to
2 work.
3     Q. I'm sorry, she doesn't want
4 you to go back to work?
5     A. She wants me to go back to
6 work, she's tired of me being around the
7 residence, thinks I'm a lazy individual
8 not working, it's a disgrace.
9     Q. So is there anything else
10 that you believe Mr. Taraba lied about
11 during the 9-14-2010 meeting that you
12 considered retaliation?
13     A. Well, like I said, he walked
14 out along with Bobal during that
15 meeting, so this is the result of it.
16     Q. Is there anything else that
17 Mr. Taraba did that you considered
18 retaliation?
19     A. He probably participated in
20 the 10-15-10 permanent layoff.
21     Q. Anything else?
22     A. And termination.
23     Q. Anything else?
24     A. That should cover it.
25     Q. And I'm not sure we actually

**Page 116**

1 answered the question so let me just try
2 one more time. Anything else that you
3 are claiming Mr. Taraba lied about
4 during the September 14, 2010 meeting
5 other than you said he stated he
6 recalled you to work and he'd left
7 messages for you at your home?
8     A. At the time that was what we
9 found out.
10     Q. At the time that's what we
11 found out, who is we?
12     A. I would say I witnessed him
13 lying.
14     Q. You witnessed him making a
15 statement which you interpreted as
16 lying, correct?
17     A. That's correct.
18     Q. Do you have an answering
19 machine at the Jeanette Drive location?
20     A. Yes.
21     Q. Is it digital, what kind of
22 answering machine is it?
23     A. It's got the little micro
24 cassette tape about this big, maybe an
25 inch and a half or so, real small.

**Page 117**

1     Q. Mr. Stimmel, you said that
2 you believe Mr. Stimmel engaged in some
3 conduct that you considered retaliation.
4 What conduct do you believe Mr. Stimmel
5 engaged in that you considered
6 retaliation for your 2010 vehicle issue
7 complaint?
8     A. Participating input in the
9 10-15-10 permanent layoff and
10 termination.
11     Q. Anything else you believe Mr.
12 Stimmel engaged in that you considered
13 retaliation for your 2010 vehicle
14 complaint?
15     A. Repeat that, please.
16     Q. Anything else that you
17 believe Mr. Stimmel did that you
18 considered retaliation for your 2010
19 vehicle issue complaint?
20     A. That covers it.
21     Q. Do you know if Mr. Stimmel
22 knew you had complained about the
23 vehicle issue?
24     A. I'm sure.
25     Q. Do you have any personal


**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787     www.cefgroup.com     fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

**Page 118**

1  knowledge that Mr. Stimmel knew you
2  complained about the vehicle issue?
3      A. I don't have any personal
4  knowledge, I haven't seen the man.
5      MS. MCARDLE: I'm just going --
6  I have one more line of questioning and
7  we can take a break if that's okay with
8  you?
9      MR. ROSSI: Sure.
10     Q. Are there any employees that
11 you believe were treated better than you
12 were who engaged in similar conduct,
13 meaning complained about a vehicle issue
14 or other type of complaint that you're
15 aware of?
16     A. I believe I was the only one
17 who cared about safety, health and
18 safety. None of them guys cared,
19 beating on the forks with hammers to get
20 them started with steel pipes. They
21 don't care if the lights work, go
22 outside in the dark. Stepping over
23 shrink wrap, they don't care. I was
24 probably the only one that cared.
25 Cleaning up shrink wrap. All them

**Page 119**

1  people out there got workers' come
2  claims, I don't have any.
3      Q. You didn't file a workers'
4  comp claim?
5      A. No, I never got hurt out
6  there.
7      Q. Are there any employees at
8  Youngstown that didn't make a similar
9  type of complaint concerning a vehicle
10 issue or otherwise that you think were
11 treated better than you?
12     A. Repeat that question.
13     Q. Are there any employees at
14 Youngstown who did not make a similar
15 type of complaint to the vehicle issue
16 or other, I think you referred to them
17 as safety type of complaints, who were
18 treated better than you?
19     A. Of course.
20     Q. Who were those individuals?
21     A. There's Tony Nicastro who's
22 friends with Danny up front, manger,
23 they golf together. Ryan Cozart and
24 John Taraba, their sons was friends in
25 school with each other. I feel bad to

**Page 120**

1  say and regret to say but John's son
2  passed away, got killed in a bike
3  accident. They're neighbors so John and
4  Ryan Cozart, John Taraba are pretty
5  close. When Ryan had a DUI in the past
6  they used to clock him in and out years
7  ago, favorable treatment plus he gets
8  more pay than everybody else too. It's
9  not even in the collective bargaining
10 agreement.
11     Q. He being Ryan?
12     A. Yes. Couple other guys get
13 more pay too but nobody cares.
14     Q. Who else gets more pay other
15 than Mr. Cozart?
16     A. I think Ryan Cozart even
17 makes more money than the one guy that's
18 been there since the 60's or 70's.
19     Q. Who's that?
20     A. Sam Rowbottom or Rottenbottom
21 or -- I'm sorry, something with an R.
22     Q. Sam Rowbottom,
23 R O W B O T T O M?
24     A. Yeah.
25     Q. Anyone other than Ryan

**Page 121**

1  receive more pay?
2      A. Bill DiPiero(sic), I think he
3  gets additional pay. I think Merl(sic)
4  Moyer, he used to get additional pay
5  too.
6      Q. Merrill Moyer?
7      A. M E R R I L, I think.
8      Q. M E R R I L L, M O Y E R.
9      A. And I think Tony too
10 actually gets more pay because he's a
11 utility guy and they give him other
12 rates.
13     Q. And the basis for your
14 knowledge that these individuals are
15 receiving more pay is what?
16     A. Ryan himself said he gets
17 paid more than everybody and he feels
18 bad that he gets paid more than Sam,
19 payroll records will show it. I seen
20 some records with -- when they made an
21 incorrect pay rate, everybody got
22 additional pay, you can see on the
23 records certain people get paid more and
24 figure them out. But Ryan, he told me
25 directly.



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787     www.cefgroup.com     fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

**Page 122**

1      Q. Did you *see* Ryan's personnel
2 file?
3      A. I'm not in management, how
4 am I going to see his personnel file?
5      Q. So similarly you didn't see
6 the personnel file of any of other
7 individuals you've referenced?
8      A. Say that again, please.
9      Q. Similarly then you didn't see
10 the personnel files of any of the
11 individuals that you just referenced?
12      A. I don't have that privilege.
13      Q. Do you know how long -- with
14 regards to pay I think you included Sam,
15 Merrill, Bill and Tony, do you know how
16 long they've been receiving, as you **say**,
17 more pay?
18      A. You'd have to ask them.
19      Q. So you don't have any
20 personal knowledge of how long they've
21 been receiving more pay?
22      A. Personal acknowledge? You
23 have to ask them, I don't know.
24      Q. Now, with regards to Tony
25 Nicastro, and that's N I C A S T R O?

**Page 123**

1      A. Yeah.
2      Q. You said he was treated
3 better than you because he's friends
4 with Danny, is that what you said?
5      A. Who's Danny?
6      Q. I don't know. You said
7 because he's friends with -- I thought
8 it was Danny who was in front or
9 something like that, what did you --
10      A. There was a manager named
11 Denny --
12      Q. Denny, okay.
13      A. -- that he was friends with.
14 I think he got him hired in there, so
15 he got some influence from the front, I
16 guess.
17      Q. And Tony, do you know his
18 hire date?
19      A. Yeah, I have to look at the
20 seniority sheet.
21      Q. So the basis for your
22 statement that Mr. Nicastro was treated
23 better than you is because he's friends
24 with Denny or when Denny worked there he
25 was friends with Denny?

**Page 124**

1      A. It's obviously a perk, I
2 mean, you got a problem, go see Denny.
3      Q. Is Denny also known as
4 Dennis Barnett?
5      A. No, that's a driver.
6      Q. Right. So Denny is no
7 longer with the company?
8      A. I don't know, you'd have to
9 ask the company agents.
10      Q. Do you recall Denny's last
11 name?
12      A. No, I'm sorry, I don't.
13      Q. And then you mentioned Ryan
14 Cozart and John Taraba being friends, so
15 are you saying that Ryan and John were
16 treated better than you because of their
17 friendship?
18      A. They got a history together,
19 their kids went to school together,
20 special treatment.
21      Q. And what's the special
22 treatment Mr. Cozart received, that was
23 the more pay?
24      A. Well, he can come and go as
25 he please, you know, just different

**Page 125**

1 stuff that come up, little things.
2      Q. Do you know Mr. Cozart's
3 hire date?
4      A. You have to look at the
5 seniority sheet.
6      Q. How about Mr. Taraba, what
7 special treatment did Mr. Taraba
8 receive?
9      A. What do you mean?
10      Q. I thought that's what you
11 were saying, that Mr. Cozart and Mr.
12 Taraba both were treated better than
13 you?
14      A. Mr. Taraba is a manager, he
15 can do whatever he wants, he can go
16 golfing late in the day if he wants.
17      Q. Now, you said Mr. Nicastro
18 is a utility person?
19      A. Yeah.
20      Q. Mr. Rowbottom, warehouse
21 position?
22      A. The morning day turn, yes.
23      Q. Mr. Moyer is also a
24 warehouse position?
25      A. He used to be. I mean,


**Cefaratti Group**
**THE LITIGATION SUPPORT COMPANY**
1.800.694.4787   www.cefgroup.com   fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

**Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics**

## Page 126

1 whatever, I believe so, yeah, warehouse.
2 I heard he got hurt so they put him on
3 light duty or changed his job because
4 he's got more seniority. Maybe used the
5 procedure to bump somebody out or maybe
6 they posted the job, because he's
7 probably number two so he probably
8 bumped somebody out because he can do
9 that.
10 Q. Was Mr. Moyer morning as
11 well at the time you were aware of him?
12 A. I think at that time he was.
13 I think he bumped somebody or
14 transferred or they created a special
15 job for him.
16 Q. How about Mr. DiPietro, he's
17 warehouse, was he morning as well?
18 A. He was -- excuse me, sorry,
19 he was nights just like me. He got
20 hurt too for a while, I don't know if
21 they put him on light duty.
22 Q. What about Mr. Nicastro, he's
23 warehouse -- oh, no, I'm sorry, you said
24 utility?
25 A. Yes.

## Page 127

1 Q. Morning or night?
2 A. Oh, gee, I think he -- I
3 don't know if he had a floating
4 schedule. I think he come in after
5 noon or late morning. His shift
6 interacted with mine. In other words,
7 he was earlier than my time.
8 Q. Earlier than your time of
9 employment or earlier than your start
10 time?
11 A. Start time.
12 Q. Now, let's just touch upon
13 your COBRA claim really briefly. My
14 understanding is that your COBRA claim
15 is that you claim the COBRA notice
16 issued to you by ABC was not timely?
17 MR. ROSSI: I'm sorry, was not
18 what?
19 Q. Timely.
20 A. That's true, that's a fact.
21 Q. That's the basis of your
22 claim, is that you're saying that the
23 COBRA notice issued by ABC was not
24 timely?
25 A. I got it the end of February

## Page 128

1 or something.
2 Q. So you claim that ABC should
3 have issued a COBRA notice to you within
4 44 days of your termination, is that
5 right?
6 A. Is that the law?
7 Q. Well, I'm asking what your
8 claim is.
9 A. Of course.
10 Q. Do you know why ABC didn't
11 issue a COBRA notice until February
12 18th, 2011?
13 A. Because they're dealing with
14 this situation in litigation.
15 Q. You're guessing, right?
16 A. I don't know why that they
17 did that, you have to ask them.
18 Q. Do you know whether ABC has
19 a third party administrator that handles
20 the issuance of COBRA notices?
21 A. Yeah, we went round and
22 round with you with Hewitt Associates,
23 and you said don't call them and then
24 you said call them, so we got a lot of
25 confusion back and forth.

## Page 129

1 Q. Well, sir, I don't know what
2 your attorney imparted to you as to
3 communications that I had with him
4 because I certainly haven't talked to
5 you before today, is that right?
6 A. Sure, sure.
7 Q. Do you know whether any
8 computer system errors may have occurred
9 that impacted the issuance of the COBRA
10 notice to you?
11 A. Not that I know of.
12 Q. Do you have any personal
13 knowledge about computer error issues
14 that may have occurred in relation to
15 the issuance of your COBRA notice?
16 A. I don't work in
17 administrative computer programing, no.
18 I don't know, you have to ask them.
19 Q. A subsequent COBRA notice was
20 issued on or about March 23rd, 2011 to
21 you, correct?
22 A. I believe so.
23 Q. So just a little over a
24 month after the first notice went out
25 you received another notice, correct?



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787    www.cefgroup.com    fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

**Page 130**

1     A. Yes, due to all the
2 confusing phone calls back and forth.
3     Q. And then that notice, I
4 believe, gave you until May 29th, 2011
5 to elect COBRA, correct?
6     A. I not sure, the paperwork is
7 not in front of me. I assume so.
8     Q. And you said you're currently
9 receiving health benefits through COBRA,
10 correct?
11     A. Yes, I have benefits.
12     Q. Is that dental only?
13     A. At this time.
14     Q. Looking back at Deposition
15 Exhibit 1, the complaint.
16     A. You said 1? I'm sorry.
17     Q. Yes. Deposition Exhibit 1.
18     A. I got a little disorganized
19 here, I apologize. I'm sorry. After
20 the holiday weekend.
21     Q. Looking at that document you
22 would agree with me that that complaint
23 was filed on March 1st, 2011?
24     A. I have to look. I don't see
25 a time stamp. Yeah, yeah.

**Page 131**

1     Q. And that is the first
2 complaint you asserted the COBRA notice
3 violation, correct?
4     A. Yes.
5     MS. MCARDLE: Let's take a break.
6     MR. ROSSI: Okay.
7     (Recess had.)
8     - - - - -
9     (Thereupon, Deposition
10     Exhibit-15 was marked for
11     purposes of identification.)
12     - - - - -
13 BY MS. MCARDLE:
14     Q. Mr. Potts, I'm showing you
15 Deposition Exhibit 15, this is the
16 letter that you produced and it appears
17 to be correspondence from OSHA dated
18 September 27th, 2007, addressed to you
19 from a Robin Medlock, M E D L O C K.
20 Now, again, your claim in this lawsuit
21 does not relate to the 2007 complaint to
22 OSHA, you testified earlier, correct?
23     A. Yes.
24     Q. But in looking at this
25 complaint that you made in September of

**Page 132**

1 2007, recognizing this is OSHA's
2 document to you, do the complaint items
3 that OSHA has listed accurately reflect
4 the complaint you raised to OSHA on
5 September 20, 07?
6     A. Say that again, please.
7     Q. Do the complaint items that
8 OSHA has listed in its letter to you of
9 September 27th, 07 accurately reflect
10 the items that you raised to OSHA around
11 that time? And if it makes it easier
12 I'm specifically looking at how in the
13 letter it says complaint item 1 and then
14 it states something, complaint item 2
15 and then it states something, as opposed
16 to the results of the OSHA
17 investigation.
18     A. Appears to be, yes.
19     Q. Earlier in your testimony you
20 said that you had gone to the Youngstown
21 facility on August 11th, 2010 and that's
22 when you had the conversation with Mr.
23 Cozart you've already testified to,
24 correct?
25     A. Correct.

**Page 133**

1     Q. Prior to August 11th, 2010
2 when was the last time you had
3 physically set foot in the Youngstown
4 facility?
5     A. I can't recall.
6     Q. Was it six months before,
7 could it have been longer than six
8 months before?
9     A. Maybe -- yeah, longer than
10 six months, definitely.
11     Q. So you hadn't -- the
12 earliest time, I guess, you had been at
13 the Youngstown facility, according to
14 your testimony then, prior to August
15 11th, 2010 was maybe sometime in January
16 or February of 2010, if not earlier?
17     A. Probably earlier.
18     Q. So how about -- let me ask
19 you this question then: Do you believe
20 between September 21st of 09 and
21 December 31st of 09 you set foot inside
22 the Youngstown facility?
23     A. Say that again, please.
24     Q. Do you believe that between
25 September 21st of 09, your layoff, and



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787    www.cefgroup.com    fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

**Page 134**

1 December 31st of 09 you set foot inside
2 the Youngstown facility?
3     A. December 31st, 2009?
4     Q. Correct.
5     A. No.
6     Q. Do you believe then that the
7 August 11th, 2010 date was the first
8 time you had set foot in the facility
9 since your layoff of September of 09?
10     A. That sounds about right.
11     Q. Now, you didn't file any
12 kind of complaint concerning the vehicle
13 issue with any other public agency other
14 than OSHA, is that right?
15     A. That's the only agency.
16     Q. And you didn't file a police
17 report concerning anything concerning
18 the vehicle issue either, correct?
19     A. OSHA has the authority, no.
20     Q. And do you know what
21 penalties OSHA would apply to the type
22 of issues you were raising in 2010
23 concerning --
24     A. What do you mean?
25     Q. Do you know what penalties,

**Page 135**

1 if any, OSHA would apply or be able to
2 apply to the type of issues you raised
3 that were the vehicle issues?
4     A. Whatever they decide.
5     Q. So you don't know kind of
6 the universe of penalties OSHA may be
7 able to apply to the vehicle issues you
8 raised in 2010?
9     A. I'm not familiar with all
10 that code language.
11     - - - - -
12     (Thereupon, Deposition
13     Exhibit-16 was marked for
14     purposes of identification.)
15     - - - - -
16     Q. Handing you what's been
17 marked Deposition Exhibit 16, you have
18 seen this document before, correct?
19     A. Yes.
20     Q. And actually if you would
21 flip through Deposition Exhibit 16
22 there's some handwriting throughout the
23 document. Do you agree with me there's
24 some handwriting throughout that
25 document?

**Page 136**

1     A. Yeah, yes.
2     Q. Is that your handwriting?
3     A. It appears to be.
4     Q. And this is a copy of the
5 agreement between Seven Up Youngstown, a
6 subsidiary of the Dr. Pepper/Seven-Up
7 Bottling Group, DPSUBG, and Teamsters
8 Local 377 for the period January 29,
9 2006 through January 28, 2010, correct?
10     A. Absolutely.
11     Q. Is it your understanding that
12 the terms of this agreement governed
13 your participation in the bargaining
14 unit for Teamsters Local 377 during
15 those dates?
16     A. What do you mean?
17     Q. If you had a question
18 concerning wages, vacation, or
19 otherwise, as a member of the bargaining
20 unit for Teamsters Local 377 you'd pick
21 up the contract and look at it, correct?
22     A. Sure, sure.
23     Q. This document for ease is
24 Bates labeled ABC 56 through ABC 77, if
25 you could turn to ABC 59 for me,

**Page 137**

1 please, and let me know when you're
2 there.
3     A. I'm there.
4     Q. Section 1 under Article 1,
5 recognition, the last sentence of
6 Section 1 states, "Delivery drivers,
7 warehousemen, vendor special service
8 employees and merchandisers are
9 sometimes hereinafter referred to
10 collectively as 'employees'." Did I
11 read that correctly?
12     A. Word for word.
13     Q. So you understood after you
14 reviewed the contract that at times
15 during the contract when the contract
16 referred to employees that it meant
17 collectively those categories of
18 services?
19     A. Yeah, it's strange it doesn't
20 say utility. Yes. I never knew that.
21     MR. ROSSI: Wait for a question.
22     THE WITNESS: Sorry.
23     Q. Turning to the next page,
24 there's a section entitled probational
25 employees, do you see that?



**Cefaratti Group** THE LITIGATION SUPPORT COMPANY

1.800.694.4787 www.cefgroup.com fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

**Page 138**

1  A. Yes.
2  Q. The section, numbered Section
3  3 and it starts, "A new employee shall
4  work under the provision of this
5  agreement but shall be employed on a
6  trial basis until he has actually worked
7  90 days within six calendar months,
8  during which period he may be discharged
9  without further recourse," and then it
10  goes on. Did I read that portion
11  correctly?
12  A. Word for word.
13  Q. So you understood that when
14  you started with ABC that you were a
15  probationary employee until a period of
16  90 days had elapsed at which time you
17  may be retained?
18  A. Correct.
19  Q. Last sentence of that section
20  states, "During the probationary period
21  a new employee shall be paid the wage
22  rates in Article X, Section 2," and then
23  there's some handwriting.
24  A. Okay.
25  Q. Did I read the section of

**Page 139**

1  the contract correctly?
2  A. It appears so.
3  Q. Then there's a section next
4  -- that follows, I should say, called
5  seasonal employees, and that's Section
6  4. And this reads in part, "Seasonal
7  employees may be hired from April 1st to
8  September 30th inclusive and November
9  1st to January 15th inclusive. Seasonal
10  employees shall be required to join the
11  union after 30 days worked for the
12  employer in any one or more seasonal
13  periods, provided, however, seasonal
14  employees will not be entitled to any
15  contractual benefits other than the
16  negotiated wage stated in Article X,
17  Section 3 of this agreement." Did I
18  read that correctly?
19  A. Word for word.
20  Q. So you understood by reading
21  this agreement that Dr. Pepper could
22  hire seasonal employees during those
23  designated time frames, correct?
24  A. Sure.
25  Q. Turning the page, let's look

**Page 140**

1  at Article 3, management, Section 1.
2  This states, "It is agreed that the
3  operation of the territories and the
4  direction of the delivery drivers and
5  all other employees, including the
6  making and enforcing of rules to insure
7  orderly and efficient territory and
8  warehouse/special services operation,
9  including the increase or decrease of
10  territories, the determining of same
11  employees competency, the right to hire,
12  to transfer, to promote, to demote, to
13  discharge for cause, to lay off for lack
14  of work, are rights vested exclusively
15  in the management of the company." Did
16  I read that correctly?
17  A. Very good.
18  Q. Did I read that correctly?
19  A. Yes.
20  Q. Thank you. So you
21  understood by reading this clause that
22  there were certain employment actions
23  that management reserved exclusive right
24  to make, correct?
25  A. Right.

**Page 141**

1  Q. Have you heard of this
2  clause referred to as the management
3  rights clause?
4  A. Yes.
5  Q. Turning to ABC 63.
6  A. Say that again, please.
7  Q. Sure.
8  MR. ROSSI: 63.
9  Q. ABC 63.
10  A. Got it, got it.
11  Q. This is Article 7 as it
12  relates to grievance procedures and I'm
13  looking specifically at Section 2-Step
14  1, do you see that section?
15  A. Yes.
16  Q. And that says in part, "If
17  an employee has a grievance he shall
18  reduce such grievance in writing and
19  present it to the company within five
20  working days after its alleged
21  occurrence." Did I read that correctly?
22  A. Word for word.
23  Q. So you understood that if
24  you did have a grievance with company
25  you could file that grievance but had to



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787    www.cefgroup.com    fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

1   do so within five working day after the
2   alleged incident had occurred?
3       A. Five working days, yes.
4       Q. Let's turn to ABC 65, a
5   section called call back pay, Section 4,
6   and I can certainly read that into the
7   record but my question for you is this,
8   please read that Section 4 and let me
9   know what you've done so.
10      A. Okay.
11      Q. So from reading the contract
12  you understood that merchandisers may
13  work up to seven days a week, the first
14  five days eight-hour shifts at regular
15  rate, sixth day one and a half times
16  their regular rate, seventh day at two
17  times their regular rate?
18      A. That's what it says, it
19  indicates it.
20      Q. Turn to ABC 67, Section 8,
21  and this is part of Article X, wages.
22  This states, "In the event any employee
23  is transferred or assigned by the
24  employer to work in a different
25  classification they shall be paid the

1   highest prevailing rate for all hours of
2   work (any employee in a I rate shall be
3   transferred at the I rate. Any employee
4   in a II rate shall be transferred at
5   the II rate)." Did I read that
6   correctly?
7       A. Word for word.
8       Q. So you understood that in
9   the event an employee was transferred or
10  reassigned by the company to a different
11  job classification they would be making
12  the highest prevailing rate for their
13  work, correct?
14      A. Correct.
15      Q. And by job classification, I
16  think we've been referring to that
17  throughout the deposition, but that
18  includes things like drivers, vending,
19  warehouse, and merchandising, correct?
20      A. Correct.
21      Q. Let's turn to ABC 69,
22  Article 14, seniority.
23      A. Oh, sorry.
24      Q. Are you there?
25      A. Yes.

1       Q. All right. Section 1, this
2   section states in part, "The seniority
3   rights of all employees shall be
4   determined from the last date of hiring.
5   Immediately after signing this agreement
6   a seniority list for delivery drivers, a
7   seniority list for warehousemen and a
8   seniority list for special service
9   employees, merchandisers and utility as
10  well as a plant-wide seniority will be
11  posted upon the bulletin board for a
12  period of 30 days, after which the list
13  will be deemed to be correct." Did I
14  read that correctly?
15      A. Word for word.
16      Q. So you understood that after
17  this contract was entered into and a
18  seniority list had been posted, 30 days
19  after the posting of that that seniority
20  list was correct and what the company
21  would use for purposes of any employment
22  decisions, correct?
23      A. Unless in a dispute, correct.
24      Q. Unless a dispute of what?
25      A. The next couple sentences.

1       Q. Okay. But prior to the next
2   couple sentences, because I think we're
3   missing each other on this, that under
4   the terms of the contract, if there's no
5   challenge to that seniority list within
6   30 days of executing the contract that
7   list is deemed correct?
8       A. From the CBA 2006 to 2010.
9       Q. Yes.
10      A. Yes.
11      Q. Now, the next section that
12  you're alluding to reads, "In addition,
13  upon request from the union, the company
14  shall provide seniority lists for all
15  classifications as well as plant-wide
16  seniority every six months. In any case
17  of a dispute the records of the company
18  shall be binding unless proven
19  incorrect." Did I read that section
20  correctly?
21      A. Word for word.
22      Q. So you understood the union
23  had the ability to request from the
24  company seniority lists every six months
25  for all classifications as well as


**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787    www.cefgroup.com    fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

**Page 146**

1 plant-wide seniority, correct?
2     A. Correct.
3     Q. And that if there was
4 dispute about seniority or those lists,
5 that company records were binding unless
6 there was proof they were not correct?
7     A. Yeah, if somebody chose
8 otherwise, yeah.
9     Q. The next section, "Plant-wide
10 seniority shall apply for purposes of
11 permanent layoff, recall from layoff and
12 job/annual bidding. However, in the
13 event of a permanent layoff due to
14 elimination of a position the affected
15 employees are entitled to bump by
16 seniority and qualifications until the
17 least senior employee is displaced, in
18 the event of temporary layoffs
19 classification seniority shall prevail."
20 Did I read that correctly?
21     A. Yes. May I also have a pen,
22 please?
23     Q. Did you want to write on the
24 exhibit?
25     A. Am I allowed?

**Page 147**

1     Q. Sure. If you'd like to.
2     A. Or a highlighter, can I use
3 a highlighter?
4     Q. So there's no confusion why
5 don't we use the blue pen --
6     A. All right.
7     Q. -- because I think there's
8 black on there currently.
9     A. Sure.
10     Q. So from this section you
11 understood that in the event of a
12 permanent layoff, recall from layoff or
13 job/annual bidding, plant-wide seniority
14 shall apply, correct?
15     A. Yes.
16     Q. Then you also understood
17 though that there was an exception that
18 stated, "In the event of a permanent
19 layoff due to elimination of a position,
20 the affected employees are entitled to
21 bump by seniority and qualifications
22 until the least senior employee is
23 displaced," correct?
24     A. Correct.
25     Q. And that temporary layoff, in

**Page 148**

1 the event of any temporary layoff,
2 classification seniority prevails,
3 correct?
4     A. Yes.
5     Q. Let's turn to ABC 70. I'm
6 looking at Section 9 which is still part
7 of seniority. It states in part, "Under
8 the following conditions any employee
9 shall lose his seniority (terminated --
10 " it says fro employment, close parens,
11 but you'd agree with me that probably
12 should say for -- or from employment,
13 excuse me, correct?
14     A. Sure.
15     Q. Makes more sense if it says
16 terminated from employment than
17 terminated fro employment?
18     A. Sure, a typo.
19     Q. Right. And then it lists a
20 number of these conditions under which
21 an employee shall lose seniority,
22 including subsection D on the next page,
23 ABC 71, which states, "If he fails to
24 return to work within three days after
25 notice from the company to return unless

**Page 149**

1 circumstances beyond his control prevent
2 him from notifying the company within
3 three days. Such notice shall be made
4 by registered letter or telegram." Did
5 I read that correctly?
6     A. Word for word.
7     Q. So you understood then if
8 the company did contact you to return to
9 work and you didn't respond in any way,
10 shape or form within three days you
11 could lose your seniority, correct?
12     A. Sure.
13     Q. And be terminated, in fact,
14 correct?
15     A. Sure.
16     Q. Section 13, still in
17 seniority, same page, ABC 71, this
18 reads, "If an employee is on an
19 involuntary layoff he will not lose his
20 seniority for a period of one year from
21 the date of layoff." Did I read that
22 correctly?
23     A. Word for word.
24     MR. ROSSI: Where is she reading?
25     MS. MCARDLE: Section 13, Mike.


**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787    www.cefgroup.com    fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

1    MR. ROSSI: Thank you.
2        Q. Certainly you understood that
3    if you were placed on layoff you
4    maintained your seniority for a period
5    of one year, correct?
6        A. Yes.
7        Q. But beyond that, if you were
8    laid off for more than one year you
9    lost your seniority, correct?
10       A. Yes, lost everything, yes.
11       Q. Lost everything meaning what,
12   you were terminated at that point?
13       A. Union benefits, union wages.
14       Q. Turning to ABC 72, Article
15   16, health and welfare, do you see where
16   I am at the bottom of the page?
17       A. What page?
18       Q. The bottom of --
19   MR. ROSSI: 72.
20       Q. -- 72. Thanks, Mike.
21       A. Oh, yes, yes, yes.
22       Q. Article 16, health and
23   welfare, Section 1, health and dental
24   insurance. This section states in part,
25   "It is agreed that each seniority

1    employee of the company who has
2    completed his probationary period in
3    addition to the four most senior
4    merchandisers, regardless of number of
5    working hours, shall be given an
6    opportunity to enroll in the company's
7    Flex Plan in existence on January 1st,
8    1999." Did I read that correctly?
9        A. Word for word.
10       Q. Let's flip to the next page,
11   ABC 73, Section 4, health benefits,
12   merchandisers, do you see where I am?
13       A. Yes.
14       Q. It's about the middle of
15   that paragraph, the sentence begins,
16   "the company will allow," do you see
17   that?
18       A. Yes.
19       Q. "The company will allow
20   merchandisers who achieve 2,000 work
21   hours to enroll in the Flex Plan in
22   place, up to a maximum up of six
23   over the life of this contract." Did I
24   read that correctly?
25       A. Word for word.

1        Q. So from reviewing the
2    collective bargaining agreement you
3    understood that up to the maximum of six
4    merchandisers who had achieved 2,000
5    work hours in a year were entitled to
6    health benefits under the plan, correct?
7        A. Yeah, those guys are lucky,
8    yeah, they're allowed.
9        - - - - -
10       (Thereupon, Deposition
11       Exhibit-17 was marked for
12       purposes of identification.)
13       - - - - -
14       Q. Showing you what's been
15   marked Deposition Exhibit 17, have you
16   seen this document before?
17       A. Yes.
18       Q. This is the agreement between
19   7-Up Youngstown and Teamsters Local 377
20   for the period January 29, 2010 through
21   January 29, 2013, correct?
22       A. Yes.
23       Q. You would agree with me that
24   the terms of this contract would govern
25   your employment with ABC from those

1    dates, January 29, 2010 through January
2    29, 2013, correct?
3        A. Correct.
4        Q. And without reading this into
5    the record I'd like you to -- I'm going
6    to identify certain sections and I want
7    you to read them and let me know if you
8    perceive a difference between the 2010
9    through 2013 contract verbiage versus
10   the 2006-2010 verbiage, okay? That will
11   save a little time.
12       A. Yes, that supersedes, yes.
13       Q. Let's look at ABC 285.
14   Article 3, management, section 1.
15       A. Yes.
16       Q. As you read Section 1 do you
17   perceive a difference between this
18   version of Section 1 and what we just
19   read in the prior contract?
20       A. I'll stipulate it would be
21   the same.
22       Q. How about 291, ABC 291,
23   Section 4 of Article 10, wages, same
24   question. As you read Section 4 do you
25   perceive any differences from the



**Cefaratti Group**  1.800.694.4787   www.cefgroup.com   fax:216.687.0973
THE LITIGATION SUPPORT COMPANY  Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 · 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 · 330.253.8119

Court Reporting · Video Conferencing · Legal Video Production · Investigations
Claims Services · Process Service · Record Retrieval · Document Management · Trial Graphics

**Page 154**

1 verbiage in the 2010 to 2013 contract
2 versus the 2006 to 2010 contract?
3     **A.** I guess I better look at it.
4 What page is the other one on?
5     **Q.** Sure. The other one is on
6 ABC 67.
7     **A.** What are we looking at?
8     **Q.** In ABC 291 it's Section 4.
9     **A.** Okay. What am I looking at
10 on the other one?
11     **Q.** Section 8 on 67.
12     **A.** It looks different. Yeah,
13 it's different.
14     **Q.** And the difference is that
15 the last section or the last sentence,
16 rather, of the section is different. In
17 the 2010-2013 contract it states, "In
18 the event of a transfer or reassignment
19 by the employer the employees will not
20 be paid less than their current rate
21 unless stipulated by another section of
22 the agreement," correct?
23     **A.** Correct. Your previous
24 question I didn't look at the -- I
25 didn't defer to it. You want me to

**Page 155**

1 look at the other one?
2     **Q.** You can if you want. I'll
3 represent to you it is the same but you
4 can certainly feel free to take a look
5 if you'd like.
6     **A.** I trust you.
7     **Q.** Let's look at 293 of the
8 2010-2013 contract. I'm specifically
9 looking, it's Section 1 of the seniority
10 Article 14 section, the portion that
11 begins, "in case of a dispute," do you
12 see where I am?
13     **A.** Yes.
14     **Q.** Why don't you read that
15 through seniority shall prevail and --
16 to yourself, and let me know if you see
17 any difference between that language and
18 the language from the prior contract.
19     **A.** Where is it at on the prior
20 contract, please?
21     **Q.** Sure. It is page 69.
22     **A.** Okay. Jumping back and
23 forth it appears to be the same.
24     **Q.** Let's turn the page to ABC
25 294, Section 7, and why don't we do

**Page 156**

1 this in one shot? Section 7 and
2 Section 10, if you could take a look at
3 Section 7 D and please compare that, if
4 you'd like, to Section 9 D of the prior
5 contract?
6     **A.** What Bates number, please?
7     **Q.** Sure. 70.
8     **A.** Compare it to what?
9     **Q.** Compare it to Section 9 D,
10 as in David.
11     **A.** On 7 there's no D.
12     **Q.** I'm sorry?
13     **A.** On your Exhibit 16 I don't
14 see D on page --
15     **Q.** It's on the next page, that
16 section starts on that page.
17     **A.** Oh, you said Bates number
18 70.
19     **Q.** Correct. That's where the
20 section starts.
21     **A.** Okay. Section D? Yeah,
22 they're different, they run together
23 right off the bat, C and D.
24     **Q.** But the substance of D and
25 the substance of 7 D?

**Page 157**

1     **A.** Yeah, they're different,
2 language is different.
3     **Q.** And what language is
4 different? It says, the prior contract
5 says, such notice shall be made by
6 registered letter or telegram,
7 whereas --
8     **A.** Yeah.
9     **Q.** -- the subsequent says just
10 by registered letter, that's the
11 difference, correct?
12     **A.** Yeah, I see that, it's
13 different, yeah.
14     **Q.** That's the difference you're
15 referring to?
16     **A.** Yes.
17     **Q.** And then Section 10 of the
18 new contract and Section 13 of the old
19 contract, new contract is 294, old
20 contract is 71.
21     **A.** Okay. Section 10 and
22 section what?
23     **Q.** 13 of the old.
24     **A.** Okay. Got it.
25     **Q.** Those are the same, correct?



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787    www.cefgroup.com    fax:216.687.0973
**Cleveland:** 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
**Akron:** One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

**Court Reporting • Video Conferencing • Legal Video Production • Investigations**
**Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics**

**Page 158**

1      A. Correct.
2      Q. Now, we talked kind of
3 generally about your employment with
4 ABC, I'd like to go into a little more
5 detail.
6      A. Sure, go ahead.
7      Q. You were hired July of 07 as
8 a warehouse loader, correct?
9      A. Correct.
10      Q. I think we talked about
11 this, you worked, we're calling it the
12 second shift, you said ABC really didn't
13 have a name for it but you didn't start
14 until approximately 4:00 p.m., correct?
15      A. True.
16      Q. Your duties as a warehouse
17 loader included reviewing electronic
18 orders assigned to truck routes, pulling
19 product to filling those orders and
20 placing product on trucks for shipment,
21 is that right?
22      A. What do you mean by
23 electronic orders?
24      Q. You received orders that came
25 into the warehouse or you reviewed

**Page 159**

1 orders that came into the warehouse,
2 we'll say in any form, you pulled
3 product to fill those orders and then
4 you placed product on trucks for
5 shipment?
6      A. We had paper documents, load,
7 unload, yeah, yeah.
8      Q. And generally would you agree
9 that Thursday was the warehouse's
10 busiest day because of Friday shipments
11 for the weekend?
12      A. Yeah, kind of doubled up.
13 Up.
14
15 (Thereupon, Deposition
16 Exhibit-25 was marked for
17 purposes of identification.)
18 - - - - -
19      Q. Showing you what's been
20 marked Deposition Exhibit 25, my
21 understanding is this is a copy of the
22 resume you submitted to the company and
23 the employment applications that you
24 filled out around the same time for
25 employment with the company, but please

**Page 160**

1 take a look and let me know if I have
2 that correct.
3      A. Appears to be.
4      Q. Looking at the first page of
5 Deposition Exhibit 25.
6      A. Say again, please.
7      Q. Sure. Looking at the first
8 page of Deposition Exhibit 25, your
9 resume?
10      A. Yes.
11      Q. Is there anything not
12 accurate in your resume?
13      A. It appears to be in order.
14      MR. ROSSI: Did you hear his
15 answer?
16      MS. MCARDLE: I did, thank you.
17      MR. ROSSI: Okay.
18      Q. Turning to the application
19 portion of Deposition Exhibit 25, same
20 question, please take the time you need
21 to review the application, but is there
22 anything contained in that application
23 that is not accurate?
24      A. It appears to be in order.
25      Q. I notice on -- I'll use the

**Page 161**

1 Bates number for those because I think
2 it's easier, ABC 137.
3      A. Okay.
4      Q. Under references you've
5 listed Michael D. Rossi, and I think
6 that says CPA, is that right?
7      A. No, it says LPA.
8      Q. Oh, LPA. What does LPA
9 stand for?
10      A. Licensed practicing attorney.
11      Q. I've never seen that acronym
12 before.
13      A. Really?
14      Q. Really.
15      A. Okay.
16      Q. I didn't realize that was
17 funny.
18      A. I didn't either.
19      Q. So you've listed your
20 attorney Mr. Rossi, who's sitting here
21 presently next to you in your
22 deposition, as a reference for
23 employment purposes at Dr. Pepper
24 Snapple Group, correct?
25      A. Well, they wanted references



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787    www.cefgroup.com    fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

**Page 162**

1 and that's all I can come up with out
2 of the phone book or whatever. Must
3 not be the phone book, I didn't remember
4 his phone number.
5     Q. Looking down at the bottom
6 of that same page, is that your
7 signature, sir?
8     A. Yes.
9     Q. You signed this on or about
10 June 25th, 2007?
11     A. Say that again.
12     Q. You signed this on or about
13 June 25th, 2007, is that right?
14     A. Yeah, I can't tell, 25th,
15 26th, 27th, 28th.
16     Q. Okay. Sometime in late June
17 of 07 you signed this employment
18 application?
19     A. Sure.
20     Q. Under applicant certification
21 there's some typed -- after the all caps
22 statement which actually says, "Please
23 read the following statements carefully,
24 they constitute the conditions under
25 which you might be employed with the

**Page 163**

1 corporation."
2     It states, "I certify that all
3 the foregoing statements are true and
4 correct to the best of my knowledge. I
5 understand that misrepresentation or
6 omission of fact in this application --
7 " excuse me, "of facts in this
8 application or during interviews may
9 result in the withdrawal of an offer or
10 disciplinary action including
11 termination if I am hired." Did I read
12 that portion correctly?
13     A. Word for word.
14     Q. So you understood at the
15 time that you signed this application
16 and were certifying to this fact that
17 the statements contained in your
18 application were true and correct to the
19 best of your knowledge and you
20 understood that you could be terminated
21 for any misrepresentations contained in
22 your application, correct?
23     A. Sure.
24     Q. Skipping the paragraph to the
25 next paragraph that begins "I understand

**Page 164**

1 that if hired," do you see where I am?
2     A. No -- okay, yeah, yeah,
3 yeah, yeah.
4     Q. "I understand that if hired
5 my employment is 'at will' which means
6 that it is not guaranteed for any period
7 of time and that my employment and
8 compensation may be terminated by the
9 corporation or myself for any reason at
10 any time with or without advance
11 notice." Did I read that correctly?
12     A. Wow, I never recall that,
13 yeah. At will employment, yes.
14     Q. Well, you have a practice of
15 reading documents before you sign them,
16 sir, right?
17     A. Yeah, okay. I thought it
18 was a union company. I didn't know it
19 was at will, okay.
20     MR. ROSSI: Wait for a question.
21     A. Sorry. I lost my pen.
22     Q. Turning to ABC -- off the
23 record.
24     (Discussion off the record.)
25     Q. Turning to ABC 143.

**Page 165**

1     A. 140 what?
2     Q. 143. There's a section
3 entitled educational data, do you see
4 that?
5     A. Yes.
6     Q. I couldn't quite read it so
7 I wanted you to please identify, are
8 these three separate high schools that
9 you attended?
10     A. Yes.
11     Q. And what high schools were
12 these?
13     A. Howland High School, Warren
14 G. Harding and Warren Western Reserve
15 High School.
16     Q. From which of these high
17 school did you obtain your high school
18 diploma?
19     A. Howland High School.
20     Q. So was it that you took
21 classes at the other high schools or did
22 you attend them for a period of time?
23     A. I attend all three.
24     Q. I'm assuming not
25 simultaneously, you attended them for



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787    www.cefgroup.com    fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

**Page 166**

1 separate periods of time?
2 　　A. Say that again, please.
3 　　Q. I'm assuming not
4 simultaneously, you attended them for
5 separate periods of time?
6 　　A. A couple of them.
7 　　Q. So, I'm sorry, that was
8 simultaneously you're saying?
9 　　A. Couple of them, yes.
10 　　Q. For what purpose were you
11 simultaneously attending schools?
12 　　A. Education.
13 　　Q. So you were taking selected
14 classes at Warren G. Harding and Warren
15 Western Reserve?
16 　　A. Yes, you got it.
17 　　Q. Of these schools, which are
18 public schools?
19 　　A. All of them.
20 　　Q. At the bottom of the same
21 page it states, "Have you ever been
22 convicted of a felony or a misdemeanor
23 other than traffic violations," and you
24 checked the no box, is that right?
25 　　A. Yeah.

**Page 167**

1 　　Q. So at that point you were
2 certifying to ABC that you had never
3 been convicted of a felony or
4 misdemeanor other than a traffic
5 violation?
6 　　A. Yeah.
7 　　　　- - - - -
8 　　(Thereupon, Deposition
9 　　Exhibit-26 was marked for
10 　　purposes of identification.)
11 　　　　- - - - -
12 　　Q. Around the same time that
13 you completed your employment
14 application you completed the document
15 or it appears you completed the document
16 that I'm handing you that has now been
17 marked as Deposition Exhibit 26.
18 　　A. Okay.
19 　　Q. Is that your signature at
20 the bottom of Deposition Exhibit 26?
21 　　A. It appears to be.
22 　　Q. And that looks like June 29,
23 2007, is that right, that you signed it?
24 　　A. Correct.
25 　　Q. Last paragraph of the

**Page 168**

1 acknowledgment states, "Also, the
2 company cannot guarantee you a job. All
3 employment with the company is
4 terminable at will, which means you may
5 resign your employment at any time for
6 any reason. No one other than the
7 president of the company has any
8 authority to change the at will nature
9 of your employment. No statements by
10 any person shall bind the company to
11 continue your employment unless they are
12 in writing and signed by the president."
13 Did I read that correctly?
14 　　A. Word for word.
15 　　Q. So, again, in signing this
16 document above your signature which
17 reads, "I have read and understood these
18 above statements," you were certifying
19 to the company that you had read and
20 understood the statements set forth in
21 the acknowledgements on this page,
22 correct?
23 　　A. Yes.
24 　　Q. Now, we mentioned John Taraba
25 earlier in the deposition and I think

**Page 169**

1 you even pulled out his business card
2 and read off his job title. My
3 question very basically is, as a
4 warehouse loader you reported to John,
5 is that right?
6 　　A. No, Ryan Cozart.
7 　　Q. So you had no reporting
8 relationship to Mr. Taraba?
9 　　A. In my first day hired John
10 advised me, instructed me to report to
11 Ryan Cozart.
12 　　Q. So, again, you had no
13 reporting relationship to Mr. Taraba, is
14 that your testimony?
15 　　A. Well, he's the manager but,
16 no, Ryan pretty much is the supervisor,
17 whatever, foreman.
18 　　Q. So you didn't consider Mr.
19 Taraba your supervisor then?
20 　　A. He was the manager, yes.
21 　　Q. So then again I'm confused
22 on your answer. You're saying he was
23 your supervisor but you didn't report to
24 him?
25 　　A. I didn't report to him, I



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787　　www.cefgroup.com　　fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

**Page 170**

1  reported to Ryan Cozart when I got
2  hired, first day he told me report to
3  Ryan Cozart.
4      Q. So from your first day of
5  employment you understood that you
6  reported to Mr. Cozart?
7      A. Yeah, everybody did.
8      Q. Everybody means --
9      A. In the warehouse.
10     Q. In the entire warehouse?
11     A. At nights.
12     Q. Even on first shift?
13     A. No, Ryan is not on first
14  shift.
15     Q. So your statement refers to
16  employee on the second shift or what
17  we've been calling the second shift?
18     A. Nights.
19     Q. Do you have any idea whether
20  at the time ABC hired you ABC considered
21  you a seasonal employee?
22     A. No.
23     Q. You did have an understanding
24  though that you had probationary status
25  for the first 90 days of your

**Page 171**

1  employment?
2      A. Probationary, yes. The
3  grievance is 8291 regarding wages with
4  probation and that should satisfy that.
5      Q. Well --
6      A. January 3rd, I believe, 2008.
7      Q. Sitting here today are you
8  claiming that you didn't receive wages
9  that you were entitled to for your
10  probationary period?
11     A. Say that again, please.
12     Q. Sitting here today are you
13  trying to claim that you did not receive
14  wages to which you were entitled to
15  during your probationary period?
16     A. I'm not.
17     Q. You completed your
18  probationary period sometime in
19  September of 07, is that right?
20     A. I can't recall.
21     Q. You were hired in July of 07
22  and you had a 90 day probationary
23  period, I guess that would put you,
24  what, in October of 07?
25     A. Not to get picky about it,

**Page 172**

1  sure.
2      Q. Do you know who made the
3  decision to retain you upon completion
4  of your probationary period?
5      A. You'd have to ask some
6  representative.
7      Q. So you don't know?
8      A. I don't know.
9      Q. Do you know who was involved
10  in the decision to retain you after you
11  completed your probationary period?
12     A. You'd have to contact your
13  client and see, I don't know.
14     Q. Do you know what facts were
15  taken into consideration in deciding to
16  retain you after you completed your
17  probationary period?
18     A. I don't have that privileged
19  information.
20     Q. When you say privileged are
21  you trying to assert that an attorney
22  was involved in that decision?
23     A. I'm not.
24     Q. And after you completed your
25  probationary period you then became

**Page 173**

1  eligible for certain ABC benefits, is
2  that right?
3      A. Meaning?
4      Q. Different employment
5  benefits, insurance, other things that
6  you became eligible for upon completion
7  of your probationary period, correct?
8      A. Insurance, union benefits,
9  wages, yes.
10     Q. At the time that you started
11  your employment with ABC in 2007 you
12  were aware that at least -- strike the
13  question, please. At the time you
14  started your employment in 2007 were you
15  aware that at least one employee on the
16  day shift was splitting jobs between
17  warehouse and vending?
18     A. Say that again, please.
19     Q. At the time that you were
20  hired in 2007 at ABC were you aware
21  that at least one employee on the day
22  shift was splitting jobs between
23  warehouse and vending?
24     A. When I was hired I didn't
25  know anybody, so no.



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787    www.cefgroup.com    fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

## Page 174

1  Q. After you started did you
2  become aware that an employee was
3  splitting time between warehouse and
4  vending on the day shift?
5  A. I believe there was several
6  people splitting stuff. I can't recall.
7  I believe so.
8  Q. Doug Haus, do you know him?
9  A. Yeah, yeah, I remember him,
10 big guy.
11 Q. And Doug was -- H A U S.
12 And Doug was specifically splitting time
13 between vending delivery and warehouse
14 work, correct?
15 A. I don't know what their
16 arrangements really are. I just know he
17 would make an appearance.
18 Q. And that went back to the
19 beginning of your employment, you recall
20 Mr. Haus making an appearance in the
21 warehouse, correct?
22 A. Yeah, different people make
23 appearance on Thursdays, the heavy day.
24 Q. So you started your
25 employment sometime in July of 07 and

## Page 175

1  then in January of 08 were laid off,
2  correct?
3  A. Correct. Right after my
4  grievance settled.
5  Q. Which grievance are you
6  referring to?
7  A. Let's say it was 82
8  something, 8290.
9  Q. Oh, this is the wage issue
10 that you were referring to about payment
11 as a probationary employee, is that
12 right?
13 A. Sounds right.
14        - - - - -
15 (Thereupon, Deposition
16 Exhibit-27 was marked for
17 purposes of identification.)
18        - - - - -
19 Q. Handing you what's been
20 marked Deposition Exhibit 27, you've
21 seen this document before, correct?
22 A. Yeah, I'm familiar with it.
23 Q. And this document is a
24 letter dated January 11, 2008 that you
25 produced and it is addressed to whom it

## Page 176

1  may concern and indicates that you'll be
2  on temporary layoff effective January
3  14th, 2008, this will continue for an
4  undetermined length of time, correct?
5  A. Indicating temporary layoff,
6  yes.
7  Q. And it also indicates this
8  will continue for an undetermined length
9  of time, correct?
10 A. Separate sentence, yes.
11 Q. Yes, that is a separate
12 sentence and you understood this was
13 referring to your layoff, correct?
14 A. Sure, it's not a fragment,
15 it's two sentences, correct.
16 Q. Do you have personal
17 knowledge of why you were laid off at
18 that time?
19 A. Personal knowledge?
20 Q. Uh-hum.
21 A. No.
22 Q. Did you ask anyone why you
23 were laid off at that time?
24 A. I can assume.
25 Q. Did you ask anyone why you

## Page 177

1  were laid off in January of 08?
2  A. No.
3  Q. Do you know who made the
4  decision to lay you off at that time?
5  A. No.
6  Q. Do you who was involved in
7  the decision to lay you off at that
8  time?
9  A. Agents of the company.
10 Q. Do you know any individual
11 who was involved in the decision to lay
12 you off at that time?
13 A. At that time I'm not sure.
14 Q. Do you know what facts were
15 taken into consideration when you were
16 laid off or the decision was made to
17 lay you off in January of 08?
18 A. Say that again, please.
19 Q. Do you know what facts were
20 taken into consideration when the
21 decision was made to lay you off in
22 January of 2008?
23 A. What do you mean facts?
24 Q. Do you know what the company
25 considered when it made the decision to



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787   www.cefgroup.com   fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

**Page 178**

1 lay you off in January of 08?
2     **A.** You have to ask them, I
3 don't know.
4     **Q.** And you were recalled
5 sometime in March of 08, is that right?
6     **A.** I don't have the papers in
7 front of me.
8     - - - - -
9     (Thereupon, Deposition
10     Exhibit-28 was marked for
11     purposes of identification.)
12     - - - - -
13     **Q.** Showing you what's been
14 marked Deposition Exhibit 28, this is a
15 letter that you produced written by you
16 on March 31st, 2008 to Teamsters Local
17 377.
18     **A.** Oh, the trustee Charlie
19 Byrnes, okay.
20     **Q.** Looking at the last -- let
21 me ask this: You wrote this letter,
22 correct?
23     **A.** Yeah, I drafted it.
24     **Q.** The information certainly you
25 wanted to set forth in the document was

**Page 179**

1 true since you were writing to Teamsters
2 Local 377, right?
3     **A.** Sure. My signature isn't
4 subscribed upon this, but yeah.
5     **Q.** In the last paragraph of
6 this letter you state, "As such,
7 regarding said layoff or discharge, it's
8 been one working day since being called
9 back to work on March 31st, 2008." Did
10 I read that correctly?
11     **A.** Word for word.
12     **Q.** Does that refresh your
13 recollection that you were recalled to
14 work in March of 2008?
15     **A.** Sure.
16     **Q.** Flipping, I think there's a
17 second page to that exhibit, is there?
18     **A.** Yeah.
19     **Q.** That appears to be a letter
20 from Charlie Byrnes to yourself dated
21 April 1st, 2008. Is it your
22 understanding this is a response from
23 Mr. Byrnes, B Y R N E S, to you to your
24 March 31st, 2008 letter?
25     **A.** Yeah, because of my contact

**Page 180**

1 with Mr. Hoffa, yes, yes.
2     **Q.** When you were recalled in
3 March of 2008 you were recalled to your
4 warehouse position, correct?
5     **A.** Yes, that's my position,
6 warehouse, yes.
7     **Q.** Do you recall that at the
8 time you were brought back in March of
9 08 several employees were on vacation or
10 leaving for vacation shortly after that?
11     **A.** I don't recall right now.
12     **Q.** It's possible, you just don't
13 recall?
14     **A.** I don't know. If you say
15 someone is on vacation, so be it, it's
16 okay.
17     **Q.** And you maintained your
18 health benefits during your recall --
19 or, excuse me, your layoff period, is
20 that right?
21     **A.** They had me on a personal or
22 a leave of absence, yeah, I don't know
23 why they did that, but yeah.
24     **Q.** You came back in March of 08
25 and then you were subsequently laid off

**Page 181**

1 in January of 09 again, correct?
2     **A.** It sounds about right.
3     - - - - -
4     (Thereupon, Deposition
5     Exhibit-29 was marked for
6     purposes of identification.)
7     - - - - -
8     **Q.** Showing you what's been
9 marked Deposition Exhibit 29, another
10 letter that you produced, this one is
11 dated January 9th, 2009 addressed to
12 whom it may concern, refers to you, it
13 says you'll be on temporary layoff
14 effective January 12, 2009. Perhaps
15 there's a period missing, I don't know.
16 Then it says, "This will continue for an
17 undetermined length of time." Did I
18 read that correctly?
19     **A.** Yeah, the grammar is
20 fragle(sic) in it, you're right, yeah,
21 yeah, word for word.
22     **Q.** So you understood in the
23 sentence, "This will continue for an
24 undetermined length of time," referred
25 to your layoff, correct?



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787    www.cefgroup.com    fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 · 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 · 330.253.8119

Court Reporting · Video Conferencing · Legal Video Production · Investigations
Claims Services · Process Service · Record Retrieval · Document Management · Trial Graphics

**Page 182**

1       A. Say that again, please.
2       Q. You understood in the
3 sentence, "This will continue for an
4 undetermined length of time," that the
5 word this referred to your layoff,
6 correct?
7       A. Defining temporary layoff
8 undetermined, yes.
9       Q. My question is just simply
10 from reading the sentence, "This will
11 continue for an undetermined length of
12 time," you understood "this" referred to
13 your layoff, correct?
14       A. Sure, the temporary layoff,
15 yes.
16       Q. Do you have personal
17 knowledge of why you were laid off in
18 January of 09?
19       A. I don't know. You have to
20 ask the company.
21       Q. Did you ever ask the company
22 why you were laid off in January of 09?
23       A. No.
24       Q. Do you who made the decision
25 to lay you off in January of 09?

**Page 183**

1       A. You have to ask the company,
2 the company agent.
3       Q. Do you know who was involved
4 in the decision to lay you off in
5 January of 09?
6       A. You got signatures here,
7 these company guys right there, the
8 company, what's it say, Stimmel, Fisher,
9 Bobal and 377.
10       Q. Well, certainly Local 377 is
11 not part of the company, correct?
12       A. True.
13       Q. And my question is, do you
14 have any personal knowledge of who was
15 involved in the decision to lay you off
16 in January of 09?
17       A. No.
18       Q. So similarly you don't know
19 what facts were considered by those
20 individuals when they made the decision
21 to lay you off in 09, correct?
22       A. You have to ask them, I
23 don't know.
24       Q. Once again you stayed on
25 company health benefits while you were

**Page 184**

1 on layoff?
2       A. Say that again, please.
3       Q. Once again you stayed on
4 company health benefits while you were
5 on layoff, correct?
6       A. They had me on a leave of
7 absence, yes. I don't know why they
8 did that. Yes.
9       Q. Do you recall that sometime
10 in April of 09 you had a conversation
11 with Mr. Taraba about when you would be
12 recalled and his response was not until
13 June of 09 because that coincided with
14 vacations?
15       A. I don't recall.
16       Q. You don't recall one way or
17 the other, correct?
18       A. When was it?
19       Q. April of 09.
20       A. I'm not familiar. If you
21 say, so be it.
22       Q. You were, in fact, recalled
23 in June of 09, is that right?
24       A. I don't have the paperwork
25 in front of me. If you say so, so be

**Page 185**

1 it.
2       - - - - -
3       (Thereupon, Deposition
4       Exhibit-30 was marked for
5       purposes of identification.)
6       - - - - -
7       Q. Showing you what's been
8 marked Deposition Exhibit 30, a document
9 that appears to be from you dated June
10 3rd of 09 written to John Taraba. Does
11 this document refresh your recollection
12 that you returned to work June 8th of
13 2009?
14       A. It's not -- my signature
15 isn't subscribed but it appears to be.
16       Q. We haven't really seen any
17 typed documents that you submitted where
18 your signature was subscribed, correct?
19       A. Yeah, I don't know why, but
20 yes.
21       Q. So this does refresh your
22 recollection you were recalled June of
23 09, correct?
24       A. Yes. I didn't want any
25 disruption and more problems, the grief,



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787    www.cefgroup.com    fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

**Page 186**

1　just trying to be a good faith, good
2　person, yes, courtesy.
3　　　Q. And you were again recalled
4　to your warehouse position, is that
5　right?
6　　　A. Excuse me. Yes, that's
7　correct.
8　　　Q. Coming back in June of 09
9　you were then subsequently laid off
10　September 21st of 09, correct?
11　　　A. Yeah, that sounds right.
12　　　- - - - -
13　　　(Thereupon, Deposition
14　　　Exhibit-31 was marked for
15　　　purposes of identification.)
16　　　- - - - -
17　　　Q. Handing you what's been
18　marked Deposition Exhibit 31, it's a
19　document produced by you that contains
20　-- sorry, Mike -- the highlighted
21　portions and the red writing. This is
22　a document dated September 18th, 2009,
23　to whom it may concern. It indicates
24　you'll be placed on layoff effective
25　Monday, September 21, 2009. The next

**Page 187**

1　sentence, "This layoff will continue for
2　an undetermined length of time." Did
3　that I read that correctly?
4　　　A. Word for word.
5　　　Q. Do you have personal
6　knowledge of why you were laid off in
7　September of 09?
8　　　A. No.
9　　　Q. Did you ask?
10　　　A. No.
11　　　Q. Who made the decision -- or
12　strike the question, please. Do you
13　know who made the decision to lay you
14　off in September of 09?
15　　　A. A company agent.
16　　　Q. Do you know what individual
17　made the decision to lay you off?
18　　　A. I don't know, you have to
19　ask them.
20　　　Q. Do you know who was involved
21　in the decision to lay you off in
22　September of 09?
23　　　A. You have to ask the company.
24　　　Q. Do you know what was taken
25　into account when making the decision to

**Page 188**

1　lay you off in September of 2009?
2　　　A. Repeat the question.
3　　　Q. I'm sorry?
4　　　A. Repeat the question.
5　　　Q. Do you know what was taken
6　into account when making the decision
7　lay you off in September of 09?
8　　　A. What do you mean account?
9　　　Q. What facts were considered
10　when whoever made the decision to lay
11　you off in September of 09 made that
12　decision?
13　　　A. No.
14　　　Q. You stayed on company health
15　benefits during this layoff as well,
16　correct?
17　　　A. Say that again, please.
18　　　Q. You stayed on company health
19　benefits during this layoff as well,
20　correct?
21　　　A. Yeah, they had me on leave,
22　private leave or something. I don't
23　know why they did that, they keep doing
24　that. Personal leave or something.
25　Yes, health benefits, yes.

**Page 189**

1　　　Q. After receiving a copy of
2　Deposition Exhibit 31 did you contact
3　Mr. Taraba to discuss your layoff?
4　　　A. No.
5　　　Q. Did you contact Mr. Stimmel
6　to discuss your layoff?
7　　　A. No.
8　　　Q. When you received a copy of
9　Deposition Exhibit 31 on or about
10　September 18, 2009 did you contact the
11　union to discuss your layoff?
12　　　A. Every month.
13　　　Q. I'm sorry?
14　　　A. Every month, yes.
15　　　Q. You contacted them every
16　month beginning September 18th, 2009 to
17　discuss your layoff?
18　　　A. Yes, I had pay my dues every
19　month.
20　　　Q. Okay. So, I'm sorry, the
21　contact you're referring to was to pay
22　your dues?
23　　　A. Yeah, and small talk, banter,
24　shop talk, et cetera, et cetera.
25　　　Q. Did you also ask when you



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787　　www.cefgroup.com　　fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

**Court Reporting • Video Conferencing • Legal Video Production • Investigations**
**Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics**

## Page 190

1 were going to be recalled when you
2 contacted the union?
3  A. During the trusteeship I was
4 worried and understand a gray area
5 because they removed two officials,
6 Colello and DePasquale or whatever his
7 name is, for wrongdoing, quote, unquote.
8 So the union was kind of in chaos,
9 infighting, disorganized, disruption, so
10 I kind of kept going down there at the
11 hall in Youngstown.
12  Q. I'm sorry, you were concerned
13 about your recall status because there
14 was chaos going on at the union and you
15 didn't want you to get lost in the
16 shuffle of that chaos?
17  A. I didn't want to make them
18 pissed but I did know and felt that I
19 have to keep paying my dues, especially
20 in this time. Plus the contract
21 negotiations was ongoing, there was no
22 contract, they got to ratify the
23 contract. They didn't ratify it until
24 March of 2000, what is it, 11, 2011 --
25 or 2010, I'm sorry, I misspoke. So I

## Page 191

1 made an appearance but sometimes they
2 got angry at me so I kind of shied off
3 a little bit, just try to keep in good
4 contact with them.
5  Q. So once again you wanted to
6 make sure that your status, your recall
7 status, was not lost in the shuffle with
8 everything that was going on that you
9 just described with the union?
10  A. Say that again, please.
11  Q. Once again you wanted to
12 insure that your recall status was not
13 lost in the shuffle with everything that
14 you just recounted was going on with the
15 union?
16  A. I was making sure my
17 employment was okay.
18  Q. Did the union give you any
19 indication your employment was not okay
20 in response to your inquiries?
21  A. No.
22  Q. Did you contact -- on or
23 about September 18th, 2009 after
24 receiving Deposition Exhibit 31 did you
25 contact Mr. Bobal to discuss your

## Page 192

1 layoff?
2  A. No.
3  Q. Same question with regards to
4 Cindi Fisher, F I S H E R?
5  A. Say it again, please.
6  Q. Same question with regards to
7 Miss Fisher, did you contact Miss Fisher
8 on or about September 18th, 2009 to
9 discuss your layoff?
10  A. Nothing in payroll, no.
11  Q. And you say nothing in
12 payroll because you understand Miss
13 Fisher is in the company's payroll
14 department, correct?
15  A. Yeah, just past experience
16 with her in 2007, payroll, December
17 31st, December whatever it was, yeah.
18  Q. So other than the union
19 conversations you just mentioned did you
20 contact anyone about being recalled to
21 work after receiving the September 18,
22 2009 correspondence?
23  A. Just union people.
24  Q. So it's your position that
25 when you received the September 18th,

## Page 193

1 2009 correspondence that this was a
2 permanent layoff?
3  A. No.
4  Q. You filed a grievance on
5 August 30th --
6  A. Yes.
7  Q. -- 2011?
8  A. That's the wage claim.
9  Q. That was 11823, right?
10  A. Yeah, it's 118, yeah, you're
11 correct, 23. She has nothing to do
12 about layoff, it's just a wage claim to
13 get paid wages, union benefits. Nothing
14 else.
15  - - - - -
16  (Thereupon, Deposition
17  Exhibit-32 was marked for
18  purposes of identification.)
19  - - - - -
20  Q. Handing you what's been
21 marked Deposition Exhibit 32, it's a
22 copy of the grievance we've been
23 discussing, 11823?
24  A. Yeah, I wrote it myself.
25  Q. In the nature of report



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787   www.cefgroup.com   fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

**Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics**

1 section you have a clause that states,
2 "As the company has assigned others to
3 work," do you see that?
4     **A.** Where, what are you looking
5 at?
6     **Q.** The section entitled nature
7 of report, that's where you described
8 your grievance?
9     **A.** Okay.
10     **Q.** There's a clause on the
11 third line --
12     **A.** Okay, I see it.
13     **Q.** -- that starts, "As the
14 company has assigned others to work," do
15 you see that?
16     **A.** Yes.
17     **Q.** To whom are you referring
18 when you say others to work?
19     **A.** Any worker.
20     **Q.** Did you have personal
21 knowledge that somebody had been
22 assigned to work your job?
23     **A.** What do you mean personal
24 knowledge?
25     **Q.** Well, maybe I'm making an

1 assumption and you can correct me if I
2 have this wrong, but I thought we talked
3 about this earlier in the deposition
4 that you filed this grievance because
5 you believed that you were laid off and
6 someone was performing your job?
7     **A.** Well, based on a discussion
8 with Joe Warner from OSHA on the 26th
9 of August, you know, 2010, I'm assuming
10 I had to be replaced and I'm assuming
11 that other workers are covering me if
12 they didn't hire anybody and if they
13 did, I mean, they had a lot of work so
14 I figured they got to bring somebody in.
15 So it's a good educated guess.
16     **Q.** Did you know or have
17 personal knowledge of the level of
18 orders that the company was receiving in
19 the summer of 09?
20     **A.** Say that --
21     **Q.** Did you have any personal
22 knowledge of the level of orders for
23 product the company was receiving in the
24 summer of 09?
25     **A.** What do you mean level of

1 orders?
2     **Q.** The amount of orders they
3 were receiving?
4     **A.** You mean volume?
5     **Q.** Yes.
6     **A.** I don't know. What date was
7 that to?
8     **Q.** Summer of 09.
9     **A.** Busy season, you should have
10 a lot of orders.
11     **Q.** When you say busy season are
12 you saying that summer of 09 was busy
13 or generally the summer is a busy
14 season?
15     **A.** I'm just politely saying the
16 summer is always busy. It's pop season,
17 quote, unquote.
18     **Q.** But you don't have any
19 personal knowledge of the orders the
20 company was actually receiving, correct?
21     **A.** No.
22     **Q.** Now, we talked about this
23 briefly, at least I think you mentioned
24 it before, that you attended a meeting
25 on September 14th, 2010 at ABC about

1 your grievance, correct?
2     **A.** Yes, about this wage claim
3 11823.
4     MS. MCARDLE: Off the record.
5     (Discussion off record.)
6     - - - - -
7     (Thereupon, Deposition
8     Exhibit-33 was marked for
9     purposes of identification.)
10     - - - - -
11     **Q.** Showing you what's been
12 marked Deposition Exhibit 33, this is a
13 document that you produced to us in
14 discovery with the highlighted portions
15 on there, appears to be a letter to
16 you, a copy to the Teamsters Local 377,
17 Bill Stimmel, John Taraba, and the
18 document is from Mike Bobal. It's dated
19 9-30-2010 and, as you said, it related
20 to grievance 11823?
21     **A.** Yes.
22     **Q.** You received a copy of this
23 document as you put highlighted marks on
24 it, correct?
25     **A.** Certified mail, I signed for



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787   www.cefgroup.com   fax:216.687.0973
**Cleveland:** 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
**Akron:** One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

**Court Reporting • Video Conferencing • Legal Video Production • Investigations**
**Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics**

**Page 198**

1   it.

2      **Q.** So we talked a little bit

3   about the meeting on September 14th

4   earlier but I have a few more specific

5   questions about that meeting.

6      **A.** Sure.

7      **Q.** What else -- to the best of

8   your recollection, how long was that

9   meeting on September 14, 2010?

10      **A.** I can't recall, you have to

11   ask the company. I'm sure they timed

12   it because I'm sure they got paid for

13   it.

14      **Q.** What subjects were discussed

15   at the September 14, 2010 meeting?

16      **A.** Collecting bargaining

17   subjects.

18      **Q.** What specific subjects as

19   they related to your employment with ABC

20   were discussed at the September 14, 2010

21   meeting?

22      **A.** This is the wage claim issue

23   regarding wages, getting paid, with

24   other workers working.

25      **Q.** And what other subjects other

**Page 199**

1   than other workers working were

2   discussed during the September 14, 2010

3   meeting?

4      **A.** I believe I brought up the

5   issue that they didn't call me for

6   annual job bidding for the year, since

7   the contract was ratified and looks like

8   I got left out somewhere, I think.

9      **Q.** Did the company respond?

10      **A.** The result of that meeting,

11   they basically walked out and left.

12      **Q.** So you're saying the company

13   -- you made a statement about not being

14   called for annual job bidding and no one

15   from the company responded to you?

16      **A.** You know, there were so many

17   subjects, I mean, I just have to just

18   -- just jump into it and jump -- it was

19   all over the place, so there was a lot

20   of different subjects. Because Mr.

21   Bobal pretty much turned red in the face

22   and his demeanor changed and his conduct

23   changed and was upset and angry and they

24   decided to end the meeting, just walk

25   out, it was incomplete. Nothing was

**Page 200**

1   really resolved at that point.

2      **Q.** So you're saying --

3      **A.** Union reps were pretty much

4   backing my side and certified everything

5   I'd said and says I'm going to get paid

6   my wages and...

7      **Q.** So you're saying Mr. Bobal's

8   demeanor changed from the start of the

9   meeting to the point when the company

10   people left?

11      **A.** Yeah, you could confer with

12   your client, it was pretty drastic in

13   change.

14      **Q.** Mr. Potts, we're here to

15   take your deposition --

16      **A.** Absolutely.

17      **Q.** -- so I can get the facts

18   from you. I certainly can confer with my

19   client but you filed the lawsuit against

20   ABC so I'm entitled to some answers,

21   okay?

22      **A.** That's why I'm here.

23      **Q.** Great. Thank you.

24      MR. ROSSI: Don't argue with her.

25      THE WITNESS: Oh, I'm sorry,

**Page 201**

1   that's --

2      MR. ROSSI: Just answer her

3   question if she asks one.

4      **A.** I apologize.

5      **Q.** No, it's no offense.

6      **A.** I don't mean to be out of

7   line.

8      **Q.** So my question again is, are

9   you saying Mr. Bobal's demeanor changed

10   from the start of the meeting until the

11   point in time when the company people

12   left?

13      **A.** Yeah. The other company

14   reps was fine, demeanor is good, he was

15   the only one.

16      **Q.** And then you said there were

17   so many subjects discussed and that's

18   really what I'm trying to get a handle

19   on.

20      **A.** Yeah.

21      **Q.** You said that there was the

22   wage claim, that you were not called for

23   annual job bidding and then what other

24   subjects were discussed?

25      **A.** Yeah, that's why we were



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787   www.cefgroup.com   fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44113 · 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 · 330.253.8119

Court Reporting · Video Conferencing · Legal Video Production · Investigations
Claims Services · Process Service · Record Retrieval · Document Management · Trial Graphics

**Page 202**

1 there. This is a wage claim, annual
2 job bidding, workers from other
3 departments working. We got -- I got
4 the seniority list for the first time,
5 it's dated 9-14-2010. That's when I
6 seen that there are seven or eight
7 people hired under me. That's when we
8 seen that there's no utility
9 classification on the seniority sheet.
10 A lot of information. Seen that another
11 guy was hired the same day I was laid
12 off. All kind of stuff.
13     Q. And I'm looking for the
14 subjects that were discussed at that
15 meeting. So I have wage claim, you
16 were not called for annual job bidding,
17 that other workers were assigned to your
18 work and you received a seniority list.
19 What other subjects?
20     A. The basis of that claim is a
21 wage claim proving that they had other
22 workers in there and doing my job. And
23 I thought I accomplished it and
24 unfortunately the meeting ended, they
25 run out, that was it. Then I get this

**Page 203**

1 letter in the mail.
2     Q. You thought you accomplished
3 proving that the company had someone
4 else in your position?
5     A. I thought for my grievance
6 with proving that all those things, that
7 I thought I made a good face, you know,
8 not good -- good faith argument in
9 proving my points to prevail in the
10 grievance on 11823 so I can get paid
11 wages.
12     Q. And, again, you're saying
13 that you feel you proved that the
14 company had someone else in your
15 position?
16     A. Well, I thought that...
17     Q. This is a yes or no
18 question.
19     A. Repeat the question.
20     Q. Are you saying that you
21 proved the company had someone else
22 working your position?
23     A. Repeat that.
24     Q. Are you saying that you feel
25 you proved in that September 14, 2010

**Page 204**

1 meeting that the company had someone
2 else working your position?
3     A. Working my jobs, yes.
4     Q. Who was that?
5     A. Many people.
6     Q. You said that someone
7 replaced you so are you not saying that
8 now, there's not somebody who took over
9 your position in the warehouse?
10     A. Let me clarify. I received
11 the seniority list for the first time
12 and take notice or took notice of new
13 employees.
14     Q. New warehouse employees?
15     A. New warehouse, new
16 merchandisers, new drivers, there's a
17 lot of new employees on that sheet. I
18 have taken notice and without question
19 somebody is working in the warehouse.
20     - - - - -
21     (Thereupon, Deposition
22     Exhibit-34 was marked for
23     purposes of identification.)
24     - - - - -
25     Q. Handing you what's been

**Page 205**

1 marked Deposition Exhibit 34, it's a
2 document that you produced highlighting
3 and red pen on the document with the
4 time you produced it.
5     A. Yes.
6     Q. Looking, this appears to be
7 a letter dated September 14, 2010?
8     A. Yes.
9     Q. To the local union?
10     A. Same day pretyped, yes.
11     Q. I'm sorry, you typed this
12 prior to arriving at the meeting?
13     A. Yeah.
14     Q. Didn't you just testify that
15 you received the seniority list for
16 first time at that meeting?
17     A. That's right. I didn't
18 attach it to this.
19     Q. Then I guess I'm unaware how
20 you knew that your name was not last in
21 the plant-wide seniority list at that
22 time?
23     A. I typed this letter up and
24 brought it that day, September 14, 2010.
25 That was my argument at the time and


**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787     www.cefgroup.com     fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

## Page 206

1 that was my position and my position was
2 stating permanent layoff.
3 **Q.** Why did you believe that the
4 subject of permanent layoff was going to
5 be discussed at the September 14, 2010
6 meeting?
7 **A.** Because my seniority time is
8 good for one year after date of
9 involuntary layoff, which is
10 9-21st-2010. So cutting whatever
11 manipulations and things that they're
12 doing right to the point, laid off a
13 long time, permanent layoff, that's what
14 I jumped into at that time, is my
15 understanding of the information I got.
16 **Q.** So what you're saying is you
17 were speaking of a permanent layoff
18 because the one year period under the
19 contract was about to expire on
20 September 21st, 2010 and, to use your
21 words earlier in the deposition, that
22 you'd be done for all purposes at that
23 point?
24 **A.** My position was to show, to
25 prevail on that grievance, to show a

## Page 207

1 prevailing case and I thought I did for
2 my grievance.
3 **Q.** And my question is different.
4 You referenced permanent layoff, I asked
5 you why you even thought permanently
6 layoff would a subject to be discussed
7 at the September 14, 2010 meeting and
8 you responded because your one year
9 period was almost up and you made some
10 characterizations about the company --
11 **A.** Sure.
12 **Q.** -- and that's why you said
13 you raised it. So I'm clarifying in
14 saying, so you raised the subject of
15 permanent layoff because you believed
16 under the terms of the contract one year
17 of layoff was about to expire and as of
18 September 21st, 2010 you would be, using
19 your words, done for all purposes?
20 **A.** Rephrase that.
21 **Q.** I really can't.
22 MS. MCARDLE: I really can't.
23 Can you read that back, please?
24 (Record read.)
25 **A.** Okay. That's the way I

## Page 208

1 think. That's my response, that's how I
2 think and knowing that seven days of
3 seniority remains, my seniority recall
4 rights, everything else, seven days away
5 to help them get to a decision real
6 fast, pay me, discuss layoff issues and
7 everything else, union contract, the
8 trusteeship, the removal of the union
9 people, new employees, other employees
10 doing work out of classification, all
11 that, because that's how I think.
12 That's why I did that. I pretyped this
13 letter ahead of time and came in and
14 passed it out to every one of them at
15 the table. That was my position
16 statement.
17 **Q.** So let's look at the
18 seniority list that is attached to
19 Deposition Exhibit 34 --
20 **A.** Yes.
21 **Q.** -- but you're saying that
22 was not part of the September 14 letter
23 that you represented?
24 **A.** That's what we found out
25 that day. I don't think they give me

## Page 209

1 the list until after, the union mailed
2 it to me.
3 - - - - -
4 (Thereupon, Deposition
5 Exhibit-35 was marked for
6 purposes of identification.)
7 - - - - -
8 **Q.** Let's do this then, please
9 take the list off of Exhibit 34.
10 **A.** Yeah.
11 **Q.** And put Exhibit 35 at the
12 bottom of the first page of the list
13 and we'll introduce these separately.
14 Showing you what's been marked
15 Deposition Exhibit 35, this is a copy of
16 the layoff -- excuse me, the seniority
17 list that you received at the September
18 14, 2010 meeting, correct?
19 **A.** Say that again.
20 **Q.** Showing you what's been
21 marked Deposition Exhibit 35, this is a
22 copy of the seniority list that you said
23 you received on September 14, 2010,
24 correct?
25 **A.** They didn't give it to me.



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787    www.cefgroup.com    fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

1  I was able to look at it that day,
2  correct.
3  **Q.** If you need to look at this
4  list to refresh your recollection,
5  please do so.
6  **A.** Sure.
7  **Q.** But please identify all the
8  employees that you claim were performing
9  your job.
10  **A.** I can only assume, I wasn't
11  there.
12  **Q.** So you have no personal
13  knowledge of anyone on this list who was
14  performing your job while you were on
15  layoff, correct?
16  **A.** It could be any one of them.
17  **Q.** Now, you referenced also
18  earlier in your testimony that the
19  company hired other warehouse
20  individuals while you were on layoff.
21  Would you please turn to the second page
22  of the exhibit, which is the seniority
23  by department list, you are the least
24  senior employee listed under warehouse,
25  correct?

1  **A.** After studying that yes,
2  correct. Interesting.
3  **Q.** And if you flip to the first
4  page of Deposition Exhibit 35, this is
5  the plant-wide seniority list and
6  numbers 21 through 30 are all identified
7  as merchandisers, correct?
8  **A.** Yes.
9  **Q.** And looking at the plant-wide
10  seniority list you are the least senior
11  warehouse person, number 19 on this
12  list, correct?
13  **A.** I would have to disagree.
14  May I separate this so I can look at
15  them side-by-side?
16  **Q.** My question is really looking
17  at the plant-wide seniority list, which
18  is the first page of Deposition Exhibit
19  35, you are the least senior warehouse
20  employee listed on this list, correct?
21  **A.** On this document, yes.
22  **Q.** Do you believe that there's
23  something on the second page that would
24  show that you were not the least senior
25  warehouse employee as of September 14,

1  2010?
2  **A.** Yeah, I looked right at it.
3  **Q.** And who has less seniority
4  who holds the position as warehouse
5  loader?
6  **A.** I always been number five
7  and I count one, two, three, four, five.
8  There's Tony Nicastro who has been
9  utility, gets less pay than me, starts
10  earlier than me and on this date,
11  9-14-2010, it's a warehouse, new
12  contract ratified in March 2010,
13  supposed to have seniority updates. I
14  just don't know why he's in the
15  warehouse and no utility classification.
16  And if he did get in the warehouse his
17  classification department seniority is
18  incorrect.
19  **Q.** On what basis do you believe
20  his seniority is incorrect?
21  **A.** Well, when I was hired in
22  July of 2007 he was utility.
23  **Q.** And my question is different.
24  You said if he was in the warehouse his
25  seniority is incorrect. On what basis

1  do you believe his seniority is
2  incorrect because he's in the warehouse?
3  **A.** Well, they would have to
4  post a job for him to take a warehouse
5  job. The company would have to post an
6  opening or if they -- what's the word
7  I'm looking for -- relieve a position or
8  get rid of a position they still have
9  to post for other people. Even the
10  annual job bidding, everybody has to get
11  reassigned in seniority classifications.
12  For example, you can look at the
13  department seniority under Kevin
14  Sypherd, department seniority date
15  6-21st-2010, date of hire 7-21st-2003.
16  I mean, his status is incorrect.
17  **Q.** Do you know why Mr.
18  Sypherd's status shows 6-21-210 for
19  department seniority?
20  **A.** Looking at this, my educated
21  guess is --
22  **Q.** I don't want your guess, I
23  want knowledge. Do you know why Mr.
24  Sypherd's department seniority is listed
25  as 6-21-2010?

**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787     www.cefgroup.com     fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

## Page 214

1    **A.** What department, doesn't say
2  what department he's in there.
3    **Q.** My question again is, do you
4  know why Mr. Sypherd's department
5  seniority is listed as 6-21-2010?
6    **A.** He got hired as a driver.
7  MS. MCARDLE: Mike?
8  MR. ROSSI: Yes?
9  MS. MCARDLE: Would you please
10  have your witness answer the questions?
11    **Q.** My question is really, really
12  simple, Mr. Potts.
13    **A.** Okay.
14    **Q.** Do you know why Mr.
15  Sypherd's department seniority is listed
16  as 6-21-2010?
17    **A.** Do I know why it's listed?
18    **Q.** Yes, as that date, do you
19  know why?
20    **A.** Because he's a driver,
21  obviously he's a driver.
22    **Q.** Do you have personal
23  knowledge about why Mr. Sypherd's
24  seniority date is listed as 6-21-2010?
25    **A.** Yeah.

## Page 215

1    **Q.** What's that knowledge?
2    **A.** I seen him.
3    **Q.** You seen him what?
4    **A.** Out in public. I had a
5  conversation with him, engaged him in
6  dialogue.
7    **Q.** And he told you why his
8  seniority date is 6-21-2010?
9    **A.** He told me he got hired as a
10  driver. I said congratulations. Same
11  at the gas station.
12    **Q.** Have you ever seen Mr.
13  Sypherd's personnel file?
14    **A.** No.
15    **Q.** And on what basis are you
16  making your statements that the company
17  would post positions that became
18  available, is that because of something
19  in the collective bargaining agreement?
20    **A.** Well, I don't see utility
21  looking at this seniority.
22    **Q.** That's not my question, Mr.
23  Potts.
24    **A.** I'm sorry.
25    **Q.** My question again is very

## Page 216

1  simple.
2    **A.** Okay.
3    **Q.** You testified that if there
4  was an open position the company would
5  have to post that position?
6    **A.** Yeah.
7    **Q.** And I'm asking you where you
8  have come up with that information that
9  the company is required to post a
10  position that is open?
11    **A.** The CBA.
12    **Q.** So you would defer to the
13  terms of collective bargaining agreement
14  for whatever the company is or is not
15  supposed to do with regards to posting
16  an open position, correct?
17    **A.** Say that again, please.
18    **Q.** You would defer to the terms
19  of the collective bargaining agreement
20  as to what the company is or is not
21  supposed to do with regards to posting a
22  position, correct?
23    **A.** You can say that. And
24  annual job bidding.
25    **Q.** Looking at Deposition Exhibit

## Page 217

1  33, you've highlighted a portion of the
2  first page of the document, it's within
3  a paragraph that states -- I'm sorry, do
4  you have the document in front of the
5  you?
6    **A.** I have it now, yes.
7    **Q.** It's in a paragraph that
8  states, "The company acknowledges that
9  with nearly a year now passing the
10  situation may result in a loss of
11  seniority. To avoid this possibility
12  (and in consideration of the fact it has
13  been over a year) the company is willing
14  to now consider this a 'permanent
15  layoff' effective October 15, 2010."
16  Did I read that correctly?
17    **A.** Word for word.
18    **Q.** Did you ask ABC what it
19  meant by that it is willing to now
20  consider this a permanent layoff
21  effective October 15, 2010?
22    **A.** Say that again, please.
23    **Q.** Did you ask the company,
24  after you received and read this letter,
25  what it meant by the statement it is



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787    www.cefgroup.com    fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

**Page 218**

1   willing to now consider this a permanent
2   layoff effective October 15, 2010?
3          A. I only sent a letter for
4   seniority status and Mr. Bobal wouldn't
5   respond to me, he said don't talk to
6   him, so no.
7          Q. He said go to your union,
8   correct?
9          A. That was it, yes.
10         Q. So, again, you did not ask
11  the company what it meant by the
12  statement it is now willing to consider
13  this a permanent layoff effective
14  October 15, 2010, correct?
15         A. Say that again.
16         Q. You did not ask the company
17  what it meant by the statement it is
18  now willing to consider this a permanent
19  layoff effective October 15, 2010?
20         A. Yeah, the attempt was
21  referred to the union.
22         Q. You didn't ask the company,
23  correct?
24         A. In writing, yeah.
25         Q. You just told me you sent a

**Page 219**

1   letter to the union?
2          A. I didn't say that. I said I
3   sent a letter to Mr. Bobal asking him
4   what my seniority status was, what my
5   rank is on the list.
6          Q. And in that letter you asked
7   him what did you mean by this statement
8   the company is now willing to consider
9   this a permanent layoff effective
10  October 15, 2010?
11         A. That's my way of speaking
12  and communicating, that's why I even --
13  with the grievance, I said permanent.
14  That's the way I think.
15         Q. So you didn't ask him that
16  question?
17         A. I though I was.
18         Q. Those words did not appear
19  in your letter, correct?
20         A. What words?
21         Q. What does the company mean
22  by the fact it's now willing to consider
23  this a permanent layoff effective
24  October 15, 2010.
25         A. No, because seniority is

**Page 220**

1   already lost, I don't have any seniority
2   rights.
3          Q. Do you know whether -- I'm
4   sorry. Go ahead.
5          A. 9-21st-2010 I have no
6   seniority rights.
7          Q. Correct, as under the terms
8   of the contract as of 9-21-2010 you were
9   going to lose your seniority, correct?
10         A. I already lost them because
11  on this date, they determined on that
12  date that the layoff was temporary.
13         Q. Mr. Potts, I really would
14  ask you, if you listen then we'll get
15  through this a lot faster.
16         A. I'm sorry.
17         Q. I said as of September 21st,
18  2010 you were losing your seniority
19  rights, correct?
20         A. They're gone, correct.
21         Q. Do you know whether ABC
22  eliminated a warehouse position around
23  that time?
24         A. Had to be me.
25         Q. Not my question. Do you

**Page 221**

1   know whether ABC eliminated a warehouse
2   position, not an individual but a
3   position at the company around that
4   time?
5          A. I don't know.
6          Q. Do you know whether ABC
7   eliminated a warehouse position at any
8   time between September of 09 and
9   September 2010?
10         A. Say that again.
11         Q. Do you know whether ABC
12  eliminated a warehouse position at any
13  time between September of 09 and
14  September 2010?
15         A. No, not aware, nothing
16  posted.
17         Q. So with this offer of
18  converting your layoff to a permanent
19  layoff effective October 15, 2010, in
20  essence this was reviving your
21  seniority, correct?
22         A. No.
23         Q. Well, what did you understand
24  the next sentence to mean which says,
25  "This will allow the grievant the



**Cefaratti Group**   1.800.694.4787   www.cefgroup.com   fax:216.687.0973
**THE LITIGATION SUPPORT COMPANY**   Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 · 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 · 330.253.8119

Court Reporting · Video Conferencing · Legal Video Production · Investigations
Claims Services · Process Service · Record Retrieval · Document Management · Trial Graphics

**Page 222**

1  opportunity to exercise his contractual
2  rights to bump by seniority and
3  classifications until the least senior
4  employee is displaced"?
5      **A.** I don't have any contractual
6  rights to bump on seniority and
7  classifications.
8      **Q.** So the company was actually
9  extending you that right, correct?
10     **A.** No. They were -- if you
11  read, they're actually making me like a
12  new employee, a new hire to make an
13  application for a position in
14  merchandising, in which at that meeting,
15  9-14-2010, Mr. Bobal himself says I'm
16  not qualified.
17     **Q.** So with the company stating
18  in this correspondence this will allow
19  the grievant the opportunity to exercise
20  his contractual right to "bump by
21  seniority and classifications until the
22  least senior employee is displaced," you
23  did not understand that to mean that you
24  could bump a lesser senior employee?
25     **A.** I can't.

**Page 223**

1      **Q.** I'm not asking what you
2  could or couldn't do, I'm asking you
3  what you understood the company was
4  offering you?
5      **A.** There is no offer. I don't
6  -- obviously, there's a lot of confusion
7  there.
8      **Q.** There apparently is because
9  you have testified as of September 21st,
10  2010 you had lost your seniority,
11  correct?
12     **A.** Yeah.
13     **Q.** However, the company is
14  willing to consider this a permanent
15  layoff effective October 15, 2010 to
16  allow you to exercise contractual rights
17  to bump by seniority?
18     **A.** Yeah.
19     **Q.** Did you ask Mike what are
20  you talking about?
21     **A.** No, because it was withdrew,
22  this agreement was withdrawn.
23     **Q.** Did you ask Mike at any time
24  how could I possibly bump a less senior
25  employee if I don't have seniority?

**Page 224**

1      **A.** I sent him the letter to ask
2  where my rank is in the --
3      **Q.** Did you ever ask Mr. Bobal
4  how could I possibly bump a less senior
5  employee if I have no seniority?
6      **A.** I wish I got the
7  opportunity, no.
8      **Q.** Looking at Deposition Exhibit
9  35, first page, the individuals on the
10  first page numbered 21 through 30, you
11  would agree with me, have a hire date
12  after your hire date, correct?
13     **A.** Say that again.
14     **Q.** The individuals on page 1 of
15  Deposition Exhibit 35 are listed as 21
16  through 30, you would agree with me,
17  have a hire date after your hire date,
18  correct?
19     **A.** Yeah, 20 through 30, yes.
20     **Q.** Do you have a CDL driver's
21  license?
22     **A.** No.
23     **Q.** You filed another grievance
24  on September 21st, 2010, correct?
25     **A.** Correct. 11824, grievance

**Page 225**

1  number.
2      **Q.** I'm sorry, returning to
3  Deposition Exhibit 33 for a moment.
4      **A.** Yes.
5      **Q.** So as you sit here today
6  it's your testimony that at no time did
7  you understand that the company was
8  making an offer to you to permit you to
9  exercise seniority rights past September
10  21st, 2010?
11     **A.** Correct. And that grievance
12  was withdrawn October of 2010 as well.
13     MR. ROSSI: Wait for a question.
14     THE WITNESS: I'm sorry.
15            - - - - -
16     (Thereupon, Deposition
17     Exhibit-36 was marked for
18     purposes of identification.)
19            - - - - -
20     **Q.** Showing you what's been
21  marked as Deposition Exhibit 36, this is
22  correspondence from you to Teamsters
23  Local 377 dated October 2nd, 2010, and
24  we have your signature --
25     **A.** Yeah --

**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787    www.cefgroup.com    fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

1 Q. -- on this one?
2 A. -- subscribed upon it, yeah.
3 Q. Did you write this
4 correspondence?
5 A. Yeah.
6 Q. Is everything contained in
7 this correspondence true and accurate?
8 A. Yeah. First time I told
9 them to withdraw it so we can go to the
10 layoff issues in 11824, absolutely.
11 Q. You then filed yet another
12 grievance on October 13th, 2010,
13 correct?
14 A. The union filed it on my
15 behalf, 49 something, 4982 or 4959.
16 That's it.
17 Q. And -- 4956?
18 A. 4956, I was close.
19 Q. And you authorized the union
20 to file the grievance on your behalf?
21 A. Yeah, they made me sign it
22 right there.
23 Q. Well, did you protest signing
24 the grievance, you didn't want to do it?
25 A. They -- Justin drafted that.

1 Q. Did you protest signing the
2 agreement?
3 MR. ROSSI: Answer the question,
4 Robert.
5 A. No, no.
6 - - - - -
7 (Thereupon, Deposition
8 Exhibit-37 was marked for
9 purposes of identification.)
10 - - - - -
11 Q. This is Deposition Exhibit
12 37, is this a copy of that grievance?
13 A. Yes.
14 Q. And that's your signature on
15 the --
16 A. Yes.
17 Q. -- bottom left-hand corner?
18 A. Absolutely.
19 Q. Did you disagree with the
20 contents of the grievance?
21 A. It didn't raise the issue
22 about annual bidding, I wish it would of
23 because it was up and that meeting got
24 cut short on 9-14-2010, but using
25 workers out of classification and all

1 that, yeah, I agree with it, I just
2 wish they would have had more.
3 - - - - -
4 (Thereupon, Deposition
5 Exhibit-38 was marked for
6 purposes of identification.)
7 - - - - -
8 Q. Showing you what's been
9 marked as Deposition Exhibit 38, it's a
10 copy of correspondence that you sent to
11 Mr. Mike Bobal on October 15th, 2010,
12 subject line re: Permanent layoff, is
13 that your signature?
14 A. Yeah, yeah, subscribed
15 myself.
16 Q. You say, "Dear Michael, as
17 you know, I have been provided with
18 pertinent information regarding a notice
19 of permanent layoff effective October
20 15, 2010," correct?
21 A. Correct.
22 Q. And the first time you're
23 contacting Mr. Bobal and writing about
24 the notice you received about permanent
25 layoff effective October 15, 2010 is in

1 fact on October 15, 2010, correct?
2 A. There you go, correct.
3 Q. Then it goes on to say what
4 you said earlier that you're asking
5 about your status on the plant-wide
6 seniority list, correct?
7 A. Absolutely.
8 Q. You would agree with me also
9 that in this October 15, 2010
10 correspondence to Mr. Bobal, Deposition
11 Exhibit 38, you nowhere mention the
12 merchandising position, correct?
13 A. Correct. Mr. Bobal himself
14 said I wasn't qualified 9-14-2010.
15 Q. When did Mr. Bobal -- strike
16 the question, please. What did Mr.
17 Bobal say in the 9-14-2010 meeting about
18 your qualifications for the
19 merchandising position?
20 A. That was it, he said I
21 wasn't qualified.
22 Q. Did you ask him what he
23 meant by that?
24 A. No, the union guy was
25 arguing, he told him make me a



**Cefaratti Group** 1.800.694.4787 www.cefgroup.com fax:216.687.0973
THE LITIGATION SUPPORT COMPANY Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

## Page 230

1  merchandiser and he yelled he's not
2  qualified.
3       Q.  So you would agree with me
4  that Deposition Exhibit 33 is dated
5  September 30th, 2010 which is after
6  September 14, 2010, correct?
7       A.  Say that again, please.
8       Q.  Deposition Exhibit 33, you
9  would agree with me, is dated September
10  30th, 2010 which is after September 14,
11  2010?
12       A.  Yeah.
13       Q.  Did you ask Mr. Bobal, hey,
14  you told me I wasn't qualified on
15  September 14th but now you're telling me
16  I can have a merchandising position in
17  your 9-30 correspondence?
18       A.  I didn't ask because I
19  withdrew the grievance, the wage claim
20  was withdrawn and --
21       Q.  I'm not talking about the
22  grievance.
23       A.  Oh, okay.  I'm sorry.
24       Q.  This is separate.
25       A.  Sure.

## Page 231

1       Q.  Did you ask Mr. Bobal, hey,
2  on September 14th you said I wasn't
3  qualified for a merchandiser position,
4  why are you offering me one on 9-30?
5       A.  In Exhibit -- I can't read
6  this.
7       Q.  38?
8       A.  38, that's my way of asking
9  him.
10       Q.  But you didn't ask that
11  question, correct, you're asking about
12  your placement on the plant-wide
13  seniority list?
14       A.  I need to know before I
15  expand upon my inquiry.  I can't inquire
16  if I don't know.  And on 9-30 nobody
17  knew the layoff was temporary either
18  until that date.
19       Q.  When is the first time you
20  believed that -- strike the question,
21  please.  When you say no one knew it
22  was temporary as of that date, you're
23  referring back to your earlier testimony
24  that because your one year period was
25  about to expire on 9-21?

## Page 232

1       A.  That was my only watch at
2  the time, looking for my seniority
3  rights, until 9-21st-2010.  I knew I
4  didn't have to worry about anything
5  inside seniority.  Whatever they done, I
6  know I got recourse, grievance
7  procedure, company counsel in Texas, I
8  got everything to address that inside
9  that date.  I have protection of the
10  CBA.  Outside of that, I don't have
11  anything.
12       Q.  And in response to Deposition
13  Exhibit 38 that you sent to Mr. Bobal
14  he asked you to contact the union
15  regarding that matter?
16       A.  Yes, he said don't call him,
17  write him, et cetera, et cetera.
18       - - - - -
19       (Thereupon, Deposition
20       Exhibit-39 was marked for
21       purposes of identification.)
22       - - - - -
23       Q.  Showing you what's been
24  marked Deposition Exhibit 39, it's a
25  copy of a letter to the union dated

## Page 233

1  October 18th, 2010 from you with your
2  signature, correct?
3       A.  Yes.
4       Q.  You would agree with me that
5  in this correspondence to the union, no
6  mention of the merchandising position,
7  correct?
8       A.  Correct.  The grievance was
9  already withdrawn.
10       Q.  I don't understand why you
11  keep saying the grievance is already
12  withdrawn when this is a separate
13  matter.
14       A.  I'm sorry, I won't speak of
15  it no more.  I'm new to this.  I
16  appreciate your latitude.  Thank you.
17       - - - - -
18       (Thereupon, Deposition
19       Exhibit-40 was marked for
20       purposes of identification.)
21       - - - - -
22       Q.  Handing you what's been
23  marked Deposition Exhibit 40,
24  correspondence from Mr. Bobal dated
25  November 10th, 2010 to you at your



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787     www.cefgroup.com     fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

**Page 234**

1 Jeanette Drive address.
2     A. Okay.
3     Q. Did you receive this
4 correspondence?
5     A. No.
6     Q. That's because you didn't
7 sign for the certified mailing, correct?
8     A. I didn't receive it, I
9 didn't sign for any mailing on this
10 date.
11     Q. Well, there were several
12 attempts made to have you sign for this
13 correspondence and you refused to sign
14 for it, correct?
15     A. No, I didn't know about it.
16 I was more than happy to sign for it.
17     Q. So you're testifying under
18 oath today that this is the first time
19 you've ever seen this document?
20     A. In the lawyer's office he
21 showed it to me.
22     Q. Were you aware of a meeting
23 that was scheduled for October 21st with
24 the company and the union and yourself?
25     A. No.

**Page 235**

1     Q. You were never aware of a
2 meeting that was scheduled for October
3 21st?
4     A. I wish I was.
5     Q. So your union didn't let you
6 know that?
7     A. I don't believe so, otherwise
8 I'd have been there.
9     Q. According to this
10 correspondence Mr. Bobal is indicating
11 that the grievance answer on grievance
12 11823 sent to you on September 30, 2010
13 gave you a 15 day review period to
14 answer us if you wish the available
15 merchandising job, do you see that?
16     A. I see it now.
17     Q. Well, it was also set forth
18 in September 30th, 2010 correspondence
19 to you as well, correct, which you did
20 receive?
21     A. No, not like that, after
22 review. This letter here says there's
23 an available merchandising position.
24     Q. Which is this letter?
25     A. Your Exhibit 40.

**Page 236**

1     Q. Yes. I'm looking at
2 Deposition Exhibit 33. After the
3 paragraph we've already read on page 1
4 about bumping by seniority it goes on to
5 say, "Should the grievant wish to pursue
6 this course of action he needs to
7 contact the company in writing
8 expressing the desire within the 15
9 working day period that this grievance
10 answer is up for review." Do you see
11 that?
12     A. I see that.
13     Q. And you did, in fact,
14 contact the company on October 15, 2010
15 and you didn't make any mention of the
16 merchandising position, correct?
17     A. No, because I can't bump, I
18 want to know where my plant rank is and
19 I wanted to bring up annual job bidding.
20 I never got an annual job bidding from
21 the beginning of that year in the new
22 contract, the CBA.
23     Q. So despite the fact the
24 company was extending you the
25 opportunity to bump you continued to

**Page 237**

1 believe that you couldn't do so?
2     A. That's not an extension. I
3 can't. Bobal already said I'm not
4 qualified, 9-14. In regard to this
5 letter, Exhibit 40, if I would have got
6 it I would have been more than happy to
7 sign up and fill the application out for
8 that position because I have no
9 seniority and no rights.
10     Q. I just want to make sure I
11 understand then.
12     A. Sure.
13     Q. Looking at Deposition Exhibit
14 33 --
15     A. Yeah.
16     Q. -- and you can read the
17 paragraph on the first page that begins,
18 "The company acknowledges --"
19     A. Yeah.
20     Q. "-- with nearly a year
21 passing now."
22     A. I lost seniority.
23     Q. Which concludes with, "this
24 would most logically be a merchandising
25 position," you did not understand that



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787    www.cefgroup.com    fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

**Page 238**

1 the company was extending you the right
2 past September 21st, 2010 to bump by
3 seniority into a merchandising position?
4    A. That's correct.
5    Q. And you never asked Mike
6 what he meant by that letter?
7    A. Again, I sent him a letter
8 for the rank on the seniority, rank on
9 the lists, I wanted to talk about annual
10 job bidding, I wanted to talk about
11 seniority, the layoffs. Never got that
12 opportunity. It's unfortunate.
13    Q. I'm sorry, Mr. Potts. If
14 you look at Deposition Exhibit, I
15 believe it's 36, your October 15 letter
16 -- it's 37, excuse me, your October 15
17 letter?
18    A. 37 is grievance 4956.
19    Q. I apologize. You were
20 holding this letter right here.
21    A. 39, okay. I'm sorry.
22    Q. 38.
23    A. Okay.
24    Q. The only subject out of all
25 the ones you just enumerated that is

**Page 239**

1 actually contained within that
2 deposition exhibit is your request to
3 confirm your seniority on the plant-wide
4 seniority list, correct?
5    A. Correct.
6    Q. I note on Deposition Exhibit
7 40 your union is copied on that
8 correspondence, correct?
9    A. Okay, yeah.
10    Q. Union never passed that along
11 to you?
12    A. No, I wish they did.
13        - - - - -
14    (Thereupon, Deposition
15    Exhibit-41 was marked for
16    purposes of identification.)
17        - - - - -
18    Q. Handing you what's been
19 marked Deposition Exhibit 41.
20    A. Yeah.
21    Q. Copy of a correspondence from
22 Mr. Bobal to yourself sent certified
23 mail, December 13th, 2010, copy to Jeff
24 Karla, regional HR manager, Joe
25 LaMantia, L A M A N T I A, Youngstown

**Page 240**

1 branch manager, and Teamsters Local 377,
2 did you receive this correspondence?
3    A. No.
4    Q. Union didn't give you a copy
5 of this correspondence?
6    A. No, I wish they did.
7    Q. According to this
8 correspondence it states that, and I'm
9 going to paraphrase and feel free to
10 correct me if I paraphrase incorrectly,
11 that on September 30, 2010 the company
12 extended you a written job offer for a
13 merchandising position, requested you to
14 indicate your acceptance by October 15,
15 2010, otherwise, the company would have
16 to terminate your employment and you did
17 not response to that job offer. Instead
18 of terminating your employment, on
19 October 14 the company give you
20 additional time to accept the job offer
21 and arranged a meeting for October 21 to
22 discuss the matter. You didn't attend
23 that meeting.
24    Thus on October 21 the company
25 again extended the time until November

**Page 241**

1 5th for you to consider the company's
2 job offer, the merchandising position.
3 Once again, you didn't respond.
4    On November 10th, 2010 the
5 company sent you additional
6 correspondence giving you until November
7 19th to accept the merchandising
8 position and again you didn't respond.
9 And Mr. Karla also tried to call you by
10 telephone on multiple occasions. As a
11 result of your lack of response, in
12 accordance with the seniority terms of
13 the contract, your employment was to be
14 terminated effective December 1st, 2010.
15 Is that an accurate recitation of the
16 document?
17    A. Say that again, please.
18    Q. Have I accurately represented
19 the substance of this document?
20    A. Today is the first time I
21 see it, yeah.
22    Q. So you don't know what was
23 said on the October 21st meeting with
24 the company because you weren't there,
25 correct?


Cefaratti Group
THE LITIGATION SUPPORT COMPANY

1.800.694.4787    www.cefgroup.com    fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 · 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 · 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

**Page 242**

1  A. Correct.
2  Q. So if you didn't receive
3  this document, Deposition Exhibit 41 --
4  A. Yes.
5  Q. -- when did you find out
6  that your employment had been
7  terminated?
8  A. I got a COBRA notice in the
9  mail and I was shocked and surprised, it
10  said termination December 2nd.
11  Q. So the first time you
12  realized that you had been terminated
13  from the company was in February of
14  2011?
15  A. Yeah, I got a payroll check
16  at December 23rd or 24th of 2010.
17  Q. That was for a bonus,
18  correct?
19  A. That's what it said.
20  Q. You were not paid for any
21  wages, however, though, correct?
22  A. I don't know if a bonus is
23  considered wages. I just know it was
24  an amount. I assumed I was still
25  employed, had health care, had

**Page 243**

1  everything.
2  Q. We don't have any
3  documentation of any correspondence that
4  you sent to the union post October 2010,
5  did you not write any correspondence to
6  the union?
7  A. Please repeat that.
8  Q. We don't have any
9  correspondence that you wrote to the
10  union post October 2010, did you not
11  write any correspondence to the union
12  after that time?
13  A. I'm not sure, really.
14  Q. Well, you had several
15  outstanding grievances, correct?
16  A. Correct. Unfortunately, the
17  union withdrew, vacated my membership
18  November 17, 2010. So I was out of the
19  union so they probably didn't want to
20  deal with me anymore. They send me a
21  refund check dated November 19, 2010. I
22  got a check, refunded dues and backdated
23  and vacated it to March of 2010. I
24  figured my grievances was done, I
25  figured everything was moot.

**Page 244**

1  MS. MCARDLE: Why don't we take
2  a lunch break?
3  (Luncheon recess had.)
4  - - - - -
5  .
6  .
7  .
8  .
9  .
10  .
11  .
12  .
13  .
14  .
15  .
16  .
17  .
18  .
19  .
20  .
21  .
22  .
23  .
24  .
25  .

**Page 245**

1  AFTERNOON-SESSION
2  CONTINUED EXAMINATION OF ROBERT A. POTTS
3  BY-MS.MCARDLE:
4  Q. Mr. Potts, you understand
5  you're still under oath?
6  A. Yes.
7  Q. Could you pull out Deposition
8  Exhibit 16 for me, please? If you
9  could turn to ABC 70, I know we
10  discussed Section 9 earlier at the
11  bottom of that page, I just wanted to
12  clarify something. So under Section 9
13  it starts, "Under the following
14  conditions any employee shall lose his
15  seniority (terminated from employment)."
16  So it was your understanding
17  based on reviewing the collective
18  bargaining agreement that losing your
19  seniority was squivalent to termination
20  of your employment?
21  A. True.
22  Q. I know I asked whether the
23  union passed along Exhibits 40 or 41 to
24  you, on which the union is indicated as
25  being copied, and your answer was no.

**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY
1.800.694.4787   www.cefgroup.com   fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 · 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 · 330.253.8119

Court Reporting · Video Conferencing · Legal Video Production · Investigations
Claims Services · Process Service · Record Retrieval · Document Management · Trial Graphics

**Page 246**

1　Did the union ever give you a phone
2　call and say, hey, Robert, we received
3　this correspondence and let you know
4　what was in it?
5　　　A. Unfortunately, no.
6　　　Q. Having -- and if you need to
7　take the time, please do so, but having
8　read 40 and 41, if you had received
9　them would you have accepted the
10　company's offer for the merchandising
11　position?
12　　　A. I definitely would have to
13　consider it among all the other stuff.
14　　　Q. I'm not sure what you mean
15　among all the other stuff.
16　　　A. Well, I would consider their
17　offer together with the seniority, the
18　annual job bidding, all that stuff.
19　　　Q. I guess I'm not following.
20　Your answer is that you would consider
21　the offer but your acceptance would be
22　dependent on other things, is that what
23　you're saying?
24　　　A. I said --
25　　　MR. ROSSI: Object to the extent

**Page 247**

1　it calls for speculation, but go ahead,
2　Robert.
3　　　A. Okay. Well, really getting
4　into the situation, there's still stuff
5　that needed to be dealt with and
6　unfortunately it wasn't. I never got
7　any answers so I didn't get material,
8　didn't get stuff, no meetings. I wasn't
9　-- I don't know what's going on back
10　and forth. So regarding to the annual
11　job bidding I'm still -- there's an
12　issue there why I wasn't involved with
13　the annual job bidding, issues with the
14　seniority stuff, regarding to the
15　decisions of 9-30-2010, a lot of issues
16　that would need to go together with this
17　too.
18　　　Q. Do you know why you weren't
19　part of the annual job bidding?
20　　　A. I wish I did, I don't know.
21　　　Q. Did you ask ABC why you
22　weren't part of the annual job bidding?
23　　　A. I didn't get the opportunity.
24　　　MR. ROSSI: I'm sorry, the annual
25　what?

**Page 248**

1　　　MS. MCARDLE: Job bidding.
2　　　MR. ROSSI: Job bidding. Thank
3　you.
4　　　Q. So I just want to make sure
5　I understand your answer and I
6　understand this is all in hindsight
7　because you say you didn't receive these
8　letters, but my understanding of what
9　you just said is had you received the
10　letters you're not sure whether you
11　would have accepted the merchandising
12　position because it depended upon the
13　resolution of other items?
14　　　A. Well, they would have to --
15　　　Q. Is that true?
16　　　A. You could say that.
17　　　Q. I think you alluded to this
18　earlier, you were paying union dues on a
19　monthly basis, correct?
20　　　A. Yes.
21　　　Q. So as a result of that you
22　certainly expected that the union would
23　be acting on your behalf in matters
24　relating to your employment with ABC, is
25　that right?

**Page 249**

1　　　A. Yes.
2　　　Q. And in connection with the
3　issue of the September 2009 layoff and
4　related matters, I guess is how you've
5　described it, that were discussed at the
6　September 14, 2010 meeting, you believed
7　the union was acting upon your behalf,
8　is that right?
9　　　A. At that time, yes.
10　　　Q. Is there a time that you
11　believe the union stopped acting upon
12　your behalf?
13　　　A. Obviously, yes.
14　　　Q. When do you believe that
15　occurred that the union stopped acting
16　on your behalf?
17　　　A. You know, when I brought to
18　their attention that there's no annual
19　job bid for me, I didn't participate,
20　wasn't called, discrepancies on the
21　seniority lists, a lot of that stuff,
22　plus they vacated my membership,
23　refunded my money for the dues back to
24　March, obviously they didn't want
25　nothing to do with me.



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787　　www.cefgroup.com　　fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

**Page 250**

1 **Q.** So is there a date upon
2 which you believe the union ceased
3 acting on your behalf?
4 **A.** Definitely I would say
5 November 17, 2010.
6 **Q.** Why does November 17, 2010
7 stick in your mind as the date that the
8 union stopped acting on your behalf, is
9 that when they notified you that you
10 were -- they refunded your dues and that
11 they were retroactively terminating your
12 membership in the Teamsters?
13 **A.** Sometime after that, I don't
14 know the specific dates but that's the
15 dates on their correspondence,
16 everything is backdated. There is stuff
17 from December but dated November.
18 **Q.** So up until learning that
19 the union was refunding your dues and
20 removing you from the roles of Teamsters
21 you had every reason to believe they
22 were acting on your behalf in connection
23 with employment matters relating to ABC?
24 **A.** Yeah, I thought they would.
25 **Q.** I wanted to clarify something

**Page 251**

1 about Deposition Exhibit 33, that's the
2 September 30, 2010 letter from Mr.
3 Bobal.
4 **A.** Okay.
5 **Q.** I want to make sure I
6 understand, notwithstanding the contents
7 of Deposition Exhibit 33 you believed
8 you lost your seniority on September
9 21st, 2010?
10 **A.** It's fact, true, yes.
11 **Q.** I didn't ask you this
12 question about 41 and 40, when did you
13 first realize that you had not received
14 copies of these letters?
15 **A.** When my lawyer --
16 **Q.** And don't tell me anything
17 he said but please continue.
18 **A.** When my lawyer showed me at
19 the office.
20 **Q.** So the first time you
21 realized that you had not received
22 copies of Exhibits 41 and 42 was during
23 discovery in this case?
24 **A.** True.
25 **Q.** And I think --

**Page 252**

1 THE REPORTER: You said Exhibits
2 41 and 42.
3 **Q.** I'm sorry, thank you. I
4 meant to say 40 and 41. So your answer
5 doesn't change though, the first time
6 you learned you hadn't received 40 and
7 41 was during discovery in this case?
8 **A.** Yes.
9 **Q.** And I think those were
10 produced sometime in April or May of
11 2011 to your attorney, does that sound
12 about right?
13 **A.** It sounds right.
14 **Q.** When you first then realized
15 in April or May of 2011 that you hadn't
16 received this correspondence, Deposition
17 Exhibits 40 and 41, did you try to
18 contact the company and say, hey, I
19 think there's been a misunderstanding?
20 **A.** Michael already -- Bobal
21 already said don't call him, talk to him
22 or anything, October 25th, 2010 so
23 there's nothing I can do about it. My
24 union membership is vacated 11-17-2010,
25 I got nobody to contact, talk, consult,

**Page 253**

1 nothing.
2 **Q.** So despite the fact that you
3 obviously filed a lawsuit over the end
4 of your employment with ABC you didn't
5 even try to contact somebody at the
6 company and say, hey, I never got this
7 correspondence, Deposition Exhibits 40
8 and 41, and can we talk about the
9 merchandising position?
10 **A.** Well, I got legal counsel
11 and obviously I can't talk about it when
12 you got an attorney, they can't talk to
13 me. You know, back to the benefits you
14 said don't contact them and I had to
15 dial the 800 number, so I didn't contact
16 anybody.
17 **Q.** You testified earlier that
18 the first time you realized your
19 termination was effective December 1,
20 2010 was when you received your COBRA
21 notice, is that right?
22 **A.** First time the COBRA notice
23 said December 2nd, 2010. It was dated,
24 I believe, February 18th, I don't
25 remember when it reached the mailbox.

**Cefaratti Group** 1.800.694.4787   www.cefgroup.com   fax:216.687.0973
THE LITIGATION SUPPORT COMPANY   Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

**Page 254**

1 **Q.** But that was when you
2 learned that your termination was
3 effective, we'll use December 2nd, 2010?
4 **A.** I was surprised, that was a
5 big surprised, yes.
6 **Q.** So the same question about
7 that. Did you at that point call
8 anybody at ABC or ask counsel to do so
9 on your behalf and say, hey, wait a
10 minute, I didn't understand this to be
11 the case?
12 **A.** Again, Mr. Bobal says don't
13 contact him, don't write him, don't
14 telephone him, fax him, anything. The
15 union got me vacated, I didn't have any
16 union member, I don't have nobody. Done.
17 MR. ROSSI: Excuse me a second.
18 (Discussion between witness and
19 his counsel.)
20 MR. ROSSI: Thank you.
21 **Q.** And I wanted to revisit some
22 of your earlier testimony because I
23 don't think I asked you this question:
24 I had asked you to identify those
25 individuals within ABC whom you feel

**Page 255**

1 retaliated against you and you
2 identified -- within ABC you identified
3 John Taraba, Mike Bobal and Bill
4 Stimmel, correct?
5 **A.** Yes.
6 **Q.** And then I asked you what
7 conduct they engaged in and you
8 described the conduct that they engaged
9 in that you felt amounted to
10 retaliation, do you recall that
11 testimony?
12 **A.** Okay, yeah.
13 **Q.** Let's start with Mr. Bobal.
14 Why do you think Mr. Bobal's conduct had
15 anything to do with you raising the 2010
16 vehicle issue?
17 **A.** Well, his action is personal
18 against me.
19 **Q.** I'm not --
20 **A.** He says it's harassment so
21 he said he had a harassment issue to
22 deal with, he said 9-14-2010.
23 **Q.** And you testified earlier you
24 didn't ask him what harassment issue he
25 was referring to?

**Page 256**

1 **A.** No, didn't get the
2 opportunity.
3 **Q.** Any other reason why you
4 believe Mr. Bobal's conduct had anything
5 to do with your raising the 2010 vehicle
6 issue?
7 **A.** Say that again, please.
8 **Q.** Any other reason why you
9 think Mr. Bobal's conduct had anything
10 to do with your raising the 2010
11 issue?
12 **A.** That should cover it.
13 **Q.** With regard to Mr. Taraba,
14 why do you think Mr. Taraba's conduct
15 had anything to do with your raising to
16 2010 vehicle issue?
17 **A.** Well, it makes him look bad.
18 **Q.** Any other reason why you
19 think Mr. Taraba's conduct had anything
20 to do with your raising the 12010
21 vehicle issue?
22 **A.** That should cover it.
23 **Q.** And with regards to Mr.
24 Stimmel, why is it that you think Mr.
25 Stimmel's conduct had anything do with

**Page 257**

1 your raising the 2010 vehicle issue?
2 **A.** Same reason, looks bad too.
3 **Q.** Any other reason?
4 **A.** That covers it.
5 **Q.** Up until the time you
6 received the COBRA notice dated February
7 18, 2011 you were still covered under
8 the company's health benefit plan,
9 correct?
10 **A.** I believe so.
11 **Q.** And you were paying -- you
12 paid a portion of your premiums which
13 were equivalent to those rates that you
14 paid as an active employee, is that
15 right?
16 **A.** I am not sure. If that what
17 it is, so be it.
18 **Q.** You were paying in the
19 neighborhood of $40 a month for medical,
20 vision and dental, correct?
21 **A.** Yeah, that sounds right.
22 - - - - -
23 (Thereupon, Deposition
24 Exhibit-18 was marked for
25 purposes of identification.)


**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787    www.cefgroup.com    fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

**Page 258**

1              - - - - -
2        Q. Showing you what's been
3   marked Deposition Exhibit 18, which you
4   produced, this appears to be a billing
5   notice from Dr. Pepper Snapple dated
6   November 10th, 2010 addressed to you at
7   the Jeanette Drive address and there's a
8   receipt attached at the bottom in the
9   first and the second page, it looks
10  like. My question is, this is a copy
11  of a billing notice for your health
12  benefits during this period of time and
13  is this receipt your record of payment
14  of those benefits?
15       A. Fair enough, it appears to
16  be.
17       Q. And following up on the
18  question I just asked you before showing
19  you the document, if you turn to the
20  second page of Deposition Exhibit 18 it
21  shows medical, dental and vision
22  coverage for the period December 1st,
23  2010 through December 31st, 2010 with
24  the total billing charge of 39.25, do
25  you see that?

**Page 259**

1        A. Yes.
2        Q. So that refreshes your
3   recollection that you were paying in the
4   neighborhood of $40 a month for medical,
5   dental and vision?
6        A. Sure.
7        Q. For December of 2010
8   benefits?
9        A. Sure.
10             - - - - -
11       (Thereupon, Deposition
12       Exhibit-19 was marked for
13       purposes of identification.)
14             - - - - -
15       Q. Showing you what's been
16  marked Deposition Exhibit 19, this is a
17  document that you produced from Dr.
18  Pepper Snapple entitled welfare plan,
19  confirmation of enrollment, statement
20  date November 16, 2010 addressed to you
21  at the Jeanette Drive address. And this
22  confirms benefits coverage and benefits
23  being effective January 1st, 2011 until
24  December 31st, 2011 unless a qualified
25  change in status occurs, do you see

**Page 260**

1   that?
2        A. Yes.
3        Q. So when you received this
4   document you understood that you were
5   still qualified for benefits through the
6   period January 1, 2011 through December
7   31, 2011, is that right?
8        A. Through my open enrollment,
9   yes.
10       Q. And, again, looking at the
11  charges on that first page, looks like
12  for medical, it says employee assistance
13  program and dental, you're paying in the
14  neighborhood of $35 a month, is that
15  right?
16       A. Fair enough.
17             - - - - -
18       (Thereupon, Deposition
19       Exhibit-20 was marked for
20       purposes of identification.)
21             - - - - -
22       Q. Showing you what's been
23  marked Deposition Exhibit 20, another
24  document you produced. This is a
25  billing notice from Dr. Pepper Snapple,

**Page 261**

1   statement date February 10th, 2011 to
2   you at the Jeanette Drive address and it
3   says it's a bill for your benefit
4   coverage. It also appears that there's
5   another customer receipt attached down
6   at the bottom, is that the receipt for
7   the amount that you paid for that
8   benefit period?
9        A. Appears to be, yes.
10       Q. And, again, flipping to the
11  second page it seems that the medical,
12  dental and vision payments that you're
13  paying for that period total $40.25?
14       A. Correct.
15       Q. Did you ever wonder why you
16  were still receiving billing for
17  benefits and entitled to benefits after
18  you had lost your seniority as you
19  understood it as of September 21st, 09
20  -- or excuse, 2010?
21       A. Well, I figured I was still
22  paying my union dues, there was an issue
23  there that was never resolved because
24  there was an accountability issue with
25  money and that still gives me the right,



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787     www.cefgroup.com     fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

**Page 262**

1   that was never resolved with union
2   rights stuff because there's an
3   accounting issue that was never resolved
4   that I thought, you know, I could still
5   go back to that higher up but never
6   did. And also I believed I was still
7   employed at that time despite union
8   doing whatever they did.
9       Q. So despite the fact that you
10  believed your seniority -- that you lost
11  your seniority September 21st, 2010, you
12  still believed you were entitled to
13  benefit coverage after that point?
14      A. I don't know too much about
15  what the union rights are, stuff on
16  that. I assume I was still entitled
17  being a card holder and I know I could
18  still pay dues for six months after
19  anything and I didn't get that
20  opportunity to continue paying my union
21  dues from December -- or from October
22  15th on. Like I said, they vacated it,
23  the union membership status, refunded
24  the money, the issue was never resolved,
25  they never responded to my communication

**Page 263**

1   so...
2       Q. In fact, you testified that
3   the union withdrew your membership in
4   November of 2010, correct?
5       A. Correct.
6       Q. But you were still receiving,
7   at least according to Deposition Exhibit
8   20, benefit statements covering periods
9   past that into February 2011?
10      A. I recall a date on that of
11  being December 9th. I don't know why
12  they're backdating stuff. I don't know
13  if they're misrepresenting, I don't know
14  what they're doing, everything --
15      Q. I'm sorry, who's backdating
16  stuff?
17      A. The union. The material
18  they give me says signed under their
19  hand and seal December 9th, 2010. So
20  backdating -- everybody is backdating
21  and substituting dates and everything
22  else, you know, why are the union
23  different than the company.
24      Q. Who's everybody, sir, that's
25  backdating and substituting dates?

**Page 264**

1       A. The union, the company,
2   concerted, unconcerted, I don't know,
3   each party is engaging in backdating.
4       Q. Who at the company is
5   engaging in backdating?
6       A. I wouldn't know.
7       Q. And what document do you
8   assert the company has backdated?
9       A. Benefit stuff has different
10  dates changing all the time.
11      Q. I'm sorry, what benefits
12  dates are changing all the time?
13      A. A lot of the COBRA stuff
14  dates was changed, enrollment dates,
15  coverage dates.
16      Q. In fact, the company extended
17  your period of time to elect COBRA to
18  May 29th, 2010 in light of the
19  reissuance of the COBRA notice, correct?
20      A. On my calls, yes.
21      Q. The question I had was, in
22  fact, the company extended the period in
23  which you could elect COBRA coverage
24  through May 29th, 2011 after reissuing a
25  COBRA notice in March of 2011, correct?

**Page 265**

1       A. Yes.
2       Q. Upon receipt of the February
3   2011 COBRA notice when you learned that
4   your employment had been terminated
5   effective December 2nd, 2010, did the
6   company ever request that you reimburse
7   them for the difference between COBRA
8   coverage rates and what you paid?
9       A. Nothing, no.
10      Q. And to your point you filed
11  the second amended complaint, I believe
12  we determined, on March 1st, 2011 in
13  which you asserted your COBRA notice
14  claims and within three weeks ABC issued
15  a new COBRA notice, correct?
16      A. I recall, yes.
17      Q. Now, despite receiving this
18  COBRA notice, this updated COBRA notice,
19  in March of 2011 you contacted the
20  Department of Labor and claimed that ABC
21  was not permitting you to elect COBRA,
22  correct?
23      A. Yes.
24      Q. And the ABC benefits manager
25  attempted on several occasions to


**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787   www.cefgroup.com   fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

**Page 266**

1  contact you indicating it was trying to
2  assist you in electing COBRA?
3      A.  We contacted each other back
4  and forth.
5      Q.  And then at some point, I
6  believe in early May of 2011 you
7  contacted ABC's benefit center and
8  stated words to the effect of you
9  thought someone else was attempting to
10 elect COBRA on your behalf?
11     A.  I may have said that.
12     Q.  Who did you believe was
13 attempting to elect COBRA on your
14 behalf?
15     A.  I don't know.
16     Q.  You also told the ABC
17 benefits center that you did not plan to
18 elect COBRA at that time?
19     A.  Under the circumstances of
20 all the confusion and the process with
21 the date being extended, that's true.
22     Q.  And you also told the ABC
23 benefit center sometime in the beginning
24 of 2011 that you were unclear about your
25 employment status with ABC?

**Page 267**

1      A.  Possible.
2      Q.  How is it that you were
3  unclear about your employment status as
4  late at early May of 2011?
5      A.  Well, because there's a lot
6  of unanswered questions.
7      Q.  Such as what?
8      A.  Back to the annual job
9  bidding, seniority stuff, employee
10 rights, union rights, my status, there's
11 a lot.
12     Q.  So despite receiving a COBRA
13 notice that indicated your termination
14 was effective December 2nd, 2010 you
15 were unclear about that?
16     A.  Even the dates on that, when
17 the company says December 1st, then the
18 company says December 2nd, there's even
19 confusion in those two dates.
20     Q.  Yes, the company did say
21 effective December 1st, 2010, correct?
22     A.  The company also said
23 December 2nd, 2010 and I also got a
24 payroll check December 23rd, 2010 when I
25 believed I was still employed.

**Page 268**

1      Q.  Shortly before you filed the
2  second amended complaint that's
3  Deposition Exhibit 1, you also filed a
4  NLRB charge against ABC, is that right?
5      A.  Yes, it's withdrawn.
6      Q.  Yes, the NLRB withdrew that
7  charge, correct?
8      A.  I did.
9      Q.  Why did you withdraw that
10 charge?
11     A.  Because I have no experience
12 with all that and just withdrew it.
13     Q.  So your withdrawing of the
14 charge had nothing to do with the fact
15 that the NLRB contacted you and said
16 that you must provide them with an
17 affidavit for them to continue
18 processing your charge?
19     A.  No, I got more -- I'd be
20 more than happy to take the affidavit
21 with them or draft it myself and go
22 before a notary.
23     Q.  So I just want to make sure
24 I understand, you decided not to pursue
25 the NLRB charge against ABC because you

**Page 269**

1  don't have experience in those matters?
2      A.  Yeah, I just basically
3  decided to drop it.  I just decided my
4  choice and withdrew it.  I did one
5  against the union and I withdrew it too.
6      Q.  That was going to be my next
7  question.  After the NLRB or after the
8  charge against ABC was withdrawn you
9  filed one against the union, correct?
10     A.  Correct.
11     Q.  And you said you decided to
12 withdraw that charge?
13     A.  Yeah.
14     Q.  Why did you withdraw that
15 charge against the union?
16     A.  My choice.
17     Q.  I understand it was your
18 choice, but what was your rationale for
19 withdrawing the charge against the
20 union?
21     A.  Just picked up the phone and
22 say withdraw it.
23     Q.  Maybe I'm asking a poor
24 question.  I understand that's the
25 mechanism by which you did it but why



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787     www.cefgroup.com     fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

## Page 270

1  did you decide to withdraw that charge,
2  not how?
3      A. Didn't want to cause any
4  more friction between union and whatever
5  else, just to drop it, withdraw.
6      Q. Did you receive any
7  communications from the union after you
8  filed that charge?
9      A. None.
10      Q. So what friction are you
11  referring to?
12      A. Back and forth, I mean,
13  there was a lot of, you know, I'm
14  telling them about accountability, about
15  union dues, money, I'm saying that they
16  mismanaged, there's accounting errors,
17  there's maybe wrongdoing. So I started
18  some issues in the union internally,
19  didn't jive, didn't -- wasn't logical.
20  Didn't get anywhere, nobody cared.
21          - - - - -
22      (Thereupon, Deposition
23  Exhibit-21 was marked for
24  purposes of identification.)
25          - - - - -

## Page 271

1      Q. I don't think I actually
2  introduced this. I'm handing you what's
3  been marked as Deposition Exhibit 21,
4  can you confirm that this is the updated
5  COBRA notice that was issued to you by
6  the company on or about March 23rd,
7  2011?
8      A. It appears to be.
9          - - - - -
10      (Thereupon, Deposition
11  Exhibit-22 was marked for
12  purposes of identification.)
13          - - - - -
14      Q. Handing you Deposition
15  Exhibit 22, is this the charge that you
16  filed against ABC with the National
17  Labor Relations Board?
18      A. It was an amended charge, I
19  believe. I can't recall. Possible.
20      Q. I believe that you filed or
21  at least had a charge that was not
22  signed and then you submitted one that
23  was signed and this is the signed
24  version of it, does that refresh your
25  recollection?

## Page 272

1      A. That will work.
2      Q. And that's your signature
3  under the declaration section of the
4  document?
5      A. Yeah.
6      Q. Right above your signature it
7  says, "I declare that I read the above
8  charge and the statements are true to
9  the best of my knowledge and belief."
10  Did I read that correctly?
11      A. Yes.
12      Q. So in signing this
13  declaration you were in fact asserting
14  to the NLRB that the contents of your
15  charge against ABC was true to the best
16  of your knowledge and belief?
17      A. Yeah.
18          - - - - -
19      (Thereupon, Deposition
20  Exhibit-23 was marked for
21  purposes of identification.)
22          - - - - -
23      Q. Showing you what's been
24  marked as Deposition Exhibit 23, is this
25  a copy of the charge you filed against

## Page 273

1  the union with the NLRB?
2      A. Yes, it was drafted on my
3  behalf, yes.
4      Q. And this is your signature
5  in the declaration section?
6      A. Yeah.
7      Q. This document also states
8  above your signature, "I declare that I
9  read the above charge and that the
10  statements are true to the best of my
11  knowledge and belief." Did I read that
12  correctly?
13      A. Yeah.
14      Q. And signing this document,
15  Deposition Exhibit 23, you were
16  certifying to NLRB that the contents of
17  your charge against the union and the
18  statements made therein were true to the
19  best of your knowledge and belief,
20  correct?
21      A. Yes.
22      Q. The second paragraph of your
23  charge against the union you say, "On or
24  about November 17th, 2010 it, a labor
25  organization, by its officers, agents



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787     www.cefgroup.com     fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 · 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 · 330.253.8119

Court Reporting · Video Conferencing · Legal Video Production · Investigations
Claims Services · Process Service · Record Retrieval · Document Management · Trial Graphics

## Page 274

1  and representatives, caused American
2  Bottling Company dba 7-Up Bottling Co.
3  to discriminate against Robert Potts,
4  (1)in violation of Section 8(a)(3) of
5  the Act and (2) whose membership in the
6  said labor organization was terminated
7  for reasons other than failure to tender
8  periodic dues uniformly required as a
9  condition of membership." Did I read
10  that correctly?
11      A. Yes.
12      Q. Do you know what an 8(a)(3)
13  violation is?
14      A. Catherine drafted it on my
15  behalf, I really don't know.
16      Q. Okay.
17      A. Catherine Modic, I think.
18      Q. You indicate in here that
19  the union caused ABC to discriminate
20  against you?
21      A. Where are you reading that?
22      Q. The sentence I just read.
23      A. On or about what?
24      Q. In that paragraph right
25  before the number 1.

## Page 275

1      A. What paragraph, second
2  paragraph?
3      MR. ROSSI: Right here, caused
4  these parties to discriminate against
5  Robert Potts.
6      A. Yeah, there was an amended
7  charge here so that -- I forgot what
8  the amendment -- it was December, I
9  think.
10      Q. I'm sorry?
11      A. I don't know why she wrote
12  November 17th there. i eventually
13  amended this charge.
14      Q. What did you change in the
15  amended charge?
16      A. I have to look at it. She
17  amended it for me too, Catherine Modic.
18      Q. To my knowledge there
19  was no amended charge that we were
20  provided, but setting that aside, what
21  did you mean by the union caused ABC to
22  discriminate against you?
23      A. Again, Catherine Modic, the
24  NLRB agent, drafted this on my behalf.
25  She must have used the dates on the

## Page 276

1  above for the date for the second
2  paragraph.
3      Q. Setting aside the date --
4      A. Oh.
5      Q. -- what do you understand
6  that you were saying to NLRB when you
7  certified that the union had caused ABC
8  to discriminate against you to be a true
9  statement?
10      A. Oh, when they vacated my
11  membership, you know, I got no
12  protection for the union.
13      Q. So the discrimination
14  referred to in that sentence relates to
15  the vacating of your union membership?
16      A. Yeah, I'm not covered by any
17  union anything and obviously them two
18  can get together and concerted, you
19  know, whatever.
20      Q. I'm not following because
21  this doesn't say concerted. This says
22  that --
23      A. Yeah.
24      Q. -- the union caused ABC to
25  discriminate against you. What I'm

## Page 277

1  trying to understand is when you
2  certified that the information set forth
3  in this charge was true to the best
4  your knowledge and belief, what did you
5  understand you were certifying as it
6  relates to the union's causing ABC to
7  discriminate against you?
8      A. I believe it was true based
9  on Catherine drafting it. I don't know
10  what language, why she chose it.
11      Q. So you don't have any idea
12  what the discrimination that is referred
13  to in this charge relates to?
14      A. No. In good faith I thought
15  Catherine was drafting it.
16      - - - -
17      (Thereupon, Deposition
18      Exhibit-24 was marked for
19      purposes of identification.)
20      - - - -
21      Q. Showing you what's been
22  marked Deposition Exhibit 24 --
23      A. Yes.
24      Q. -- this is a document that
25  you produced to us in discovery, this is



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787    www.cefgroup.com    fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

**Page 278**

1  a copy of your current resume?
2  　　A. Sure.
3  　　Q. Is anything inaccurate in
4  Deposition Exhibit 24?
5  　　A. Maybe because there's
6  discrepancies on the end date for
7  Sypris.
8  　　Q. What do you mean by that?
9  　　A. Well, I was eligible for TAA
10  but there's disputing dates saying 06,
11  08, it's unresolved so...
12  　　Q. TAA, is that referring to
13  retirement benefits, what does that
14  refer to?
15  　　A. I'm new to all that. Trade
16  act --
17  　　　MR. ROSSI: Trade Adjustment Act.
18  　　Q. Trade Adjustment Act, okay.
19  I'm sorry, so you're saying -- oh, I
20  see what you're -- so this relates to
21  employee benefits that Sypris may or may
22  not be obligated to provide under the
23  TAA?
24  　　A. Union issues again, I have
25  seniority, the plant closed at Sypris in

**Page 279**

1  2009, my seniority should have went into
2  2009 at the plant closure but my
3  seniority went to June 1st, 2008 but,
4  however, my last day physically in the
5  plant was in October 26th, 27th of 2006.
6  But still under the collective
7  bargaining agreement, still an employee
8  covered by seniority. So with the TAA
9  I don't know what's going on with that,
10  may or may not, all new to it.
11  　　Q. So, in other words, I think
12  what you're saying is that you were
13  notified you were being laid off on
14  October 26th, 2006 with and under the
15  terms of the applicable collective
16  bargaining agreement your seniority
17  would continue for a period, I believe,
18  of four years?
19  　　A. Yeah.
20  　　Q. But you didn't physically
21  work for Sypris after October 26th,
22  2006?
23  　　A. I was still employed, I
24  guess, under the seniority, but I wasn't
25  there.

**Page 280**

1  　　Q. You weren't performing work
2  for them?
3  　　A. Right.
4  　　Q. So other than the date for
5  Sypris is there anything else that's not
6  accurate in Deposition Exhibit 24?
7  　　A. Let's see. Oh, full-time
8  stuff looks okay. Sure.
9  　　Q. So according to Deposition
10  Exhibit 24, prior to Sypris you worked
11  for a company called Neff-Perkins, is
12  that right?
13  　　A. Yeah.
14  　　　- - - - -
15  　　　(Thereupon, Deposition
16  　　　Exhibit-42 was marked for
17  　　　purposes of identification.)
18  　　　- - - - -
19  　　Q. Showing you what's been
20  marked Deposition Exhibit 42, this is a
21  document we received in response to a
22  subpoena issued to Neff-Perkins Company
23  for your personnel records. This bears
24  Bates label Neff-Perkins 36 through 41
25  and appears to be a copy of your job

**Page 281**

1  application for Neff --
2  　　A. Yes.
3  　　Q. -- Perkins Company. With
4  regards to this document, Deposition
5  Exhibit 42, is there anything inaccurate
6  in this document?
7  　　A. Yes.
8  　　Q. What's inaccurate?
9  　　A. Employment history,
10  references.
11  　　Q. Those are inaccurate?
12  　　A. Yeah.
13  　　Q. I'm sorry?
14  　　A. Yes.
15  　　Q. Specifically what about your
16  employment history is not accurate?
17  　　A. I never worked for any of
18  them companies.
19  　　Q. And then about the
20  references, what is not accurate?
21  　　A. Don't know any of them.
22  Don't know if they exist, nothing.
23  　　Q. Do you have an idea, an
24  understanding of why you included that
25  information in this application if you



Cefaratti Group
THE LITIGATION SUPPORT COMPANY
1.800.694.4787　　www.cefgroup.com　　fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44113 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

## Page 282

1 didn't work for those companies and
2 those individuals you don't know?
3     **A.** You have to ask the company,
4 I don't know nothing about it.
5     **Q.** I'm not sure what you mean.
6 I have to ask the company about your
7 employment application and the
8 information you put in your application?
9     **A.** Well, I mean, I'm not even
10 sure if this is the actual application
11 but -- I don't know if this is a page
12 in order from what I did, but I'm
13 telling you it's inaccurate.
14     **Q.** So are you asserting that
15 you did not complete this employment
16 application?
17     **A.** At least not that section or
18 a part of whatever the record is.
19     **Q.** So you're saying that's not
20 your handwriting?
21     **A.** It's possible. I don't know
22 what this is with this part of the
23 application in sequence or why it's
24 there.
25     (Discussion between witness and

## Page 283

1 his counsel.)
2     **Q.** Looking at Deposition Exhibit
3 25.
4     **A.** 25.
5     MR. ROSSI: Your resume.
6     **Q.** I would like to look at the
7 second part of Deposition Exhibit 25
8 which is your application for employment
9 with ABC company.
10     MR. ROSSI: Okay. You got them?
11     **A.** Not finding them quickly.
12     MR. ROSSI: Here, try that.
13     **A.** Oh, here it is.
14     **Q.** If you could turn to the
15 employment history section of your
16 application with ABC.
17     **A.** Yes.
18     **Q.** You have Neff-Perkins Company
19 listed there?
20     **A.** Yes.
21     **Q.** And you say the reason for
22 leaving is short-term/seasonal, do you
23 see that?
24     **A.** Yes.
25     **Q.** So would it surprise you to

## Page 284

1 learn that Neff-Perkins records show
2 that you were a no call no show for two
3 days at which time they deemed you to
4 quit your employment?
5     **A.** Wouldn't surprise me.
6     **Q.** Why would that not surprise
7 you, because it's true?
8     **A.** They can do whatever they
9 want.
10     **Q.** So are you asserting that
11 Neff-Perkins has fabricated a document
12 relating to how it is you left their
13 employment?
14     **A.** Sure.
15     **Q.** Just like the union is
16 fabricating documents and the company is
17 fabricating documents?
18     **A.** Yeah, this is a different --
19     MR. ROSSI: Objection. Don't
20 answer.
21     **Q.** Actually you're required to
22 answer the question. The only time you
23 can't answer a question during a
24 deposition --
25     MR. ROSSI: It wasn't a question,

## Page 285

1 it was an argument. Don't answer it.
2     **Q.** Are you asserting --
3     MR. ROSSI: No.
4     **Q.** -- that Neff-Perkins is
5 fabricating documents in its personnel
6 file pertaining to you?
7     MR. ROSSI: Go ahead.
8     **A.** It appear so.
9     **Q.** So as you sit here today
10 testifying under oath it's your position
11 you were not a no call no show for two
12 days at Neff-Perkins which led to them
13 ending your employment?
14     **A.** I did everything they asked
15 at all times.
16     **Q.** That's not my question.
17 Sitting here today under oath it's your
18 testimony that you did not engage in a
19 no call no show on two days which led
20 to the termination of your employment
21 with Neff-Perkins?
22     **A.** That's correct.
23     - - - - -
24     (Thereupon, Deposition
25 Exhibit-43 was marked for



**Cefaratti Group** THE LITIGATION SUPPORT COMPANY
1.800.694.4787   www.cefgroup.com   fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

**Page 286**

1          purposes of identification.)
2              - - - - -
3          MS. MCARDLE: I'm just going to
4      put this in for the record. This is
5      Deposition Exhibit 43 which is a copy of
6      the change in status form that was
7      submitted to us in response to a
8      subpoena issued to Neff-Perkins, which
9      also along with it was an affidavit of
10     authenticity of the contents of your
11     personnel file.
12          MR. ROSSI: What Exhibit Number
13     is this?
14          MS. MCARDLE: 43.
15          Q. Now, again, according to your
16     resume, which is Deposition Exhibit 24,
17     prior to Neff-Perkins you worked for a
18     company called General Extrusions, is
19     that right?
20          A. Yes.
21              - - - - -
22          (Thereupon, Deposition
23      Exhibit-44 was marked for
24      purposes of identification.)
25              - - - - -

**Page 287**

1          Q. Showing you what's been
2      marked as Deposition Exhibit 44, it's a
3      copy of a document that we received in
4      response to a subpoena issued to General
5      Extrusions for the contents of your
6      personnel records and accompanying the
7      response was also an affidavit
8      certifying the authenticity of the
9      documents contained in that file. Is
10     this a copy of your application for
11     employment with GEI?
12          A. It appears to be.
13          Q. Is that your handwriting,
14     sir?
15          A. It appears to be.
16          Q. This document is Bates
17     labeled General Extrusions 2 through 4,
18     and turning to General Extrusions number
19     3 you indicated, I believe, in response
20     to questions related to your application
21     with Neff-Perkins that you had never
22     worked for these companies, is that
23     right?
24          A. Where are we at?
25          Q. It's General Extrusions 3.

**Page 288**

1          A. 3, where is 3, what do you
2      mean 3?
3          MR. ROSSI: Page 3?
4          Q. It's Bates labeled 2 through
5      4 --
6          A. Oh, okay, I'm sorry, yes.
7          Q. -- so that would be the
8      second page.
9          A. Okay.
10         Q. And I believe you testified
11     in connection with your application to
12     Neff-Perkins that you had not worked for
13     these companies?
14         A. Yeah, correct.
15         Q. So these entities that you
16     listed as being your present and past
17     employment, you in fact did not work
18     there?
19         A. That's correct.
20         Q. How about the personal
21     references, do you know any of those
22     people?
23         A. I don't know if they exist
24     or not. Don't know anybody.
25         Q. The last page of this

**Page 289**

1      document, last page of this document, is
2      that your signature, sir?
3          A. Yes.
4          Q. And it's dated on or about
5      October 24, 2005?
6          A. Yeah.
7          Q. This document says at the
8      top, "Please read and sign below," in
9      all caps. It says, "I understand and
10     agree that any material
11     misrepresentation or deliberate omission
12     of a fact in my application may be
13     justification for refusal or, if
14     employed, termination from employment."
15     Did I read that correctly?
16         A. Yes.
17         Q. So you signed this document
18     certifying to GEI that the contents of
19     the document contained no material
20     misrepresentation or deliberate omission
21     of fact, correct?
22         A. Correct.
23         Q. Yet you included information
24     for entities you never worked for and
25     references of people you don't know?


Cefaratti Group
THE LITIGATION SUPPORT COMPANY

1.800.694.4787     www.cefgroup.com     fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

**Page 290**

1      A. I don't know if it was the
2 complete document that was signed by me.
3 Page 1 or the Bates number 2 looks
4 correct and Bates number 4, page 3 looks
5 correct. Really, I don't know what to
6 say about 3, I can't answer that it,
7 ask the company.
8      Q. Are you asserting that's not
9 your handwriting?
10      A. It's possible.
11      Q. So is GEI another company
12 that you are claiming is falsifying
13 documentation pertaining to you?
14      MR. ROSSI: Objection,
15 foundation.
16      Q. I'm asking what you're
17 claiming, either you are or you're not.
18 Are you claiming that GEI is yet another
19 entity that is falsifying documentation
20 as it relates to you?
21      A. I don't know if they are or
22 not.
23      Q. So this could be your
24 handwriting, you're just --
25      A. It's possible, I don't know.

**Page 291**

1      (Discussion between witness and
2 his counsel.)
3      - - - - -
4      (Thereupon, Deposition
5      Exhibit-45 was marked for
6      purposes of identification.)
7      - - - - -
8      Q. Handing you what's been
9 marked Deposition Exhibit 45, another
10 document we received from GEI in
11 response to the subpoena that we issued
12 for your personnel records. This
13 document appears to be a letter from you
14 to GEI dated December 16, 2005 in which
15 you're tendering your resignation
16 effective December 30, 2005, is that
17 right?
18      A. It appears.
19      Q. You had worked there for
20 about two months before you tendered
21 your resignation, is that right?
22      A. It appears.
23      Q. Why did you resign?
24      A. I did everything they asked,
25 everything was completed, I was done.

**Page 292**

1      Q. The assignment ended?
2      A. Yeah, yes, my assignment
3 ended.
4      Q. So who was the individual
5 that told you your assignment ended?
6      A. I can't recall.
7      Q. Because this references that
8 you shall leave employment with the
9 company two weeks before the above date.
10 It doesn't say anything about now that
11 my assignment is over I'm done and out
12 of here, right?
13      A. I didn't subscribe my
14 signature on this. I don't know if
15 it's out of context or -- I just know I
16 completed my assignment.
17      Q. Flipping the page there's an
18 attached document from your personnel
19 file at GEI entitled separation notice?
20      A. Yes.
21      Q. Date hire, October 26th of
22 05, and says type of separation,
23 resignation, do you see that?
24      A. Yes.
25      Q. It also states under remarks,

**Page 293**

1 nonvested probationary employee, do you
2 see that?
3      A. Yes.
4      Q. Did you understand that you
5 were -- having only worked for GEI for
6 a period of less than two months you
7 were still a probationary employee?
8      A. If that's the case, fine.
9      - - - - -
10      (Thereupon, Deposition
11      Exhibit-46 was marked for
12      purposes of identification.)
13      - - - - -
14      Q. Showing you what's been
15 marked Deposition Exhibit 46 -- there
16 you go, Mike -- this appears to be a
17 letter to you dated January 4, 2006 from
18 GEI. It appears to be responding to
19 correspondence that perhaps you had sent
20 to GEI questioning your eligibility and
21 participation in their health and life
22 insurance programs, do you see that?
23      A. I see it.
24      Q. Did you contact GEI about
25 benefits that you felt that you were


Cefaratti Group
THE LITIGATION SUPPORT COMPANY

1.800.694.4787    www.cefgroup.com    fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

## Page 294

1  owed after you resigned employment?
2      A. No.
3      Q. So they just -- GEI just
4  sent you this correspondence out of the
5  blue?
6      A. I don't know, you have to
7  ask them.
8      Q. Did you contact GEI about
9  continuation of coverage after you had
10  resigned your employment with GEI in
11  December of 05?
12      A. I didn't have any coverage
13  with GEI.
14      Q. You've never filed a claim
15  for Social Security benefits, have you?
16      A. No.
17      Q. You've been arrested before,
18  is that right?
19      MR. ROSSI: Object, relevance.
20      Q. You're required to answer the
21  question.
22      A. Define arrest.
23      Q. How do you define arrest?
24      A. I don't know what the legal
25  definition is. Incarcerated? No.

## Page 295

1      Q. Have you been read your
2  Miranda rights?
3      A. I may have.
4      Q. On how many occasions do you
5  recall being read your Miranda rights?
6      MR. ROSSI: Continuing objection.
7      A. I can't recall.
8      Q. More than once?
9      A. Possible.
10      Q. One of those times you were
11  read your Miranda rights, that was in
12  1996 when you were arrested for carrying
13  a concealed weapon?
14      A. I didn't have anything,
15  concealed weapon.
16      Q. So you're saying none of the
17  three knives that you had in your Trans
18  Am were concealed at any point in time?
19      A. Plain view.
20      Q. All three of them?
21      A. I'd have to look at the
22  record.
23      Q. Best recollection?
24      MR. ROSSI: I hope the quality
25  of these questions mean we're getting to

## Page 296

1  the light at the end of tunnel.
2      A. I think two was in plain
3  view and I think one was as a result of
4  illegal search, that's what I recall.
5      Q. So just to understand then,
6  two of the knives were in plain view
7  and one was what, not in plain view or
8  was in plain view and you just felt it
9  was an illegal search?
10      A. I don't know what they did
11  with that, you have to ask whomever.
12      Q. Well, you filed a lawsuit
13  against the trooper --
14      A. Sure.
15      Q. -- in relation to that,
16  correct?
17      A. Sure, absolutely.
18      Q. Before you were arrested for
19  possession of a concealed weapon on that
20  occasion you were attempting to evade
21  the trooper in your Trans Am because you
22  were speeding, correct?
23      A. False information. No
24  charges of any evade or elude.
25      Q. I'm not talking about

## Page 297

1  charges, sir, I'm asking about facts.
2      A. False.
3      Q. So you were not attempting
4  to evade the police officer?
5      A. No.
6      Q. So as soon as he turned his
7  lights on you pulled over and stopped?
8      A. Sure.
9      Q. Now, you were, as I said,
10  charged and convicted for possession of
11  a -- for carrying a concealed weapon and
12  that was something you appealed in
13  court, correct?
14      A. Yeah, public record.
15      Q. Have you been charged with
16  any other crimes other than carrying a
17  concealed weapon since you testified
18  that you have been read your Miranda
19  rights on more than one occasion?
20      A. I haven't been convicted on
21  anything, no.
22      Q. I'm not asking about
23  convictions, I said charged?
24      A. It's possible.
25      Q. What else have you been



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787    www.cefgroup.com    fax:216.687.0973
**Cleveland:** 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
**Akron:** One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

**Page 298**

1 charged with that you recall?
2     **A.** You have to look at the
3 public records, I really don't recall.
4     **Q.** I actually don't have to
5 look at them, I'm asking for your
6 recollection.
7     **A.** Oh, I don't remember what
8 anything is. We're talking, what was it
9 -- there has been a few things. Oh,
10 open container.
11     **Q.** Anything else?
12     **A.** Let's see, underage
13 something.
14     **Q.** You were under age or you
15 were with someone who was under age?
16     **A.** I wasn't with -- let's see,
17 possible.
18     **Q.** The latter, that you were
19 with someone under age?
20     **A.** Under the age of 21, I
21 believe so, yeah.
22     **Q.** This is related to drinking
23 and alcohol?
24     **A.** Yeah, I wasn't drinking.
25     **Q.** You were buying liquor for

**Page 299**

1 somebody under the age of 21?
2     **A.** No.
3     **Q.** What is the relationship to
4 underage?
5     **A.** I have to see the document.
6 I think that's what I recall what the
7 charges were.
8     **Q.** So you were charged with a
9 crime but you don't recall what crime it
10 was?
11     **A.** It's in dispute.
12     **Q.** Currently in dispute?
13     **A.** I didn't say that.
14     **Q.** So I'm trying to understand
15 your answer. You said it is in
16 dispute, you didn't say it was in
17 dispute. So my question is, is it
18 currently in dispute?
19     **A.** Not to my knowledge.
20     **Q.** What state were you in with
21 regards to the underage charges?
22     **A.** This state.
23     **Q.** It was in Ohio?
24     **A.** Yes.
25     **Q.** Other than open container and

**Page 300**

1 underage charges what other charges have
2 you been -- have you faced?
3     **A.** I guess that's it.
4     **Q.** Were you convicted of the
5 charge relating to the underage
6 circumstances?
7     **A.** I haven't been convicted of
8 anything, never.
9     **Q.** Well, you were actually
10 convicted of carrying a concealed weapon
11 but you appealed that and they reversed
12 the conviction, correct?
13     **A.** The law says direct appeal,
14 no conviction.
15     **Q.** You've never filed for
16 bankruptcy protection, is that right?
17     **A.** No.
18     **Q.** In addition to the lawsuit
19 you filed against the trooper you filed
20 two lawsuits against K-Mart, your former
21 employer, right?
22     **A.** I can't recall. It's
23 possible. I believe one maybe, two or
24 three. I can't recall. One, two or
25 three. Maybe four.

**Page 301**

1     MR. ROSSI: Excuse me a second.
2     (Discussion between witness and
3 his counsel.)
4     - - - - -
5     (Thereupon, Deposition
6     Exhibit-47 was marked for
7     purposes of identification.)
8     - - - - -
9     **Q.** Handing you what's been
10 marked Deposition Exhibit 47, it's a
11 copy of an affidavit you filed in a
12 lawsuit against the trooper, case number
13 499 CV 1642, and turning to the second
14 page of the document, is that your
15 signature, sir?
16     **A.** Yes.
17     **Q.** And you were certifying under
18 penalty of perjury that the information
19 set forth in this affidavit is true and
20 correct?
21     **A.** Yes.
22     **Q.** Looking at paragraph 5, does
23 that refresh your recollection that your
24 third knife was concealed from view in a
25 closed compartment between bucket seats?



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787    www.cefgroup.com    fax:216.687.0973
**Cleveland:** 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
**Akron:** One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

**Court Reporting • Video Conferencing • Legal Video Production • Investigations**
**Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics**

**Page 302**

1     A. Okay, yeah.

2     - - - - -

3     (Thereupon, Deposition

4     Exhibit-48 was marked for

5     purposes of identification.)

6     - - - - -

7     Q. Mr. Rossi represented you in

8 a portion of that lawsuit, is that

9 right?

10     A. Yeah, Michael Rossi, Alan

11 Belkin, yes.

12     Q. Handing you what's been

13 marked Deposition Exhibit 48, a copy of

14 one of the actions you filed against

15 K-Mart, your former employer, case

16 number 01 CVF 282 in the Central

17 District Court of Trumbull County, Ohio.

18 This one is against Glen Wilson who was

19 your supervisor at K-Mart, is that

20 right?

21     A. He wasn't my supervisor, no.

22     Q. So he was a supervisor at

23 K-Mart?

24     A. Yes.

25     Q. Paragraph 4, "On October 19,

**Page 303**

1 2000 on the occasion of an investigatory

2 interview conducted by K-Mart human

3 resource officials, the Defendant, Glen

4 Wilson, was identified as the

5 responsible party who maliciously

6 instituted and maintained 'improper

7 conduct' allegations against the

8 Plaintiff without probable just cause

9 therefore."

10     You represented yourself at this

11 point against K-Mart, is that right?

12     A. Yeah.

13     Q. And that's your signature on

14 the second page?

15     A. Yes.

16     Q. What investigatory interview

17 are you referring to in paragraph 4?

18     A. Investigatory interview --

19 investigatory interview.

20     Q. What was the subject of the

21 investigatory interview that you

22 participated in on October 19, 2000?

23     A. Something about a clogged

24 sink.

25     Q. So you were being interviewed

**Page 304**

1 in connection with a clogged sink at

2 K-Mart?

3     A. Yeah.

4     Q. And what improper conduct did

5 Mr. Wilson purportedly maliciously

6 institute and maintain against you?

7     A. You have to ask him, I can't

8 recall.

9     Q. Actually, I don't. This is

10 your document that you drafted so what

11 did you mean by, quote, improper

12 conduct?

13     A. Well, false, wrong,

14 wrongfully.

15     Q. And what conduct were you

16 allegedly maliciously accused of?

17     MR. ROSSI: Object, irrelevant.

18     Q. Well, certainly it was

19 something you felt strongly about to

20 file a complaint in court over so what

21 improper conduct were you --

22     MR. ROSSI: Objection,

23 irrelevant. Go ahead and continue the

24 deposition.

25     Q. What improper conduct were

**Page 305**

1 you accused of that led you to file

2 this complaint?

3     A. A clogged sink.

4     Q. So you just -- what, he

5 accused you of clogging the sink?

6     A. Yeah.

7     Q. With what?

8     A. I don't know. He said food.

9     Q. So a supervisor at K-Mart

10 accused you of clogging a sink and you

11 filed a lawsuit over it?

12     A. Yeah.

13     Q. And you filed a lawsuit

14 against Mr. Wilson specifically, not

15 K-Mart Corporation in this particular

16 instance, correct?

17     A. It appears so.

18     Q. And you in your demand

19 asserted compensatory damages in the sum

20 of $7,000, exemplary damages in the sum

21 of $7,000 as well as interest and other

22 costs, correct?

23     A. Yes.

24     Q. So you asserted at least a

25 $14,000 recovery against an individual



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787    www.cefgroup.com    fax:216.687.0973
**Cleveland:** 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
**Akron:** One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

**Page 306**

1 who accused you of clogging a sink?
2     A. Okay. Fair enough.
3     Q. Well, am I right?
4     A. Yes.
5     Q. Is that right?
6     A. Yeah.
7     Q. Have you given testimony
8 under oath at any other time other than
9 today?
10     A. What do you mean? Define.
11     Q. Have you been placed under
12 oath and given testimony at any other
13 time other than today?
14     A. Probably.
15     Q. Probably?
16     A. I would assume so, yeah.
17     Q. I'm sorry, I couldn't hear
18 you.
19     A. I would say yes.
20     Q. What other situation were you
21 placed under oath and given testimony?
22     A. I had a traffic ticket in
23 93.
24     Q. Any other times?
25     A. Possibly. I can't recall.

**Page 307**

1 Maybe at the Industrial Commission. I
2 really can't recall.
3     Q. The traffic ticket in 93,
4 since you said you were placed under
5 oath and gave testimony, am I to assume
6 correctly that you contested the ticket
7 and went to court --
8     A. Yes.
9     Q. -- and that's why you were
10 placed under oath?
11     A. Yes.
12     Q. What is your date of birth?
13     ███████
14     Q. Where were you born?
15     A. Ohio.
16     Q. Where in Ohio?
17     A. Warren, Ohio.
18     Q. Where were you raised?
19     A. The same.
20     Q. You're not currently married,
21 correct?
22     A. Correct.
23     Q. Have you ever been married?
24     A. No.
25     Q. You have no children?

**Page 308**

1     A. Correct.
2     Q. You attended two years of
3 college at Kent State about 20 years
4 ago?
5     A. Sounds right.
6     Q. You do not currently have a
7 college degree?
8     A. No.
9     Q. What courses were you taking,
10 what course of study were you taking at
11 Kent State approximately 20 years ago?
12     A. Undeclared.
13     Q. What type of courses were
14 you taking?
15     A. Math, usual. I can't
16 remember all the courses.
17     Q. All required courses?
18     A. Something like that, yeah.
19     Q. Have you attended any formal
20 training or educational programs other
21 than Kent State?
22     A. Not that I know of.
23     Q. You recently applied for
24 re-enrollment at Kent State?
25     A. Yeah.

**Page 309**

1     Q. Have you started coursework
2 back up at Kent State?
3     A. No.
4     Q. Why not?
5     A. I don't know. No response.
6     Q. So you submitted the
7 application for undergraduate
8 re-enrollment but did not hear anything
9 from Kent State?
10     A. Yeah.
11     Q. Do you plan to pursue
12 re-enrollment at Kent State?
13     A. If I can.
14     Q. What courses do you intend
15 to take if you are re-enrolled at Kent
16 State?
17     A. I have to sit down and look
18 and pick a couple and decide.
19     Q. Do you intend to go
20 full-time?
21     A. Yeah, if I can.
22     Q. Are you currently enrolled in
23 any education or training program?
24     A. No.
25     Q. Other than Kent State do you



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787    www.cefgroup.com    fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

**Court Reporting • Video Conferencing • Legal Video Production • Investigations**
**Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics**

**Page 310**

1  have any plans to enroll in any
2  education or training program?
3      A. Depends upon any
4  opportunities that come up.
5      Q. Do you have a current
6  business license?
7      A. Not that I know of.
8      Q. Did you ever have a business
9  license?
10     A. I can't recall.
11     Q. You may have had a business
12 license?
13     A. I don't think, but not that
14 I know of.
15     Q. Did you have any business
16 licenses in connection with your work as
17 a self employed contractor?
18     A. No.
19     Q. And you've never served in
20 the military, is that right?
21     A. That's correct.
22     Q. Your current address is still
23 the 4143 Jeanette Drive, Warren, Ohio,
24 44484 address?
25     A. Yes.

**Page 311**

1      Q. How long have you lived at
2  that address?
3      A. I can't recall. Since high
4  school.
5      Q. So since 1990?
6      A. 89, somewhere in there.
7      Q. Is that the -- whose house
8  is on this -- actually, strike the
9  question, please. Do you know, was that
10 house owned or rented?
11     A. It's got to be owned.
12     Q. Do you own the house?
13     A. No.
14     Q. Whose name is on the title?
15     A. I don't know.
16     Q. Do you know whose name is on
17 the mortgage?
18     A. I don't know. I don't think
19 there's any mortgage.
20     Q. Who lives there besides
21 yourself, your grandmother?
22     A. Yeah.
23     Q. Anyone else?
24     A. No.
25     Q. What's your grandmother's

**Page 312**

1  name?
2      A. Rose Rudin.
3      Q. I'm sorry?
4      A. R U D I N.
5      Q. Do you pay any rent living
6  with your grandmother?
7      A. I don't have any money right
8  now to give any rent.
9      Q. Have you --
10     MR. ROSSI: Say no.
11     A. No, no.
12     Q. Where did you live prior to
13 1989 when you moved into the Jeanette
14 Drive address?
15     A. With my parents.
16     Q. Had you completed high school
17 when you moved in with your grandmother?
18     A. Yes.
19     Q. Why did you move out of your
20 parents' house -- grandmother's house, excuse me?
21     A. I think everybody moved in
22 there at that time. I can't recall. I
23 think we all did. My parents sold the
24 house, something like that. Years, I

**Page 313**

1  can't recall.
2      Q. Have you ever experienced any
3  difficulties receiving mail at the
4  Jeanette Drive address?
5      A. Before -- before, yeah.
6      Q. Before what?
7      A. In the past, years ago.
8      Q. How many years ago?
9      A. I don't know, I wasn't
10 paying attention. I remember before we
11 had some problems years ago but I think
12 there was kids in the neighborhood
13 messing with stuff. I can't remember
14 how many years.
15     Q. Well, the next question I
16 was going to ask you is, do you know
17 why you were having difficulty receiving
18 mail at that address years ago?
19     A. Rowdy kids, possibly.
20     Q. Did you ever have any
21 difficulty receiving phone messages left
22 for you at the Jeanette Drive address?
23     A. What do you mean?
24     Q. Friend of yours ever say to
25 you, hey, I left you a message the



Cefaratti Group
THE LITIGATION SUPPORT COMPANY

1.800.694.4787    www.cefgroup.com    fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

**Page 314**

1 other day, did you get it, and you
2 hadn't gotten it?
3 　　A. Yeah, if my grandma erases a
4 message or don't write it down, it's
5 possible. She's 85.
6 　　Q. Have you asked any current
7 or former ABC employee if they would
8 testify for you in this case?
9 　　A. No.
10 　　Q. Have you asked any current
11 or former ABC employee if they would
12 speak to your attorney in connection
13 with this case?
14 　　A. I think I sent a card to the
15 union people. Other than that, no.
16 　　Q. Is that to Justin that you
17 sent the card?
18 　　A. I believe it was.
19 　　Q. And you asked Justin whether
20 he would speak to Mr. Rossi?
21 　　A. No. I just said -- I gave
22 him the card for communication purposes.
23 　　Q. You gave him Mr. Rossi's
24 card?
25 　　A. Yeah.

**Page 315**

1 　　Q. Do you know if Mr. -- strike
2 the question, please. Do you know if
3 Justin ever contacted Mr. Rossi?
4 　　A. I don't know, you'd have to
5 ask him.
6 　　Q. Has any current or former
7 ABC employee volunteered to testify for
8 you in this case?
9 　　A. Not that I know of, no.
10 　　Q. Any current or former ABC
11 employee volunteered to speak with your
12 attorney?
13 　　A. Not that I know of, no.
14 　　Q. Have you communicated with
15 any current or former ABC employee since
16 your September 2009 layoff other than
17 those we've discussed today?
18 　　A. Kevin, that's about it.
19 Then, let's see, Ryan, Bill DiPietro,
20 Tony Nicastro, that was August 11th,
21 2010 at the plant.
22 　　Q. So you just said Kevin,
23 Ryan, Bill and Tony, were those
24 communications all on August 11th, 2010?
25 　　A. No, no. Kevin, I ran into

**Page 316**

1 him at a gas station. I can't
2 remember.
3 　　Q. How about Ryan, that was
4 August 11, 2010?
5 　　A. Yeah.
6 　　Q. And Bill, when was that?
7 　　A. Same.
8 　　Q. August 11, 2010?
9 　　A. Yeah.
10 　　Q. And Tony was also August 11,
11 2010?
12 　　A. Yeah. Yeah, Tony's mother
13 passed away, I sent a card, I seen it
14 in the paper. Other than that...
15 　　Q. Have you talked about your
16 legal action against ABC with Kevin?
17 　　A. Not that I'm aware of.
18 Grievance stuff.
19 　　Q. What grievance stuff did you
20 speak with Kevin about?
21 　　A. I can't remember. He asked
22 me -- I can't remember who asked who or
23 how it came up but I said, well,
24 grievance, grievance, and it was short
25 because he was at a gas station.

**Page 317**

1 　　Q. So the entire conversation
2 was somebody saying grievance,
3 grievance?
4 　　A. I can't remember. I just --
5 I run into him on more than one
6 occasion and it's always at a gas
7 station, different ones, just out of
8 sheer coincidence. Same place, same
9 time, here and there. I might have
10 seen Rick Harvey somewhere one time too.
11 Other than that...
12 　　Q. Have you talked to Mr.
13 Harvey about your lawsuit against ABC?
14 　　A. No, I just say, hey, what's
15 up.
16 　　Q. Have you ever tape recorded
17 any phone calls with a current or former
18 ABC employee?
19 　　A. What do you mean?
20 　　Q. Have you ever tape recorded
21 any phone calls with a current or former
22 ABC employee?
23 　　A. I don't think so, no.
24 　　Q. Have you ever tape recorded
25 any conversation with a current or



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787　　www.cefgroup.com　　fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

**Page 318**

1 former ABC employee?
2     **A.** No.
3     - - - - -
4     (Thereupon, Deposition
5     Exhibit-49 was marked for
6     purposes of identification.)
7     - - - - -
8     **Q.** Deposition Exhibit 49, is
9 this your application for re-enrollment
10 at Kent State?
11     **A.** It appears to be. I don't
12 know if there's any other parts but fair
13 enough, yeah.
14     **Q.** And on the back, is that
15 your signature?
16     **A.** Yeah.
17     **Q.** And you signed this on or
18 about April 5th, 2011?
19     **A.** Yeah.
20     **Q.** Do you agree that during
21 your employment with ABC you never
22 worked 40 hours a week, 52 weeks a
23 year?
24     **A.** Excuse me, repeat.
25     **Q.** Sure. Do you agree that

**Page 319**

1 during your employment with ABC you
2 never worked 40 hours a week, 52 weeks
3 a calendar year?
4     **A.** I worked there -- every week
5 is 40 hours a week.
6     **Q.** You did not work 52 weeks in
7 a calendar year, correct?
8     **A.** Continuous? Probably not,
9 no.
10     **Q.** Specifically in 2007 you
11 worked for approximately five months,
12 correct?
13     **A.** I'm not sure. If that's
14 what it is, so be it.
15     **Q.** And in 2008 you worked
16 approximately ten months, is that right?
17     **A.** I'm not sure. If that's
18 what it is.
19     **Q.** 2009 you worked approximately
20 nine months?
21     **A.** I don't know. If that's
22 what it is, that's fine.
23     **Q.** Well, in 2007 you were hired
24 in July of 07 and you were laid off in
25 January of 08, correct?

**Page 320**

1     **A.** Okay, yes.
2     **Q.** In 2008 you had been laid
3 off in January of 08 and you were
4 recalled in March of 08 and then worked
5 until January of 09 when you were laid
6 off again, correct?
7     **A.** Yes.
8     **Q.** And then in January of 09
9 you were recalled in June of 09 and
10 then you worked from June of 09 until
11 September of 09, correct?
12     **A.** Sounds right, yeah.
13     - - - - -
14     (Thereupon, Deposition
15     Exhibit-50 was marked for
16     purposes of identification.)
17     - - - - -
18     **Q.** Showing you what's been
19 marked Deposition Exhibit 50, I really
20 just want to have you tell me if that
21 is a true and accurate copy of your
22 2007 tax return that you submitted to
23 the governments of the United States and
24 of Ohio, respectively? Excuse me.
25     **A.** Appears to be.

**Page 321**

1     - - - - -
2     (Thereupon, Deposition
3     Exhibit-51 was marked for
4     purposes of identification.)
5     - - - - -
6     **Q.** 51, same question but are
7 these the tax returns you submitted to
8 the Federal government and State of Ohio
9 for the tax year 2008?
10     **A.** Appears to be, yeah.
11     **Q.** There was no W-2 nor form
12 1099 G attached to your 2008 tax return,
13 do you have those records for 2008?
14     **A.** I give you everything I had
15 so...
16     - - - - -
17     (Thereupon, Deposition
18     Exhibit-52 was marked for
19     purposes of identification.)
20     - - - - -
21     **Q.** Showing you what's been
22 marked Deposition Exhibit 52, same
23 question, but are these your tax returns
24 submitted to the Federal government and
25 the State of Ohio for tax year 2009?



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787    www.cefgroup.com    fax:216.687.0973
**Cleveland:** 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
**Akron:** One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

**Court Reporting • Video Conferencing • Legal Video Production • Investigations**
**Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics**

**Page 322**

1  A. Appears to be.
2  Q. I would like to go back to
3  Deposition Exhibit 2, please.
4  A. 2, got it.
5  Q. What information do you
6  believe that Miss Fisher has to support
7  your claims in this case?
8  A. Payroll.
9  Q. With regards to what that
10  supports your claims in this case?
11  A. Payroll records.
12  Q. I guess what about the
13  payroll records that you believe Miss
14  Fisher has knowledge of that supports
15  the claims in your case?
16  A. She's the administrator of --
17  I requested information or something on
18  the one letter so she's the person in
19  charge for contact for those records.
20  Q. You're referring to, I think
21  it was a 2008 correspondence that you
22  sent to Miss Fisher asking her to check
23  into your wages?
24  A. They deal with health care
25  benefits, union dues, that type stuff.

**Page 323**

1  Q. So what specific information
2  does Miss Fisher have that you claim
3  supports your case?
4  A. I don't know, we have to
5  find out.
6  Q. How about Mr. Bobal, what
7  specific information does Mr. Bobal have
8  that you claim supports your case?
9  A. I don't know, we have to
10  find out.
11  Q. How about Mr. Taraba, same
12  question?
13  A. Same answer. I don't know,
14  we have to find out.
15  Q. Mr. Stimmel?
16  A. Same thing. I don't know,
17  we have to find out.
18  Q. How about Mr. Colello,
19  C O L E L L O?
20  A. I don't know, we have to
21  find out.
22  Q. Are you planning on deposing
23  Mr. -- how do you pronounce his name?
24  A. Who?
25  Q. Colello?

**Page 324**

1  MR. ROSSI: Colello.
2  A. Yes.
3  Q. Do you know whether you're
4  planning on deposing Mr. Colello?
5  A. It's up to my legal counsel,
6  I trust him.
7  Q. What information do you
8  believe Mr. Colello has that would
9  support your case such that you'd want
10  to depose him?
11  A. I don't know, we have to
12  find out.
13  Q. How about Mr. Averell,
14  A V E R E L L?
15  A. Same answer. I don't know,
16  we have to find out.
17  Q. Mr. Warner, what information
18  do you believe Mr. Warner has to support
19  your claims in this action?
20  A. OSHA information. And other
21  than that I don't know, I have to find
22  out.
23  Q. When you say OSHA
24  information, are you referring to
25  something other than what we've

**Page 325**

1  discussed today?
2  A. I don't know, we have to
3  find out.
4  Q. You mentioned someone named
5  Janell at OSHA in the beginning of the
6  deposition today?
7  A. Yes.
8  Q. What role did Janell play in
9  the OSHA investigation?
10  A. Just discussions, she said
11  they're going to inspect.
12  Q. What year was Janell involved
13  with regards to issues you raised to
14  OSHA?
15  A. August 20th, 2010.
16  Q. Is this an in-person
17  conversation with Janell?
18  A. Telephone.
19  Q. Approximately how long was
20  the telephone conversation?
21  A. I can't recall.
22  Q. And did she call you or did
23  you call her?
24  A. She called me.
25  Q. And best as you can recall



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787    www.cefgroup.com    fax:216.687.0973
**Cleveland:** 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
**Akron:** One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

## Page 326

1  please describe that conversation.
2  A. Talked about the inspection
3  and went over the fork trucks, towmotors
4  unsafe, no horn, no lights, oil leaking,
5  fluid leaks, stall, stuff like that.
6  And I says, well, on the inspection --
7  excuse me, I says, since you're on the
8  inspection you might as well check the
9  fire and tornado alarms on inspection.
10 That's about it. It presents an
11 opportunity.
12 Q. And what did Miss -- do you
13 recall Janell's last name?
14 A. I don't know, she said
15 Janell.
16 Q. What did Janell respond, if
17 anything, to your statement?
18 A. Just said that they're going
19 to inspect.
20 Q. And the fire and tornado
21 alarms that you just referenced, that
22 does not form the basis for your claim
23 against ABC, correct?
24 A. No. I just said with the
25 inspection, I says, you have an

## Page 327

1  opportunity to check that because I
2  don't remember us having any fire drills
3  or tornado drills as long as I've been
4  there.
5  Q. You said the conversation you
6  had with Mr. Warner, that was August 26,
7  2010?
8  A. Yes.
9  Q. Did you have any other
10 telephone conversations with Mr. Warner
11 other than that August 26, 2010
12 conversation?
13 A. That's it.
14 Q. Have you told me everything
15 that you and Mr. Warner talked about
16 during the August 26, 2010 conversation?
17 A. Yeah, that covered it.
18 Q. Flipping to the last page of
19 Deposition Exhibit 2, there are some
20 additional individuals identified as
21 having information relating to your
22 claims in this case. And you list Mr.
23 Rowbottom, Mr. Moyer, Mr. Cozart, Mr.
24 DiPietro and Mr. Nicastro?
25 A. Yes.

## Page 328

1  Q. What information does Mr.
2  Rowbottom have that supports your claims
3  in this case?
4  A. I don't know, we have to
5  find out.
6  Q. How about Mr. Moyer?
7  A. I don't know, I have to find
8  out.
9  Q. Mr. Cozart?
10 A. I don't know, I have to find
11 out.
12 Q. Mr. DiPietro?
13 A. I don't know, I have to find
14 out.
15 Q. Mr. Nicastro?
16 A. Same.
17 Q. Let's pull out Deposition
18 Exhibit 3, please.
19 A. Oh, there it is.
20 Q. By the way, did you file a
21 tax return for 2010?
22 A. I believe so. Yes.
23 Q. We don't have a copy of
24 that. Flipping to -- there's some
25 handwritten, three handwritten, appears

## Page 329

1  to be, notebook pages towards the end of
2  Deposition Exhibit 3.
3  A. Okay. You said three pages
4  at the end?
5  Q. They look like this, would
6  be your handwritten notes?
7  A. Okay, yes.
8  Q. I think there's three pages?
9  A. Okay.
10 Q. Do these three pages
11 represent all of the employers with whom
12 you have sought employment since being
13 laid off from ABC Company?
14 A. As of what date?
15 Q. Whenever you started looking.
16 A. I got a lot more.
17 Q. Do you have any records
18 pertaining to your job search efforts
19 other than these three pages?
20 A. I should have, yeah.
21 Q. What other type of job
22 search records do you have?
23 A. Just -- just like this.
24 Q. So more handwritten pages of
25 companies that you may have contacted


Cefaratti Group
THE LITIGATION SUPPORT COMPANY
1.800.694.4787   www.cefgroup.com   fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 · 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 · 330.253.8119

Court Reporting · Video Conferencing · Legal Video Production · Investigations
Claims Services · Process Service · Record Retrieval · Document Management · Trial Graphics

**Page 330**

1 regarding employment?
2     A. Yeah. I got maybe a
3 computer printout, postcards.
4     Q. Did you provide the computer
5 printout to your attorney?
6     A. Yeah, he should have them.
7     Q. And the postcards to your
8 attorney?
9     A. I should have a copy of it.
10     Q. You should or he should?
11     A. Both of you guys should,
12 everybody should.
13     MR. ROSSI: I don't have anything
14 you don't have. Don't start that again.
15     Q. Well, I don't have the 2010
16 tax returns. Since you asked the
17 question, when did you start your
18 efforts to secure new employment?
19     A. I can't recall.
20     Q. Approximate month and year?
21     A. I've always been looking for
22 employment.
23     Q. Even while you were working
24 for ABC?
25     A. Yeah, always. Even in

**Page 331**

1 between layoffs, I always look, you
2 always see what's out there.
3     Q. When were you actively
4 searching for employment after your
5 September of 09 layoff?
6     A. I'm always actively searching
7 for employment so every time all the
8 time, continuing.
9     Q. These companies that you've
10 listed in Deposition Exhibit 3 --
11     A. Yeah.
12     Q. -- when did you start
13 searching for employment with these
14 companies?
15     A. These companies have to be
16 within this time period of permanent
17 layoff or somewhere in there.
18     Q. So you started -- your
19 permanent layoff you believe was October
20 15th, 2010, correct?
21     A. Okay.
22     Q. And are you saying that
23 after that date you started looking for
24 employment with the companies you have
25 listed?

**Page 332**

1     A. There are so many companies,
2 including these, yes.
3     Q. In what way did you signal
4 your interest to the companies that you
5 have listed in Deposition Exhibit 3?
6     A. Regular mail.
7     Q. Is that by submitting an
8 application, resume?
9     A. Resume.
10     Q. And how did you find the
11 companies that you've listed in
12 Deposition Exhibit 3?
13     A. Everywhere, computer, books,
14 just whatever I found.
15     Q. Did you actually submit
16 applications for any of these companies
17 listed in Deposition Exhibit 3?
18     A. No, resume.
19     Q. Were you responding to
20 solicitations for resumes or
21 applications to any of these companies
22 listed in Deposition Exhibit 3?
23     A. Say that again, please.
24     Q. Were you responding to
25 solicitations for applications or

**Page 333**

1 resumes as it relates to any of these
2 companies you've listed in Deposition
3 Exhibit 3 or were you cold calling, in
4 other words?
5     A. Yeah, not these, no. Just
6 sending them out.
7     Q. So you didn't know one way
8 or the other whether these companies
9 were hiring?
10     A. I have no idea.
11     Q. Have you interviewed for any
12 jobs, we'll say, since October 15, 2010?
13     A. No call, nobody called me.
14     Q. Did you receive any offers
15 of employment since October 15, 2010?
16     A. Nobody called me.
17     Q. Has any company ever informed
18 you or gotten back to you about why
19 they were not considering you for a
20 position?
21     A. I had one before says don't
22 meet our criteria or something, I can't
23 remember what their exact words are.
24     Q. Do you recall what company
25 that was?



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787     www.cefgroup.com     fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

## Page 334

1     A. I don't remember. PSK, TSK,
2 I can't recall. All I remember it was
3 in Brookfield, that's all I can
4 remember, Brookfield, Ohio.
5     Q. Approximately how many hours
6 a week do you spend looking for
7 employment?
8     A. Depends on the time I have
9 available.
10     Q. Well, when you say the time
11 you have available, what is filling your
12 time such that you may not have time to
13 look for employment?
14     A. I might be on the computer
15 for hours, maybe minutes, just depends.
16     Q. So what is filling your time
17 that you may only have a few minutes to
18 look for employment?
19     A. It varies, each day is
20 different.
21     Q. So what is filling your time
22 such that you only have a few minutes
23 to search for employment on some days?
24     A. What do you mean filling
25 time?

## Page 335

1     Q. What are you doing other
2 than looking for work?
3     A. Available for computers.
4     Q. I'm sorry?
5     A. The availabilities of
6 computers and other resources, libraries
7 or drive around, just depends.
8     Q. When you say availability for
9 computers, is that because you don't
10 have a computer at your house?
11     A. Yeah, I don't have a
12 computer, right.
13     Q. So you go to the library?
14     A. Yeah.
15     Q. Anywhere else you go to use
16 the computer?
17     A. That's it, libraries.
18     Q. So still trying to
19 understand, are you on the computer when
20 the library is open?
21     A. I use computers wherever I'm
22 at, my friends, my sister, libraries. I
23 don't limit it to anything. Whatever,
24 if somebody got a computer out, hey, let
25 me check it out. If they see

## Page 336

1 something, share information.
2     Q. On average then how often or
3 how many hours a week would you say
4 you're looking for employment?
5     A. It's hard to say, it varies.
6     Q. An hour a week?
7     A. Probably longer than that.
8     Q. Two hours a week?
9     A. Sometimes a day I'm looking
10 for two hours.
11     Q. So I understand it's an
12 average, how many hours a week are you
13 searching for employment?
14     A. I guess you could say an
15 hour a day.
16     Q. Is that just Monday through
17 Friday?
18     A. Yeah, Monday through Friday.
19 A Sunday, Saturday, Sundays, sometimes
20 Saturday, sometimes. Usually never on a
21 Sunday.
22     Q. So on average you're looking
23 for new employment about five hours a
24 week on average?
25     A. That will work. I look, at

## Page 337

1 least.
2     Q. Is there any period of time
3 since October 15, 2010 that you've
4 suspended your efforts to look for a
5 job?
6     A. I'm always looking, no.
7     Q. Has there been any period of
8 time since October 15, 2010 that you
9 have been unable to work for any reason?
10     A. None whatsoever.
11     Q. Have you been self employed
12 at any time since September of 09?
13     A. No.
14     Q. Do you have health insurance
15 now?
16     A. What do you mean?
17     Q. Well, I think you said you
18 elected COBRA for dental only, correct?
19     A. That's correct.
20     Q. So do you have medical
21 insurance now?
22     A. No.
23     Q. The Deposition Exhibit Number
24 4, the portion that contains your
25 handwritten notes, I think it's the



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787    www.cefgroup.com    fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 · 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 · 330.253.8119

Court Reporting · Video Conferencing · Legal Video Production · Investigations
Claims Services · Process Service · Record Retrieval · Document Management · Trial Graphics

## Page 338

1  second document in the clipped packet.
2      A. This is 3, close here, 2, 1,
3  1, 2, 3.
4      MR. ROSSI: Here, use mine.
5      A. Oh, here it is.
6      MR. ROSSI: How much longer do
7  you have?
8      MS. MCARDLE: Not much.
9      MR. ROSSI: What does that mean
10  quantitatively speaking?
11      MS. MCARDLE: Probably about 15
12  minutes, how's that, but I'm not going
13  to promise in case something comes up.
14      MR. ROSSI: That's okay.
15      Q. Mr. Potts, in the handwritten
16  notes that you wrote on the one portion
17  of Deposition Exhibit 4, I think it's
18  the second clipped packet.
19      A. Okay.
20      Q. In writing those notes you
21  were intending to impart true and
22  accurate information to the reader, is
23  that?
24      A. To what reader, what do
25  you --

## Page 339

1      Q. To whoever is reading them.
2      A. Whoever is reading what?
3      Q. It's a pretty basic question.
4      A. Oh, yeah, yeah, yeah, sure.
5      Q. You were intending to provide
6  honest answers, correct?
7      A. Yeah.
8      Q. So, for example, page 2,
9  number 7, you wrote oral notice in-house
10  written report, none in my care?
11      A. Yeah.
12      Q. You were intending to impart
13  that you had no copies of any in-house
14  written report, correct?
15      A. Wrote them down and that's
16  that.
17      Q. Did you review any documents
18  in preparation for your deposition
19  today?
20      A. No.
21      Q. Did you meet with your
22  attorney in preparation for your
23  deposition today?
24      A. Today.
25      Q. I'm sorry?

## Page 340

1      A. Today.
2      Q. So no other time other than
3  today did you meet with Mr. Rossi to
4  prepare for your deposition?
5      A. This is it.
6      Q. Approximately how long did
7  you spend with Mr. Rossi before your
8  deposition?
9      A. How long was the drive?
10      Q. About 40 minutes?
11      A. That's it.
12      Q. And during that time you
13  didn't review any documentation --
14      A. No.
15      Q. -- to prepare? Other than
16  what we've talked about today is there
17  any other fact on which you rely to
18  support your whistleblower claim?
19      A. What do you mean?
20      Q. Other than what we've talked
21  about today --
22      A. This is it, everything.
23      Q. You told me everything that
24  supports your whistleblower claim?
25      A. Yeah, you got everything.

## Page 341

1      Q. You told me everything that
2  supports your COBRA notice claim?
3      A. You got everything I got.
4      Q. Looking back on things is
5  there anything you would have done
6  different during your employment with
7  ABC?
8      MR. ROSSI: Objection, relevance.
9  Go ahead.
10      A. It's hard to say, you know,
11  after the fact of everything you always
12  think what if, what if, what if, you
13  know. But what if, you can't change
14  nothing, you can't -- you know,
15  tomorrow, the next day, driving home, I
16  should have turned left, should have
17  turned right, can't take it back.
18      Q. Well, I understand you can't
19  take it back but my question is, looking
20  back on things is there anything you
21  would have done differently during your
22  employment with ABC?
23      A. Probably would be.
24      Q. What would you have done
25  differently?



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787    www.cefgroup.com    fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

**Page 342**

1 A. Everything.
2 Q. Such as what?
3 A. Depends on everything, would
4 do things differently.
5 Q. I'm sorry?
6 A. Depending on any certain
7 situation, anything, knowing now,
8 experiencing now, obviously if I study
9 this material, you know, I learned this
10 studying this, reading the papers after
11 the fact, of course I would do things
12 different after reading this.
13 Q. And can you identify for me
14 something that you said of course you
15 would do differently after reading this?
16 A. No, just generalities.
17 Q. Looking back on things is
18 there anything you would have done
19 differently during the time period of
20 September of 09 through October 15th of
21 2010?
22 A. Probably.
23 Q. Such as what?
24 A. I don't know.
25 Q. Well, you have a feeling

**Page 343**

1 that you would have done something
2 differently either during your
3 employment or during that time period I
4 just said, so there must be something
5 prompting that feeling. What is
6 prompting that feeling that you would
7 have done --
8 A. Be friends --
9 Q. Hold on -- something
10 differently? Go ahead. I have to
11 finish my question, that was one of the
12 ground rules.
13 A. Sure, sure, sure, I'm sorry.
14 This is kind of new to me or whatever,
15 so I'd probably become friends with the
16 managers.
17 Q. Anything else?
18 A. Buy them dinners like the
19 other people do, participate in their
20 bowlings and other social events.
21 Q. Do you feel that the fact
22 you didn't participate somehow affected
23 your employment?
24 A. I didn't say that. I said
25 -- you asked do something different, I

**Page 344**

1 just -- I'd go do something different.
2 MS. MCARDLE: No further
3 questions.
4 MR. ROSSI: Waive signature.
5 - - - - -
6 .
7 .
8 .
9 .
10 .
11 .
12 .
13 .
14 .
15 .
16 .
17 .
18 .
19 .
20 .
21 .
22 .
23 .
24 .
25 .

**Page 345**

1 CERTIFICATE
2 .
3 State of Ohio        )   SS.:
4 County of Cuyahoga. )
5 I, Steven H. Henschel, a Notary
6 Public within and for the State of Ohio,
7 duly commissioned and qualified, do
8 hereby certify that the within named
9 witness, was duly sworn to testify the
10 truth, the whole truth and nothing but
11 the truth in the cause aforesaid; that
12 the testimony then given by the witness
13 was by me reduced to stenotypy in the
14 presence of said witness; afterwards
15 transcribed, and that the foregoing is a
16 true and correct transcription of the
17 testimony so given by the witness.
18 I do further certify that this
19 deposition was taken at the time and
20 place in the foregoing caption
21 specified.
22 I do further certify that I am
23 not a relative, counsel or attorney for
24 either party, or otherwise interested in
25 the event of this action.



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787    www.cefgroup.com    fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

Page 346

1    I am not, nor is the court
2  reporting firm with which I am
3  affiliated, under a contract as defined
4  in Civil Rule 28 (D).
5    IN WITNESS WHEREOF, I have
6  hereunto set my hand this     day of
7         , 2011.
8
9
10
11
12
13    Steven H. Henschel, Notary Public
14    within and for the State of Ohio
15
16
17
18  My commission expires April 22, 2013.
19
20
21
22
23
24
25

**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787    www.cefgroup.com    fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

**A**

abated 99:19
ABC 3:20 4:5
22:4,13,22
46:17 47:8
53:16,23 54:3
65:13,13 82:4
82:10,19,24
83:4 84:1 85:1
85:3,7,17 86:6
86:22 87:23
88:14 90:25
91:3 94:16
96:11 97:4
127:16,23
128:2,10,18
136:24,24,25
138:14 141:5
141:9 142:4
142:20 143:21
148:5,23
149:17 150:14
151:11 152:25
153:13,22
154:6,8
155:24 158:4
158:12 161:2
164:22,25
167:2 170:20
170:20 173:1
173:11,20
196:25 198:19
200:20 217:18
220:21 221:1
221:6,11
245:9 247:21
248:24 250:23
253:4 254:8
254:25 255:2
265:14,20,24
266:16,22,25
268:4,25
269:8 271:16
272:15 274:19

275:21 276:7
276:24 277:6
283:9,16
314:7,11
315:7,10,15
316:16 317:13
317:18,22
318:1,21
319:1 326:23
329:13 330:24
341:7,22
ABC's 266:7
ability 145:23
able 6:5 8:8
135:1,7 210:1
absence
180:22 184:7
absolutely
20:24 27:11
58:16 79:24
136:10 200:16
226:10 227:18
229:7 296:17
accept 81:22
111:3 240:20
241:7
acceptance
240:14 246:21
accepted 246:9
248:11
accident 120:3
accompanying
287:6
accomplished
202:23 203:2
account 19:23
187:25 188:6
188:8
accountability
261:24 270:14
accounting
262:3 270:16
accurate 11:3
13:24 56:8
70:1 160:12

160:23 226:7
241:15 280:6
281:16,20
320:21 338:22
accurately 77:6
83:24 132:3,9
241:18
accused
304:16 305:1
305:5,10
306:1
achieve 151:20
achieved 152:4
acknowledge
80:21 122:22
acknowledge...
168:21
acknowledges
217:8 237:18
acknowledg...
168:1
acronym
161:11
act 22:20 81:12
274:5 278:16
278:17,18
acting 32:13
35:16 38:18
39:14 42:18
248:23 249:7
249:11,15
250:3,8,22
action 22:13,22
81:17,24 82:4
82:11 84:13
96:10 97:4
163:10 236:6
255:17 316:16
324:19 345:25
actions 22:4
140:22 302:14
active 71:15,16
257:14
actively 71:13
331:3,6

activity 81:16
81:19
actual 57:20
282:10
Adams 100:24
adding 21:14
addition 40:9
145:12 151:3
300:18
additional
21:14 121:3,4
121:22 240:20
241:5 327:20
address 93:8
232:8 234:1
258:7 259:21
261:2 310:22
310:24 311:2
312:14 313:4
313:18,22
addressed 33:6
43:14 65:18
80:19 89:20
131:18 175:25
181:11 258:6
259:20
Adjustment
278:17,18
Administration
84:11 88:18
administrative
129:17
administrator
128:19 322:16
adopted 45:23
advance 164:10
advice 21:19
advised 29:25
99:7 169:10
affidavit 268:17
268:20 286:9
287:7 301:11
301:19
affiliated 346:3
aforesaid

345:11
AFTERNOON...
245:1
age 3:1 298:14
298:15,19,20
299:1
agency 24:16
24:24 81:1
83:4 88:3
134:13,15
agent 24:16,17
24:18,19
31:16 57:20
57:20 102:1
183:2 187:15
275:24
agents 101:16
124:9 177:9
273:25
ago 3:11 38:9
77:12 120:7
308:4,11
313:7,8,11,18
agree 83:19
88:21 89:24
99:18 100:9
130:22 135:23
148:11 152:23
159:8 224:11
224:16 228:1
229:8 230:3,9
233:4 289:10
318:20,25
agreed 140:2
150:25
agreement
44:23 45:7
46:5 92:5 93:5
93:24 94:18
94:24 120:10
136:5,12
138:5 139:17
139:21 144:5
152:2,18
154:22 215:19



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787   www.cefgroup.com   fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

216:13,19
223:22 227:2
245:18 279:7
279:16
**ahead** 48:5
58:25 86:16
158:6 208:13
220:4 247:1
285:7 304:23
341:9 343:10
**aka** 1:11,12
100:22 101:8
101:9
**Alan** 302:10
**alarms** 326:9
326:21
**alcohol** 298:23
**allegations**
303:7
**alleged** 81:24
92:12 97:13
97:19 141:20
142:2
**allegedly**
304:16
**allow** 151:16,19
221:25 222:18
223:16
**allowed** 146:25
152:8
**alluded** 248:17
**alluding** 145:12
**amended** 7:22
7:23 8:10
265:11 268:2
271:18 275:6
275:13,15,17
275:19
**amendment**
275:8
**American** 1:10
3:13,18,25
7:25 8:12
12:15,23 15:7
16:23 17:1,7,9

17:24 18:5,14
19:1,7,19 20:4
20:8 21:10,15
21:23 25:11
25:17 28:25
29:5 35:19
43:2 50:24
59:6 60:9
67:25 83:18
84:9,12 99:6
100:12,20
101:7 106:21
274:1
**amount** 196:2
242:24 261:7
**amounted**
255:9
**angrily** 104:5
**angry** 191:2
199:23
**annual** 199:6
199:14 201:23
202:1,16
213:10 216:24
227:22 236:19
236:20 238:9
246:18 247:10
247:13,19,22
247:24 249:18
267:8
**Anselmo** 9:5,6
**answer** 5:10,11
5:22 6:25 8:8
10:2,21 29:3,9
44:25 45:3
47:10 57:15
160:15 169:22
201:2 214:10
227:3 235:11
235:14 236:10
245:25 246:20
248:5 252:4
284:20,22,23
285:1 290:6
294:20 299:15

323:13 324:15
**answered** 10:9
85:21 116:1
**answering** 5:18
5:21 101:2
116:18,22
**answers** 5:6
7:5 12:21
108:10 200:20
247:7 339:6
**Anthony** 4:12
**anticipate**
21:14
**anybody** 57:13
91:11,12
92:23 173:25
195:12 253:16
254:8 288:24
**anymore**
106:21 243:20
**apart** 62:1
**apologize**
58:23 69:18
130:19 201:4
238:19
**apparently**
223:8
**appeal** 300:13
**appealed**
297:12 300:11
**appear** 11:12
12:9 219:18
285:8
**appearance**
174:17,20,23
191:1
**APPEARANC...**
2:1
**appeared** 35:2
35:4
**appears** 13:1
13:11,17
43:13 44:7
60:12,21 61:5
61:7,18 62:2

64:5,7 65:14
65:16,23
83:15 98:17
98:23 131:16
132:18 136:3
139:2 155:23
160:3,13,24
167:15,21
179:19 185:9
185:15 197:15
205:6 258:4
258:15 261:4
261:9 271:8
280:25 287:12
287:15 291:13
291:18,22
293:16,18
305:17 318:11
320:25 321:10
322:1 328:25
**applicable**
279:15
**applicant**
162:20
**application**
160:18,21,22
162:18 163:6
163:8,15,18
163:22 167:14
222:13 237:7
281:1,25
282:7,8,10,16
282:23 283:8
283:16 287:10
287:20 288:11
289:12 309:7
318:9 332:8
**applications**
159:23 332:16
332:21,25
**applied** 308:23
**apply** 134:21
135:1,2,7
146:10 147:14
**appreciate**

233:16
**approached**
35:14
**approaching**
72:6
**appropriate** 6:4
84:13
**Approximate**
330:20
**approximately**
36:17,22
38:24 72:24
158:14 308:11
.319:11,16,19
325:19 334:5
340:6
**April** 139:7
179:21 184:10
184:19 252:10
252:15 318:18
346:18
**area** 85:12
190:4
**argue** 200:24
**arguing** 229:25
**argument** 203:8
205:25 285:1
**arranged**
240:21
**arrangements**
174:16
**arrest** 294:22
294:23
**arrested** 294:17
295:12 296:18
**arriving** 205:12
**Article** 44:4,11
45:16,20
137:4 138:22
139:16 140:1
141:11 142:21
143:22 150:14
150:22 153:14
153:23 155:10
**aside** 275:20



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787  www.cefgroup.com  fax:216.687.0973
**Cleveland:** 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
**Akron:** One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

276:3
**asked** 20:17
69:16 89:17
89:18 207:4
219:6 232:14
238:5 245:22
254:23,24
255:6 258:18
285:14 291:24
314:6,10,19
316:21,22
330:16 343:25
**asking** 4:3 5:17
6:8 45:2,3
47:5 54:24
55:5,8 56:7
59:11 63:24
64:6,7 76:5
83:23 85:23
87:7 101:3
103:11 108:4
108:12,16
128:7 216:7
219:3 223:1,2
229:4 231:8
231:11 269:23
290:16 297:1
297:22 298:5
322:22
**asks** 201:3
**assert** 103:24
172:21 264:8
**asserted** 20:3,7
21:3,4,10,22
131:2 265:13
305:19,24
**asserting** 63:18
105:14 272:13
282:14 284:10
285:2 290:8
**assertion**
102:11
**assigned**
142:23 158:18
194:2,14,22

202:17
**assignment**
292:1,2,5,11
292:16
**assist** 266:2
**assistance**
260:12
**assistant** 58:20
85:11
**associate**
58:22
**Associates**
128:22
**assume** 6:18
20:19 29:8,14
30:10 35:21
46:12 47:17
54:13 **55:22**
92:14 130:7
176:24 210:10
262:16 306:16
307:5
**assumed** 92:17
242:24
**assuming**
15:18 29:22
30:3 31:18
46:20 47:6
53:20 54:2,8
56:2 57:1 59:1
107:12 165:24
166:3 195:9
195:10
**assumption**
30:8 55:17
58:2,8 59:12
59:13 109:2
109:10 195:1
**attach** 205:18
**attached**
208:18 258:8
261:5 292:18
321:12
**attachment**
14:24 15:1

89:20 90:3
98:16
**attempt** 218:20
**attempted**
265:25
**attempting**
266:9,13
296:20 297:3
**attempts**
234:12
**attend** 165:22
165:23 240:22
**attended** 165:9
165:25 166:4
196:24 308:2
308:19
**attending**
166:11
**attention** 43:24
45:12 78:17
249:18 313:10
**attorney** 4:22
10:7 11:1
15:15,20,25
21:18 129:2
161:10,20
172:21 252:11
253:12 314:12
315:12 330:5
330:8 339:22
345:23
**audible** 6:2
**August** 26:6,19
28:1,5,21
32:14 34:2,8
34:12,16,20
35:1 37:5,9
38:4,11,23
40:4 42:10,14
43:14 44:2
51:6,19 52:3,8
52:12 53:15
53:21 62:20
63:3,21,23
64:3 65:15

68:4,5,19
70:14,18,20
71:7,14,23
72:6,11,23
73:5,9,24 74:3
74:14,20 75:7
75:14 76:6,16
77:8,14 78:4
78:10 79:5,14
79:23 80:18
81:5 85:2,9,18
86:2,9 87:11
87:19 88:10
90:18 91:16
91:20,24 95:5
95:11 96:12
96:15 97:5,22
98:1,24 112:1
113:4 132:21
133:1,14
134:7 193:5
195:9 315:20
315:24 316:4
316:8,10
325:15 327:6
327:11,16
**authenticity**
286:10 287:8
**authorities** 25:8
25:9
**authority** 29:13
29:17,23 30:4
30:7,12 31:9
38:20 43:4
47:16,25 49:8
49:11,15
54:12,17,21
55:1,14,18,20
55:23 56:2,5,9
57:10,14
58:10 59:7
134:19 168:8
**authorized**
226:19
**availabilities**

335:5
**availability**
335:8
**available** 92:6
215:18 235:14
235:23 334:9
334:11 335:3
**average** 336:2
336:12,22,24
**Averell** 324:13
**avoid** 217:11
**aware** 34:13
37:11 38:13
118:15 126:11
173:12,15,20
174:2 221:15
234:22 235:1
316:17
**a.m** 1:18

---
**B**
**B** 26:24 51:8,8
83:18 120:23
179:23
**back** 10:13
26:10 59:9
77:11 90:7
93:20 96:3
100:15 109:1
115:1,4,5
128:25 130:2
130:14 142:5
155:22 174:18
179:9 180:8
180:24 186:8
207:23 231:23
247:9 249:23
253:13 262:5
266:3 267:8
270:12 309:2
318:14 322:2
333:18 341:4
341:17,19,20
342:17
**backdated**



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787    www.cefgroup.com    fax:216.687.0973
**Cleveland:** 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
**Akron:** One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

243:22 250:16
264:8
**backdating**
263:12,15,20
263:20,25
264:3,5
**backing** 200:4
**bad** 78:20
104:3 105:9
110:2 119:25
121:18 256:17
257:2
**Baker** 1:20
**bankruptcy**
300:16
**banter** 189:23
**bargaining**
44:23 45:7
46:5 92:4,24
93:5,24 94:17
94:24 120:9
136:13,19
152:2 198:16
215:19 216:13
216:19 245:18
279:7,16
**Barnett** 124:4
**base** 108:5
**based** 18:15
29:20 31:15
56:23 57:25
91:19,23
95:20,24
111:17 195:7
245:17 277:8
**basic** 52:2
339:3
**basically** 169:3
199:11 269:2
**basing** 58:18
102:11
**basis** 23:10
55:21 71:18
108:12,16
121:13 123:21

127:21 138:6
202:20 212:19
212:25 215:15
248:19 326:22
**bat** 156:23
**Bates** 65:12
136:24 156:6
156:17 161:1
280:24 287:16
288:4 290:3,4
**battery** 37:23
**bearing** 65:12
**bears** 10:14
280:23
**beating** 118:19
**beginning**
174:19 189:16
236:21 266:23
325:5
**begins** 151:15
155:11 163:25
237:17
**behalf** 2:3,11
226:15,20
248:23 249:7
249:12,16
250:3,8,22
254:9 266:10
266:14 273:3
274:15 275:24
**belief** 108:5
272:9,16
273:11,19
277:4
**believe** 9:13
10:14 22:16
26:1 28:6
29:18 31:14
32:2 46:8 47:3
49:17 55:15
55:16 66:25
75:19 79:8
84:24 85:5,14
86:3,9,19
87:20 88:11

92:8 95:17
104:8 106:1
106:25 107:10
108:1 109:3
111:22 115:10
117:2,4,11,17
118:11,16
126:1 129:22
130:4 133:19
133:24 134:6
171:6 174:5,7
199:4 206:3
211:22 212:19
213:1 235:7
237:1 238:15
249:11,14
250:2,21
253:24 256:4
257:10 265:11
266:6,12
271:19,20
277:8 279:17
287:19 288:10
298:21 300:23
314:18 322:6
322:13 324:8
324:18 328:22
331:19
**believed** 82:12
90:21 95:16
96:10 113:19
195:5 207:15
231:20 249:6
251:7 262:6
262:10,12
267:25
**Belkin** 302:11
**benefit** 257:8
261:3,8
262:13 263:8
264:9 266:7
266:23
**benefits** 104:20
130:9,11
139:15 150:13

151:11 152:6
173:1,5,8
180:18 183:25
184:4 188:15
188:19,25
193:13 253:13
258:12,14
259:8,22,22
260:5 261:17
261:17 264:11
265:24 266:17
278:13,21
293:25 294:15
322:25
**BENTLEY** 2:13
**best** 87:4,9
163:4,19
198:7 272:9
272:15 273:10
273:19 277:3
295:23 325:25
**better** 118:11
119:11,18
123:3,23
124:16 125:12
154:3
**beyond** 149:1
150:7
**bid** 249:19
**bidding** 146:12
147:13 199:6
199:14 201:23
202:2,16
213:10 216:24
227:22 236:19
236:20 238:10
246:18 247:11
247:13,19,22
248:1,2 267:9
**big** 116:24
174:10 254:5
**bigger** 79:10
**bike** 120:2
**bill** 98:17 102:7
102:23 121:2

122:15 197:17
255:3 261:3
315:19,23
316:6
**billing** 258:4,11
258:24 260:25
261:16
**bind** 168:10
**binding** 145:18
146:5
**birth** 307:12
**bit** 21:21 22:9
85:23 191:3
198:2
**black** 147:8
**blow** 35:2,5
**blowing** 35:6
**blue** 147:5
294:5
**board** 57:12
72:15,17
73:10 74:4
77:16 144:11
271:17
**Bobal** 24:16
25:2,3 50:19
50:23 51:5,8
51:11,14,17
51:20 52:12
52:16,23
53:15,21 54:2
54:12,21 55:1
55:14 56:15
57:7,16,22
58:14 59:15
62:19 63:3,12
63:21,22 64:3
64:11 65:25
66:11,21,24
67:22 68:6
70:15,21 71:7
101:21,25
102:8,12,18
102:19 103:1
103:6,11,12



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787    www.cefgroup.com    fax:216.687.0973
**Cleveland:** 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
**Akron:** One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

104:8 105:4
105:14,25
106:16,18
107:7,10
108:1,6,8,18
108:23 109:13
110:16,20
111:11 112:1
113:3 115:14
183:9 191:25
197:18 199:21
218:4 219:3
222:15 224:3
228:11,23
229:10,13,15
229:17 230:13
231:1 232:13
233:24 235:10
237:3 239:22
251:3 252:20
254:12 255:3
255:13 323:6
323:7
**Bobal's** 67:1,6
105:9 200:7
201:9 255:14
256:4,9
**Bogard** 83:17
89:20,25
**bonus** 242:17
**242:22**
**book** 162:2,3
**books** 332:13
**born** 307:14
**boss** 48:4,6
**Bottling** 1:10
1:14 3:14,18
3:25 8:1,12
12:15,23 15:8
16:23 17:2,7,9
17:24 18:5,14
19:1,7,19 20:4
20:8 21:10,16
21:23 25:11
25:17 29:1,5

35:19 43:2
50:24 59:6
60:9 68:1
83:18 84:9,12
99:7 100:13
100:21 101:7
101:10 106:21
136:7 274:2,2
**bottom** 61:15
66:5 150:16
150:18 162:5
166:20 167:20
209:12 227:17
245:11 258:8
261:6
**bowlings**
343:20
**box** 2:7 16:2,4
16:5,12,15,21
17:5,11 18:3
18:12,19
19:13,20
166:24
**boxes** 16:7
18:8
**brake** 27:18
**brakes** 23:5,23
63:17
**branch** 98:18
240:1
**break** 118:7
131:5 244:2
**breaks** 36:12
**briefly** 127:13
196:23
**bring** 111:20
195:14 236:19
**Brookfield**
334:3,4
**Brotherhood**
45:22
**brought** 43:22
45:10 180:8
199:4 205:24
249:17

**bucket** 301:25
**bulletin** 144:11
**bump** 126:5
146:15 147:21
222:2,6,20,24
223:17,24
224:4 236:17
236:25 238:2
**bumped** 126:8
126:13
**bumping** 236:4
**bunch** 16:6
**busiest** 159:10
**business** 25:22
25:24 40:24
41:1 169:1
310:6,8,11,15
**busy** 196:9,11
196:12,13,16
**Buy** 343:18
**buying** 298:25
**Byrnes** 178:19
179:20,23
**BY-MS.MCA...**
**3:8** 245:3

_____

**C**

C 31:24 32:8
43:15 66:9
122:25 131:19
156:23 323:19
**Cadbury** 1:13
100:22,23
101:10
**calendar** 138:7
319:3,7
**call** 43:25 70:16
70:22 71:4,5
76:15 97:10
128:23,24
142:5 199:5
232:16 241:9
246:2 252:21
254:7 284:2
285:11,19

325:22,23
333:13
**called** 3:2 9:10
40:20 81:5
114:18,25
139:4 142:5
179:8 199:14
201:22 202:16
249:20 280:11
286:18 325:24
333:13,16
**calling** 158:11
170:17 333:3
**calls** 111:4
130:2 247:1
264:20 317:17
317:21
**caps** 162:21
289:9
**caption** 345:20
**carbon** 66:14
**card** 25:22,24
169:1 262:17
314:14,17,22
314:24 316:13
**care** 104:21,23
118:21,23
242:25 322:24
339:10
**cared** 118:17
118:18,24
270:20
**carefully**
162:23
**cares** 120:13
**carrying** 295:12
297:11,16
300:10
**case** 1:9 3:13
6:10 9:11,15
12:16 15:8,15
15:25 21:4
23:11 48:17
60:3 99:11
145:16 155:11

207:1 251:23
252:7 254:11
293:8 301:12
302:15 314:8
314:13 315:8
322:7,10,15
323:3,8 324:9
327:22 328:3
338:13
**cases** 94:20
**cassette**
116:24
**categories**
17:10 41:15
137:17
**Catherine**
274:14,17
275:17,23
277:9,15
**caught** 113:25
**cause** 140:13
270:3 303:8
345:11
**caused** 274:1
274:19 275:3
275:21 276:7
276:24
**causing** 277:6
**CBA** 44:2,11
45:16 94:11
145:8 216:11
232:10 236:22
**cc** 66:5,9
**CDL** 224:20
**ceased** 250:2
**center** 1:21
266:7,17,23
**Central** 302:16
**cents** 112:12
**certain** 9:12
10:7 12:14,22
13:15 22:3,4
47:24 94:11
94:12 104:20
121:23 140:22



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787    www.cefgroup.com    fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

153:6 173:1
342:6
**certainly** 15:10
20:19 95:19
129:4 142:6
150:2 155:4
178:24 183:10
200:18 248:22
304:18
**certificate**
62:22 63:5
111:25 112:14
112:17,22
345:1
**certification**
162:20
**certified** 3:5
62:18 63:2
65:25 67:2,6
197:25 200:4
234:7 239:22
276:7 277:2
**certify** 163:2
345:8,18,22
**certifying**
163:16 167:2
168:18 273:16
277:5 287:8
289:18 301:17
**cetera** 93:1,1
189:24,24
232:17,17
**challenge**
145:5
**chance** 103:17
**change** 36:1
168:8 200:13
**252:5 259:25**
275:14 286:6
341:13
**changed** 35:25
37:1 126:3
199:22,23
200:8 201:9
264:14

**changes** 69:22
**changing**
264:10,12
**chaos** 190:8,14
190:16
**characterizat...**
83:20
**characterizat...**
207:10
**charge** 38:18
39:17 258:24
268:4,7,10,14
268:18,25
269:8,12,15
269:19 270:1
270:8 271:15
271:18,21
272:8,15,25
273:9,17,23
275:7,13,15
275:19 277:3
277:13 300:5
322:19
**charged** 297:10
297:15,23
298:1 299:8
**charges** 260:11
296:24 297:1
299:7,21
300:1,1
**Charlie** 178:18
179:20
**check** 61:10
65:19 77:15
242:15 243:21
243:22 267:24
322:22 326:8
327:1 335:25
**checked**
166:24
**Chicago** 2:16
**children** 307:25
**choice** 269:4
269:16,18
**choose** 95:2

**chose** 19:4,5
47:25 68:3
146:7 277:10
**Chris** 42:5
**Cindi** 192:4
**Cintra** 2:13
3:10
**circumstance**
69:19
**circumstances**
91:13 149:1
266:19 300:6
**civil** 3:3 10:20
35:9 346:4
**claim** 20:9 21:6
**21:7,25 22:2**
22:11,21 23:1
23:11 91:8,15
92:7 93:15
100:18,18
101:18 102:4
114:8,11
119:4 127:13
127:14,15,22
128:2,8
131:20 171:13
193:8,12
197:2 198:22
201:22 202:1
202:15,20,21
210:8 230:19
294:14 323:2
323:8 326:22
340:18,24
341:2
**claimed** 110:15
265:20
**claiming** 23:10
101:4,14
116:3 171:8
290:12,17,18
**claims** 4:4 9:14
20:2,7 21:3,5
21:9,14,21
100:16 107:18

109:6 119:2
265:14 322:7
322:10,15
324:19 327:22
328:2
**clarification**
26:16 65:20
**clarify** 6:18
83:22 204:10
245:12 250:25
**clarifying**
207:13
**classes** 165:21
166:14
**classification**
41:24 142:25
143:11,15
146:19 148:2
202:9 208:10
212:15,17
**227:25**
**classifications**
145:15,25
213:11 222:3
222:7,21
**clause** 140:21
141:2,3 194:1
194:10
**Cleaning**
118:25
**clear** 78:19
**Cleveland** 1:23
54:18
**client** 172:13
200:12,19
**clipboard** 34:5
39:18 40:1,2,5
324:4,8
**clipped** 11:16
11:19,20,22
338:1,18
**clock** 71:19,19
120:6
**clocking** 71:23
**clogged** 303:23
304:1 305:3

**clogging** 305:5
305:10 306:1
**close** 38:19
120:5 148:10
226:18 338:2
**closed** 99:12
278:25 301:25
**closure** 279:2
**cmcardie@s...**
2:18
**COBRA** 20:10
21:6 104:24
127:13,14,15
127:23 128:3
128:11,20
129:9,15,19
130:5,9 131:2
242:8 253:20
253:22 257:6
264:13,17,19
264:23,25
265:3,7,13,15
265:18,21
266:2,10,13
266:18 267:12
271:5 337:18
341:2
**code** 135:10
**coincided**
184:13
**coincidence**
317:8
**cold** 333:3
**Colello** 42:6
190:6 323:18
323:25 324:1
324:4,8
**collecting**
44:23 198:16
**collective** 45:7
46:5 92:4 93:5
93:24 94:17
94:24 120:9
152:2 215:19
216:13,19



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787    www.cefgroup.com    fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

245:17 279:6
279:15
**collectively**
137:10,17
**college** 308:3,7
**color** 60:14
70:6
**come** 37:2
119:1 124:24
125:1 127:4
162:1 216:8
310:4
**comes** 338:13
**Coming** 186:8
**comment** 90:14
103:2
**commission**
307:1 346:18
**commissioned**
345:7
**communicate**
60:24
**communicated**
77:8 315:14
**communicati...**
219:12
**communicati...**
64:11 262:25
314:22
**communicati...**
10:6 76:18
129:3 270:7
315:24
**comp** 119:4
**companies**
281:18 282:1
287:22 288:13
329:25 331:9
331:14,15,24
332:1,4,11,16
332:21 333:2
333:8
**company** 3:14
3:19,21,24,25
8:1,12 10:8

15:8 16:23
17:2,7,9,25
18:6,14 19:1,8
19:19 20:4,8
21:11,16,23
25:11,17 29:1
29:5 31:10,17
35:19 43:3
50:25 56:6,25
57:3,20 59:6
60:10 63:13
68:1,9 69:7,13
83:19 84:9,12
94:2,4 99:7
100:13,21
101:4,7,8,18
102:1,5
105:12 106:21
110:9 124:7,9
140:15 141:19
141:24 143:10
144:20 145:13
145:17,24
146:5 148:25
149:2,8 151:1
151:16,19
159:22,25
164:18 168:2
168:3,7,10,19
177:9,24
182:20,21
183:1,2,7,8,11
183:25 184:4
187:15,23
188:14,18
194:2,14
195:18,23
196:20 198:11
199:9,12,15
200:9 201:11
201:13 203:3
203:14,21
204:1 207:10
210:19 213:5
215:16 216:4

216:9,14,20
217:8,13,23
218:11,16,22
219:8,21
221:3 222:8
222:17 223:3
223:13 225:7
232:7 234:24
236:7,14,24
237:18 238:1
240:11,15,19
240:24 241:5
241:24 242:13
252:18 253:6
263:23 264:1
264:4,8,16,22
265:6 267:17
267:18,20,22
271:6 274:2
280:11,22
281:3 282:3,6
283:9,18
284:16 286:18
290:7,11
292:9 329:13
333:17,24
**company's**
12:16,24
151:6 192:13
241:1 246:10
257:8
**compare** 156:3
156:8,9
**compartment**
301:25
**compensation**
164:8
**compensatory**
305:19
**competency**
140:11
**complain** 24:12
26:4 32:10,11
51:4
**complainant**

89:8,13
**complained**
24:23 25:7
26:8 29:1,6
31:24 32:13
33:8 52:2
76:12 99:8,18
117:22 118:2
118:13
**complaining**
33:11 46:23
47:9 78:9 79:4
101:20
**complaint** 7:22
7:24 8:10
22:17,19,21
22:23 23:2,9
23:15,20 24:6
26:11,20,22
27:2,4,8,14,25
28:4,20 32:17
32:20 34:1,19
34:25 37:4,17
38:3,10,22,25
39:2,25 40:4
40:10 42:10
42:14 46:16
46:21 47:7
51:7,10,13,17
51:19 54:4
79:21 80:22
81:20,21 82:6
82:7,13,14,17
82:20,24 83:5
84:8 85:2,8
89:13 95:8,10
96:12,13,22
97:3,6 100:20
100:24 101:6
101:12,15
102:15 103:8
104:2,10
105:16 106:3
106:19 113:14
113:21 117:7

117:14,19
118:14 119:9
119:15 130:15
130:22 131:2
131:21,25
132:2,4,7,13
132:14 134:12
265:11 268:2
304:20 305:2
**complaints**
81:23 119:17
**complete** 5:9
5:11 7:5 48:14
282:15 290:2
**completed**
40:10 151:2
167:13,14,15
171:17 172:11
172:16,24
291:25 292:16
312:16
**completion**
172:3 173:6
**comply** 94:16
94:23
**computer** 64:23
69:15 129:8
129:13,17
330:3,4
332:13 334:14
335:10,12,16
335:19,24
**computers**
335:3,6,9,21
**concealed**
295:13,15,18
296:19 297:11
297:17 300:10
301:24
**concern** 43:23
45:11 63:14
176:1 181:12
186:23
**concerned**
190:12



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787    www.cefgroup.com    fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

concerning
9:14 18:13
20:1 23:2,20
28:21 56:20
62:18 64:3
65:22 67:20
75:6,13,24
85:8 95:9 97:4
114:10 119:9
134:12,17,17
134:23 136:18
concerted
264:2 276:18
276:21
concludes
237:23
conclusion
93:4
condition 274:9
conditions
99:13 100:1
148:8,20
162:24 245:14
conduct 22:3,5
22:6,8,12,13
22:15 44:4
82:18 86:13
101:19 102:13
103:15,24
104:3,6 105:9
105:15,25
106:17 117:3
117:4 118:12
199:22 255:7
255:8,14
256:4,9,14,19
256:25 303:7
304:4,12,15
304:21,25
conducted
97:12,19
303:2
confer 200:11
200:18
confirm 239:3

271:4
confirmation
112:4 113:2,6
259:19
confirming
79:20
confirms
259:22
conflict 35:9
46:8
conflicts 45:20
confused
169:21
confusing 92:2
95:13 130:2
confusion
128:25 147:4
223:6 266:20
267:19
congratulatio...
215:10
connection
109:23 111:6
249:2 250:22
288:11 304:1
310:16 314:12
consider 42:21
43:1 102:19
103:7 113:13
169:18 217:14
217:20 218:1
218:12,18
219:8,22
223:14 241:1
246:13,16,20
consideration
172:15 177:15
177:20 217:12
considered
102:14 103:25
104:9 110:11
113:15,22
114:3 115:12
115:17 117:3
117:5,12,18

170:20 177:25
183:19 188:9
242:23
considering
333:19
consistent 33:5
constitute
162:24
Constitution
45:22
consult 252:25
consulted
109:23 110:3
consulting
110:1
contact 91:3
99:20 100:6
110:24 111:1
149:8 172:12
179:25 189:2
189:5,10,21
191:4,22,25
192:7,20
232:14 236:7
236:14 252:18
252:25 253:5
253:14,15
254:13 266:1
293:24 294:8
322:19
contacted
189:15 190:2
265:19 266:3
266:7 268:15
315:3 329:25
contacting
228:23
contained 17:5
160:22 163:17
163:21 226:6
239:1 287:9
289:19
container
298:10 299:25
contains

186:19 337:24
contents
227:20 251:6
272:14 273:16
286:10 287:5
289:18
contested
307:6
context 292:15
continuation
294:9
continue
168:11 176:3
176:8 181:16
181:23 182:3
182:11 187:1
251:17 262:20
268:17 279:17
304:23
continued
37:13,16
236:25 245:2
continuing
295:6 331:8
Continuous
319:8
contract 92:4
136:21 137:14
137:15,15
139:1 142:11
144:17 145:4
145:6 151:23
152:24 153:9
153:19 154:1
154:2,17
155:8,18,20
156:5 157:4
157:18,19,19
157:20 190:20
190:22,23
199:7 206:19
207:16 208:7
212:12 220:8
236:22 241:13
346:3

contractor
310:17
contractual
139:15 222:1
222:5,20
223:16
control 149:1
Convention
45:24
conversation
32:23 34:11
34:15 70:24
85:24 87:8,11
132:22 184:10
215:5 317:1
317:25 325:17
325:20 326:1
327:5,12,16
conversations
15:21 192:19
327:10
converting
221:18
convicted
166:22 167:3
297:10,20
300:4,7,10
conviction
300:12,14
convictions
297:23
copied 80:10
239:7 245:25
copies 16:22
66:14,16,19
68:4,12 69:8
98:13 251:14
251:22 339:13
copy 26:2 61:9
62:11 66:24
67:2,6,15
68:14,25
69:11 70:7
74:17 83:15
84:15 99:9

**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787   www.cefgroup.com   fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

136:4 159:21
189:1,8
193:22 197:16
197:22 209:15
209:22 227:12
228:10 232:25
239:21,23
240:4 258:10
272:25 278:1
280:25 286:5
287:3,10
301:11 302:13
320:21 328:23
330:9
**corner** 227:17
**corporate**
29:25
**corporation**
57:11 163:1
164:9 305:15
**correct** 5:2 6:12
8:1 11:24 13:1
14:17,22,23
16:19 17:2
20:11 21:7,8
21:11 22:5
23:7 26:2,20
26:21 27:10
29:24 30:5,9
37:5 42:23
52:6 55:18,24
60:17 61:25
66:7,11 68:23
69:1 71:14,18
72:2 73:6,7,17
76:1,14 79:8
79:12 84:14
88:23,24 90:5
90:12,24 91:7
93:25 95:21
95:25 96:20
99:3,22
101:25 107:2
108:24,25
111:21 113:9

116:16,17
129:21,25
130:5,10
131:3,22
132:24,25
134:4,18
135:18 136:9
136:21 138:18
139:23 140:24
143:13,14,19
143:20 144:13
144:20,22,23
145:7 146:1,2
146:6 147:14
147:23,24
148:3,13
149:11,14
150:5,9 152:6
152:21 153:2
153:3 154:22
154:23 156:19
157:11,25
158:1,8,9,14
160:2 161:24
163:4,18,22
167:24 168:22
173:7 174:14
174:21 175:2
175:3,21
176:4,9,13,15
178:22 180:4
181:1,25
182:6,13
183:11,21
184:5,17
185:18,23
186:7,10
188:16,20
192:14 193:11
195:1 196:20
197:1,24
209:18,24
210:2,15,25
211:2,7,12,20
216:16,22

218:8,14,23
219:19 220:7
220:9,19,20
221:21 222:9
223:11 224:12
224:18,24,25
225:11 226:13
228:20,21
229:1,2,6,12
229:13 230:6
231:11 233:2
233:7,8 234:7
234:14 235:19
236:16 238:4
239:4,5,8
240:10 241:25
242:1,18,21
243:15,16
248:19 255:4
257:9,20
261:14 263:4
263:5 264:19
264:25 265:15
265:22 267:21
268:7 269:9
269:10 273:20
285:22 288:14
288:19 289:21
289:22 290:4
290:5 296:16
296:22 297:13
300:12 301:20
305:16,22
307:21,22
308:1 310:21
319:7,12,25
320:6,11
326:23 331:20
337:18,19
339:6,14
345:16
**corrected** 33:6
97:13,20
99:13 100:2
**correctly** 11:14

44:6 45:25
81:2,25 84:17
99:15,21
137:11 138:11
139:1,18
140:16,18
141:21 143:6
144:14 145:20
146:20 149:5
149:22 151:8
151:24 163:12
164:11 168:13
179:10 181:18
187:3 217:16
272:10 273:12
274:10 289:15
307:6
**corresponde...**
13:12 14:15
14:20,25 17:6
17:8 43:21
44:24 53:12
53:16,22
61:10 64:2,24
65:10,21
67:20 68:5
69:7 70:2,15
70:21,25
74:23 79:20
82:3,23 83:3
83:13,16
86:11 88:13
96:9,23 97:11
98:2,14,17
99:1,5 100:10
111:13 113:4
131:17 192:22
193:1 222:18
225:22 226:4
226:7 228:10
229:10 230:17
233:5,24
234:4,13
235:10,18
239:8,21

240:2,5,8
241:6 243:3,5
243:9,11
246:3 250:15
252:16 253:7
293:19 294:4
322:21
**costs** 305:22
**counsel** 9:3
19:12 21:19
60:2 232:7
253:10 254:8
254:19 283:1
291:2 301:3
324:5 345:23
**counsel's**
111:7
**count** 212:7
**counting** 36:11
36:12
**County** 302:17
345:4
**couple** 61:5
120:12 144:25
145:2 166:6,9
309:18
**course** 10:9
40:23,25
48:18 58:6,7
64:14 119:19
128:9 236:6
308:10 342:11
342:14
**courses** 308:9
308:13,16,17
309:14
**coursework**
309:1
**court** 1:3 5:7
6:1,6 297:13
302:17 304:20
307:7 346:1
**courtesy** 39:20
39:20 186:2
**cover** 65:3,14



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787    www.cefgroup.com    fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

106:23 115:24
256:12,22
**coverage**
104:21,23
258:22 259:22
261:4 262:13
264:15,23
265:8 294:9
294:12
**covered** 4:22
13:22 14:3
42:16 105:24
257:7 276:16
279:8 327:17
**covering**
195:11 263:8
**covers** 117:20
257:4
**Cozant** 31:25
32:6
**Cozart** 24:15
25:1 31:24,25
32:2,8,14
38:11 39:1,12
39:25 40:4
42:11,15,17
42:22 43:1
44:1,22 45:5
46:10,21 47:7
47:16 48:21
48:25 49:2,8
49:11,15,19
50:1,8,14 52:3
67:21 68:6
70:22 71:1
72:6 119:23
120:4,15,16
124:14,22
125:11 132:23
169:6,11
170:1,3,6
327:23 328:9
**Cozart's** 125:2
**CPA** 161:6
**created** 126:14

**crime** 299:9,9
**crimes** 297:16
**criteria** 333:22
**current** 154:20
278:1 310:5
310:22 314:6
314:10 315:6
315:10,15
317:17,21,25
**currently** 73:4
130:8 147:8
299:12,18
307:20 308:6
309:22
**customer** 261:5
**cut** 227:24
**cutting** 206:10
**cut-off** 27:20,23
51:24
**cut-offs** 23:6,24
**Cuyahoga**
345:4
**CV** 301:13
**CVF** 302:16

**D**

**D** 2:5 83:18
131:19 148:22
156:3,4,9,11
156:14,21,23
156:24,25
161:5 312:4
346:4
**damages**
305:19,20
**Danny** 119:22
123:4,5,8
**dark** 118:22
**data** 165:3
**date** 38:23 39:1
48:7,22 49:1
83:16 84:2
107:2,6
111:11 123:18
125:3 134:7

144:4 149:21
196:6 206:8
212:10 213:14
213:15 214:18
214:24 215:8
220:11,12
224:11,12,17
224:17 231:18
231:22 232:9
234:10 250:1
250:7 259:20
261:1 263:10
266:21 276:1
276:3 278:6
280:4 292:9
292:21 307:12
329:14 331:23
**dated** 13:13,25
14:16,21
43:13 65:15
65:17 68:19
80:18 83:13
83:25 98:15
98:19,21
131:17 175:24
179:20 181:11
185:9 186:22
197:18 202:5
205:7 225:23
230:4,9
232:25 233:24
243:21 250:17
253:23 257:6
258:5 289:4
291:14 293:17
**dates** 136:15
153:1 250:14
250:15 263:21
263:25 264:10
264:12,14,14
264:15 267:16
267:19 275:25
278:10
**David** 156:10
**day** 37:5 48:11

48:14 52:18
52:21 59:9
69:21 73:2
104:4 125:16
125:22 142:1
142:15,16
159:10 169:9
170:2,4
171:22 173:16
173:21 174:4
174:23 179:8
202:11 205:10
205:24 208:25
210:1 235:13
236:9 279:4
314:1 334:19
336:9,15
341:15 346:6
**days** 47:22 61:8
61:10 81:23
128:4 138:7
138:16 139:11
141:20 142:3
142:13,14
144:12,18
145:6 148:24
149:3,10
170:25 208:2
208:4 284:3
285:12,19
334:23
**day-to-day**
71:17
**dba** 1:10
100:21 101:8
274:2
**deal** 67:8,9
103:5,22
105:7 243:20
255:22 322:24
**dealing** 128:13
**dealt** 247:5
**Dear** 228:16
**Dearborn** 2:14
**December**

133:21 134:1
134:3 192:16
192:17 239:23
241:14 242:10
242:16 250:17
253:19,23
254:3 258:22
258:23 259:7
259:24 260:6
262:21 263:11
263:19 265:5
267:14,17,18
267:21,23,24
275:8 291:14
291:16 294:11
**decide** 18:18
19:11 112:21
135:4 270:1
309:18
**decided** 199:24
268:24 269:3
269:3,11
**deciding**
172:15
**decision** 30:16
30:19,22,25
31:6,12,20
49:19 50:1,8
50:14 56:5,6
56:15,21 57:4
57:7,17,23
58:4,15 59:3
59:16 107:5
107:25 108:7
108:11,14,18
108:24 109:4
109:13 110:4
110:11 172:3
172:10,22
177:4,7,11,16
177:21,25
182:24 183:4
183:15,20
187:11,13,17
187:21,25



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY
1.800.694.4787    www.cefgroup.com    fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

188:6,10,12 208:5
**decisions** 144:22 247:15
**declaration** 272:3,13 273:5
**declare** 272:7 273:8
**decrease** 140:9
**deem** 105:15
**deemed** 144:13 145:7 284:3
**defect** 63:15
**defendant** 1:15 2:11 3:18 10:22 303:3
**defer** 154:25 216:12,18
**define** 22:6 42:24 294:22 294:23 306:10
**defined** 44:2 45:6 46:4 346:3
**Defining** 182:7
**definitely** 38:16 133:10 246:12 250:4
**definition** 22:7 294:25
**degree** 308:7
**deliberate** 289:11,20
**deliver** 73:15 73:21 74:5,19 77:16
**delivering** 74:14
**delivery** 112:4 137:6 140:4 144:6 174:13
**demand** 305:18
**demeanor** 104:3 105:9

199:22 200:8 201:9,14
**demote** 140:12
**Dennis** 124:4
**Denny** 123:11 123:12,24,24 123:25 124:2 124:3,6
**Denny's** 124:10
**dental** 130:12 150:23 257:20 258:21 259:5 260:13 261:12 337:18
**departed** 110:18
**department** 50:24 92:21 98:19 192:14 210:23 212:17 213:13,14,19 213:24 214:1 214:2,4,15 265:20
**departments** 94:12 202:3
**DePasquale** 190:6
**depended** 248:12
**dependent** 246:22
**Depending** 342:6
**depends** 69:19 104:16 310:3 334:8,15 335:7 342:3
**depose** 324:10
**deposed** 3:5
**deposing** 323:22 324:4
**deposition** 1:17 3:12 4:17,20 7:13,18 8:4,15

8:20 9:18,23 11:6,11 12:12 12:21 13:3,8 13:11 14:6,11 14:19 15:5 43:7,12 59:20 59:25 61:20 62:4,9 63:19 63:25 65:5,9 66:19 67:11 67:12 68:18 74:11,15 75:10,16,22 76:6,21 77:1 77:17,25 78:6 80:1,6,15 83:8 83:12 90:2 96:3,7 98:5,10 99:24 111:24 130:14,17 131:9,15 135:12,17,21 143:17 152:10 152:15 159:15 159:20 160:5 160:8,19 161:22 167:8 167:17,20 168:25 175:15 175:20 178:9 178:14 181:4 181:9 185:3,8 186:13,18 189:2,9 191:24 193:16 193:21 195:3 197:7,12 200:15 204:21 205:1 206:21 208:19 209:4 209:15,21 211:4,18 216:25 224:8 224:15 225:3 225:16,21

227:7,11 228:4,9
229:10 230:4 230:8 232:12 232:19,24 233:18,23 236:2 237:13 238:14 239:2 239:6,14,19 242:3 245:7 251:1,7 252:16 253:7 257:23 258:3 258:20 259:11 259:16 260:18 260:23 263:7 268:3 270:22 271:3,10,14 272:19,24 273:15 277:17 277:22 278:4 280:6,9,15,20 281:4 283:2,7 284:24 285:24 286:5,16,22 287:2 291:4,9 293:10,15 301:5,10 302:3,13 304:24 318:4 318:8 320:14 320:19 321:2 321:17,22 322:3 325:6 327:19 328:17 329:2 331:10 332:5,12,17 332:22 333:2 337:23 338:17 339:18,23 340:4,8 345:19
**Derick** 83:17
**derived** 93:21
**deriving** 93:3

**describe** 326:1
**described** 191:9 194:7 249:5 255:8
**designate** 12:22 109:14 110:4,12
**designated** 139:23
**designating** 12:14
**designation** 107:15,21 108:7 109:24
**desire** 236:8
**desk** 40:12,13 41:5,10 75:8 75:15,25 76:9
**despite** 44:15 48:2 236:23 253:2 262:7,9 265:17 267:12
**detail** 19:25 21:21 100:16 158:5
**details** 24:11
**determination** 18:23
**determine** 18:10 69:10
**determined** 144:4 220:11 265:12
**determining** 140:10
**dial** 253:15
**dialogue** 32:24 32:24 34:3 47:1 86:25 215:6
**dictates** 94:5
**difference** 153:8,17 154:14 155:17 157:11,14



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787   www.cefgroup.com   fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

265:7
**differences**
153:25
**different** 41:23
70:5,6 94:22
101:2 104:14
104:18 124:25
142:24 143:10
154:12,13,16
156:22 157:1
157:2,4,13
173:4 174:22
199:20 207:3
212:23 263:23
264:9 284:18
317:7 334:20
341:6 342:12
343:25 344:1
**differently**
11:19 81:17
341:21,25
342:4,15,19
343:2,10
**difficulties**
313:3
**difficulty**
313:17,21
**digital** 116:21
**dinners** 343:18
**DiPiero(sic)**
121:2
**DiPietro** 126:16
315:19 327:24
328:12
**diploma** 165:18
**direct** 300:13
**directed** 56:17
106:10
**direction** 111:7
140:4
**directly** 68:8
82:5 121:25
**director** 85:12
**directors** 57:12
**directs** 57:11

**disagree**
211:13 227:19
**disagreed**
99:25 100:7
**disagreement**
48:1
**discharge**
105:19 140:13
179:7
**discharged**
138:8
**disciplinary**
163:10
**discipline**
47:16 54:12
**disclosing** 89:2
89:7,12
**disclosures**
9:11 32:9
111:17
**discovery** 10:9
13:16,18 26:2
60:10 67:25
80:8 197:14
251:23 252:7
277:25
**discrepancies**
249:20 278:6
**discriminate**
274:3,19
275:4,22
276:8,25
277:7
**discrimination**
81:14 276:13
277:12
**discriminatory**
81:24
**discuss** 189:3
189:6,11,17
191:25 192:9
208:6 240:22
**discussed**
198:14,20
199:2 201:17

201:24 202:14
206:5 207:6
245:10 249:5
315:17 325:1
**discussing**
32:24 36:15
36:20 100:15
193:23
**discussion**
33:21 35:9
85:11 93:9
164:24 195:7
197:5 254:18
282:25 291:1
301:2
**discussions**
107:17 325:10
**disgrace** 115:8
**disorganized**
130:18 190:9
**displaced**
146:17 147:23
222:4,22
**dispute** 144:23
144:24 145:17
146:4 155:11
299:11,12,16
299:17,18
**disputing** 44:21
45:5 278:10
**disruption**
185:25 190:9
**distribution**
25:15
**District** 1:3,4
302:17
**DIVISION** 1:5
**document** 7:19
8:5,6 9:24
10:1 11:2,12
11:21 12:1,6
12:16,24 13:9
14:12,14 15:3
15:7,10 31:3
52:25 60:1,3

60:13,20 61:4
62:10,16 63:6
63:19 65:12
65:14,25 66:7
67:16,19
68:21 69:12
69:17 70:11
77:2,3,6 80:7
80:11,12
83:21 98:10
98:24 130:21
132:2 135:18
135:23,25
136:23 152:16
167:14,15
168:16 175:21
175:23 178:25
185:8,11
186:19,22
197:13,18,23
205:2,3
211:21 217:2
217:4 234:19
241:16,19
242:3 258:19
259:17 260:4
260:24 264:7
272:4 273:7
273:14 277:24
280:21 281:4
281:6 284:11
287:3,16
289:1,1,7,17
289:19 290:2
291:10,13
292:18 299:5
301:14 304:10
338:1
**documentation**
243:3 290:13
290:19 340:13
**documents**
8:21,24 11:16
11:22 12:14
12:22 15:14

15:24 16:22
16:25 17:1,3
17:10,17,17
17:18 18:13
19:4,12,17
69:6 112:6
159:6 164:15
185:17 284:16
284:17 285:5
287:9 339:17
**doing** 35:5
188:23 202:22
206:12 208:10
262:8 263:14
335:1
**double** 39:20
**doubled** 159:12
**Doug** 174:8,11
174:12
**DPSG** 3:20,23
**DPSUBG** 136:7
**Dr** 1:11,12
100:21 101:8
101:9 136:6
139:21 161:23
258:5 259:17
260:25
**draft** 268:21
**drafted** 66:6
178:23 226:25
273:2 274:14
275:24 304:10
**drafting** 277:9
277:15
**drastic** 200:12
**drawing** 109:10
**drill** 22:8,17
24:10
**drills** 327:2,3
**drink** 98:3
**drinking** 298:22
298:24
**drive** 16:18
116:19 234:1
258:7 259:21



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787   www.cefgroup.com   fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

261:2 310:23
312:14 313:4
313:22 335:7
340:9
driver 124:5
214:6,20,21
215:10
drivers 137:6
140:4 143:18
144:6 204:16
driver's 224:20
driving 341:15
drop 72:18
269:3 270:5
due 91:12
130:1 146:13
147:19
dues 72:16
73:11,20 74:4
77:15 189:18
189:22 190:19
243:22 248:18
249:23 250:10
250:19 261:22
262:18,21
270:15 274:8
322:25
DUI 120:5
duly 3:4 345:7,9
Duplicate 51:25
duties 158:16
duty 126:3,21

E

E 9:7 43:15
66:10 121:7,8
121:8 131:19
179:23 192:4
323:19 324:14
324:14
ear 20:15
earlier 6:16
38:21 39:24
90:13 97:2
127:7,8,9

131:22 132:19
133:16,17
168:25 195:3
198:4 206:21
210:18 212:10
229:4 231:23
245:10 248:18
253:17 254:22
255:23
earliest 133:12
early 37:2 266:6
267:4
ease 32:11
136:23
easier 132:11
161:2
easily 70:11
East 1:22 2:6
EASTERN 1:5
easy 69:24
educated
195:15 213:20
education
166:12 309:23
310:2
educational
165:3 308:20
effect 266:8
effective 176:2
181:14 186:24
217:15,21
218:2,13,19
219:9,23
221:19 223:15
228:19,25
241:14 253:19
254:3 259:23
265:5 267:14
267:21 291:16
efficient 140:7
efforts 329:18
330:18 337:4
eight 17:21
47:21 202:6
eight-hour 36:7

36:10,17,23
48:14,21
142:14
either 96:24
97:20 134:18
161:18 231:17
290:17 343:2
345:24
elapsed 138:16
elect 130:5
264:17,23
265:21 266:10
266:13,18
elected 337:18
electing 266:2
electronic
27:18,21
158:17,23
eligibility
293:20
eligible 173:1,6
278:9
eliminated
220:22 221:1
221:7,12
elimination
146:14 147:19
elude 296:24
employed
58:19 138:5
162:25 242:25
262:7 267:25
279:23 289:14
310:17 337:11
employee 42:2
45:19 87:14
90:11 94:13
138:3,15,21
141:17 142:22
143:2,3,9
146:17 147:22
148:8,21
149:18 151:1
170:16,21
173:15,21

174:2 175:11
210:24 211:20
211:25 222:4
222:12,22,24
223:25 224:5
245:14 257:14
260:12 267:9
278:21 279:7
293:1,7 314:7
314:11 315:7
315:11,15
317:18,22
318:1
employees
33:23 81:13
94:12 118:10
119:7,13
137:8,10,16
137:25 139:5
139:7,10,14
139:22 140:5
140:11 144:3
144:9 146:15
147:20 154:19
180:9 204:13
204:14,17
208:9,9 210:8
employer 84:21
139:12 142:24
154:19 300:21
302:15
employers
329:11
employer's
99:9
employment
4:5,7 17:24
18:5,25 19:7
19:18 20:1
30:13 31:7,13
31:21 49:16
50:9,15 57:8
57:18,23 58:5
58:15 59:4,17
82:12 86:23

87:5,12 90:14
90:21 93:25
100:12 104:13
127:9 140:22
144:21 148:10
148:12,16,17
152:25 158:3
159:23,25
161:23 162:17
164:5,7,13
167:13 168:3
168:5,9,11
170:5 171:1
173:4,11,14
174:19,25
191:17,19
198:19 240:16
240:18 241:13
242:6 245:15
245:20 248:24
250:23 253:4
265:4 266:25
267:3 281:9
281:16 282:7
282:15 283:8
283:15 284:4
284:13 285:13
285:20 287:11
288:17 289:14
292:8 294:1
294:10 318:21
319:1 329:12
330:1,18,22
331:4,7,13,24
333:15 334:7
334:13,18,23
336:4,13,23
341:6,22
343:3,23
enclosed 84:14
99:10
encloses 84:1
enclosing
83:14
enclosure



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787    www.cefgroup.com    fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

65:16 98:25
**endeavor** 5:10
**ended** 202:24
292:1,3,5
**enforcing** 140:6
**engage** 285:18
**engaged** 22:3
22:11 82:4,19
102:13 103:25
104:8 105:14
106:1 113:13
113:19 117:2
117:5,12
118:12 215:5
255:7,8
**engaging** 264:3
264:5
**engine** 23:5,23
27:23
**enroll** 151:6,21
310:1
**enrolled** 309:22
**enrollment**
259:19 260:8
264:14
**entered** 144:17
**entering** 102:21
102:23
**entire** 12:6
170:10 317:1
**entities** 288:15
289:24
**entitled** 60:20
92:22,24 93:3
94:6 96:1
137:24 139:14
146:15 147:20
152:5 165:3
171:9,14
194:6 200:20
259:18 261:17
262:12,16
292:19
**entity** 290:19
**enumerated**

238:25
**envelope** 60:6
60:7
**equipment**
27:16
**equivalent**
245:19 257:13
**erases** 314:3
**ergonomic**
43:23 45:11
**error** 129:13
**errors** 129:8
270:16
**especially**
190:19
**ESQ** 2:5,13
**essence** 221:20
**essentially** 22:2
22:10 52:2
**established**
81:1
**et** 92:25 93:1
189:24,24
232:17,17
**evade** 296:20
296:24 297:4
**event** 142:22
143:9 146:13
146:18 147:11
147:18 148:1
154:18 345:25
**events** 18:4
343:20
**eventually**
275:12
**everybody**
93:18 113:24
120:8 121:17
121:21 170:7
170:8 213:10
263:20,24
312:22 330:12
**exact** 27:23
87:4,10
333:23

**examination**
3:2,7 245:2
**example**
213:12 339:8
**examples**
60:23
**exception**
147:17
**excluded** 45:17
**exclusive**
140:23
**exclusively**
140:14
**excuse** 28:12
61:19 66:1
126:18 148:13
163:7 180:19
186:6 209:16
238:16 254:17
261:20 301:1
312:21 318:24
320:24 326:7
**executing**
145:6
**exemplary**
305:20
**exercise** 222:1
222:19 223:16
225:9
**exhibit** 7:18
8:20 9:23
11:11,12
12:12,21 13:8
13:11 14:11
14:19 15:6
43:12 52:25
59:25 61:20
61:21 62:9
63:19 64:1
65:10 66:20
67:11,12
68:18 74:11
74:15 75:10
75:16,19,22
76:7 77:1,17

77:25 78:6
80:6,15 83:12
90:2,4 96:4,7
98:10 99:24
111:24 130:15
130:17 131:15
135:17,21
146:24 152:15
156:13 159:20
160:5,8,19
167:17,20
175:20 178:14
179:17 181:9
185:8 186:18
189:2,9
191:24 193:21
197:12 205:1
208:19 209:9
209:11,15,21
210:22 211:4
211:18 216:25
224:8,15
225:3,21
227:11 228:9
229:11 230:4
230:8 231:5
232:13,24
233:23 235:25
236:2 237:5
237:13 238:14
239:2,6,19
242:3 245:8
251:1,7 258:3
258:20 259:16
260:23 263:7
268:3 271:3
271:15 272:24
273:15 277:22
278:4 280:6
280:10,20
281:5 283:2,7
286:5,12,16
287:2 291:9
293:15 301:10
302:13 318:8

320:19 321:22
322:3 327:19
328:18 329:2
331:10 332:5
332:12,17,22
333:3 337:23
338:17
**exhibits** 7:8
245:23 251:22
252:1,17
253:7
**Exhibit-1** 7:14
**Exhibit-10** 65:6
**Exhibit-11**
76:22
**Exhibit-12** 80:2
**Exhibit-13** 83:9
**Exhibit-14** 98:6
**Exhibit-15**
131:10
**Exhibit-16**
135:13
**Exhibit-17**
152:11
**Exhibit-18**
257:24
**Exhibit-19**
259:12
**Exhibit-2** 8:16
**Exhibit-20**
260:19
**Exhibit-21**
270:23
**Exhibit-22**
271:11
**Exhibit-23**
272:20
**Exhibit-24**
277:18
**Exhibit-25**
159:16
**Exhibit-26**
167:9
**Exhibit-27**
175:16

**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY
1.800.694.4787    www.cefgroup.com    fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

| | | | | |
|---|---|---|---|---|
| **Exhibit-28** 178:10 | 318:5 | 264:22 266:**21** | 268:14 272:13 | 261:1 263:9 |
| **Exhibit-29** 181:5 | **Exhibit-5** 13:4 | **extending** 288:17 289:12 | 288:17 289:12 | 265:2 |
| **Exhibit-3** 9:19 | **Exhibit-50** 320:15 | 222:9 236:**24** 238:1 | 289:21 340:17 341:11 342:11 | **federal** 3:3 10:19 87:25 |
| **Exhibit-30** 185:4 | **Exhibit-51** 321:3 | **extension** 237:2 | 343:21 | 88:5 321:8,24 |
| **Exhibit-31** 186:14 | **Exhibit-52** 321:18 | **extent** 246:25 | **facts** 6:9 102:10 108:4 | **feel** 12:5 15:10 119:25 155:4 |
| **Exhibit-32** 193:17 | **Exhibit-6** 14:7 | **Extrusions** 286:18 287:**5** | 163:7 172:14 177:14,19,23 | 203:13,24 240:9 254:25 |
| **Exhibit-33** 197:8 | **Exhibit-7** 43:8 | 287:17,18,**25** | 183:19 188:9 | 343:21 |
| **Exhibit-34** 204:22 | **Exhibit-8** 59:21 | **e-mail** 19:22 | 200:17 297:1 | **feeling** 342:25 343:5,6 |
| **Exhibit-35** 209:5 | **Exhibit-9** 62:5 | **e-mails** 111:**4** | **factually** 56:8 | **feels** 99:11 |
| **Exhibit-36** 225:17 | **exist** 99:14 281:22 288:23 | _____ **F** _____ | **fails** 148:23 | 121:17 |
| **Exhibit-37** 227:8 | **existed** 17:11 97:14,21 | **F** 192:4 | **failure** 274:7 | **feet** 34:11 |
| **Exhibit-38** 228:5 | 100:3 | **fabricated** 284:11 | **fair** 5:13,23,24 6:12,13,19,20 | **felony** 166:22 167:3 |
| **Exhibit-39** 232:20 | **existence** 45:8 151:7 | **fabricating** 284:16,17 | 16:21 18:22 19:3 20:25 | **felt** 47:23 97:5 190:18 255:9 |
| **Exhibit-4** 11:7 | **expand** 15:16 91:8 231:15 | 285:5 | 21:1 36:1 44:9 44:20 45:4 | 293:25 296:8 304:19 |
| **Exhibit-40** 233:19 | **expected** 248:22 | **face** 101:6 199:21 203:7 | 54:22 71:4 92:20 106:14 | **figure** 93:13 121:24 |
| **Exhibit-41** 239:15 | **expenses** 13:22 14:2 | **faced** 300:2 | 258:15 260:16 | **figured** 195:14 243:24,25 |
| **Exhibit-42** 280:16 | **expensive** 112:12 | **facility** 25:16 33:24 35:20 | 306:2 318:12 | 261:21 |
| **Exhibit-43** 285:25 | **experience** 40:16 41:3 | 51:1 71:6,14 72:5,11,23 | **faith** 39:19 55:20 111:18 | **file** 49:1 81:19 81:20 82:6,14 |
| **Exhibit-44** 286:23 | 192:15 268:11 269:1 | 73:9,23 74:2 77:14 85:10 | 186:1 203:8 277:14 | 82:17 95:7 96:13,21 |
| **Exhibit-45** 291:5 | **experienced** 313:2 | 105:6 132:21 133:4,13,22 | **false** 296:23 297:2 304:13 | 119:3 122:2,4 122:6 134:11 |
| **Exhibit-46** 293:11 | **experiencing** 342:8 | 134:2,8 | **falsifying** 290:12,19 | 134:16 141:25 215:13 226:20 |
| **Exhibit-47** 301:6 | **expire** 206:19 207:17 231:25 | **fact** 30:19 58:13,14,18 | **familiar** 135:9 175:22 184:20 | 285:6 286:11 287:9 292:19 |
| **Exhibit-48** 302:4 | **expires** 346:18 | 59:14 64:8 71:25 108:8 | **fast** 208:6 | 304:20 305:1 328:20 |
| **Exhibit-49** | **explain** 103:17 | 108:13,17 127:20 149:13 | **faster** 220:15 | **filed** 3:13 4:4 |
| | **expressing** 236:8 | 163:6,16 184:22 217:12 | **favorable** 120:7 | 7:24 8:10 81:23 82:25 |
| | **extend** 103:20 | 219:22 229:1 236:13,23 | **fax** 69:3,14,23 69:23 70:3,3,7 | 83:5 85:2 89:13 91:8,15 |
| | **extended** 102:25 240:12 | 251:10 253:2 262:9 263:2 | 70:10 254:14 | 91:21,25 |
| | 240:25 264:16 | 264:16,22 | **faxes** 70:12 **February** 127:25 128:11 133:16 242:13 253:24 257:6 | 92:16 95:4,19 |

**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY
1.800.694.4787   www.cefgroup.com   fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

95:22 97:3
111:7 130:23
193:4 195:4
200:19 224:23
226:11,14
253:3 265:10
268:1,3 269:9
270:8 271:16
271:20 272:25
294:14 296:12
300:15,19,19
301:11 302:14
305:11,13
**files** 122:10
**fill** 159:3 237:7
**filled** 159:24
**filling** 158:19
334:11,16,21
334:24
**find** 88:15 91:3
242:5 323:5
323:10,14,17
323:21 324:12
324:16,21
325:3 328:5,7
328:10,13
332:10
**finding** 283:11
**findings** 100:1
**fine** 201:14
293:8 319:22
**finish** 5:22
110:19 343:11
**finished** 5:17
58:24
**fire** 326:9,20
327:2
**fired** 86:24
92:13 95:17
**firm** 346:2
**first** 3:4 7:7
10:2 11:14
20:12 21:24
60:19 66:6
84:5 90:7 99:6

102:18 112:23
129:24 131:1
134:7 142:13
160:4,7 169:9
170:2,4,12,13
170:25 202:4
204:11 205:16
209:12 211:3
211:18 217:2
224:9,10
226:8 228:22
231:19 234:18
237:17 241:20
242:11 251:13
251:20 252:5
252:14 253:18
253:22 258:9
260:11
**Fisher** 183:8
192:4,7,7,13
322:6,14,22
323:2
**five** 34:10
141:19 142:1
142:3,14
212:6,7
319:11 336:23
**fka** 1:13 100:22
101:10
**flesh** 103:16
**Flex** 151:7,21
**flip** 10:12 11:15
11:17 12:6
135:21 151:10
211:3
**flipping** 61:3
179:16 261:10
292:17 327:18
328:24
**floating** 61:6
127:3
**floor** 33:2 35:8
35:10 69:22
77:20
**fluid** 23:6,25

326:5
**FOIA** 77:4
**following** 148:8
162:23 245:13
246:19 258:17
276:20
**follows** 3:6
139:4
**food** 305:8
**foot** 133:3,21
134:1,8
**forbids** 89:2,6
89:11
**foregoing**
163:3 345:15
345:20
**foreman** 169:17
**forgot** 275:7
**fork** 28:9,12,13
33:1 37:10,21
51:22 63:15
72:20 78:16
78:16,25
326:3
**forklift** 35:7,12
35:12,15 72:7
77:18 78:8
**forklifts** 77:21
78:2
**forks** 118:19
**form** 26:22 27:1
27:4,7 32:16
51:7,10,13
53:4 149:10
159:2 286:6
321:11 326:22
**formal** 80:22
308:19
**former** 300:20
302:15 314:7
314:11 315:6
315:10,15
317:17,21
318:1
**forms** 23:10

**forth** 9:12 11:2
12:20 52:13
59:9 67:17
128:25 130:2
155:23 168:20
178:25 235:17
247:10 266:4
270:12 277:2
301:19
**found** 116:9,11
208:24 332:14
**foundation**
290:15
**four** 151:3
212:7 279:18
300:25
**fragle(sic)**
181:20
**fragment**
176:14
**frames** 139:23
**free** 12:5 15:11
155:4 240:9
**frequent** 33:23
**friction** 270:4
270:10
**Friday** 36:10,24
36:25 159:10
336:17,18
**Friend** 313:24
**friends** 119:22
119:24 123:3
123:7,13,23
123:25 124:14
335:22 343:8
343:15
**friendship**
124:17
**fro** 148:10,17
**front** 60:5 80:16
119:22 123:8
123:15 130:7
178:7 184:25
217:4
**full** 4:9 7:4

**full-time** 280:7
309:20
**funny** 161:17
**further** 138:9
344:2 345:18
345:22

---
**G**

**G** 43:14 83:18
165:14 166:14
321:12
**gas** 28:9,12,13
78:16 215:11
316:1,25
317:6
**gathering** 15:24
**gee** 127:2
**GEI** 287:11
289:18 290:11
290:18 291:10
291:14 292:19
293:5,18,20
293:24 294:3
294:8,10,13
**general** 15:13
17:12,14,16
22:20 286:18
287:4,17,18
287:25
**generalities**
342:16
**generally** 18:7
20:2 22:5
36:14,21
158:3 159:8
196:13
**gentlemen**
66:15
**getting** 16:3
198:23 247:3
295:25
**give** 8:5 19:14
111:16 121:11
191:18 208:25
209:25 240:4



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787    www.cefgroup.com    fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

240:19 246:1
263:18 312:8
321:14
**given** 151:5
306:7,12,21
345:12,17
**gives** 261:25
**giving** 5:9
241:6
**Glen** 302:18
303:3
**globally** 22:9
**go** 4:20 15:13
15:23 20:2
47:23 48:3,5
58:25 59:9
61:1 86:16
88:8 109:1
115:1,4,5
118:21 124:2
124:24 125:15
158:4,6 218:7
220:4 226:9
229:2 247:1
247:16 262:5
268:21 285:7
293:16 304:23
309:19 322:2
335:13,15
341:9 343:10
344:1
**goes** 44:5 48:3
48:4 81:9
138:10 229:3
236:4
**going** 4:2 5:20
10:25 15:9
22:8 42:5
69:11,14
74:19 77:11
85:19 86:13
93:20 100:15
118:5 122:4
153:5 190:1
190:10,14

191:8,14
200:5 206:4
220:9 240:9
247:9 269:6
279:9 286:3
313:16 325:11
326:18 338:12
**golf** 119:23
**golfing** 125:16
**good** 3:9 26:15
39:19 55:20
101:23 111:18
140:17 186:1
186:1 191:3
195:15 201:14
203:7,8,8
206:8 277:14
**gotten** 314:2
333:18
**govern** 152:24
**governed**
136:12
**government**
88:2 321:8,24
**governments**
320:23
**governs** 93:25
**grabbed** 39:8
**grammar**
181:19
**grandma** 314:3
**grandmother**
114:24,24
311:21 312:6
312:17
**grandmother's**
311:25 312:21
**grandparents**
312:20
**grant** 87:25
**gray** 190:4
**great** 44:20
200:23
**greeted** 102:24
102:25

**grief** 185:25
**grievance** 42:4
91:9,16,21,25
92:16 93:15
95:4,20,22
109:5 141:12
141:17,18,24
141:25 171:3
175:4,5 193:4
193:22 194:8
195:4 197:1
197:20 203:5
203:10 206:25
207:2 219:13
224:23,25
225:11 226:12
226:20,24
227:12,20
230:19,22
232:6 233:8
233:11 235:11
235:11 236:9
238:18 316:18
316:19,24,24
317:2,3
**grievances**
107:18 243:15
243:24
**grievant** 221:25
222:19 236:5
**ground** 4:21
343:12
**grounds** 99:12
**group** 1:11,14
100:22 101:9
101:10 103:9
136:7 161:24
**guarantee**
168:2
**guaranteed**
164:6
**Guarnieri** 2:4
**guess** 6:11
36:1 44:9 54:9
123:16 133:12

154:3 171:23
195:15 205:19
213:21,22
246:19 249:4
279:24 300:3
322:12 336:14
**guessing**
128:15
**guide** 94:25
**guideline** 94:13
**guy** 95:16
120:17 121:11
174:10 202:11
229:24
**guys** 108:19,21
118:18 120:12
152:7 183:7
330:11

---

**H**

**H** 1:24 174:11
192:4 345:5
346:13
**half** 17:21,22
116:25 142:15
**hall** 102:21
190:11
**hammer** 37:24
**hammers**
118:19
**hand** 20:15
103:1,2,3,21
103:21 105:5
263:19 346:6
**handing** 7:17
8:19 11:10
43:11 59:24
62:8 76:25
135:16 167:16
175:19 186:17
193:20 204:25
233:22 239:18
271:2,14
291:8 301:9
302:12

**handle** 201:18
**handles** 128:19
**hands** 102:24
102:25
**handwrite** 53:3
53:7
**handwriting**
12:11 43:18
53:1 60:21
61:1,12,16,22
68:23 135:22
135:24 136:2
138:23 282:20
287:13 290:9
290:24
**handwritten**
11:15,18,25
12:7,13,19
27:3 43:13
51:12,19
52:15,22
53:22 60:4
68:8,13,19,22
69:6,12,16
70:9 75:24
76:8 328:25
328:25 329:6
329:24 337:25
338:15
**happened** 72:4
**happy** 96:5
234:16 237:6
268:20
**harassment**
103:4,22
105:7 110:15
110:21 255:20
255:21,24
**hard** 336:5
341:10
**Harding** 165:14
166:14
**Harvey** 317:10
317:13
**Haus** 174:8,20



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787    www.cefgroup.com    fax:216.687.0973
**Cleveland:** 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
**Akron:** One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

hazardous
99:12 100:1
hazards 84:8
88:19 99:8,18
head 6:5
headquarters
54:18
health 27:15
81:16,19 84:8
84:10 88:17
88:19 104:21
104:23 118:17
130:9 150:15
150:22,23
151:11 152:6
180:18 183:25
184:4 188:10
188:18,25
242:25 257:8
258:11 293:21
322:24 337:14
hear 20:12,17
90:24 97:24
160:14 306:17
309:8
heard 126:2
141:1
hearing 90:25
95:15
hearsay 90:23
95:15 96:1
heavy 174:23
heck 91:4
Heights 62:20
help 208:5
helpful 4:23
78:22
hem 128:17
Henschel 1:24
345:5 346:13
hereinafter 3:5
137:9
hereunto 346:6
Hewitt 128:22
hey 230:13

231:1 246:2
252:18 253:6
254:9 313:25
317:14 335:24
high 110:8
165:8,11,13
165:15,16,17
165:19,21
311:3 312:16
higher 38:19
262:5
highest 143:1
143:12
highlight 84:20
highlighted
60:15,16 80:9
80:17 84:7
98:12 186:20
197:14,23
217:1
highlighter
147:2,3
highlighting
80:11 205:2
highlights
60:13 98:14
hindsight 248:6
hire 123:18
125:3 139:22
140:11 195:12
213:15 222:12
224:11,12,17
224:17 292:21
hired 42:2
91:11 123:14
139:7 158:7
163:11 164:1
164:4 169:9
170:2,20
171:21 173:20
173:24 202:7
202:11 210:19
212:21 214:6
215:9 319:23
hiring 144:4

333:9
history 124:18
281:9,16
283:15
hit 37:23 41:12
Hoffa 180:1
Hold 343:9
holder 262:17
holding 238:20
holds 212:4
holiday 130:20
holidays 61:6
home 47:19,23
47:25 48:2,8
48:12,13,22
49:3 116:7
341:15
honest 339:6
hope 295:24
horn 326:4
horns 23:4,22
27:17 51:22
63:16
Hostetler 1:20
hour 47:22
94:14,14
336:6,15
hours 143:1
151:5,21
152:5 318:22
319:2,5 334:5
334:15 336:3
336:8,10,12
336:23
house 311:7,10
311:12 312:20
312:21,21,25
335:10
Howland
165:13,19
how's 338:12
HR 29:25 58:19
59:14 109:2
239:24
human 50:23

59:2 303:2
hurt 119:5
126:2,20

---
I
---

IBT 45:21
idea 170:19
277:11 281:23
333:10
identification
7:15 8:17 9:20
11:8 13:5 14:8
43:9 59:22
62:6 65:7
76:23 80:3
83:10 98:7
131:11 135:14
152:12 159:17
167:10 175:17
178:11 181:6
185:5 186:15
193:18 197:9
204:23 209:6
225:18 227:9
228:6 232:21
233:20 239:16
257:25 259:13
260:20 270:24
271:12 272:21
277:19 280:17
286:1,24
291:6 293:12
301:7 302:5
318:6 320:16
321:4,19
identified 25:10
46:22 47:8
53:24 54:6
79:16 113:12
211:6 255:2,2
303:4 327:20
identify 7:9
28:3 101:17
153:6 165:7
210:7 254:24

342:13
identifying 78:2
79:13
identity 84:21
85:7,17 86:6
86:22 87:22
88:14
II 45:20 143:4,5
illegal 296:4,9
Illinois 2:16
Immediately
144:5
impacted 129:9
impart 338:21
339:12
imparted 129:2
important
18:25 19:6
improper 303:6
304:4,11,21
304:25
inaccurate
278:3 281:5,8
281:11 282:13
Incarcerated
294:25
inch 116:25
incident 142:2
included
122:14 158:17
281:24 289:23
includes
143:18
including 140:5
140:9 148:22
163:10 332:2
inclusive 139:8
139:9
incomplete
199:25
incorrect
121:21 145:19
212:18,20,25
213:2,16
incorrectly 32:7



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787     www.cefgroup.com     fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 · 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 · 330.253.8119

Court Reporting · Video Conferencing · Legal Video Production · Investigations
Claims Services · Process Service · Record Retrieval · Document Management · Trial Graphics

240:10
increase 140:9
incurred 4:6
  13:21 14:2
indicate 240:14
  274:18
indicated 31:23
  245:24 267:13
  287:19
indicates
  142:19 176:1
  176:7 186:23
indicating
  66:13,18
  176:5 235:10
  266:1
indication
  191:19
individual
  46:23 57:20
  101:5,13
  102:6 113:19
  115:7 177:10
  187:16 221:2
  292:4 305:25
individuals
  9:13 24:20
  25:6,10 46:6
  119:20 121:14
  122:7,11
  183:20 210:20
  224:9,14
  254:25 282:2
  327:20
industrial 23:3
  23:21 37:20
  307:1
infighting 190:9
influence
  123:15
inform 80:22
information
  6:12 10:7,12
  10:25 12:10
  12:13 13:18

15:19,23
46:14 48:25
53:25 60:9
84:16 87:16
97:17 99:11
110:10 172:19
178:24 202:10
206:15 216:8
228:18 277:2
281:25 282:8
289:23 296:23
301:18 322:5
322:17 323:1
323:7 324:7
324:17,20,24
327:21 328:1
336:1 338:22
informed 54:2
  82:15 85:1
  97:9,18
  333:17
informing
  82:23 83:3
initial 9:11 32:9
  111:17
input 102:9
  117:8
inquire 231:15
inquiries
  191:20
inquiry 231:15
inside 60:7
  133:21 134:1
  232:5,8
inspect 85:19
  325:11 326:19
inspection
  80:23 86:13
  326:2,6,8,9,25
instance
  305:16
institute 304:6
instituted 303:6
instructed
  169:10

insurance
  13:23 14:3
  150:24 173:5
  173:8 293:22
  337:14,21
insure 140:6
  191:12
intend 309:14
  309:19
intending
  338:21 339:5
  339:12
interacted
  127:6
interaction 48:8
interchangea...
  3:20
Intercorresp...
  9:2
interest 39:21
  305:21 332:4
interested
  345:24
Interesting
  211:2
internal 89:1,6
  89:11
internally
  270:18
International
  45:21,23
interpreted
  35:6 116:15
interrogatories
  10:3,21
interrupt
  103:13
interview 303:2
  303:16,18,19
  303:21
interviewed
  303:25 333:11
interviews
  163:8
introduce 7:8

209:13
introduced
  271:2
inverted 28:13
investigated
  99:9
investigation
  97:12,18
  132:17 325:9
investigatory
  303:1,16,18
  303:19,21
involuntary
  149:19 206:9
involved 102:9
  111:10 172:9
  172:22 177:6
  177:11 183:3
  183:15 187:20
  247:12 325:12
involvement
  81:15
in-house 24:24
  24:25 25:5,6
  66:22 69:20
  339:9,13
in-person
  325:16
irrelevant
  304:17,23
issuance
  128:20 129:9
  129:15
issue 23:16,19
  24:3,6,12,23
  25:7 26:5,9
  27:9,13 28:21
  32:12,21,22
  34:2,8,12,16
  34:20 35:1
  38:1 43:23
  45:11 50:19
  51:5,18 52:13
  54:5,7 64:4
  65:22 67:8,17

67:22 70:24
73:16,22 75:6
75:13,25 76:9
76:13 77:7
82:20 85:10
93:9,11
101:15,20
102:15 103:5
103:8,22
104:1,10
105:7,17
106:2,19
110:15,21,25
113:14,21
117:6,13,19
117:23 118:2
118:13 119:10
119:15 128:11
134:13,18
175:9 198:22
199:5 227:21
247:12 249:3
255:16,21,24
256:6,11,16
256:21 257:1
261:22,24
262:3,24
issued 15:7
  38:22 127:16
  127:23 128:3
  129:20 265:14
  271:5 280:22
  286:8 287:4
  291:11
issues 13:16
  27:15,18 33:4
  33:10,16,18
  33:19,20
  37:22 41:11
  41:11,12
  47:22 63:16
  72:19,20 74:7
  74:10 77:18
  77:22 78:3
  79:6,15 93:18


Cefaratti Group
THE LITIGATION SUPPORT COMPANY

1.800.694.4787    www.cefgroup.com    fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

111:21 129:13
134:22 135:2
135:3,7 208:6
226:10 247:13
247:15 270:18
278:24 325:13
**item** 13:20
132:13,14
**items** 18:23
33:8,11 41:23
61:5 105:13
105:21,22
132:2,7,10
248:13

**J**

**Janell** 24:17,19
325:5,8,12,17
326:15,16
**Janell's** 326:13
**January** 42:5
133:15 136:8
136:9 139:9
151:7 152:20
152:21 153:1
153:1 171:6
175:1,24
176:2 177:1
177:17,22
178:1 181:1
181:11,14
182:18,22,25
183:5,16
259:23 260:6
293:17 319:25
320:3,5,8
**Jeanette** 16:17
116:19 234:1
258:7 259:21
261:2 310:23
312:13 313:4
313:22
**Jeff** 239:23
**jive** 270:19
**job** 91:12 92:9

92:25 126:3,6
126:15 143:11
143:15 168:2
169:2 194:22
195:6 199:6
199:14 201:23
202:2,16,22
210:9,14
213:4,5,10
216:24 235:15
236:19,20
238:10 240:12
240:17,20
241:2 246:18
247:11,13,19
247:22 248:1
248:2 249:19
267:8 280:25
329:18,21
337:5
**jobs** 173:16,22
204:3 333:12
**job/annual**
146:12 147:13
**Joe** 24:17,19
98:18 195:8
239:24
**John** 24:15
25:1 35:17
37:11 38:13
38:17,20 39:7
39:19 40:6,24
41:1 43:14
60:25 61:11
61:16 72:8,18
102:7,22
119:24 120:3
120:4 124:14
124:15 168:24
169:4,9
185:10 197:17
255:3
**John's** 41:2
120:1
**join** 139:10

**Joseph** 85:12
98:16
**judge** 87:25
88:5
**July** 1:18 65:17
158:7 171:21
174:25 212:22
319:24
**jump** 199:18,18
**jumped** 206:14
**Jumping**
155:22
**June** 45:24
162:10,13,16
167:22 184:13
184:23 185:9
185:12,22
186:8 279:3
320:9,10
**justification**
289:13
**Justin** 226:25
314:16,19
315:3

**K**

**K** 43:15 131:19
**Karla** 239:24
241:9
**keep** 16:14 18:3
18:18,20
19:10 188:23
190:19 191:3
233:11
**Kent** 308:3,11
308:21,24
309:2,9,12,15
309:25 318:10
**kept** 16:21 19:9
190:10
**Kevin** 213:13
315:18,22,25
316:16,20
**kids** 124:19
313:12,19

**killed** 120:2
**kind** 22:17,22
94:12 112:6
112:11 116:21
134:12 135:5
158:2 159:12
190:8,10
191:2 202:12
343:14
**Kinko** 16:5
**knew** 87:15
117:22 118:1
137:20 205:20
231:17,21
232:3
**knife** 301:24
**knives** 295:17
296:6
**know** 5:18,19
7:18 8:23
13:23 15:20
20:16,18,23
21:17 28:9,24
29:4,12 30:11
30:15,18,22
30:24 31:2,5,9
31:11 46:10
46:11,13,15
46:19,20
47:12,14,15
47:18 48:24
49:5,6,7,10,12
49:14,18,23
49:24,25 50:3
50:5,6,7,11,12
50:13,16 52:1
52:20 53:14
53:19,20 54:5
54:9,11,13,15
54:16,19,20
55:3,13,15
56:8,12,13,14
56:16,17,18
56:19 57:6,9
57:12,13,16

57:19,21
58:13,17 62:9
71:2 89:3,15
94:10 95:15
95:16 100:3,7
100:23 102:20
105:2 107:4,7
107:25 108:9
109:22 110:3
110:8,10
111:5 112:11
112:16,16
113:24 117:21
122:13,15,23
123:6,17
124:8,25
125:2 126:20
127:3 128:10
128:16,18
129:1,7,11,18
134:20,25
135:5 137:1
142:9 153:7
155:16 160:1
164:18 172:2
172:7,8,9,13
172:14 173:25
174:8,15,16
177:3,10,14
177:19,24
178:3 180:14
180:22 181:15
182:19 183:3
183:18,23
184:7 185:19
187:13,16,18
187:20,24
188:5,23
190:18 195:9
195:16 196:6
199:16 203:7
212:14 213:17
213:23 214:4
214:14,17,19
220:3,21


**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787   www.cefgroup.com   fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

| | | | | |
|---|---|---|---|---|
| 221:1,5,6,11 | 9:14 29:7,16 | 241:11 | 177:21 178:1 | **layoffs** 4:5 |
| 228:17 231:14 | 29:20 47:6 | **laid** 108:20,22 | 182:25 183:4 | 146:18 238:11 |
| 231:16 232:6 | 54:25 55:2,6 | 150:8 175:1 | 183:15,21 | 331:1 |
| 234:15 235:6 | 55:10 59:11 | 176:17,23 | 187:13,17,21 | **lazy** 115:7 |
| 236:18 241:22 | 59:15 88:25 | 177:1,16 | 188:1,7,10 | **leads** 86:2,19 |
| 242:22,23 | 89:5,10 | 180:25 182:17 | **layoff** 31:3 56:6 | 88:11 |
| 245:9,22 | 109:12,16,18 | 182:22 186:9 | 72:1,3,12 81:6 | **leaking** 51:24 |
| 246:3 247:9 | 109:19,20 | 187:6 195:5 | 104:11 105:11 | 326:4 |
| 247:18,20 | 110:6,7 118:1 | 202:11 206:12 | 105:18 106:5 | **leaks** 23:7,25 |
| 249:17 250:14 | 118:4 121:14 | 279:13 319:24 | 106:25 107:6 | 326:5 |
| 253:13 262:4 | 122:20 129:13 | 320:2,5 | 107:14,22 | **learn** 284:1 |
| 262:14,17 | 163:4,19 | 329:13 | 108:7 109:14 | **learned** 90:19 |
| 263:11,12,13 | 176:17,19 | **LaMantia** | 109:25 110:5 | 252:6 254:2 |
| 263:22 264:2 | 182:17 183:14 | 239:25 | 110:12 115:20 | 265:3 342:9 |
| 264:6 266:15 | 187:6 194:21 | **language** | 117:9 133:25 | **learning** 250:18 |
| 270:13 274:12 | 194:24 195:17 | 135:10 155:17 | 134:9 146:11 | **leave** 39:12 |
| 274:15 275:11 | 195:22 196:19 | 155:18 157:2 | 146:11,13 | 40:24 41:1 |
| 276:11,19 | 210:13 213:23 | 157:3 277:10 | 147:12,12,19 | 72:17 75:9,14 |
| 277:9 279:9 | 214:23 215:1 | **late** 52:20,20 | 147:25 148:1 | 180:22 184:6 |
| 281:21,22 | 272:9,16 | 125:16 127:5 | 149:19,21 | 188:21,22,24 |
| 282:2,4,11,21 | 273:11,19 | 162:16 267:4 | 150:3 176:2,5 | 292:8 |
| 288:21,23,24 | 275:18 277:4 | **latitude** 233:16 | 176:13 179:7 | **leaves** 39:18 |
| 289:25 290:1 | 299:19 322:14 | **law** 128:6 | 180:19 181:13 | 40:5 |
| 290:5,21,25 | **known** 124:3 | 300:13 | 181:25 182:5 | **leaving** 39:10 |
| 292:14,15 | **K-Mart** 300:20 | **lawful** 3:1 | 182:7,13,14 | 41:16 104:4 |
| 294:6,24 | 302:15,19,23 | **lawsuit** 21:15 | 184:1,5 | 105:10 180:10 |
| 296:10 305:8 | 303:2,11 | 111:8 131:20 | 186:24 187:1 | 283:22 |
| 308:22 309:5 | 304:2 305:9 | 200:19 253:3 | 188:15,19 | **led** 85:14 86:9 |
| 310:7,14 | 305:15 | 296:12 300:18 | 189:3,6,11,17 | 87:19 285:12 |
| 311:9,15,16 | | 301:12 302:8 | 192:1,9 193:2 | 285:19 305:1 |
| 311:18 313:9 | **L** | 305:11,13 | 193:12 206:2 | **left** 34:4 41:4 |
| 313:16 315:1 | **L** 9:7 43:15 51:8 | 317:13 | 206:4,9,13,17 | 41:10 48:20 |
| 315:2,4,9,13 | 66:10,10 | **lawsuits** 300:20 | 207:4,6,15,17 | 52:4,7 66:2 |
| 318:12 319:21 | 121:7,8,8 | **lawyer** 80:13 | 208:6 209:16 | 70:25 73:2 |
| 323:4,9,13,16 | 131:19 239:25 | 251:15,18 | 210:15,20 | 75:5,12 |
| 323:20 324:3 | 323:19,19,19 | **lawyer's** 234:20 | 217:15,20 | 107:17 110:19 |
| 324:11,15,21 | 324:14,14 | **lay** 29:13,17,24 | 218:2,13,19 | 110:23 114:23 |
| 325:2 326:14 | **label** 65:13 | 30:4,7,16,19 | 219:9,23 | 116:6 199:8 |
| 328:4,7,10,13 | 107:5 280:24 | 31:1 49:8,11 | 220:12 221:18 | 199:11 200:10 |
| 333:7 341:10 | **labeled** 136:24 | 49:20 50:2 | 221:19 223:15 | 201:12 284:12 |
| 341:13,14 | 287:17 288:4 | 54:21 55:1,14 | 226:10 228:12 | 313:21,25 |
| 342:9,24 | **labor** 98:19 | 55:24 56:10 | 228:19,25 | 341:16 |
| **knowing** 208:2 | 265:20 271:17 | 56:15,21 57:4 | 231:17 249:3 | **left-hand** |
| 342:7 | 273:24 274:6 | 140:13 177:4 | 315:16 331:5 | 227:17 |
| **knowledge** 6:9 | **lack** 140:13 | 177:7,11,17 | 331:17,19 | **legal** 21:19 |



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787    www.cefgroup.com    fax:216.687.0973
**Cleveland:** 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
**Akron:** One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

253:10 294:24
316:16 324:5
**length** 176:4,8
181:17,24
182:4,11
187:2
**Lesicko** 43:15
**lesser** 222:24
**letter** 45:15
52:17,19
63:20,23
64:24 65:15
65:17 67:12
71:7 74:18
75:1,3 80:18
80:20 81:9
82:9 83:25
84:1,6,15
85:16 86:5
89:25 96:5,16
96:19 99:10
111:25 113:8
131:16 132:8
132:13 149:4
157:6,10
175:24 178:15
178:21 179:6
179:19,24
181:10 197:15
203:1 205:7
205:23 208:13
208:22 217:24
218:3 219:1,3
219:6,19
224:1 232:25
235:22,24
237:5 238:6,7
238:15,17,20
251:2 291:13
293:17 322:18
**letters** 39:5
111:3,13
248:8,10
251:14
**let's** 5:16 21:20

24:9 26:6
32:19 37:3
81:10 92:6
102:7 103:12
113:11 127:12
131:5 139:25
142:4 143:21
148:5 151:10
153:13 155:7
155:24 175:7
208:17 209:8
255:13 280:7
298:12,16
315:19 328:17
**level** 22:20
195:17,22,25
**libraries** 335:6
335:17,22
**library** 335:13
335:20
**license** 224:21
310:6,9,12
**Licensed**
161:10
**licenses** 310:16
**lie** 113:25
**lied** 115:10
116:3
**life** 151:23
293:21
**light** 126:3,21
264:18 296:1
**lights** 23:4,23
27:18 33:1
51:23 118:21
297:7 326:4
**limit** 335:23
**line** 7:10 44:3
44:14 118:6
194:11 201:7
**liquor** 298:25
**list** 24:10 102:2
105:2 144:6,7
144:8,12,18

144:20 145:5
145:7 202:4
202:18 204:11
205:15,21
208:18 209:1
209:9,12,17
209:22 210:4
210:13,23
211:5,10,12
211:17,20
219:5 229:6
231:13 239:4
327:22
**listed** 66:9
132:3,8 161:5
161:19 210:24
211:20 213:24
214:5,15,17
214:24 224:15
283:19 288:16
331:10,25
332:5,11,17
332:22 333:2
**listen** 220:14
**lists** 145:14,24
146:4 148:19
238:9 249:21
**litigation** 21:11
26:12,17,18
98:12 128:14
**little** 21:20 22:9
85:22 92:2
94:21 100:16
116:23 125:1
129:23 130:18
153:11 158:4
191:3 198:2
**live** 312:12
**lived** 311:1
**lives** 311:20
**living** 312:5
**LLP** 2:12
**load** 159:6
**loader** 158:8,17
169:4 212:5

**lobby** 3:11
**local** 43:17
45:18 51:2
136:8,14,20
152:19 178:16
179:2 183:10
197:16 205:9
225:23 240:1
**locally** 54:1
**located** 50:25
**location** 78:25
116:19
**locations** 19:17
**lock** 38:19
**logical** 270:19
**logically** 237:24
**long** 34:14
122:13,16,20
198:8 206:13
311:1 325:19
327:3 340:6,9
**longer** 97:14,20
99:14 100:2
124:7 133:7,9
336:7 338:6
**look** 11:13,20
14:25 15:12
18:9 66:4
72:15 73:10
74:3 80:13
89:22 93:14
100:25 123:19
125:4 130:24
136:21 139:25
153:13 154:3
154:24 155:1
155:4,7 156:2
160:1 208:17
210:1,3
211:14 213:12
238:14 256:17
275:16 283:6
295:21 298:2
298:5 309:17
329:5 331:1

334:13,18
336:25 337:4
**looked** 15:5
69:2 93:7
212:2
**looking** 22:9
25:21 41:15
45:14 55:5,9
73:20 77:5
78:21 80:15
84:5 90:7 92:5
96:3 111:23
130:14,21
131:24 132:12
141:13 148:6
154:7,9 155:9
160:4,7 162:5
178:20 194:4
202:13 205:6
211:9,16
213:7,20
215:21 216:25
224:8 232:2
236:1 237:13
260:10 283:2
301:22 329:15
330:21 331:23
334:6 335:2
336:4,9,22
337:6 341:4
341:19 342:17
**looks** 61:4,13
70:5 154:12
167:22 199:7
257:2 258:9
260:11 280:8
290:3,4
**lose** 48:11
148:9,21
149:11,19
220:9 245:14
**losing** 220:18
245:18
**loss** 217:10
**lost** 150:9,10



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787    www.cefgroup.com    fax:216.687.0973
**Cleveland:** 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
**Akron:** One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

150:11 164:21
190:15 191:7
191:13 220:1
220:10 223:10
237:22 251:8
261:18 262:10
**lot** 23:14 41:13
94:20 110:8
128:24 195:13
196:10 199:19
202:10 204:17
220:15 223:6
247:15 249:21
264:13 267:5
267:11 270:13
329:16
**lower** 15:2
**LPA** 161:7,8,8
**lucky** 152:7
**lunch** 244:2
**Luncheon**
244:3
**lying** 114:14,16
114:21 116:13
116:16

**M**

**M** 9:7 66:10,10
120:23 121:7
121:8,8
131:19 239:25
**machine** 69:24
70:4,10
116:19,22
**mad** 104:5
**mail** 52:15,19
65:25 67:2,3,4
67:6 112:5,10
197:25 203:1
239:23 242:9
313:3,18
332:6
**mailbox** 75:17
75:18,23 76:7
253:25

**mailed** 52:17
66:25 113:8
209:1
**mailing** 62:19
62:23 63:2,5
63:10,11
111:25 112:14
112:17,22
234:7,9
**maintain** 18:2
304:6
**maintained**
19:17 150:4
180:17 303:6
**maintenance**
27:17 33:4,9
33:12,16,20
37:12,21
**making** 38:4
55:17 58:8
110:4 116:14
140:6 143:11
174:20 187:25
188:6 191:16
194:25 215:16
222:11 225:8
**maliciously**
303:5 304:5
304:16
**man** 118:4
**management**
43:25 45:13
46:17 47:8
53:17,23 54:3
56:4,24 57:2
58:1,3,10
59:13 102:9
122:3 140:1
140:15,23
141:2 153:14
**manager** 25:16
25:20,20
29:21,23 30:4
30:6 31:16,19
54:14 55:19

55:23 56:3
98:18 107:11
107:13 109:2
123:10 125:14
169:15,20
239:24 240:1
265:24
**managers**
343:16
**manger** 119:22
**manipulations**
206:11
**Maple** 62:19
**March** 7:25
8:11 129:20
130:23 178:5
178:16 179:9
179:14,24
180:3,8,24
190:24 212:12
243:23 249:24
264:25 265:12
265:19 271:6
320:4
**marked** 7:14,18
8:16,20 9:19
9:23 11:7,11
13:4,8 14:7,11
43:8,12 59:21
59:25 62:5,9
65:6 76:22
77:1 80:2,6
83:9 98:6,10
131:10 135:13
135:17 152:11
152:15 159:16
159:20 167:9
167:17 175:16
175:20 178:10
178:14 181:5
181:9 185:4,8
186:14,18
193:17,21
197:8,12
204:22 205:1

209:5,14,21
225:17,21
227:8 228:5,9
232:20,24
233:19,23
239:15,19
257:24 258:3
259:12,16
260:19,23
270:23 271:3
271:11 272:20
272:24 277:18
277:22 280:16
280:20 285:25
286:23 287:2
291:5,9
293:11,15
301:6,10
302:4,13
318:5 320:15
320:19 321:3
321:18,22
**Market** 2:6
**marks** 197:23
**married** 307:20
307:23
**material** 84:4
247:7 263:17
289:10,19
342:9
**Math** 308:15
**matter** 16:9,11
16:11 232:15
233:13 240:22
**matters** 248:23
249:4 250:23
269:1
**maximum**
151:22 152:3
**McArdle** 2:13
3:10 106:7
118:5 131:5
131:13 149:25
160:16 197:4
207:22 214:7

214:9 244:1
248:1 286:3
286:14 338:8
338:11 344:2
**mean** 3:24 7:2
15:17 17:15
34:9 37:22
40:22 64:17
67:23 104:19
124:2 125:9
125:25 134:24
136:16 158:22
177:23 188:8
194:23 195:13
195:25 196:4
199:17 201:6
213:16 219:7
219:21 221:24
222:23 246:14
270:12 275:21
278:8 282:5,9
288:2 295:25
304:11 306:10
313:23 317:19
334:24 337:16
338:9 340:19
**meaning** 6:3
9:12 110:1
118:13 150:11
173:3
**means** 4:25
164:5 168:4
170:8
**meant** 110:17
110:21,25
137:16 217:19
217:25 218:11
218:17 229:23
238:6 252:4
**mechanism**
269:25
**medical** 13:22
257:19 258:21
259:4 260:12
261:11 337:20



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787   www.cefgroup.com   fax:216.687.0973
**Cleveland:** 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
**Akron:** One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

medications
6:22
**Medlock**
131:19
meet 333:22
339:21 340:3
meeting 102:22
104:4 105:6
105:10 110:18
113:24 114:5
114:12,13
115:11,15
116:4 196:24
198:3,5,9,15
198:21 199:3
199:10,24
200:9 201:10
202:15,24
204:1 205:12
205:16 206:6
207:7 209:18
222:14 227:23
229:17 234:22
235:2 240:21
240:23 241:23
249:6
meetings 247:8
member 43:24
45:12,19
46:17 56:3,24
56:25 57:2,3
58:1,3,9 59:5
92:23 136:19
254:16
members 46:6
membership
45:18 243:17
**249:22 250:12**
**252:24 262:23**
263:3 274:5,9
276:11,15
memory 111:17
mention 229:11
233:6 236:15
mentioned

37:15 38:12
88:23 89:25
113:18 124:13
168:24 192:19
196:23 325:4
merchandiser
230:1 231:3
merchandisers
137:8 142:12
144:9 151:4
151:12,20
152:4 204:16
211:7
merchandising
143:19 222:14
229:12,19
230:16 233:6
235:15,23
236:16 237:24
238:3 240:13
241:2,7
246:10 248:11
253:9
**Merl(sic)** 121:3
**Merrill** 121:6
122:15
message
313:25 314:4
messages
114:23 116:7
313:21
messed 112:6
messing
313:13
met 3:10
**Michael** 2:5
66:10 101:21
102:8 161:5
228:16 252:20
302:10
**Michelle** 9:3
micro 116:23
middle 151:14
**Mike** 13:12
24:16 25:2,3

50:19 63:12
80:8 149:25
150:20 186:20
197:18 214:7
223:19,23
228:11 238:5
255:3 293:16
military 310:20
mind 112:15
250:7
mine 11:19
127:6 338:4
minute 91:6
254:10
minutes 3:11
34:17 334:15
334:17,22
338:12 340:10
**Miranda** 295:2
295:5,11
297:18
**Miscellaneous**
60:22
misclassifying
41:20
misdemeanor
166:22 167:4
misleading
114:4,6,7,10
mismanaged
270:16
misrepresent...
163:5 289:11
289:20
misrepresent...
163:21
misrepresent...
263:13
missing 145:3
181:15
misspoke
190:25
mistake 94:8
misundersta...
252:19

misunderstood
74:25
**Modic** 274:17
275:17,23
moment 38:9
225:3
moments 77:12
**Monday** 36:10
36:23,25
186:25 336:16
336:18
money 120:17
249:23 261:25
262:24 270:15
312:7
month 129:24
189:12,14,16
189:19 257:19
259:4 260:14
330:20
monthly 248:19
months 133:6,8
133:10 138:7
145:16,24
262:18 291:20
293:6 319:11
319:16,20
moot 243:25
morning 3:9
4:24 36:4
125:22 126:10
126:17 127:1
127:5
mortgage
311:17,19
mother 316:12
move 312:19
moved 312:13
312:17,22
**Moyer** 121:4,6
125:23 126:10
327:23 328:6
mrossi@gsfi...
2:10
multipage 60:3

multiple 11:12
37:19 241:10

___

**N**

N 9:7 122:25
179:23 239:25
312:4
name 3:10 4:9
4:14 9:4 88:22
89:2,7,12,24
90:6 124:11
158:13 190:7
205:20 311:14
311:16 312:1
323:23 326:13
named 123:10
325:4 345:8
names 102:8
**National** 271:16
nature 168:8
193:25 194:6
nearly 217:9
237:20
necessary
18:20
need 6:2 8:4
27:16 33:6
78:17 85:22
102:4 160:20
210:3 231:14
246:6 247:16
needed 18:8
247:5
needs 95:13
236:6
**Neff** 281:1
**Neff-Perkins**
280:11,22,24
283:18 284:1
284:11 285:4
285:12,21
286:8,17
287:21 288:12
negotiated
139:16



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787     www.cefgroup.com     fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

negotiations 190:21
neighborhood 257:19 259:4 260:14 313:12
neighbors 120:3
nervous 93:12
never 44:25 111:1 119:5 137:20 161:11 164:12 167:2 235:1 236:20 238:5,11 239:10 247:6 253:6 261:23 262:1,3,5,24 262:25 281:17 287:21 289:24 294:14 300:8 300:15 310:19 318:21 319:2 336:20
new 138:3,21 157:18,19 204:12,14,15 204:15,16,17 208:9 212:11 222:12,12 233:15 236:21 265:15 278:15 279:10 330:18 336:23 343:14
Nicastro 119:21 122:25 123:22 125:17 126:22 212:8 315:20 327:24 328:15
night 127:1
nights 43:5 126:19 170:11 170:18
nine 319:20
NLRB 268:4,6

268:15,25
269:7 272:14
273:1,16
275:24 276:6
nonvested 293:1
noon 127:5
Nope 67:14
normally 81:22
NORTHERN 1:4
notary 10:24 268:22 345:5 346:13
notation 78:24
note 34:4,5 38:16 39:11 41:10,17 43:13 52:4,7 52:11,23 61:13 64:24 68:19 69:21 70:9,17 72:18 73:15,21 74:6 74:9,13 75:5,9 75:13,14,24 76:8 239:6
notebook 70:4 329:1
notes 11:15,18 11:25 12:8,13 12:19 39:19 40:6,24 41:1,4 41:5 60:4 61:9 63:12,14 329:6 337:25 338:16,20
notes/reports 60:22,23
notice 10:23 20:10,14 21:6 88:18 127:15 127:23 128:3 128:11 129:10 129:15,19,24 129:25 130:3

131:2 148:25
149:3 157:5
160:25 164:11
204:12,12,18
228:18,24
242:8 253:21
253:22 257:6
258:5,11
260:25 264:19
264:25 265:3
265:13,15,18
265:18 267:13
271:5 292:19
339:9 341:2
noticed 77:18
notices 128:20
notified 82:24 83:4 84:11
250:9 279:13
notifying 149:2
notwithstand... 251:6
November 139:8 233:25 240:25 241:4 241:6 243:18 243:21 250:5 258:6 259:20 263:4 273:24 275:12
number 13:20 42:18 71:3,9 71:12 78:25 79:8,10 91:9 91:16,25 126:7 148:20 151:4 156:6 156:17 161:1 162:4 211:11 212:6 225:1 253:15 274:25 286:12 287:18 290:3,4 301:12 302:16

337:23 339:9
numbered 138:2 224:10
numbers 28:15 28:16 79:7 211:6

O

O 9:7 31:24 32:8 43:15 51:8 83:18 120:23,23,23 121:8 122:25 131:19 323:19 323:19
oath 4:25 10:22 234:18 245:5 285:10,17 306:8,12,21 307:5,10
Object 246:25 294:19 304:17
objection 284:19 290:14 295:6 304:22 341:8
obligated 278:22
observed 72:20
obtain 165:17
obviously 73:1 86:25 104:21 124:1 214:21 223:6 249:13 249:24 253:3 253:11 276:17 342:8
occasion 41:9 41:16,19 296:20 297:19 303:1 317:6
occasions 241:10 265:25 295:4
Occupational

84:10 88:17
occurred 18:4 47:4 129:8,14 142:2 249:15
occurrence 141:21
occurs 259:25
October 61:14 98:15 99:4,20 107:1,14,21 108:6 109:15 109:24 110:5 110:13 111:14 111:18 171:24 217:15,21 218:2,14,19 219:10,24 221:19 223:15 225:12,23 226:12 228:11 228:19,25 229:1,9 233:1 234:23 235:2 236:14 238:15 238:16 240:14 240:19,21,24 241:23 243:4 243:10 252:22 262:21 279:5 279:14,21 289:5 292:21 302:25 303:22 331:19 333:12 333:15 337:3 337:8 342:20
odd 88:15
offense 201:5
offer 163:9 221:17 223:5 225:8 240:12 240:17,20 241:2 246:10 246:17,21
offering 223:4 231:4



Cefaratti Group
THE LITIGATION SUPPORT COMPANY

1.800.694.4787    www.cefgroup.com    fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

**offers** 333:14
**office** 62:17
  112:9 113:2
  234:20 251:19
**officer** 297:4
**officers** 273:25
**offices** 1:19
**officials** 190:5
  303:3
**off-site** 25:4
  51:3
**oh** 5:19 44:16
  69:18 70:8
  79:2 99:3
  103:3 126:23
  127:2 143:23
  150:21 156:17
  161:8 175:9
  178:18 200:25
  230:23 276:4
  276:10 278:19
  280:7 283:13
  288:6 298:7,9
  328:19 338:5
  339:4
**Ohio** 1:4,23,25
  2:8 20:9 21:5
  62:18 299:23
  302:17 307:15
  307:16,17
  310:23 320:24
  321:8,25
  334:4 345:3,6
  346:14
**oil** 33:2 51:24
  326:4
**okay** 3:21 4:7
  8:7 12:2 13:14
  20:4,5 21:25
  22:1 23:13,14
  24:4 44:20
  55:6,10,11
  58:12 107:9
  107:20 109:22
  112:2 118:7

123:12 131:6
138:24 142:10
145:1 153:10
154:9 155:22
156:21 157:21
157:24 160:17
161:3,15
162:16 164:2
164:17,19
167:18 178:19
180:16 189:20
191:17,19
194:9,12
200:21 207:25
214:13 216:2
230:23 234:2
238:21,23
239:9 247:3
251:4 255:12
274:16 278:18
280:8 283:10
288:6,9 302:1
306:2 320:1
329:3,7,9
331:21 338:14
338:19
**old** 157:18,19
  157:23
**omission** 163:6
  289:11,20
**once** 112:19
  183:24 184:3
  191:5,11
  241:3 295:8
**ones** 238:25
  317:7
**ongoing** 37:14
  37:16 38:5
  104:20 190:21
**open** 21:18
  38:18 216:4
  216:10,16
  260:8 298:10
  299:25 335:20
**opening** 213:6

**operating** 89:1
**operation** 23:3
  23:21 140:3,8
**operative** 23:4
  23:22
**opinion** 18:15
  18:16 114:21
**opportunities**
  310:4
**opportunity**
  95:2 110:22
  151:6 222:1
  222:19 224:7
  236:25 238:12
  247:23 256:2
  262:20 326:11
  327:1
**opposed**
  132:15
**oral** 339:9
**order** 160:13,24
  282:12
**orderly** 140:7
**orders** 158:18
  158:19,23,24
  159:1,3
  195:18,22
  196:1,2,10,19
**ordinary** 67:3
  112:5,9
**organization**
  101:13 273:25
  274:6
**originals** 66:17
**OSH** 81:12
**OSHA** 24:16,20
  25:12 76:12
  76:16 77:3,8
  79:4,13,16,19
  81:4,20,22
  82:6,7,13,14
  82:18,22 83:2
  83:13 84:11
  84:25 85:5,14
  86:3,10,19

87:20 88:11
89:1,5,6,11,12
89:14 90:20
91:1,6 95:8
96:12,14,22
97:3,8,17 99:1
99:11 100:3,6
131:17,22
132:3,4,8,10
132:16 134:14
134:19,21
135:1,6 195:8
324:20,23
325:5,9,14
**OSHA's** 99:25
  132:1
**outside** 118:22
  232:10
**outstanding**
  65:19 243:15
**overtime** 36:11
  36:12,15,21
  41:12 93:17
**owed** 294:1
**owned** 311:10
  311:11

**P**
**packet** 338:1
  338:18
**page** 10:13,14
  13:19 20:20
  60:5,19 61:13
  61:15,19,20
  61:23 65:16
  88:16,22
  89:19 90:8
  137:23 139:25
  148:22 149:17
  150:16,17
  151:10 154:4
  155:21,24
  156:14,15,16
  160:4,8 162:6
  166:21 168:21

179:17 209:12
210:21 211:4
211:18,23
217:2 224:9
224:10,14
236:3 237:17
245:11 258:9
258:20 260:11
261:11 282:11
288:3,8,25
289:1 290:3,4
292:17 301:14
303:14 327:18
339:8
**pages** 8:2 60:6
  329:1,3,8,10
  329:19,24
**paid** 36:13
  48:18 91:13
  91:14 92:7,19
  93:3,14,19,23
  94:6 112:8
  121:17,18,23
  138:21 142:25
  154:20 193:13
  198:12,23
  200:5 203:10
  242:20 257:12
  257:14 261:7
  265:8
**paper** 39:9 53:4
  70:4,13 159:6
  316:14
**papers** 17:22
  178:6 342:10
**paperwork** 16:6
  17:12,13,16
  17:19 130:6
  184:24
**paragraph** 44:9
  44:10,17 45:4
  45:15 77:7
  81:10,11 84:6
  84:19 96:4
  99:6 151:15



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787   www.cefgroup.com   fax:216.687.0973
**Cleveland:** 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
**Akron:** One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

| | | | | |
|---|---|---|---|---|
| 163:24,25 | 112:20 305:15 | 192:12,13,16 | 165:22 171:10 | **permit** 225:8 |
| 167:25 179:5 | **parties** 275:4 | 242:15 267:24 | 171:15,18,23 | **permitting** |
| 217:3,7 236:3 | **parts** 318:12 | 322:8,11,13 | 172:4,11,17 | 265:21 |
| 237:17 273:22 | **party** 91:2 | **pen** 39:9 | 172:25 173:7 | **perplexed** 92:3 |
| 274:24 275:1 | 128:19 264:3 | 146:21 147:5 | 180:19 181:15 | **person** 47:9 |
| 275:2 276:2 | 303:5 345:24 | 164:21 205:3 | 206:18 207:9 | 48:4 53:24 |
| 301:22 302:25 | **pass** 46:21 47:7 | **penalties** | 231:24 235:13 | 54:6 71:22 |
| 303:17 | 53:21 | 134:21,25 | 236:9 258:12 | 101:17 125:18 |
| **paraphrase** | **passed** 46:16 | 135:6 | 258:22 260:6 | 168:10 186:2 |
| 240:9,10 | 53:15 120:2 | **penalty** 5:1 | 261:8,13 | 211:11 322:18 |
| **parens** 148:10 | 208:14 239:10 | 10:22 11:3 | 264:17,22 | **personal** 6:9 |
| **parents** 312:15 | 245:23 316:13 | 301:18 | 279:17 293:6 | 29:15,19 47:5 |
| 312:20,24 | **passing** 217:9 | **pending** 36:1 | 331:16 337:2 | 54:25 55:2,6,9 |
| **part** 16:23 | 237:21 | 106:12 | 337:7 342:19 | 55:12 59:11 |
| 20:13 26:12 | **pattern** 40:15 | **people** 5:19 | 343:3 | 59:15 109:12 |
| 41:24 60:2 | 40:20 | 47:23 94:10 | **periodic** 274:8 | 109:19,20 |
| 90:1 103:9 | **pay** 38:19 41:21 | 110:8 119:1 | **periods** 139:13 | 110:6,7 |
| 107:8,10 | 42:3 48:11 | 121:23 174:6 | 166:1,5 263:8 | 117:25 118:3 |
| 108:1,6,9,14 | 92:22,25 | 174:22 192:23 | **perjury** 5:2 | 122:20,22 |
| 108:18,25 | 93:18 94:9,10 | 200:10 201:11 | 10:23 11:3 | 129:12 176:16 |
| 109:3,13 | 95:14 96:2 | 202:7 204:5 | 301:18 | 176:19 180:21 |
| 139:6 141:16 | 120:8,13,14 | 208:9 213:9 | **perk** 124:1 | 182:16 183:14 |
| 142:21 144:2 | 121:1,3,4,10 | 288:22 289:25 | **Perkins** 281:3 | 187:5 188:24 |
| 148:6,7 | 121:15,21,22 | 314:15 343:19 | **permanent** | 194:20,23 |
| 150:24 183:11 | 122:14,17,21 | **Pepper** 1:11 | 104:11 105:10 | 195:17,21 |
| 208:22 247:19 | 124:23 142:5 | 100:21 101:8 | 105:18 106:5 | 196:19 210:12 |
| 247:22 282:18 | 189:18,21 | 139:21 161:23 | 106:25 107:5 | 214:22 255:17 |
| 282:22 283:7 | 208:6 212:9 | 258:5 259:18 | 107:14,22 | 288:20 |
| **Partially** 94:1 | 262:18 312:5 | 260:25 | 109:14,16,18 | **Personally** |
| **participate** | **paying** 42:8 | **Pepper/Seven** | 109:25 110:5 | 59:18 |
| 249:19 343:19 | 190:19 248:18 | 1:12 101:9 | 110:12 115:20 | **personnel** 49:1 |
| 343:22 | 257:11,18 | **Pepper/Seve...** | 117:9 146:11 | 122:1,4,6,10 |
| **participated** | 259:3 260:13 | 136:6 | 146:13 147:12 | 215:13 280:23 |
| 30:25 31:12 | 261:13,22 | **perceive** 153:8 | 147:18 193:2 | 285:5 286:11 |
| 31:19 50:1,14 | 262:20 313:10 | 153:17,25 | 206:2,4,13,17 | 287:6 291:12 |
| 56:20,22 57:3 | **payment** 61:8 | **performing** | 207:4,15 | 292:18 |
| 57:22,24 58:4 | 175:10 258:13 | 71:21 195:6 | 217:14,20 | **pertaining** |
| 58:14,16 59:3 | **payments** | 210:8,14 | 218:1,13,18 | 285:6 290:13 |
| 59:16 103:18 | 261:12 | 280:1 | 219:9,13,23 | 329:18 |
| 115:19 303:22 | **payroll** 61:9 | **period** 38:6 | 221:18 223:14 | **pertinent** |
| **Participating** | 64:25 65:19 | 136:8 138:8 | 228:12,19,24 | 228:18 |
| 117:8 | 65:22 67:7 | 138:15,20 | 331:16,19 | **phone** 71:3,9 |
| **participation** | 72:19 73:16 | 144:12 149:20 | **permanently** | 71:11 76:15 |
| 136:13 293:21 | 73:22 74:7,10 | 150:4 151:2 | 108:20,22 | 97:10 111:4 |
| **particular** | 121:19 192:10 | 152:20 164:6 | 207:5 | 130:2 162:2,3 |



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787   www.cefgroup.com   fax:216.687.0973
**Cleveland:** 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
**Akron:** One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

162:4 246:1
269:21 313:21
317:17,21
photocopied
60:14
photocopy
69:23 70:7,9
physically
133:3 279:4
279:20
pick 136:20
309:18
picked 6:6
269:21
picky 171:25
pipes 118:20
pissed 190:18
place 37:8
38:20 85:19
92:25 151:22
199:19 317:8
345:20
placed 4:24
39:24 40:3,11
42:9,13 48:25
76:6,8,15
80:12 150:3
159:4 186:24
306:11,21
307:4,10
placement
231:12
placing 158:20
plain 295:19
296:2,6,7,8
plaintiff 1:8 2:3
10:3 13:21
303:8
plan 151:7,21
152:6 257:8
259:18 266:17
309:11
planning
323:22 324:4
plans 310:1

plant 236:18
278:25 279:2
279:5 315:21
plant-wide
144:10 145:15
146:1,9
147:13 205:21
211:5,9,17
229:5 231:12
239:3
play 325:8
please 4:9 5:14
6:15 11:20
12:18 14:18
15:16 19:2
20:15,23
28:18 30:17
33:14 36:19
42:12 51:9
54:1 55:7
62:15 67:18
73:25 74:12
75:11 82:8
83:1 89:4,22
90:9 97:15
99:20 106:8
106:16 113:17
117:15 122:8
124:25 132:6
133:23 137:1
141:6 142:8
146:22 155:20
156:3,6
159:25 160:6
160:20 162:22
165:7 166:2
171:11 173:13
173:18 177:18
182:1 184:2
187:12 188:17
191:10 192:5
207:23 209:8
210:5,7,21
214:9 216:17
217:22 229:16

230:7 231:21
241:17 243:7
245:8 246:7
251:17 256:7
289:8 311:9
315:2 322:3
326:1 328:18
332:23
plus 39:13 70:5
120:7 190:20
249:22
PNC 1:21
pocket 13:22
14:2
point 6:21
26:16 78:21
95:17 150:12
167:1 200:1,9
201:11 206:12
206:23 254:7
262:13 265:10
266:5 295:18
303:11
points 203:9
pole 37:24
police 134:16
297:4
policies 89:16
94:2,4
policy 41:2
politely 196:15
poor 269:23
pop 196:16
portion 12:20
15:2 61:15
138:10 155:10
160:19 163:12
217:1 257:12
302:8 337:24
338:16
portions 60:15
80:9 186:21
197:14
position 45:17
92:18 109:9

109:11 114:11
125:21,24
146:14 147:19
180:4,5 186:4
192:24 203:4
203:15,22
204:2,9 206:1
206:1,24
208:15 212:4
213:7,8 216:4
216:5,10,16
216:22 220:22
221:2,3,7,12
222:13 229:12
229:19 230:16
231:3 233:6
235:23 236:16
237:8,25
238:3 240:13
241:2,8
246:11 248:12
253:9 285:10
333:20
positions 110:9
114:7 215:17
possession
296:19 297:10
possibility
217:11
possible 49:9
50:4 54:22
55:25 56:1
67:10 80:24
81:21 180:12
267:1 271:19
282:21 290:10
290:25 295:9
297:24 298:17
300:23 314:5
possibly
223:24 224:4
306:25 313:19
post 62:17
72:17 112:9
113:2 213:4,5

213:9 215:17
216:5,9 243:4
243:10
postcards
330:3,7
posted 73:11
74:5 126:6
144:11,18
221:16
posting 144:19
216:15,21
Potts 1:7,17 3:1
3:7,9 4:10
43:18 53:10
59:8 80:12
131:14 200:14
214:12 215:23
220:13 238:13
245:2,4 274:3
275:5 338:15
power 39:16
powered 23:3
23:21
practice 39:16
40:15,20 69:5
164:14
practices 89:16
practicing
161:10
preliminary 7:8
premiums
257:12
preparation
339:18,22
prepare 340:4
340:15
presence
345:14
present 34:6,9
141:19 288:16
presented
13:16
presently
161:21
presents



Cefaratti Group
THE LITIGATION SUPPORT COMPANY

1.800.694.4787    www.cefgroup.com    fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

326:10
**president** 168:7
168:12
**presumably**
102:10
**pretty** 34:21
51:21 104:4
120:4 169:16
199:21 200:3
200:12 339:3
**pretyped** 72:19
73:15,21 74:6
74:9,13 76:2
205:10 208:12
**prevail** 146:19
155:15 203:9
206:25
**prevailing**
143:1,12
207:1
**prevails** 148:2
**prevent** 7:4
149:1
**previous**
154:23
**printout** 330:3
330:5
**prior** 71:6 133:1
133:14 145:1
153:19 155:18
155:19 156:4
157:4 205:12
280:10 286:17
312:12
**priorities** 80:25
**private** 46:14
188:22
**privilege**
122:12
**privileged**
172:18,20
**probable** 303:8
**probably** 88:2
96:6 111:14
111:15 115:19

118:24 126:7
126:7 133:17
148:11 243:19
306:14,15
319:8 336:7
338:11 341:23
342:22 343:15
**probation**
171:4
**probationary**
137:24 138:15
138:20 151:2
170:24 171:2
171:10,15,18
171:22 172:4
172:11,17,25
173:7 175:11
293:1,7
**probe** 85:22
**problem** 37:12
37:15,21
38:13 124:2
**problems** 32:25
185:25 313:11
**procedure** 3:3
10:20 126:5
232:7
**procedures**
89:1,6,11
141:12
**process** 93:15
109:5 266:20
**processing**
268:18
**produce** 67:23
**produced** 26:1
67:15,19
68:21 80:7
98:11 131:16
175:25 178:15
181:10 186:19
197:13 205:2
205:4 252:10
258:4 259:17
260:24 277:25

**product** 158:19
158:20 159:3
159:4 195:23
**production**
60:2
**Professional**
1:24
**program**
260:13 309:23
310:2
**programing**
129:17
**programs**
293:22 308:20
**promise** 338:13
**promote** 140:12
**prompting**
343:5,6
**pronounce** 9:4
323:23
**proof** 146:6
**properly** 78:18
**protected** 81:15
**protection**
81:13 232:9
276:12 300:16
**protest** 226:23
227:1
**proved** 203:13
203:21,25
**proven** 145:18
**provide** 10:4,6
15:14,24
19:12 67:24
145:14 268:16
278:22 330:4
339:5
**provided** 3:2
11:1 12:11
39:21 77:3
139:13 228:17
275:20
**provides** 13:17
81:12
**providing** 5:6

7:4 10:11
53:24 60:8
66:19
**proving** 202:21
203:3,6,9
**provision** 138:4
**PSK** 334:1
**public** 33:22
134:13 166:18
215:4 297:14
298:3 345:6
346:13
**pull** 15:11
68:17 245:7
328:17
**pulled** 25:22
159:2 169:1
297:7
**pulling** 158:18
**purportedly**
304:5
**purpose** 80:20
112:13 166:10
**purposes** 7:15
8:17 9:20 11:8
13:5 14:8
15:25 18:12
26:18 43:9
44:22 59:22
62:6 65:7
76:23 80:3,10
83:10 98:7
102:3 131:11
135:14 144:21
146:10 152:12
159:17 161:23
167:10 175:17
178:11 181:6
185:5 186:15
193:18 197:9
204:23 206:22
207:19 209:6
225:18 227:9
228:6 232:21
233:20 239:16

257:25 259:13
260:20 270:24
271:12 272:21
277:19 280:17
286:1,24
291:6 293:12
301:7 302:5
314:22 318:6
320:16 321:4
321:19
**pursuant** 10:19
10:24
**pursue** 236:5
268:24 309:11
**put** 20:15 49:5
53:9 66:16
75:17,18,22
75:23 126:2
126:21 171:23
197:23 209:11
282:8 286:4
**puts** 49:5
**puzzled** 91:10
93:12
**P.L.L** 2:4
**p.m** 36:16,16
36:22 158:14
**P.O** 2:7

---

**Q**

**qualifications**
146:16 147:21
229:18
**qualified**
222:16 229:14
229:21 230:2
230:14 231:3
237:4 259:24
260:5 345:7
**quality** 295:24
**quantitatively**
338:10
**question** 5:9,12
5:17,20,23 6:4
6:15,18 8:9



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787    www.cefgroup.com    fax:216.687.0973
**Cleveland:** 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
**Akron:** One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

15:12 26:25
28:18 29:3,10
30:2 40:17
55:7,11 57:15
58:12 59:10
60:7 62:15,24
65:20 68:15
76:4 78:20
85:4,21 89:4
89:18 90:8
93:21 94:21
96:8 101:3
106:8,10,13
106:16 109:11
110:3 116:1
119:12 133:19
136:17 137:21
142:7 153:24
154:24 160:20
164:20 169:3
173:13 182:9
183:13 187:12
188:2,4 192:3
192:6 201:3,8
203:18,19
204:18 207:3
211:16 212:23
214:3,11
215:22,25
219:16 220:25
225:13 227:3
229:16 231:11
231:20 251:12
254:6,23
258:10,18
264:21 269:7
269:24 284:22
284:23,25
285:16 294:21
299:17 311:9
313:15 315:2
321:6,23
323:12 330:17
339:3 341:19
343:11

**questioning**
7:10 118:6
293:20
**questions** 4:3
5:5 6:25 7:5
10:8 15:9,22
20:1,17 55:4,8
198:5 214:10
267:6 287:20
295:25 344:3
**quickly** 111:23
283:11
**quit** 284:4
**quite** 165:6
**quote** 190:7
196:17 304:11

— R —

**R** 26:24 32:8
83:18 120:21
120:23 121:7
121:7,8,8,8
122:25 179:23
192:4 312:14
324:14
**raise** 227:21
**raised** 50:19
54:7 132:4,10
135:2,8
207:13,14
307:18 325:13
**raising** 33:19
134:22 255:15
256:5,10,15
256:20 257:1
**ran** 315:25
**rank** 219:5
224:2 236:18
238:8,8
**rate** 38:19
41:21 42:3
94:14 121:21
142:15,16,17
143:1,2,3,4,5
143:12 154:20

**rates** 94:9
95:14 121:12
138:22 257:13
265:8
**ratified** 199:7
212:12
**ratify** 190:22,23
**rationale**
269:18
**reached** 253:25
**reaching**
110:11
**read** 32:6 44:5
45:25 81:1,25
82:10 84:16
96:5 99:14,21
106:9 137:11
138:10,25
139:18 140:16
140:18 141:21
142:6,8 143:5
144:14 145:19
146:20 149:5
149:21 151:8
151:24 153:7
153:16,19,24
155:14 162:23
163:11 164:11
165:6 168:13
168:17,19
169:2 179:10
181:18 187:3
207:23,24
217:16,24
222:11 231:5
236:3 237:16
246:8 272:7
272:10 273:9
273:11 274:9
274:22 289:8
289:15 295:1
295:5,11
297:18
**reader** 338:22
338:24

**reading** 139:20
140:21 142:11
149:24 153:4
164:15 182:10
274:21 339:1
339:2 342:10
342:12,15
**reads** 139:6
145:12 149:18
168:17
**real** 116:25
208:5
**realize** 62:1
161:16 251:13
**realized** 242:12
251:21 252:14
253:18
**really** 58:11
59:10 74:8
77:5 127:13
158:12 161:13
161:14 174:16
185:16 200:1
201:18 207:21
207:22 211:16
214:11,11
220:13 243:13
247:3 274:15
290:5 298:3
307:2 320:19
**reason** 6:24
73:14,18
84:24 85:5
106:22 112:20
164:9 168:6
250:21 256:3
256:8,18
257:2,3
283:21 337:9
**reasons** 72:14
73:12,19 74:1
110:14 274:7
**reasserting**
105:22
**reassigned**

143:10 213:11
**reassignment**
154:18
**recall** 28:7,17
41:16 42:19
48:10,16,22
48:23 49:2
52:19 60:8
64:10 **72:25**
79:21 **82:22**
83:2 87:4,8,9
90:16,17
97:14,16
124:10 133:5
146:11 147:12
164:12 171:20
174:6,19
180:7,11,13
180:18 184:9
184:15,16
190:13 191:6
191:12 198:10
208:3 255:10
263:10 265:16
271:19 292:6
295:5,7 296:4
298:1,3 299:6
299:9 300:22
300:24 304:8
306:25 307:2
310:10 311:3
312:23 313:1
325:21,25
326:13 330:19
333:24 334:2
**recalled** 114:1
116:6 178:4
179:13 180:2
180:3 184:12
184:22 185:22
186:3 190:1
192:20 320:4
320:9
**receipt** 63:9,20
67:13 73:11

**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787    www.cefgroup.com    fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

73:20 74:5
77:16 80:21
258:8,13
261:5,6 265:2
**receipts** 62:12
62:14,17 63:1
63:7 64:1
72:16
**receive** 112:3
113:1 121:1
125:8 171:8
171:13 234:3
234:8 235:20
240:2 242:2
248:7 270:6
333:14
**received** 15:19
17:1,3,8 54:4
60:1 82:2,9
84:3 88:18
96:22 97:10
99:24 113:3
124:22 129:25
158:24 189:8
192:25 197:22
202:18 204:10
205:15 209:17
209:23 217:24
228:24 246:2
246:8 248:9
251:13,21
252:6,16
253:20 257:6
260:3 280:21
287:3 291:10
**receiving** 96:18
97:16 121:15
122:16,21
130:9 189:1
191:24 192:21
195:18,23
196:3,20
261:16 263:6
265:17 267:12
313:3,17,21

**recess** 131:7
244:3
**recitation**
241:15
**recognition**
137:5
**recognize** 9:24
61:16,21
**recognizing**
132:1
**recollect** 79:17
**recollection**
34:24 78:1,7
78:14 90:9
179:13 185:11
185:22 198:8
210:4 259:3
271:25 295:23
298:6 301:23
**record** 18:3
65:12 106:9
142:7 153:5
164:23,24
197:4,5
207:24 258:13
282:18 286:4
295:22 297:14
**recorded** 88:2
317:16,20,24
**records** 70:1
121:19,20,23
145:17 146:5
280:23 284:1
287:6 291:12
298:3 321:13
322:11,13,19
329:17,22
**recounted**
191:14
**recourse** 138:9
**232:6**
**recovery**
305:25
**red** 186:21
199:21 205:3

**reduce** 141:18
**reduced** 345:13
**refer** 3:19 23:15
35:22 278:14
**reference** 28:16
161:22
**referenced**
122:7,11
207:4 210:17
326:21
**references**
100:11 161:4
161:25 281:10
281:20 288:21
289:25 292:7
**referred** 24:18
33:7,15 42:17
119:16 137:9
137:16 141:2
181:24 182:5
182:12 218:21
276:14 277:12
**referring** 17:17
17:20 23:20
24:7 25:1 27:8
37:17,19,25
47:20 52:25
64:16,22 65:2
65:11,22
77:22 94:7
107:1 114:9
143:16 157:15
175:6,10
176:13 189:21
194:17 231:23
255:25 270:11
278:12 303:17
322:20 324:24
**refers** 13:15
170:15 181:12
**reflect** 77:7
132:3,9
**refresh** 78:1,7
78:13 179:12
185:11,21

210:4 271:24
301:23
**refreshes** 259:2
**refund** 243:21
**refunded**
243:22 249:23
250:10 262:23
**refunding**
250:19
**refusal** 289:13
**refused** 234:13
**regard** 95:14
104:17 237:4
256:13
**regarding**
27:16 44:3
64:25 65:18
171:3 179:7
198:23 228:18
232:15 247:10
247:14 330:1
**regardless**
151:4
**regards** 25:14
106:24 122:14
122:24 192:3
192:6 216:15
216:21 256:23
281:4 299:21
322:9 325:13
**regional** 239:24
**regionally**
54:17
**registered** 1:24
149:4 157:6
157:10
**regret** 120:1
**regular** 48:3
67:3 70:13
142:14,16,17
332:6
**reimburse**
265:6
**reissuance**
264:19

**reissuing**
264:24
**relate** 17:23
61:6,7 62:14
63:2,7,7
131:21
**related** 18:13
33:12 81:16
82:5 85:3
95:10 96:11
197:19 198:19
249:4 287:20
**298:22**
**relates** 20:10
89:19 141:12
276:14 277:6
277:13 278:20
290:20 333:1
**relating** 4:4
19:18 49:1
93:9 248:24
250:23 284:12
300:5 327:21
**relation** 38:24
47:21 82:11
82:18 129:14
296:15
**Relations**
271:17
**relationship**
169:8,13
299:3
**relative** 345:23
**relevance**
294:19 341:8
**relevant** 18:25
**relieve** 213:7
**rely** 340:17
**remains** 208:3
**remarks** 292:25
**remedied** 42:3
42:6,7
**remedies** 92:5
**remedy** 93:8
**remember**



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787   www.cefgroup.com   fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

79:17 88:7
112:25 162:3
174:9 253:25
298:7 308:16
313:10,13
316:2,21,22
317:4 327:2
333:23 334:1
334:2,4
**remind** 39:13
39:15 41:13
**reminder** 38:15
38:16 39:22
**removal** 208:8
**removed** 190:5
**removing**
250:20
**rent** 312:5,8
**rented** 311:10
**repeat** 5:14
12:18 38:7
51:24 54:1
55:7 67:18
73:25 78:5
82:8 83:22
85:4 91:22
97:15 106:4,7
108:15 113:17
117:15 119:12
188:2,4
203:19,23
243:7 318:24
**rephrase** 91:7
207:20
**replaced** 92:15
92:17 195:10
204:7
**report** 52:16
134:17 169:10
169:23,25
170:2 193:25
194:7 339:10
339:14
**reported** 169:4
170:1,6

**reporter** 1:24
5:7 6:2,6
252:1
**reporting** 169:7
169:13 346:2
**represent** 3:17
9:10 155:3
329:11
**representative**
46:3 172:6
**representativ...**
274:1
**represented**
208:23 241:18
302:7 303:10
**representing**
83:24
**reps** 200:3
201:14
**request** 5:8
6:10 12:16,24
13:20 77:4
145:13,23
239:2 265:6
**requested**
240:13 322:17
**requesting** 61:7
84:12
**requests** 15:7
**required** 10:20
139:10 216:9
274:8 284:21
294:20 308:17
**Reserve** 165:14
166:15
**reserved**
140:23
**residence**
16:16,20
115:7
**resign** 168:5
291:23
**resignation**
291:15,21
292:23

**resigned** 294:1
294:10
**resolution**
248:13
**resolved** 200:1
261:23 262:1
262:3,24
**resource** 303:3
**resources**
50:23 59:2
335:6
**respectfully**
101:12
**respectively**
320:24
**respond** 41:9
41:18 149:9
199:9 218:5
326:16
**responded** 41:5
199:15 207:8
262:25
**responding**
293:18 332:19
332:24
**response** 15:22
34:19,25 77:4
84:7 179:22
184:12 191:20
208:1 232:12
240:17 241:11
280:21 286:7
287:4,7,19
291:11 309:5
**responses** 6:2
15:6
**responsible**
303:5
**responsive**
12:15,23
**result** 22:4,12
82:19 97:5
115:15 163:9
199:10 217:10

241:11 248:21
296:3
**results** 132:16
**resume** 159:22
160:9,12
278:1 283:5
286:16 332:8
332:9,18
**resumes**
332:20 333:1
**retain** 18:11,24
19:5 68:3,11
69:8,11 172:3
172:10,16
**retained** 68:25
138:17
**retaliated**
100:18 101:4
101:14 255:1
**retaliation**
22:23 101:19
102:14,19
103:7 104:1,9
105:16 106:2
106:18 113:13
113:16,20,22
114:3 115:12
115:18 117:3
117:6,13,18
255:10
**retirement**
278:13
**retroactively**
250:11
**return** 114:19
148:24,25
149:8 320:22
321:12 328:21
**returned** 33:5
185:12
**returning** 225:2
**returns** 321:7
321:23 330:16
**reveal** 86:21
**revealed** 84:21

85:7,16 86:5
87:22 88:14
**reversed**
300:11
**review** 8:2,5
160:21 235:13
235:22 236:10
339:17 340:13
**reviewed**
137:14 158:25
**reviewing** 92:3
152:1 158:17
245:17
**revisit** 254:21
**reviving** 221:20
**re-enrolled**
309:15
**re-enrollment**
308:24 309:8
309:12 318:9
**Rick** 317:10
**rid** 213:8
**right** 12:17,25
21:2 22:10
25:2,12,18
26:13 29:11
36:21 38:2,14
40:1,7,8 43:3
46:7 50:20
51:1 52:5,9,10
52:13 61:8
62:21 63:1
66:21 68:7
74:11,16
76:17 82:7
90:11 91:21
93:6,22 94:10
98:20 100:13
104:24 108:2
110:2 124:6
128:5,15
129:5 134:10
134:14 140:11
140:23,25
144:1 147:6



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787    www.cefgroup.com    fax:216.687.0973
**Cleveland:** 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
**Akron:** One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

148:19 156:23
158:21 161:6
162:13 164:16
166:24 167:23
169:5 171:19
173:2 175:3
175:12,13
178:5 179:2
180:11,20
181:2,20
183:7 184:23
186:5,11
193:9 205:17
206:12 212:2
222:9,20
226:22 238:1
238:20 248:25
249:8 252:12
252:13 253:21
257:15,21
260:7,15
261:25 268:4
272:6 274:24
275:3 280:3
280:12 286:19
287:23 291:17
291:21 292:12
294:18 300:16
300:21 302:9
302:20 303:11
306:3,5 308:5
310:20 312:7
319:16 320:12
335:12 341:17
**rights** 140:14
141:3 144:3
208:4 220:2,6
220:19 222:2
222:6 223:16
225:9 232:3
237:9 262:2
262:15 267:10
267:10 295:2
295:5,11
297:19

**right-hand** 15:2
**Robert** 1:7,17
3:1,7 4:10
43:18 53:9
97:25 227:4
245:2 246:2
247:2 274:3
275:5
**Robin** 131:19
**role** 107:13,16
325:8
**roles** 107:19
250:20
**Rose** 312:2
**Rossi** 2:5 13:12
14:15,20 32:3
40:17 68:15
97:24 118:9
127:17 131:6
137:21 141:8
149:24 150:1
150:19 160:14
160:17 161:5
161:20 164:20
200:24 201:2
214:8 225:13
227:3 246:25
247:24 248:2
254:17,20
275:3 278:17
283:5,10,12
284:19,25
285:3,7
286:12 288:3
290:14 294:19
295:6,24
301:1 302:7
302:10 304:17
304:22 312:10
314:20 315:3
324:1 330:13
338:4,6,9,14
340:3,7 341:8
344:4
**Rossi's** 314:23

**Rottenbottom**
120:20
**roughly** 10:13
**round** 128:21
128:22
**routes** 158:18
**Rowbottom**
120:20,22
125:20 327:23
328:2
**Rowdy** 313:19
**Rudin** 312:2
**Rule** 10:19
346:4
**rules** 3:3 4:21
140:6 343:12
**run** 156:22
202:25 317:5
**Ryan** 24:15
25:1 31:24
32:11,12,14
32:17,21 33:9
33:17 34:1,7
34:11,15,18
34:24 35:5,12
37:4,9 38:17
39:7,17 40:5
44:1 46:15
119:23 120:4
120:5,11,16
120:25 121:16
121:24 124:13
124:15 169:6
169:11,16
170:1,3,13
315:19,23
316:3
**Ryan's** 122:1

─── **S** ───

**S** 9:7 43:15
66:10 122:25
174:11 179:23
192:4
**safe** 78:17

**safety** 27:15
33:22 37:21
39:21 63:15
81:15,19 84:8
84:10 88:17
88:19 118:17
118:18 119:17
**Sam** 120:20,22
121:18 122:14
**sat** 39:8
**satisfactorily**
99:19
**satisfy** 171:4
**Saturday**
336:19,20
**save** 76:2
153:11
**saw** 79:6
**saying** 5:15
54:8 70:8
74:25 76:5
80:20 90:3,16
93:10 94:15
94:22 105:25
113:25 124:15
125:11 127:22
166:8 169:22
196:12,15
199:12 200:2
200:7 201:9
203:12,20,24
204:7 206:16
207:14 208:21
233:11 246:23
270:15 276:6
278:10,19
279:12 282:19
295:16 317:2
331:22
**says** 44:14 45:9
45:10 78:25
84:20 87:13
88:16 93:19
99:17 100:20
101:7,12

103:2,4
132:13 141:16
142:18 148:10
148:15 157:4
157:5,9 161:6
161:7 162:22
181:13,16
200:5 221:24
222:15 235:22
254:12 255:20
260:12 261:3
263:18 267:17
267:18 272:7
276:21 289:7
289:9 292:22
300:13 326:6
326:7,25
333:21
**scared** 93:12
**schedule** 37:1
127:4
**scheduled**
80:24 234:23
**235:2**
**schedules** 48:3
**school** 119:25
124:19 165:13
165:15,17,17
165:19 311:4
312:16
**schools** 165:8
165:11,21
166:11,17,18
**Schweppes**
1:13 100:22
101:10
**scratch** 53:4
**seal** 263:19
**search** 296:4,9
329:18,22
334:23
**searching**
15:14 331:4,6
331:13 336:13
**season** 196:9



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY
1.800.694.4787    www.cefgroup.com    fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

196:11,14,16
**seasonal** 41:21
41:25 139:5,6
139:9,12,13
139:22 170:21
**seats** 301:25
**second** 7:22,23
8:9 11:20,25
13:19 35:18
61:13,19
65:16 81:10
81:11 158:12
170:16,17
179:17 210:21
211:23 254:17
258:9,20
261:11 265:11
268:2 273:22
275:1 276:1
283:7 288:8
301:1,13
303:14 338:1
338:18
**Secrest** 2:4
**section** 44:4,11
45:16 81:12
82:15 137:4,6
137:24 138:2
138:2,19,22
138:25 139:3
139:5,17
140:1 141:13
141:14 142:5
142:5,8,20
144:1,2
145:11,19
146:9 147:10
148:6 149:16
149:25 150:23
150:24 151:11
153:14,16,18
153:23,24
154:8,11,15
154:16,21
155:9,10,25

156:1,2,3,4,9
156:16,20,21
157:17,18,21
157:22 165:2
194:1,6
245:10,12
272:3 273:5
274:4 282:17
283:15
**sections** 45:21
153:6
**secure** 330:18
**Security** 294:15
**see** 12:3 26:6
33:1,2,3 44:11
72:15 73:10
74:4,21 77:15
79:1 84:22
90:6 92:5
100:14 102:7
121:22 122:1
122:4,5,9
124:2 130:24
137:25 141:14
150:15 151:12
151:16 155:12
155:16 156:14
157:12 164:1
165:3 172:13
194:3,12,15
215:20 235:15
235:16 236:10
236:12 241:21
258:25 259:25
278:20 280:7
283:23 292:23
293:2,22,23
298:12,16
299:5 315:19
331:2 335:25
**seen** 8:21 13:9
14:12 77:2
96:7 118:4
121:19 135:18
152:16 161:11

175:21 185:16
202:6,8,10
215:2,3,12
234:19 316:13
317:10
**selected**
166:13
**self** 310:17
**send** 47:25
48:7 65:24
66:23 67:1,5
70:7 111:12
112:9 243:20
**sending** 64:10
71:6 333:6
**senior** 146:17
147:22 151:3
210:24 211:10
211:19,24
222:3,22,24
223:24 224:4
**seniority** 71:16
93:17 123:20
125:5 126:4
143:22 144:2
144:6,7,8,10
144:18,19
145:5,14,16
145:24 146:1
146:4,10,16
146:19 147:13
147:21 148:2
148:7,9,21
149:11,17,20
150:4,9,25
155:9,15
202:4,9,18
204:11 205:15
205:21 206:7
208:3,3,18
209:16,22
210:22 211:5
211:10,17
212:3,13,17

212:20,25
213:1,11,13
213:14,19,24
214:5,15,24
215:8,21
217:11 218:4
219:4,25
220:1,6,9,18
221:21 222:2
222:6,21
223:10,17,25
224:5 225:9
229:6 231:13
232:2,5 236:4
237:9,22
238:3,8,11
239:3,4
241:12 245:15
245:19 246:17
247:14 249:21
251:8 261:18
262:10,11
267:9 278:25
279:1,3,8,16
279:24
**sense** 148:15
**sent** 16:22 17:6
47:19 48:2,12
48:13,21 49:2
52:11 63:3,20
63:22 64:2,13
64:18,23
66:14 70:15
70:20 79:19
82:23 83:3
98:24 99:1
218:3,25
219:3 224:1
228:10 232:13
235:12 238:7
239:22 241:5
243:4 293:19
294:4 314:14
314:17 316:13
322:22

**sentence** 137:5
138:19 151:15
154:15 176:10
176:12 181:23
182:3,10
187:1 221:24
274:22 276:14
**sentences**
144:25 145:2
176:15
**separate** 47:22
165:8 166:1,5
176:10,11
211:14 230:24
233:12
**separately**
209:13
**separation** 94:2
104:13 105:11
292:19,22
**September**
72:1,13 81:6
83:14,17,25
84:2 86:4,11
86:20 87:21
88:12,16 90:1
96:18,23
98:20 99:2
102:20 105:5
116:4 131:18
131:25 132:5
132:9 133:20
133:25 134:9
139:8 171:19
186:10,22,25
187:7,14,22
188:1,7,11
189:10,16
191:23 192:8
192:21,25
196:25 198:3
198:9,15,20
199:2 203:25
205:7,24
206:5,20



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787    www.cefgroup.com    fax:216.687.0973
**Cleveland:** 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
**Akron:** One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

207:7,18
208:22 209:17
209:23 211:25
220:17 221:8
221:9,13,14
223:9 224:24
225:9 230:5,6
230:9,10,15
231:2 235:12
235:18 238:2
240:11 249:3
249:6 251:2,8
261:19 262:11
315:16 320:11
331:5 337:12
342:20
**sequence**
282:23
**series** 4:3 5:4
**serve** 112:14
**served** 10:21
310:19
**service** 78:3,9
79:5,14 137:7
144:8
**services**
137:18 140:8
**set** 9:12 10:3
11:2,14 12:20
92:1 133:3,21
134:1,8
168:20 178:25
235:17 277:2
301:19 346:6
**sets** 94:11
**setting** 52:12
67:17 275:20
**276:3**
**settled** 175:4
**seven** 136:5
142:13 202:6
208:2,4
**seventh** 10:13
142:16
**Seyfarth** 2:12

**shake** 6:4 103:1
103:3,21
105:5
**shame** 94:19
**shape** 149:10
**share** 336:1
**shared** 91:20
**Shaw** 2:12
**sheer** 317:8
**sheet** 65:14
123:20 125:5
202:9 204:17
**shied** 191:2
**shift** 35:18,23
36:7,18,23
48:21 127:5
158:12 170:12
170:14,16,17
173:16,22
174:4
**shifts** 35:22
36:10 142:14
**shipment**
158:20 159:5
**shipments**
159:10
**shock** 92:1
**shocked** 88:8
242:9
**shook** 102:24
102:25
**shop** 189:24
**short** 43:22
227:24 316:24
**shortly** 180:10
268:1
**short-term/se...**
283:22
**shot** 156:1
**show** 121:19
206:24,25
211:24 284:1
284:2 285:11
285:19
**showed** 53:1

234:21 251:18
**showing** 9:22
13:7 14:10
65:9 80:5 98:9
131:14 152:14
159:19 178:13
181:8 185:7
197:11 209:14
209:20 225:20
228:8 232:23
258:2,18
259:15 260:22
272:23 277:21
280:19 287:1
293:14 320:18
321:21
**shows** 213:18
258:21
**shrink** 118:23
118:25
**shuffle** 190:16
191:7,13
**sick** 61:8,10
**side** 200:4
**side-by-side**
211:15
**sign** 52:22
164:15 226:21
234:7,9,12,13
234:16 237:7
289:8
**signal** 332:3
**signature** 10:15
10:17,24 15:1
31:3 53:6
74:21 162:7
167:19 168:16
179:3 185:14
185:18 225:24
227:14 228:13
233:2 272:2,6
273:4,8 289:2
292:14 301:15
303:13 318:15
344:4

**signatures**
183:6
**signed** 10:23
98:15 109:6
162:9,12,17
163:15 167:23
168:12 197:25
263:18 271:22
271:23,23
289:17 290:2
318:17
**signing** 144:5
168:15 226:23
**227:1 272:12**
273:14
**similar** 96:6
118:12 119:8
119:14
**similarly** 57:21
122:5,9
183:18
**simple** 59:10
109:11 214:12
216:1
**simply** 76:5
98:23 182:9
**simultaneous**
39:4
**simultaneou...**
165:25 166:4
166:8,11
**sink** 303:24
304:1 305:3,5
305:10 306:1
**sir** 18:17 43:19
61:23 78:19
129:1 162:7
164:16 263:24
287:14 289:2
297:1 301:15
**sister** 335:22
**sit** 59:8 225:5
285:9 309:17
**site** 86:17 88:20
**sitting** 35:7,11

72:7 161:20
171:7,12
285:17
**situation** 84:14
128:14 217:10
247:4 306:20
342:7
**six** 133:6,7,10
138:7 145:16
145:24 151:22
152:3 262:18
**sixth** 142:15
**skip** 81:10
**Skipping**
163:24
**slipping** 23:5
23:23 63:17
**small** 116:25
189:23
**Snapple** 1:11
100:22 101:9
161:24 258:5
259:18 260:25
**social** 294:15
343:20
**softly** 20:23
**sold** 312:24
**solicitations**
332:20,25
**solo** 56:17
**somebody** 54:3
87:1 93:16
113:12 126:5
126:8,13
146:7 194:21
195:14 204:8
204:19 253:5
299:1 317:2
335:24
**son** 120:1
**sons** 119:24
**soon** 80:24
81:21 297:6
**sorry** 17:13
42:7 48:5


**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787    www.cefgroup.com    fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

| | | | | |
|---|---|---|---|---|
| 49:24 53:2 | **speaking** 16:10 | 113:7 | 123:22 162:22 | **stayed** 183:24 |
| 65:1 68:16 | 26:19 206:17 | **stand** 4:11 | 170:15 199:13 | 184:3 188:14 |
| 69:18 74:24 | 219:11 338:10 | 161:9 | 208:16 217:25 | 188:18 |
| 80:7 85:20 | **special** 124:20 | **standard** 40:14 | 218:12,17 | **steel** 37:23 |
| 86:15 87:3 | 124:21 125:7 | **start** 5:12,18,20 | 219:7 259:19 | 118:20 |
| 88:4 94:15 | 126:14 137:7 | 7:9 24:9 32:19 | 261:1 276:9 | **stenotypy** |
| 98:2 103:13 | 144:8 | 35:24 36:3 | 326:17 | 345:13 |
| 109:17,21 | **specific** 15:9 | 37:24 127:9 | **statements** | **step** 5:16 |
| 114:6 115:3 | 28:3,11 34:23 | 127:11 158:13 | 162:23 163:3 | **Stepping** |
| 120:21 124:12 | 38:3 41:8,15 | 200:8 201:10 | 163:17 168:9 | 118:22 |
| 126:18,23 | 41:19 103:15 | 255:13 330:14 | 168:18,20 | **Steven** 1:24 |
| 127:17 130:16 | 198:4,18 | 330:17 331:12 | 215:16 263:8 | 345:5 346:13 |
| 130:19 137:22 | 250:14 323:1 | **started** 39:9 | 272:8 273:10 | **stick** 250:7 |
| 143:23 156:12 | 323:7 | 112:23 118:20 | 273:18 | **sticking** 107:20 |
| 164:21 166:7 | **specifically** | 138:14 173:10 | **states** 1:3 | **sticks** 87:13 |
| 186:20 188:3 | 23:1 100:17 | 173:14 174:1 | 13:20 99:6 | **Stimmel** 66:10 |
| 189:13,20 | 102:5 105:18 | 174:24 270:17 | 132:14,15 | 66:20 98:18 |
| 190:12,25 | 106:5 132:12 | 309:1 329:15 | 137:6 138:20 | 99:2 102:8,13 |
| 200:25 205:11 | 141:13 155:8 | 331:18,23 | 140:2 142:22 | 102:23,24 |
| 215:24 217:3 | 174:12 281:15 | **starting** 27:19 | 144:2 148:7 | 117:1,2,4,12 |
| 220:4,16 | 305:14 319:10 | 27:21 36:7,16 | 148:23 150:24 | 117:17,21 |
| 225:2,14 | **specifics** 22:18 | 36:22 45:15 | 154:17 163:2 | 118:1 183:8 |
| 230:23 233:14 | **specified** | **starts** 44:10 | 166:21 168:1 | 189:5 197:17 |
| 238:13,21 | 345:21 | 80:19 81:11 | 194:1 217:3,8 | 255:4 256:24 |
| 247:24 252:3 | **speculate** 6:11 | 138:3 156:16 | 240:8 273:7 | 323:15 |
| 263:15 264:11 | **speculation** | 156:20 194:13 | 292:25 320:23 | **Stimmel's** |
| 275:10 278:19 | 247:1 | 212:9 245:13 | **stating** 46:3 | 256:25 |
| 281:13 288:6 | **speeding** | **state** 1:25 4:9 | 206:2 222:17 | **stipulate** |
| 306:17 312:3 | 296:22 | 179:6 299:20 | **station** 215:11 | 153:20 |
| 335:4 339:25 | **spelling** 32:4 | 299:22 308:3 | 316:1,25 | **stipulated** |
| 342:5 343:13 | **spend** 334:6 | 308:11,21,24 | 317:7 | 154:21 |
| **sort** 91:14 | 340:7 | 309:2,9,12,16 | **status** 41:22 | **stopped** 249:11 |
| **sorted** 95:13 | **splitting** 173:16 | 309:25 318:10 | 70:17,23 81:6 | 249:15 250:8 |
| **sought** 329:12 | 173:22 174:3 | 321:8,25 | 87:5,12 | 297:7 |
| **sound** 252:11 | 174:6,12 | 345:3,6 | 100:12 170:24 | **storage** 16:1,4 |
| **sounds** 52:1 | **spoke** 33:17 | 346:14 | 190:13 191:6 | 16:7,12,15 |
| 134:10 175:13 | 34:7 | **stated** 32:25 | 191:7,12 | 17:11 18:2,12 |
| 181:2 186:11 | **SS** 345:3 | 105:4 116:5 | 213:16,18 | 19:13,20 |
| 252:13 257:21 | **stall** 27:20,23 | 139:16 147:18 | 218:4 219:4 | **strange** 137:19 |
| 308:5 320:12 | 63:17 326:5 | 266:8 | 229:5 259:25 | **streamline** |
| **South** 2:14 | **stalling** 33:3 | **statement** | 262:23 266:25 | 103:14 |
| **speak** 97:25 | **stalls** 23:5,24 | 13:25 55:22 | 267:3,10 | **Street** 1:22 2:6 |
| 233:14 314:12 | 51:23 | 56:9 91:10 | 286:6 | 2:14 |
| 314:20 315:11 | **stamp** 130:25 | 93:2 108:13 | **Statute** 20:9 | **strike** 28:18 |
| 316:20 | **stamped** 113:6 | 108:17 116:15 | 21:6 | 62:14 81:11 |



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787   www.cefgroup.com   fax:216.687.0973
**Cleveland:** 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
**Akron:** One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

89:4 90:8
106:16 173:12
187:12 229:15
231:20 311:8
315:1
**strongly** 304:19
**study** 308:10
342:8
**studying** 211:1
342:10
**stuff** 18:7 64:13
64:15,19,22
70:5 91:7
125:1 174:6
202:12 246:13
246:15,18
247:4,8,14
249:21 250:16
262:2,15
263:12,16
264:9,13
267:9 280:8
313:13 316:18
316:19 322:25
326:5
**style** 16:5
**subject** 26:17
206:4 207:6
207:14 228:12
238:24 303:20
**subjects**
198:14,17,18
198:25 199:17
199:20 201:17
201:24 202:14
202:19
**submit** 69:6
332:15
**submitted**
69:12 70:2
79:21 85:8
159:22 185:17
271:22 286:7
309:6 320:22
321:7,24

**submitting**
332:7
**subpoena**
280:22 286:8
287:4 291:11
**subscribe** 53:5
292:13
**subscribed**
31:2 74:22
179:4 185:15
185:18 226:2
228:14
**subsection**
148:22
**subsequent** 4:6
60:6 129:19
157:9
**subsequently**
97:8 180:25
186:9
**subsidiary**
136:6
**substance** 10:5
156:24,25
241:19
**substandard**
27:16 33:4,9
33:16
**substituting**
263:21,25
**suggests** 21:18
**Suite** 2:15
**sum** 305:19,20
**summer** 195:19
195:24 196:8
196:12,13,16
**Sunday** 336:19
336:21
**Sundays**
336:19
**supersedes**
153:12
**supervising**
43:4
**supervisor**

32:14 35:17
38:18 39:14
42:18,22,24
43:2 44:1,3,22
45:6,10 46:4
60:25 169:16
169:19,23
302:19,21,22
305:9
**supervisory**
43:24 45:12
45:17,19
**support** 322:6
324:9,18
340:18
**supports**
322:10,14
323:3,8 328:2
340:24 341:2
**supposed** 36:9
46:13 212:13
216:15,21
**sure** 3:22 4:1
5:15,16 7:11
8:3 12:19
14:19 17:14
19:3 20:14,20
20:21 30:14
33:15 36:20
40:18 46:24
49:22 55:13
57:24 60:18
61:11 70:1
72:21 75:21
76:3 78:12,23
80:13 85:20
100:5 102:16
106:14 115:25
117:24 118:9
129:6,6 130:6
136:22,22
139:24 141:7
147:1,9
148:14,18
149:12,15

154:5 155:21
156:7 158:6
160:7 162:19
163:23 172:1
176:14 177:13
179:3,15
182:14 191:6
191:16 198:6
198:11,12
207:11 210:6
230:25 237:10
237:12 243:13
246:14 248:4
248:10 251:5
257:16 259:6
259:9 268:23
278:2 280:8
282:5,10
284:14 296:14
296:17 297:8
318:25 319:13
319:17 339:4
343:13,13,13
**surprise** 283:25
284:5,6
**surprised**
91:10 93:11
242:9 254:4,5
**suspended**
337:4
**sworn** 3:4
345:9
**Sypherd** 213:14
**Sypherd's**
213:18,24
214:4,15,23
215:13
**Sypris** 278:7,21
278:25 279:21
280:5,10
**system** 129:8

**T**

**T** 26:24 32:8
66:10 120:23

120:23 122:25
239:25
**TAA** 278:9,12
278:23 279:8
**table** 105:21
208:15
**take** 3:12 8:3
26:23 27:2
32:17 51:8,11
69:24 70:4
89:22 118:7
131:5 155:4
156:2 160:1
160:20 200:15
204:12 209:9
213:4 244:1
246:7 268:20
309:15 341:17
341:19
**taken** 1:18 4:17
4:20 62:1
81:18 84:13
96:10 97:4
172:15 177:15
177:20 187:24
188:5 204:18
345:19
**talk** 20:22 21:20
21:24 37:3
47:11 102:17
103:12 113:11
189:23,24
218:5 238:9
238:10 252:21
252:25 253:8
253:11,12
**talked** 114:23
129:4 158:2
158:10 195:2
196:22 198:2
316:15 317:12
326:2 327:15
340:16,20
**talking** 46:25
51:16 87:1



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787   www.cefgroup.com   fax:216.687.0973
**Cleveland:** 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
**Akron:** One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

91:4 223:20
230:21 296:25
298:8
**tape** 116:24
317:16,20,24
**Taraba** 24:15
25:2,14,15
26:5,6,9,20,23
26:23 27:2,5,6
27:12,25 28:2
28:5,20,23,25
29:13,16 30:3
30:12,16,19
30:25 31:6,12
38:23 39:2,11
40:6,11 41:4
41:17 52:8
60:25 61:14
66:1,2 67:21
68:6 70:16
73:2,16,22
74:6,10,14,20
75:6,12 77:17
102:7,12,22
102:23 113:11
113:15,18,21
114:2,16,20
115:10,17
116:3 119:24
120:4 124:14
125:6,7,12,14
168:24 169:8
169:13,19
184:11 185:10
189:3 197:17
255:3 256:13
323:11
**Taraba's** 25:23
40:13 61:17
61:22 75:15
75:23 76:7
256:14,19
**tax** 320:22
321:7,9,12,23
321:25 328:21

330:16
**team** 56:4
**Teamster** 46:11
**Teamsters** 42:6
43:17 45:18
45:22 46:7,13
136:7,14,20
152:19 178:16
179:1 197:16
225:22 240:1
250:12,20
**telegram** 149:4
157:6
**telephone**
76:18 111:2
241:10 254:14
325:18,20
327:10
**tell** 5:1 11:13
27:12 37:11
38:12 60:5
62:25 81:4
103:15 105:3
108:23 114:25
162:14 251:16
320:20
**telling** 10:5
84:25 85:6,15
86:3,10,20
87:20 111:12
230:15 270:14
282:13
**tells** 57:10
108:10
**temporary**
146:18 147:25
148:1 176:2,5
181:13 182:7
182:14 220:12
231:17,22
**ten** 319:16
**tender** 274:7
**tendered**
291:20
**tendering**

291:15
**term** 17:18
23:18 25:5
40:19,21 45:6
46:4
**terminable**
168:4
**terminate** 30:12
31:6,13,20
49:15 50:8,15
57:7,10,17,23
58:5,15 59:4
59:16 240:16
**terminated**
86:24,24
90:15,22
92:13 148:9
148:16,17
149:13 150:12
163:20 164:8
241:14 242:7
242:12 245:15
265:4 274:6
**terminating**
240:18 250:11
**termination** 4:7
93:11 95:9
103:10,19,23
104:15,18
105:8 106:6
115:22 117:10
128:4 163:11
242:10 245:19
253:19 254:2
267:13 285:20
289:14
**terms** 42:25
93:4,23 94:17
94:23 136:12
145:4 152:24
207:16 216:13
216:18 220:7
241:12 279:15
**territories**
140:3,10

**territory** 140:7
**testified** 38:21
39:24 41:14
50:18 75:8
76:11 97:1
104:7 131:22
132:23 216:3
223:9 253:17
255:23 263:2
288:10 297:17
**testify** 205:14
314:8 315:7
345:9
**testifying**
234:17 285:10
**testimony**
63:25 91:19
132:19 133:14
169:14 210:18
225:6 231:23
254:22 255:11
285:18 306:7
306:12,21
307:5 345:12
345:17
**Texas** 54:18
232:7
**thank** 32:9
79:18 140:20
150:1 160:16
200:23 233:16
248:2 252:3
254:20
**Thanks** 150:20
**thing** 63:16
323:16
**things** 60:15
114:14 125:1
143:18 173:5
203:6 206:11
246:22 298:9
341:4,20
**think** 4:23 5:19
11:18 13:10

18:20 27:19
27:22 28:15
32:7 39:23
41:8 42:16
50:22 75:8
77:2,12 79:8,9
89:17,18 96:6
97:1,10 101:1
103:14 106:15
106:17 119:10
119:16 120:16
121:2,3,7,9
122:14 123:14
126:12,13
127:2,4
143:16 145:2
147:7 158:10
161:1,5
168:25 179:16
196:23 199:8
208:1,2,11,25
219:14 248:17
251:25 252:9
252:19 254:23
255:14 256:9
256:14,19,24
271:1 274:17
275:9 279:11
296:2,3 299:6
310:13 311:18
312:22,24
313:11 314:14
317:23 322:20
329:8 337:17
337:25 338:17
341:12
**thinks** 115:7
**third** 44:10
61:20,22 91:2
96:4 128:19
194:11 301:24
**thought** 19:10
32:5 82:5
123:7 125:10
164:17 195:2


**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787   www.cefgroup.com   fax:216.687.0973
**Cleveland:** 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
**Akron:** One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

202:23 203:2
203:5,7,16
207:1,5
250:24 262:4
266:9 277:14
**three** 148:24
149:3,10
165:8,23
212:7 265:14
295:17,20
300:24,25
328:25 329:3
329:8,10,19
**throw** 18:7,11
18:19,21 19:5
**Thursday** 159:9
**Thursdays**
174:23
**ticket** 306:22
307:3,6
**time** 8:3 14:4
14:16 20:16
21:12,13
24:13,14 26:8
35:23 36:2
38:6 39:3,5
45:8 48:20
49:19 52:18
64:12,21
69:22 72:24
76:2 77:23
89:22 95:8
96:25 99:24
104:25 113:8
116:2,8,10
126:11,12
127:7,8,10,11
130:13,25
132:11 133:2
133:12 134:8
138:16 139:23
153:11 159:24
160:20 163:15
164:7,10
165:22 166:1

166:5 167:12
168:5 170:20
173:10,13,19
174:3,12
176:4,9,18,23
177:4,8,12,13
180:8 181:17
181:24 182:4
182:12 187:2
190:20 201:11
202:4 204:11
205:4,16,22
205:25 206:7
206:13,14
208:13 220:23
221:4,8,13
223:23 225:6
226:8 228:22
231:19 232:2
234:18 240:20
240:25 241:20
242:11 243:12
246:7 249:9
249:10 251:20
252:5 253:18
253:22 257:5
258:12 262:7
264:10,12,17
266:18 284:3
284:22 295:18
306:8,13
312:23 317:9
317:10 331:7
331:8,16
334:8,10,12
334:12,16,21
334:25 337:2
337:8,12
340:2,12
342:19 343:3
345:19
**timed** 198:11
**timely** 127:16
127:19,24
**times** 35:25

37:19 41:3
42:18 43:5
137:14 142:15
142:17 285:15
295:10 306:24
**tired** 115:6
**title** 169:2
311:14
**today** 3:12 4:2
4:19 5:2,4 6:8
6:25 7:5 13:25
14:1 27:22
42:19 55:5,9
129:5 171:7
171:12 225:5
234:18 241:20
285:9,17
306:9,13
315:17 325:1
325:6 339:19
339:23,24
340:1,3,16,21
**told** 28:25 29:4
30:23 90:20
95:25 108:19
108:21 111:1
111:20 114:14
121:24 170:2
215:7,9
218:25 226:8
229:25 230:14
266:16,22
292:5 327:14
340:23 341:1
**tomorrow**
341:15
**Tony** 119:21
121:9 122:15
122:24 123:17
212:8 315:20
315:23 316:10
**Tony's** 316:12
**top** 289:8
**tornado** 326:9
326:20 327:3

**total** 258:24
261:13
**touch** 127:12
**towmotors**
28:10,12,14
37:11 326:3
**Trade** 278:15
278:17,18
**traffic** 166:23
167:4 306:22
307:3
**training** 308:20
309:23 310:2
**Trans** 295:17
296:21
**transcribed**
345:15
**transcription**
345:16
**transfer** 140:12
154:18
**transferred**
126:14 142:23
143:3,4,9
**transmission**
69:3
**transmit** 70:10
**trash** 18:21
19:6
**treated** 81:17
118:11 119:11
119:18 123:2
**123:22** 124:16
125:12
**treatment** 120:7
124:20,22
125:7
**trial** 138:6
**tried** 241:9
**trooper** 296:13
296:21 300:19
301:12
**truck** 28:10,12
28:13 37:21
158:18

**trucks** 33:1
37:10 51:22
63:15 78:8,14
78:16,17,25
79:3,13
158:20 159:4
326:3
**true** 11:2 26:14
86:7 127:20
158:15 163:3
163:18 179:1
183:12 226:7
245:21 248:15
251:10,24
266:21 272:8
272:15 273:10
273:18 276:8
277:3,8 284:7
301:19 320:21
338:21 345:16
**Trumbull**
302:17
**trust** 155:6
324:6
**trustee** 178:18
**trusteeship**
190:3 208:8
**truth** 5:1 84:25
85:6,15 86:4
86:10,20
87:21 345:10
345:10,11
**truthful** 88:12
**try** 116:1 191:3
252:17 253:5
283:12
**trying** 58:12
93:13 171:13
172:21 186:1
201:18 266:1
277:1 299:14
335:18
**TSK** 334:1
**tunnel** 296:1
**turn** 125:22



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787  www.cefgroup.com  fax:216.687.0973
**Cleveland:** 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
**Akron:** One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

136:25 142:4
142:20 143:21
148:5 155:24
210:21 245:9
258:19 283:14
**turned** 199:21
297:6 341:16
341:17
**turning** 137:23
139:25 141:5
150:14 160:18
164:22,25
287:18 301:13
**two** 11:22 20:7
21:4,21 39:5
47:22 62:11
105:22 126:7
142:16 176:15
190:5 212:7
267:19 276:17
284:2 285:11
285:19 291:20
292:9 293:6
296:2,6
300:20,23,24
308:2 336:8
336:10
**Two-page**
65:13
**type** 17:19
37:20 69:15
118:14 119:9
119:15,17
134:21 135:2
292:22 308:13
322:25 329:21
**typed** 64:23
162:21 185:17
205:11,23
**typo** 148:18

**U**

**U** 174:11 312:4
**Uh-hum** 176:20
**unable** 337:9

**unanswered**
267:6
**unaware**
205:19
**unclear** 266:24
267:3,15
**unconcerted**
264:2
**undated** 61:10
**Undeclared**
308:12
**underage**
298:12 299:4
299:21 300:1
300:5
**undergraduate**
309:7
**underneath**
44:18
**understand**
3:14,24 4:25
6:14 7:1 11:14
23:19 24:5
47:3 62:13
72:22 75:22
91:18 101:11
102:4 109:8
163:5,25
164:4 190:4
192:12 221:23
222:23 225:7
233:10 237:11
237:25 245:4
248:5,6 251:6
254:10 268:24
269:17,24
276:5 277:1,5
289:9 293:4
296:5 299:14
335:19 336:11
341:18
**understanding**
9:9 20:6 21:2
22:14 33:10
33:18 40:19

40:21 60:14
62:15,25
79:11 93:22
98:13 127:14
136:11 159:21
170:23 179:22
206:15 245:16
248:8 281:24
**understood** 6:7
6:19 27:9 82:3
82:10 96:9,17
99:23 137:13
138:13 139:20
140:21 141:23
142:12 143:8
144:16 145:22
147:11,16
149:7 150:2
152:3 163:14
163:20 168:17
168:20 170:5
176:12 181:22
182:2,12
223:3 260:4
261:19
**undetermined**
176:4,8
181:17,24
182:4,8,11
187:2
**unfortunate**
238:12
**unfortunately**
202:24 243:16
246:5 247:6
**uniformly** 274:8
**union** 43:22
45:20 46:3
67:9 72:16
73:10,20 74:4
102:21 108:19
108:21 111:21
139:11 145:13
145:22 150:13
150:13 164:18

173:8 189:11
190:2,8,14
191:9,15,18
192:18,23
193:13 200:3
205:9 208:7,8
209:1 218:7
218:21 219:1
226:14,19
229:24 232:14
232:25 233:5
234:24 235:5
239:7,10
240:4 243:4,6
243:10,11,17
243:19 245:23
245:24 246:1
248:18,22
249:7,11,15
250:2,8,19
252:24 254:15
254:16 261:22
262:1,7,15,20
262:23 263:3
263:17,22
264:1 267:10
269:5,9,15,20
270:4,7,15,18
273:1,17,23
274:19 275:21
276:7,12,15
276:17,24
278:24 284:15
314:15 322:25
**unions** 77:15
**union's** 277:6
**unit** 92:24
136:14,20
**United** 1:3
320:23
**universe** 105:2
105:24 135:6
**unload** 159:7
**unquote** 190:7
196:17

**unresolved**
278:11
**unsafe** 27:17
33:22 37:10
51:22 326:4
**updated** 265:18
271:4
**updates** 212:13
**upset** 199:23
**use** 3:23 19:23
23:18 32:10
77:23 112:19
112:21,21
144:21 147:2
147:5 160:25
206:20 254:3
335:15,21
338:4
**usual** 40:23,25
308:15
**usually** 72:17
336:20
**utility** 121:11
125:18 126:24
137:20 144:9
202:8 212:9
212:15,22
215:20

**V**

**V** 324:14
**vacated** 243:17
243:23 249:22
252:24 254:15
262:22 276:10
**vacating**
276:15
**vacation** 41:11
136:18 180:9
180:10,15
**vacations**
184:14
**varies** 334:19
336:5
**vehicle** 23:15



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY
1.800.694.4787   www.cefgroup.com   fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

23:19 24:2,6
24:12,23 25:7
26:5,9 27:9,13
28:21 32:12
32:20,22
33:19 34:2,7
34:12,16,20
35:1 37:25
50:19 51:5,17
52:13 54:5
64:4 67:17,22
70:24 75:6,13
75:25 76:9,13
77:7 79:6
82:20 85:10
93:8 101:15
101:20 102:14
103:8 104:1
104:10 105:17
106:2,19
113:14,20
117:6,13,19
117:23 118:2
118:13 119:9
119:15 134:12
134:18 135:3
135:7 255:16
256:5,10,16
256:21 257:1
**vehicles** 23:3
23:22 28:4,8
33:13
**vending** 25:19
25:19 143:18
173:17,23
174:4,13
**vendor** 137:7
**vendors** 33:23
**verbal** 32:18,20
34:1 70:23
**verbally** 32:22
52:4
**verbiage** 153:9
153:10 154:1
**version** 153:18

271:24
**versus** 112:21
153:9 154:2
**vested** 140:14
**videographer**
5:7 6:1
**view** 295:19
296:3,6,7,8
301:24
**violation** 20:10
21:7 97:13,19
131:3 167:5
274:4,13
**violations**
166:23
**vision** 257:20
258:21 259:5
261:12
**volume** 196:4
**volunteered**
315:7,11
**vs** 1:9

---

### W

**W** 120:23
**wage** 41:11
91:8,15 92:7
93:9,15
107:18 109:6
114:8,11
138:21 139:16
175:9 193:8
193:12 197:2
198:22 201:22
202:1,15,21
230:19
**wages** 42:8
94:5,11 95:23
136:18 142:21
150:13 153:23
171:3,8,14
173:9 193:13
198:23 200:6
203:11 242:21
242:23 322:23

**wait** 5:8,11,22
40:17 68:15
91:5 137:21
164:20 225:13
254:9
**waited** 91:5
**waiting** 91:6
**Waive** 344:4
**walk** 199:24
**walked** 115:13
199:11
**wallet** 25:23
**want** 15:20 20:2
69:25 72:21
95:3 103:3
115:3 146:23
153:6 154:25
155:2 185:24
190:15,17
213:22,23
226:24 236:18
237:10 243:19
248:4 249:24
251:5 268:23
270:3 284:9
320:20 324:9
**wanted** 6:21
18:3 72:15
92:18 161:25
165:7 178:25
191:5,11
236:19 238:9
238:10 245:11
250:25 254:21
**wanting** 115:1
**wants** 115:5
125:15,16
**warehouse**
25:19,20 35:8
42:2 66:3
71:22 125:20
125:24 126:1
126:17,23
143:19 158:8
158:16,25

159:1 169:4
170:9,10
173:17,23
174:3,13,21
180:4,6 186:4
204:9,14,15
204:19 210:19
210:24 211:11
211:19,25
212:4,11,15
212:16,24
213:2,4
220:22 221:1
221:7,12
**warehousem...**
137:7 144:7
**warehouse's**
159:9
**warehouse/s...**
140:8
**Warner** 24:17
24:19 85:12
85:13,25 86:8
86:12,18 87:3
87:18 88:9
90:10,16
91:19,23
92:12 93:10
95:24 98:16
98:18 99:5
100:11 195:8
324:17,18
327:6,10,15
**Warner's** 87:10
**warning** 23:6
23:24
**Warren** 2:8
62:18 165:13
165:14 166:14
166:14 307:17
310:23
**wasn't** 72:8
73:3 78:19
84:25 85:6
210:10 229:14

229:21 230:14
231:2 247:6,8
247:12 249:20
270:19 279:24
284:25 298:16
298:24 302:21
313:9
**watch** 232:1
**way** 53:7 56:20
69:2 96:11
149:9 184:16
207:25 219:11
219:14 231:8
328:20 332:3
333:7
**weapon** 295:13
295:15 296:19
297:11,17
300:10
**Wednesday**
1:18
**week** 142:13
318:22 319:2
319:4,5 334:6
336:3,6,8,12
336:24
**weekend**
130:20 159:11
**weeks** 265:14
292:9 318:22
319:2,6
**welfare** 150:15
150:23 259:18
**went** 72:22 73:8
74:2 77:19
124:19 128:21
129:24 174:18
279:1,3 307:7
326:3
**weren't** 71:22
241:24 247:18
247:22 280:1
**Western** 165:14
166:15
**we'll** 4:20 7:9



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787    www.cefgroup.com    fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

22:7,17 24:10
32:10 159:2
209:13 220:14
254:3 333:12
**we're** 4:2 20:20
22:8 36:14
46:12 107:20
145:2 158:11
200:14 295:25
298:8
**we've** 96:7
105:24 143:16
170:17 193:22
236:3 315:17
324:25 340:16
340:20
**whatsoever**
67:16 337:10
**WHEREOF**
346:5
**whistleblower**
20:9 21:5,24
22:11,20
23:11 100:17
340:18,24
**William** 66:9
**willing** 217:13
217:19 218:1
218:12,18
219:8,22
223:14
**Wilson** 302:18
303:4 304:5
305:14
**wish** 224:6
227:22 228:2
235:4,14
236:5 239:12
240:6 247:20
**withdraw** 226:9
268:9 269:12
269:14,22
270:1,5
**withdrawal**
163:9

**withdrawing**
268:13 269:19
**withdrawn**
223:22 225:12
230:20 233:9
233:12 268:5
269:8
**withdrew**
223:21 230:19
243:17 263:3
268:6,12
269:4,5
**witness** 68:16
137:22 200:25
214:10 225:14
254:18 282:25
291:1 301:2
345:9,12,14
345:17 346:5
**witnessed**
78:10 79:14
113:25 116:12
116:14
**wonder** 261:15
**word** 82:1,1
84:18,18
99:16,16
137:12,12
138:12,12
139:19,19
141:22,22
143:7,7
144:15,15
145:21,21
149:6,6,23,23
151:9,9,25,25
163:13,13
168:14,14
179:11,11
181:21,21
182:5 187:4,4
213:6 217:17
217:17
**words** 23:14
27:19,23 46:2

87:5,10 95:15
127:6 206:21
207:19 219:18
219:20 266:8
279:11 333:4
333:23
**work** 33:5 36:7
47:21,24 48:3
71:21 88:19
114:1,19
115:2,4,6
116:6 118:21
129:16 138:4
140:14 142:13
142:24 143:2
143:13 148:24
149:9 151:20
152:5 174:14
179:9,14
185:12 192:21
194:3,14,18
194:22 195:13
202:18 208:10
272:1 279:21
280:1 282:1
288:17 310:16
319:6 335:2
336:25 337:9
**worked** 35:18
92:22,25
123:24 138:6
139:11 158:11
280:10 281:17
286:17 287:22
288:12 289:24
291:19 293:5
318:22 319:2
319:4,11,15
319:19 320:4
320:10
**worker** 92:21
194:19
**workers** 37:22
60:24 119:1,3
195:11 198:24

199:1 202:2
202:17,22
227:25
**working** 33:2
36:15,17,23
44:1 51:23,23
63:16 71:13
71:17 73:5
78:18 91:12
92:9 106:20
115:8 141:20
142:1,3 151:5
179:8 198:24
199:1 202:3
203:22 204:2
204:3,19
236:9 330:23
**workplace**
80:23
**works** 93:17
94:14
**worried** 190:4
**worry** 232:4
**wouldn't** 218:4
264:6 284:5
**Wow** 164:12
**wrap** 118:23,25
**write** 69:21
75:1,3 111:2
146:23 226:3
232:17 243:5
243:11 254:13
314:4
**writing** 37:9
39:5,9 74:23
141:18 168:12
179:1 186:21
218:24 228:23
236:7 338:20
**written** 27:13
27:25 28:4,20
32:18 37:3
38:10,22,25
39:25 40:3,10
42:10,14

51:16 64:2
67:16 70:17
70:25 178:15
185:10 240:12
339:10,14
**wrong** 41:21,21
42:3 63:1 97:2
195:2 304:13
**wrongdoing**
190:7 270:17
**wrongfully**
304:14
**wrote** 34:4
178:21 193:24
243:9 275:11
338:16 339:9
339:15
**W-2** 321:11

---
**X**
---
**X** 138:22
139:16 142:21

---
**Y**
---
**Y** 121:8 179:23
**yeah** 34:21
34:21,21,22
38:2,15 39:6
48:13 52:17
56:22 61:11
61:11 63:22
64:20 79:2,2,3
79:10 113:10
120:24 123:1
123:19 125:19
126:1 128:21
130:25,25
133:9 136:1
137:19 146:7
146:8 152:7,8
154:12 156:21
157:1,8,12,13
159:7,7,12
162:14 164:2
164:2,3,3,13



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY
1.800.694.4787  www.cefgroup.com  fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

164:17 166:25
167:6 170:7
174:9,9,22
175:22 178:23
179:4,18,25
180:22,23
181:19,20,21
185:19 186:11
188:21 189:23
192:15,17
193:10,10,24
200:11 201:13
201:20,25
205:13 209:10
212:2 214:25
216:6 218:20
218:24 223:12
223:18 224:19
225:25 226:2
226:5,8,21
228:1,14,14
230:12 237:15
237:19 239:9
239:20 241:21
242:15 250:24
255:12 257:21
269:2,13
272:5,17
273:6,13
275:6 276:16
276:23 279:19
280:13 281:12
284:18 288:14
289:6 292:2
297:14 298:21
298:24 302:1
302:10 303:12
304:3 305:6
305:12 306:6
306:16 308:18
308:25 309:10
309:21 311:22
313:5 314:3
314:25 316:5
316:9,12,12

318:13,16,19
320:12 321:10
327:17 329:20
330:2,6,25
331:11 333:5
335:11,14
336:18 339:4
339:4,4,7,11
340:25
**year** 149:20
150:5,8 152:5
199:6 206:8
206:18 207:8
207:16 217:9
217:13 231:24
236:21 237:20
318:23 319:3
319:7 321:9
321:25 325:12
330:20
**years** 120:6
279:18 308:2
308:3,11
312:25 313:7
313:8,11,14
313:18
**yelled** 230:1
**Youngstown**
25:16 35:20
46:17 47:8
51:1 54:5 71:6
71:13 72:5,11
72:22 73:9,23
74:2,19 77:14
83:19 85:3,10
119:8,14
132:20 133:3
133:13,22
134:2 136:5
152:19 190:11
239:25

**Z**

**Z** 31:24 32:8

**$**

**$1.15** 112:8
**$14,000** 305:25
**$35** 260:14
**$40** 257:19
259:4
**$40.25** 261:13
**$7,000** 305:20
305:21

**0**

**01** 302:16
**05** 292:22
294:11
**06** 278:10
**07** 132:5,9
158:7 162:17
171:19,21,24
174:25 319:24
**08** 175:1 177:1
177:17 178:1
178:5 180:9
180:24 278:11
319:25 320:3
320:4
**09** 81:7 133:20
133:21,25
134:1,9 181:1
182:18,22,25
183:5,16,21
184:10,13,19
184:23 185:10
185:23 186:8
186:10 187:7
187:14,22
188:7,11
195:19,24
196:8,12
221:8,13
261:19 320:5
320:8,9,10,11
331:5 337:12
342:20

**1**

1 7:18 44:11,11
45:16,16 77:7
130:15,16,17
132:13 137:4
137:4,6 140:1
141:14 144:1
150:23 153:14
153:16,18
155:9 224:14
236:3 253:19
260:6 268:3
274:25 290:3
338:2,3
**1st** 7:25 8:11
98:15,25 99:4
130:23 139:7
139:9 151:7
179:21 241:14
258:22 259:23
265:12 267:17
267:21 279:3
**1)in** 274:4
**1-2** 45:21
**10** 65:10 66:20
67:11 74:11
74:15 75:10
75:16,19,23
76:7 77:17
153:23 156:2
157:17,21
**10th** 233:25
241:4 258:6
261:1
**10-15-10**
115:20 117:9
**1099** 321:12
11 17:21 28:22
34:2,8,12,16
34:20 35:1
37:5,9 38:4,11
38:23 40:4
42:10,14 52:3
52:8 70:18
72:6,11 73:5,9
73:24 74:3,15

74:20 75:7,14
76:6 77:1,25
78:6,10 79:5
79:15 175:24
190:24 316:4
316:8,10
**11th** 26:7,19
28:1,5 32:14
65:15 68:4
72:23 77:14
78:4 132:21
133:1,15
134:7 315:20
315:24
**11(c)** 81:12
82:16
**11-17-2010**
252:24
**118** 193:10
**11823** 91:9,17
91:21,25 95:5
193:9,23
197:3,20
203:10 235:12
**11824** 224:25
226:10
**12** 51:19 52:12
53:15,21
62:20 63:4,21
63:23 64:3
71:7 80:6,16
96:8 99:20
113:4 181:14
**12th** 51:6 68:5
70:14,21
112:1
**12010** 256:20
**13** 83:12 90:2,4
96:4 149:16
149:25 157:18
157:23
**13th** 226:12
239:23
**131** 2:14
**137** 161:2



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787   www.cefgroup.com   fax:216.687.0973
**Cleveland:** 4608 St Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
**Akron:** One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

**Court Reporting • Video Conferencing • Legal Video Production • Investigations**
**Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics**

**14** 98:10 99:24
116:4 143:22
155:10 198:9
198:15,20
199:2 203:25
205:7,24
206:5 207:7
208:22 209:18
209:23 211:25
230:6,10
240:19 249:6
**14th** 102:20
105:6 176:3
196:25 198:3
230:15 231:2
**140** 165:1
**143** 164:25
165:2
**15** 107:14 108:6
109:15,24
110:5,13
131:15 217:15
217:21 218:2
218:14,19
219:10,24
221:19 223:15
228:20,25
229:1,9
235:13 236:8
236:14 238:15
238:16 240:14
333:12,15
337:3,8
338:11
**15th** 107:1,21
139:9 228:11
262:22 331:20
342:20
**151** 2:6
**16** 135:17,21
150:15,22
156:13 245:8
259:20 291:14
**16th** 65:17
**1642** 301:13

**17** 44:4 83:17
86:11 152:15
243:18 250:5
250:6
**17th** 83:14,25
84:2 86:4,20
87:21 88:12
88:17 90:1
96:18,23
273:24 275:12
**18** 189:10
192:21 257:7
258:3,20
**18th** 128:12
186:22 189:16
191:23 192:8
192:25 233:1
253:24
**19** 211:11
243:21 259:16
302:25 303:22
**19th** 241:7
**1900** 1:22
**1980's** 112:24
**1989** 312:13
**1990** 311:5
**1996** 295:12
**1999** 151:8

——— 2 ———

**2** 8:20 44:4
132:14 138:22
274:5 287:17
288:4 290:3
322:3,4
327:19 338:2
338:3 339:8
**2nd** 225:23
242:10 253:23
254:3 265:5
267:14,18,23
**2,000** 151:20
152:4
**2-Step** 141:13
**20** 96:12 132:5

224:19 260:23
263:8 308:3
308:11
**20th** 76:16 77:9
79:23 80:18
81:5 85:2,9
95:11 96:16
97:5,22 98:1
325:15
**2000** 190:24
303:1,22
**2005** 289:5
291:14,16
**2006** 45:24
136:9 145:8
154:2 279:5
279:14,22
293:17
**2006-2010**
153:10
**2007** 13:13
26:10,11
37:18 40:16
41:20 42:4,4
131:18,21
132:1 162:10
162:13 167:23
173:11,14,20
192:16 212:22
319:10,23
320:22
**2008** 42:4,5
43:14 44:2
61:14 68:19
171:6 175:24
176:3 177:22
178:16 179:9
179:14,21,24
180:3 279:3
319:15 320:2
321:9,12,13
322:21
**2009** 72:1,13
134:3 181:11
181:14 185:13

186:22,25
188:1 189:10
189:16 191:23
192:8,22
193:1 249:3
279:1,2
315:16 319:19
321:25
**2010** 26:7,20
28:1,5,22
32:15 34:2,8
34:12,16,20
35:1 37:6,9
38:4,11,24
40:5 42:11,15
51:6,19 52:3,8
52:12 53:15
53:22 62:20
63:4,21,23
64:3 65:15,17
68:4,5 70:14
70:18,21 71:8
71:14,23 72:6
72:12,23 73:6
73:9,24 74:3
74:15,20 75:7
75:14 76:6,12
76:16 77:9,14
78:4,11 79:5
79:15,23
80:18 81:5
83:14,17,25
84:2 85:2,9,18
86:11,21
87:11,19,21
88:10,13 90:1
90:19 91:16
91:20,24 95:5
95:11 96:12
96:16,18,23
97:6,23 98:2
98:15,20,25
99:2,4,20
102:21 103:8
104:1,9 105:6

105:16 106:2
106:19 107:1
107:14,21
108:6 109:15
109:24 110:5
110:13 111:14
111:19 112:1
113:4,14,20
116:4 117:6
117:13,18
132:21 133:1
133:15,16
134:7,22
135:8 136:9
145:8 152:20
153:1,8 154:1
154:2 190:25
195:9 196:25
198:9,15,20
199:2 203:25
205:7,24
206:5,20
207:7,18
209:18,23
212:1,12
217:15,21
218:2,14,19
219:10,24
220:18 221:9
221:14,19
223:10,15
224:24 225:10
225:12,23
226:12 228:11
228:20,25
229:1,9 230:5
230:6,10,11
233:1,25
235:12,18
236:14 238:2
239:23 240:11
240:15 241:4
241:14 242:16
243:4,10,18
243:21,23



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787    www.cefgroup.com    fax:216.687.0973
**Cleveland:** 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
**Akron:** One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

**Court Reporting • Video Conferencing • Legal Video Production • Investigations**
**Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics**

249:6 250:5,6
251:2,9
252:22 253:20
253:23 254:3
255:15 256:5
256:10,16
257:1 258:6
258:23,23
259:7,20
261:20 262:11
263:4,19
264:18 265:5
267:14,21,23
267:24 273:24
315:21,24
316:4,8,11
325:15 327:7
327:11,16
328:21 330:15
331:20 333:12
333:15 337:3
337:8 342:21
**2010-2013**
154:17 155:8
**2011** 1:18 7:25
8:11 14:1,16
14:21 128:12
129:20 130:4
130:23 190:24
193:7 242:14
252:11,15
257:7 259:23
259:24 260:6
260:7 261:1
263:9 264:24
264:25 265:3
265:12,19
266:6,24
267:4 271:7
318:18 346:7
**2013** 152:21
153:2,9 154:1
346:18
**21** 186:25 211:6
224:10,15

240:21,24
271:3 298:20
299:1
**21st** 72:1,13
81:7 133:20
133:25 186:10
206:20 207:18
220:17 223:9
224:24 225:10
234:23 235:3
238:2 241:23
251:9 261:19
262:11
**22** 271:15
346:18
**23** 78:25 193:11
272:24 273:15
**23rd** 98:20,22
99:2 129:20
242:16 267:24
271:6
**24** 277:22 278:4
280:6,10
286:16 289:5
**24th** 242:16
**2400** 2:15
**25** 78:25 159:20
160:5,8,19
283:3,4,7
**25th** 14:16,21
111:14,18
162:10,13,14
252:22
**26** 45:24 91:20
91:24 167:17
167:20 327:6
327:11,16
**26th** 85:18 86:2
86:9 87:11,19
88:10 90:19
162:15 195:8
279:5,14,21
292:21
**27** 175:20
**27th** 45:23

131:18 132:9
162:15 279:5
**28** 136:9 178:14
346:4
**28th** 162:15
**282** 302:16
**285** 153:13
**29** 136:8 152:20
152:21 153:1
153:2 167:22
181:9
**29th** 130:4
264:18,24
**291** 153:22,22
154:8
**293** 155:7
**294** 155:25
157:19

_____
**3**
**3** 9:23 138:3
139:17 140:1
153:14 287:19
287:25 288:1
288:1,2,3
290:4,6
328:18 329:2
331:10 332:5
332:12,17,22
333:3 338:2,3
**3rd** 13:13 14:1
171:6 185:10
**30** 45:24 81:23
139:11 144:12
144:18 145:6
185:8 211:6
224:10,16,19
235:12 240:11
251:2 291:16
**30th** 91:16 95:5
139:8 193:5
230:5,10
235:18
**31** 186:18 189:2
189:9 191:24

260:7
**31st** 133:21
134:1,3
178:16 179:9
179:24 192:17
258:23 259:24
**32** 193:21
**3200** 1:21
**33** 10:20 197:12
217:1 225:3
230:4,8 236:2
237:14 251:1
251:7
**330)393-1584**
2:9
**34** 205:1 208:19
209:9
**35** 209:11,15,21
211:4,19
224:9,15
**36** 225:21
238:15 280:24
**37** 227:12
238:16,18
**377** 42:6 43:17
45:18 136:8
136:14,20
152:19 178:17
179:2 183:9
183:10 197:16
225:23 240:1
**38** 228:9 229:11
231:7,8
232:13 238:22
**39** 232:24
238:21
**39.25** 258:24
_____
**4**
**4** 11:11 12:12
12:21 15:6
52:21 139:6
142:5,8

**312)460-5000**
2:17

151:11 153:23
153:24 154:8
287:17 288:5
290:4 293:17
302:25 303:17
337:24 338:17
**4:00** 36:2,6,8,16
36:16,22
158:14
**4:11-CV-0014...**
1:9
**40** 79:1,9,11
233:23 235:25
237:5 239:7
245:23 246:8
251:12 252:4
252:6,17
253:7 318:22
319:2,5
340:10
**41** 239:19 242:3
245:23 246:8
251:6,22
252:2,4,7,17
253:8 280:24
**4143** 310:23
**42** 13:20 251:22
252:2 280:20
281:5
**4270** 2:7
**43** 286:5,14
**44** 128:4 287:2
**44114** 1:23
**44482** 2:8
**44484** 310:24
**45** 291:9
**46** 293:15
**47** 301:10
**48** 302:13
**49** 226:15 318:8
**4956** 226:17,18
238:18
**4959** 226:15
**4982** 226:15
**499** 301:13



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY
1.800.694.4787    www.cefgroup.com    fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 • 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 • 330.253.8119

Court Reporting • Video Conferencing • Legal Video Production • Investigations
Claims Services • Process Service • Record Retrieval • Document Management • Trial Graphics

**5**
5 13:8,11 65:13
 301:22
5th 44:2 241:1
 318:18
50 320:19
51 321:6
52 318:22 319:2
 319:6 321:22
56 136:24
59 136:25

**6**
6 1:18 14:11,19
 43:14 65:13
 68:19
6-21st-2010
 213:15
6-21-2010
 213:25 214:5
 214:16,24
 215:8
6-21-210
 213:18
60's 120:18
60603 2:16
63 141:5,8,9
65 142:4
67 142:20 154:6
 154:11
69 143:21
 155:21

**7**
7 13:20 43:12
 52:25 68:18
 141:11 155:25
 156:1,3,11,25
 339:9
7-Up 1:10
 100:21,23
 101:8 152:19
 274:2
7-20-72 307:13
7-21st-2003

213:15
70 148:5 156:7
 156:18 245:9
70's 120:18
71 148:23
 149:17 157:20
72 150:14,19,20
73 151:11
77 136:24

**8**
8 59:25 61:14
 61:21 142:20
 154:11
8th 185:12
8(a)(3) 274:4,12
80's 112:24
800 253:15
82 175:7
8290 175:8
8291 171:3
85 114:25 314:5
89 311:6

**9**
9 62:9 63:19
 64:1 67:12
 111:24 148:6
 156:4,9
 245:10,12
9th 1:22 181:11
 263:11,19
9-14 237:4
9-14-2010
 107:17 110:15
 113:23 114:5
 114:12,13
 115:11 202:5
 212:11 222:15
 227:24 229:14
 229:17 255:22
9-21 231:25
9-21st-2010
 206:10 220:5
 232:3

9-21-2010
 220:8
9-30 230:17
 231:4,16
9-30-2010
 197:19 247:15
9:00 36:3
9:15 1:18
90 112:12 138:7
 138:16 170:25
 171:22
90's 112:25
93 306:23 307:3



**Cefaratti Group**
THE LITIGATION SUPPORT COMPANY

1.800.694.4787    www.cefgroup.com    fax:216.687.0973
Cleveland: 4608 St. Clair Avenue, Cleveland, Ohio 44103 · 216.696.1161
Akron: One Cascade Plaza, Suite 905, Akron, Ohio 44308 · 330.253.8119

Court Reporting · Video Conferencing · Legal Video Production · Investigations
Claims Services · Process Service · Record Retrieval · Document Management · Trial Graphics



EXHIBIT F

# Robert Potts

4143 Jeanette Drive
Warren, Ohio 44484
(330) 856-6103

October 15, 2010

Dr. Pepper Snapple Group
*Attn: MICHAEL BOBAL*
14301 Industrial Avenue North
Maple Heights, Ohio 44137

### RE:     *Permanent Layoffs*

Dear Michael:

As you know, I have been provided with pertinent information regarding a notice of a permanent layoff effective 10/15/2010.

As such, at this time, I hereby respectfully make a request for confirmation of my rank on the plant wide seniority list or Company records. I remember or recall about six or seven employees having less seniority than me on the Company's plant wide seniority list, and any cause and effect of the permanent layoff would, most logically result in retroactively returning me to my warehouse position with all seniority rights, benefits, and union privileges by way of applying plant wide seniority for purpose of a permanent layoff, as length of service shall be any determining factor.

WHEREFORE, I await any response regarding this matter.

Sincerely,

Robert Potts

EXHIBIT



**EXHIBIT G**

PLAINTIFF'S EXHIBIT

DR PEPPER SNAPPLE GROUP

14301 Industrial Avenue North
Maple Heights, OH 44137

November 10, 2010

**VIA CERTIFIED/REGISTERED MAIL**

Robert Potts
4143 Jeanette Dr.
Warren, Oh 44484

Dear Mr. Potts,

As of the writing of this letter neither the Company nor your Union (Local 377) has heard your decision regarding the job offer to be a Merchandiser. This offer coincides with your contractual rights with respect to your permanent layoff as a Warehouse Worker.

The grievance answer on grievance #11823 sent to you September 30, 2010 gave you the fifteen (15) day review period to answer us if you wished the available Merchandiser job. It was noted in that same answer that your layoff would be considered permanent effective October 15, 2010.

In a separate meeting with Local 377 on October 21, that we had expected you to attend, your Union notified us (on the day of the meeting) that you were unavailable. The Company, after being told that you wouldn't be available until after October 26, granted an extension through November 5 for you to make a decision on the Merchandiser job opportunity. Still no decision has been communicated back to either the Company or the Union.

This letter spells out your last chance to accept or reject the job offer to be a Merchandiser for our Company. If you wish to accept the offer, you need to contact your Union representatives before the end of business on November 19, 2010. They will in turn contact the Company so the necessary final steps confirming your ability to do the job can be completed.

If you reject this job offer (or fail to respond to the job offer), the Company will terminate your employment, effective November 25, 2010 in accordance with Article 14 (Seniority) section 7, point D of our Collective Bargaining Agreement.

Questions about this letter, and/or your decision to return can be directed to your Union.

Sincerely,

*Michael L Bobal*

Michael L. Bobal
Associate HR Manager

Cc:    Jeff Karla, Regional HR Director
       Joel LaMantia, Youngstown Branch Mgr
       Teamsters Local 377

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

ROBERT A. POTTS        ) CASE NO. 4:11-CV-0149-KSM
                       ) JUDGE KENNETH A. McHARGH
                       )
        Plaintiff      )    DEPOSITION OF
vs.                    )    MICHAEL BOBAL
                       )
AMERICAN BOTTLING CO.  )
dba DR. PEPPER         )
SNAPPLE GROUP, aka     )
DR. PEPPER/SEVEN UP,   )
INC., fka CADBURY      )
SCHWEPPES BOTTLING     )
GROUP, INC.            )
                       )
        Defendants     )


        Deposition taken before me, Debbra S.

Sabat, Notary Public within and for the State

of Ohio, on the 29th day of July, 2011, at

10:00 AM, pursuant to agreement between

counsel, taken at the law office of Attorney

Michael D. Rossi, Guarnieri & Secrest, 151 East

Market Street, Warren, Ohio 44481, to be used

in accordance with the Federal Rules of Civil

Procedure or the agreement of the parties in

the aforesaid cause of action pending in the

United States District Court for the Northern

District of Ohio, Eastern Division.

```
 1                    P R O C E E D I N G S

 2                        MICHAEL BOBAL

 3      having been duly sworn according to law, on his

 4      oath, testified as follows:

 5                      CROSS EXAMINATION

 6      BY MR. ROSSI

 7      Q.   Your name and address, please?

 8      A.   Michael Lawrence Bobal, my address, 5800

 9               Laurent Drive, Apartment 610, Parma

10               Ohio, 44129.

11      Q.   5800 Laurent?

12      A.   L-A-U-R-E-N-T.

13      Q.   Date of birth?

14

15      Q.   Are you from the Cleveland area?

16      A.   I am.

17      Q.   Did you graduate high school in Cleveland?

18      A.   Yes, I did.

19      Q.   Which high school?

20      A.   Cleveland St. Ignatius.

21      Q.   What year?

22      A.   '88.

23      Q.   Did you attend college?

24      A.   I did.

25      Q.   Where?
```

1   Q.  You chose to do that once in a while?
2          MS. BENTLEY: Objection.
3   Q.  As he probably did?
4          MS. BENTLEY: Objection to form.
5   A.  Uh-huh.
6   Q.  That's a yes?
7   A.  I would say yes.
8   Q.  Where did you get that sandbox business?
9          That's a good one. I'll have to
10         remember that.
11         If we recall one of the
12         exhibits, which would be a notice
13         from OSHA, and if that were dated
14         August 20, 2010; setting apart
15         Mr. Potts, did you become aware of
16         any safety violations or safety
17         accusations, allegations regarding
18         the tow motors prior to that date?
19         MS. BENTLEY: Objection to the
20  form of the question and overbroad.
21  A.  I don't recall being made aware of any
22      allegations of safety issues outside
23      of the OSHA regulations. To expand
24      further, any time there would be, if
25      I became aware of anything, I would

1       contact Derrick Bogaard in our
2       environmental health and safety
3       department and I would contact our
4       fleet manager.
5   Q.  Exhibit D.
6   A.  Okay.
7   Q.  Can you identify that for us, please?
8   A.  That is an e-mail I sent to Justin Averell
9       over at Local 377 copying Jeff Karla,
10      Gib Tecca, and Joel Lamantia.
11  Q.  Karla, Tecca and Lamantia, what do these
12      fellows have in common that would
13      cause you to copy them in?
14         MS. BENTLEY: Objection to form
15  of the question. Assumes facts. Go ahead.
16  A.  They would have positions of either
17      management related to the Youngstown
18      branch or oversight of that branch or
19      from an HR capacity.
20  Q.  Who is Jeff Karla?
21  A.  Jeff Karla was my boss at that point. He
22      has since retired.
23  Q.  Who is Gib Tecca?
24  A.  Gib Tecca, area director, manager within
25      the company.

1   Q.  Joel Lamantia?
2   A.  At that point Joel Lamantia was becoming
3       the branch manager of the Youngstown
4       branch.
5   Q.  You state under the first bullet: "This
6       extension stems from the cooperative
7       nature we have shared on various
8       other issues over the past few
9       months." What are those other
10      issues?
11  A.  The first issue that comes to my mind is
12      the contract negotiation and
13      resolution of a new contract in early
14      2010. I want to say after that there
15      was another issue that had come up
16      dealing with -- I want to say dealing
17      with the setup of merchandising
18      routes that were being discussed at
19      the contract negotiation. And I
20      think the last item was dealing with
21      a driver related issue, as someone
22      was off on disability and we were
23      trying to get information to figure
24      out what was going to be happening.
25  Q.  Take a look at E. We'll talk about E and

1       F together. Do you know whether
2       either of these -- well, first of
3       all, can you tell me what they are?
4       What are these E and F?
5   A.  These are letters that I wrote to
6       Mr. Potts first in November and then
7       again in December.
8   Q.  What's the import of each?
9          MS. BENTLEY: Objection to form.
10  Go ahead.
11  A.  I would need a moment to review each
12      one --
13  Q.  Sure.
14  A.  -- so I can speak to the import of that
15      letter.
16  (OFF THE RECORD)
17  Q.  Have you familiarized yourself with E and
18      F yet?
19  A.  I have.
20  Q.  What are they?
21  A.  These are letters that I authored to
22      Mr. Potts. E is a letter that I
23      authored in November of 2010,
24      basically still trying to get an
25      answer from the letter of

Page 58

1           September 30. And F is a letter in
2           December basically stating, hey,
3           since we haven't heard from you, this
4           is the company's position.
5       Q.  The November letter says via
6           certified/registered mail, and
7           December it says via certified mail.
8           Am I to read anything into that?
9       A.  I think we wanted to try to send -- I
10          think we sent the November letter
11          registered, as we were attempting to
12          make sure that he got it. There had
13          been some other items that were sent
14          that came back non-claimed, not
15          opened, and we were trying to do
16          everything we could from our power to
17          get the item communicated.
18      Q.  If you were doing everything in your power
19          to get the item communicated,
20          wouldn't you send it out ordinary
21          mail when these came back?
22      A.  I believe we actually sent both ordinary
23          and --
24      Q.  Do you really?
25              MS. BENTLEY: You have to say

Page 59

1       yes or no.
2       A.  Yes, I have done that before. I want to
3           say I did that with Mr. Potts.
4       Q.  What do you understand registered mail to
5           mean?
6       A.  Actually I had a little bit of learning
7           experience in the case with
8           registered. We were trying to track
9           the letter to see where it was at.
10          Mistakenly we thought with registered
11          we would be able to get a day by day
12          update as to where it stood, but it's
13          not the case.
14      Q.  Is that why we abandoned it in December?
15      A.  Pretty much.
16      (OFF THE RECORD)
17      Q.  The occasion of the September 14 meeting,
18          do you recall declining to shake his
19          hand?
20      A.  I do.
21      Q.  Do you recall saying something in
22          connection with that declination?
23              MS. BENTLEY: Objection to form
24          and relevance. Go ahead.
25      A.  I recall a number of different things that

Page 60

1           were said during that meeting. Is
2           there something in particular?
3       Q.  Yeah, when you declined to shake his hand.
4           I'm not interested in the whole
5           meeting.
6               MS. BENTLEY: Objection to form
7           and relevance.
8       A.  I think I made a comment there about a
9           harassment claim that was filed
10          against Mr. Potts, or a comment of I
11          feel like I'm being harassed by this
12          person.
13      Q.  What did you say?
14      A.  I said something along the lines of
15          dealing with a harassment claim
16          because of you.
17      Q.  Which harassment claim?
18      A.  There was an individual in the office that
19          did not want to, for lack of a better
20          term, deal with Mr. Potts anymore
21          because she was feeling harassed. I
22          investigated, went through -- I did
23          not need to talk to Mr. Potts because
24          their interaction was so limited,
25          didn't need to do anything further.

Page 61

1       There was no formal charge brought
2       against him. The fact that I had to
3       deal with something is annoying
4       enough when you have 450 people that
5       you are trying to work with.
6               MR. ROSSI: That's all I have.
7       Thank you.
8               MS. BENTLEY: No questions.
9       We'll review and sign.
10      (WHEREUPON THE DEPOSITION OF MICHAEL BOBAL WAS
11      CONCLUDED AT APPROXIMATELY 12:00 PM AND IT WAS
12      AGREED BY AND BETWEEN COUNSEL AND THE PARTIES
13      THAT THE DEPONENT WILL READ AND SIGN THE
14      TRANSCRIPT OF SAID DEPOSITION)
15
16
17
18
19
20
21
22
23
24
25

# EXHIBIT H



# Robert Potts

*Mailing Address*
**4143 Jeanette Drive**
**Warren, Ohio 44484**

*Telephone Contact* **(330) 856-6103**

John Lesicko
And
Local Executive Board
c/o Recording Secretary
TEAMSTERS LOCAL 377
1223 Teamster Drive
Youngstown, Ohio 44502

John Lesicko/Local Executive Board:

I hereby timely file charges against Business Representative Justin Averell pursuant to section 1 (a),(b) of Article XIX, Trials and Appeals, of the IBT Constitution adopted by the 27th International Convention on June 26-30, 2006 for violations subject to discipline under the Constitution or Bylaws of the Union.

As cause, Justin Averell violated his oath of office by failing to perform his duties as a Business Representative, failing to act solely in the interest of this grievant, and refusing to protect my interest in all dealings with my Employer by way of refusing to process my grievance # 11824 and refusing to withdraw my defective grievance # 11823 as promised in his correspondence dated 10/12/2010, served via USPS Certified Mail Article # 7010-0290-0003-6116-9733; defer to attached copies as exhibited.

In conclusion, Justin Averell breached his oath of office.

Respectfully submitted,

**Signed** _____   **Dated** 10/22/2010

# EXHIBIT I



PLAINTIFF'S EXHIBIT E



U.S. Postal Service
CERTIFIED MAIL RECEIPT
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com

**OFFICIAL USE**

| | |
|---|---|
| Postage | $ 44 |
| Certified Fee | 2.80 |
| Return Receipt Fee (Endorsement Required) | 2.30 |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ 5.54 |

Postmark Here

Sent To Robert Potts

Street, Apt. No.; or PO Box No. 4143 Jeanette Dr

City, State, ZIP+4 Warren, OH 44484

December 13, 2010

**VIA CERTIFIED MAIL**

Robert Potts
4143 Jeanette Dr.
Warren, Oh 44484

Dear Mr. Potts,

As you know, on September 30, 2010, the Company made you a written job offer for a Merchandiser position in our Youngstown facility. At that time, the Company requested you to indicate your acceptance of this job offer by October 15, 2010, otherwise the Company would need to terminate your employment. You did not respond to the Company's September 30, 2010 job offer.

Instead of terminating your employment at that time, on October 14 the Company gave you additional time to accept the job offer and arranged a meeting for October 21, 2010 to discuss this matter with you in the presence of your Union (Local 377). You did not attend this meeting. Thus, on October 21, the Company again extended the time until November 5, 2010 for you to consider accepting the Company's job offer. Again, you failed to respond. However, the Company did not terminate your employment at that time.

On November 10, 2010, the Company sent additional correspondence to you providing yet another opportunity to consider and accept the Company's job offer. At that time, the Company also notified you that your failure to do so by November 19, 2010 would result in the termination of your employment. Additionally Regional HR Director, Jeff Karla, tried to reach you by telephone on multiple occasions before the final November 19 deadline. Again, you failed to respond to the Company's job offer.

Due to your continued lack of response and consistent with the Company's September 30, October 14 and October 21, and November 10, 2010 correspondence, the Company has terminated your employment, effective December 1, 2010 in accordance with Article 14 (Seniority) section 7, point D of our Collective Bargaining Agreement.

We wish you well in your next endeavor.

Sincerely,

Michael L Bobal

Michael L. Bobal
Associate HR Manager

Cc: Jeff Karla, Regional HR Director
Joel LaMantia, Youngstown Branch Mgr
Teamsters Local 377

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


ROBERT A. POTTS          ) CASE NO. 4:11-CV-0149-KSM
                         ) JUDGE KENNETH A. McHARGH
                         )
        Plaintiff        )    DEPOSITION OF
vs.                      )    MICHAEL BOBAL
                         )
AMERICAN BOTTLING CO.)
dba DR. PEPPER
SNAPPLE GROUP, aka       )
DR. PEPPER/SEVEN UP,     )
INC., fka CADBURY        )
SCHWEPPES BOTTLING       )
GROUP, INC.              )
                         )
        Defendants       )


        Deposition taken before me, Debbra S.

Sabat, Notary Public within and for the State

of Ohio, on the 29th day of July, 2011, at

10:00 AM, pursuant to agreement between

counsel, taken at the law office of Attorney

Michael D. Rossi, Guarnieri & Secrest, 151 East

Market Street, Warren, Ohio 44481, to be used

in accordance with the Federal Rules of Civil

Procedure or the agreement of the parties in

the aforesaid cause of action pending in the

United States District Court for the Northern

District of Ohio, Eastern Division.

```
 1              P R O C E E D I N G S
 2                   MICHAEL BOBAL
 3    having been duly sworn according to law, on his
 4    oath, testified as follows:
 5                   CROSS EXAMINATION
 6    BY MR. ROSSI
 7    Q.   Your name and address, please?
 8    A.   Michael Lawrence Bobal, my address, 5800
 9              Laurent Drive, Apartment 610, Parma
10              Ohio, 44129.
11    Q.   5800 Laurent?
12    A.   L-A-U-R-E-N-T.
13    Q.   Date of birth?
14
15    Q.   Are you from the Cleveland area?
16    A.   I am.
17    Q.   Did you graduate high school in Cleveland?
18    A.   Yes, I did.
19    Q.   Which high school?
20    A.   Cleveland St. Ignatius.
21    Q.   What year?
22    A.   '88.
23    Q.   Did you attend college?
24    A.   I did.
25    Q.   Where?
```

Page 54

1  Q. You chose to do that once in a while?
2        MS. BENTLEY: Objection.
3  Q. As he probably did?
4        MS. BENTLEY: Objection to form.
5  A. Uh-huh.
6  Q. That's a yes?
7  A. I would say yes.
8  Q. Where did you get that sandbox business?
9        That's a good one. I'll have to
10       remember that.
11       If we recall one of the
12       exhibits, which would be a notice
13       from OSHA, and if that were dated
14       August 20, 2010; setting apart
15       Mr. Potts, did you become aware of
16       any safety violations or safety
17       accusations, allegations regarding
18       the tow motors prior to that date?
19       MS. BENTLEY: Objection to the
20  form of the question and overbroad.
21  A. I don't recall being made aware of any
22       allegations of safety issues outside
23       of the OSHA regulations. To expand
24       further, any time there would be, if
25       I became aware of anything, I would

Page 55

1        contact Derrick Bogaard in our
2        environmental health and safety
3        department and I would contact our
4        fleet manager.
5  Q. Exhibit D.
6  A. Okay.
7  Q. Can you identify that for us, please?
8  A. That is an e-mail I sent to Justin Averell
9        over at Local 377 copying Jeff Karla,
10       Gib Tecca, and Joel Lamantia.
11  Q. Karla, Tecca and Lamantia, what do these
12       fellows have in common that would
13       cause you to copy them in?
14       MS. BENTLEY: Objection to form
15  of the question. Assumes facts. Go ahead.
16  A. They would have positions of either
17       management related to the Youngstown
18       branch or oversight of that branch or
19       from an HR capacity.
20  Q. Who is Jeff Karla?
21  A. Jeff Karla was my boss at that point. He
22       has since retired.
23  Q. Who is Gib Tecca?
24  A. Gib Tecca, area director, manager within
25       the company.

Page 56

1  Q. Joel Lamantia?
2  A. At that point Joel Lamantia was becoming
3        the branch manager of the Youngstown
4        branch.
5  Q. You state under the first bullet: "This
6        extension stems from the cooperative
7        nature we have shared on various
8        other issues over the past few
9        months." What are those other
10       issues?
11  A. The first issue that comes to my mind is
12       the contract negotiation and
13       resolution of a new contract in early
14       2010. I want to say after that there
15       was another issue that had come up
16       dealing with -- I want to say dealing
17       with the setup of merchandising
18       routes that were being discussed at
19       the contract negotiation. And I
20       think the last item was dealing with
21       a driver related issue, as someone
22       was off on disability and we were
23       trying to get information to figure
24       out what was going to be happening.
25  Q. Take a look at E. We'll talk about E and

Page 57

1        F together. Do you know whether
2        either of these -- well, first of
3        all, can you tell me what they are?
4        What are these E and F?
5  A. These are letters that I wrote to
6        Mr. Potts first in November and then
7        again in December.
8  Q. What's the import of each?
9        MS. BENTLEY: Objection to form.
10  Go ahead.
11  A. I would need a moment to review each
12       one --
13  Q. Sure.
14  A. -- so I can speak to the import of that
15       letter.
16  (OFF THE RECORD)
17  Q. Have you familiarized yourself with E and
18       F yet?
19  A. I have.
20  Q. What are they?
21  A. These are letters that I authored to
22       Mr. Potts. E is a letter that I
23       authored in November of 2010,
24       basically still trying to get an
25       answer from the letter of

| | Page 58 |
|---|---|
| 1 | September 30. And F is a letter in |
| 2 | December basically stating, hey, |
| 3 | since we haven't heard from you, this |
| 4 | is the company's position. |
| 5 | Q. The November letter says via |
| 6 | certified/registered mail, and |
| 7 | December it says via certified mail. |
| 8 | Am I to read anything into that? |
| 9 | A. I think we wanted to try to send -- I |
| 10 | think we sent the November letter |
| 11 | registered, as we were attempting to |
| 12 | make sure that he got it. There had |
| 13 | been some other items that were sent |
| 14 | that came back non-claimed, not |
| 15 | opened, and we were trying to do |
| 16 | everything we could from our power to |
| 17 | get the item communicated. |
| 18 | Q. If you were doing everything in your power |
| 19 | to get the item communicated, |
| 20 | wouldn't you send it out ordinary |
| 21 | mail when these came back? |
| 22 | A. I believe we actually sent both ordinary |
| 23 | and -- |
| 24 | Q. Do you really? |
| 25 | MS. BENTLEY: You have to say |

| | Page 59 |
|---|---|
| 1 | yes or no. |
| 2 | A. Yes, I have done that before. I want to |
| 3 | say I did that with Mr. Potts. |
| 4 | Q. What do you understand registered mail to |
| 5 | mean? |
| 6 | A. Actually I had a little bit of learning |
| 7 | experience in the case with |
| 8 | registered. We were trying to track |
| 9 | the letter to see where it was at. |
| 10 | Mistakenly we thought with registered |
| 11 | we would be able to get a day by day |
| 12 | update as to where it stood, but it's |
| 13 | not the case. |
| 14 | Q. Is that why we abandoned it in December? |
| 15 | A. Pretty much. |
| 16 | (OFF THE RECORD) |
| 17 | Q. The occasion of the September 14 meeting, |
| 18 | do you recall declining to shake his |
| 19 | hand? |
| 20 | A. I do. |
| 21 | Q. Do you recall saying something in |
| 22 | connection with that declination? |
| 23 | MS. BENTLEY: Objection to form |
| 24 | and relevance. Go ahead. |
| 25 | A. I recall a number of different things that |

| | Page 60 |
|---|---|
| 1 | were said during that meeting. Is |
| 2 | there something in particular? |
| 3 | Q. Yeah, when you declined to shake his hand. |
| 4 | I'm not interested in the whole |
| 5 | meeting. |
| 6 | MS. BENTLEY: Objection to form |
| 7 | and relevance. |
| 8 | A. I think I made a comment there about a |
| 9 | harassment claim that was filed |
| 10 | against Mr. Potts, or a comment of I |
| 11 | feel like I'm being harassed by this |
| 12 | person. |
| 13 | Q. What did you say? |
| 14 | A. I said something along the lines of |
| 15 | dealing with a harassment claim |
| 16 | because of you. |
| 17 | Q. Which harassment claim? |
| 18 | A. There was an individual in the office that |
| 19 | did not want to, for lack of a better |
| 20 | term, deal with Mr. Potts anymore |
| 21 | because she was feeling harassed. I |
| 22 | investigated, went through -- I did |
| 23 | not need to talk to Mr. Potts because |
| 24 | their interaction was so limited, |
| 25 | didn't need to do anything further. |

| | Page 61 |
|---|---|
| 1 | There was no formal charge brought |
| 2 | against him. The fact that I had to |
| 3 | deal with something is annoying |
| 4 | enough when you have 450 people that |
| 5 | you are trying to work with. |
| 6 | MR. ROSSI: That's all I have. |
| 7 | Thank you. |
| 8 | MS. BENTLEY: No questions. |
| 9 | We'll review and sign. |
| 10 | (WHEREUPON THE DEPOSITION OF MICHAEL BOBAL WAS |
| 11 | CONCLUDED AT APPROXIMATELY 12:00 PM AND IT WAS |
| 12 | AGREED BY AND BETWEEN COUNSEL AND THE PARTIES |
| 13 | THAT THE DEPONENT WILL READ AND SIGN THE |
| 14 | TRANSCRIPT OF SAID DEPOSITION) |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |

# EXHIBIT J

FORM NLRB-508
(9-07)

UNITED STATES OF AMERICA
NATIONAL LABOR RELATIONS BOARD
**CHARGE AGAINST LABOR ORGANIZATIONS
OR ITS AGENTS**

FORM EXEMPT UNDER 44 U.S.C. 3512

| DO NOT WRITE IN THIS SPACE | |
|---|---|
| Case | Date Filed |
| 8-CB-11433 | 5/11/11 |

INSTRUCTIONS: File an original together with four copies and a copy for each additional charged party named in Item 1 with the NLRB Regional Director for the region in which the alleged unfair labor practice occurred or is occurring.CAIW/rh

## 1. LABOR ORGANIZATION OR ITS AGENTS AGAINST WHICH CHARGE IS BROUGHT

| a. Name | b. Union Representative to contact |
|---|---|
| Teamsters Local 377 | Justin Averelle |

| c. Telephone No | d. Address (street, city, state and ZIP code) |
|---|---|
| 330-743-3111 | 1223 Teamsters Dr., Youngstown, OH 44502 |

b. The above-named organization(s) or its agents has (have) engaged in and is (are) engaging in unfair labor practices within the meaning of section 8(b), subsection (s) (list subsections) (1)(a) and 8(b)(2) of the National Labor Relations Act, and these unfair labor practices are unfair practices affecting commerce within the meaning of the Act, or these unfair labor practices are unfair practices affecting commerce within the meaning of the Act and the Postal Reorganization Act.

2. Basis of the Charge (set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)

Since on or about November 17, 2010, and continuously thereafter, it, a labor organization, by its officers, agents and representatives, restrained and coerced, and is restraining and coercing , an employee of , in the exercise of __ rights to self-organization, to form, join or assist _____ labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, or to refrain from any or all such activities, which rights are guaranteed in Section 7 of the said Act. Specifically, the Union terminated Potts membership and failed to represent him.

On or about November 17, 2010, it, a labor organization, by its officers, agents, and representatives, caused American Bottling Co. d/b/a 7 Up Bottling Co. to discriminate against Robert Potts, (1) in violation of Section 8(a)(3) of the Act and (2) whose membership in the said labor organization was terminated for reasons other than failure to tender periodic dues uniformly required as a condition of membership therein.

| 3. Name of Employer | 4. Telephone No. |
|---|---|
| American Bottling Co. d/b/a 7 Up Bottling Co. | 330-799-9706 |
| | Fax No. (330) 799 - 7064 |

| 5. Location of plant involved (street, city, state, and ZIP code) | 6. Employer representative to contact |
|---|---|
| 1142 North Meridian Road, Youngstown, Ohio 44509 | Mike Bobal, Associate HR Mgr. |

| 7. Type of establishment (factory, mine, wholesaler, etc.) | 8. Identify principal product or service | 9. Number of workers employed |
|---|---|---|
| warehouse | beverages | 50 |

| 10. Full name of party filing charge |
|---|
| Robert Potts |

| 11. Address of party filing charge (street, city, state and ZIP code.) | 12. Telephone No. 330-856-6103 |
|---|---|
| 4143 Jeanette Dr., Warren, OH 44484 | Fax No. |

## 13. DECLARATION

I declare that I have read the above charge and that the statements are true to the best of my knowledge and belief.

| By | An Individual |
|---|---|
| (signature of representative or person making charge) /s/ Robert Potts (tax) | (Print/type name and title or office, if any) |
| Address 4143 Jeanette Dr., Warren, OH 44484    330-856-6103 (Telephone No.) | 5/7/2011 (date) |

WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)

PRIVACY ACT STATEMENT

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 et seq. The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigations. The routine uses for the information are fully set forth in the Federal Register, 71 Fed.Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information will cause the NLRB to decline to invoke its processes.



EXHIBIT

23

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| ROBERT POTTS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 5:12-cv-02688-JRA |
| | ) | |
| v. | ) | Judge John R. Adams |
| | ) | |
| AMERICAN BOTTLING COMPANY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' JOINT MOTION FOR SANCTIONS UNDER RULE 11

Defendants The American Bottling Company ("ABC") and Teamsters Local No. 377 ("the Union" or "Local 377"), pursuant to Rule 11 of the Federal Rules of Civil Procedure, respectfully move this Court to impose sanctions against Plaintiff and his attorney, David Engler, for asserting claims without a factual and legal basis. In support of this Motion, ABC and the Union state as follows:

### FACTUAL BACKGROUND

1.      ABC employed Plaintiff Robert Potts as a Warehouse Loader at its Youngstown, Ohio facility from July 2007 through December 2010.

2.      Plaintiff was a member of the Union, and therefore his employment at ABC was governed, in part, by a collective bargaining agreement (the "CBA").

3.      Article 14, Section 1 of the CBA provides that, "in the event of temporary layoffs classification seniority shall prevail." Classification seniority refers to the department in which an employee worked, such as warehouse, delivery, merchandising. An employee on temporary layoff did not lose his or her seniority until after a period of one year from the date of the temporary layoff. (Dkt. 1, Cmpl. Ex. 4 & 5, Art. 14, Sec. 13.) Only in the event of a permanent layoff does plant-wide seniority govern. (Dkt. 1, Cmpl. Ex. 4 & 5, Art. 14, Sec. 1.)

4.    On September 21, 2009, ABC placed Plaintiff on a temporary layoff due to a lack of work.  (Dkt. 1, Cmpl. ¶5.)

5.    On August 30, 2010, Plaintiff filed Grievance No. 11823, claiming back wages owed as a result of an alleged improper temporary layoff.  (Dkt. 1, Cmpl. Ex. 7.)

6.    During a September 14, 2010 grievance meeting, ABC offered Plaintiff a Merchandising position.  (Ex. A, Sept. 14, 2010 grievance meeting notes.)

7.    On September 21, 2010, Plaintiff filed Grievance No. 11824 claiming ABC terminated his seniority without cause and wrongfully discharged him.  (Dkt. 1, Cmpl. Ex. 8.)

8.    On September 30, 2010, ABC made its employment offer to Plaintiff in writing. Specifically, ABC offered to convert Plaintiff's temporary layoff into a permanent layoff effective October 15, 2010 and give Plaintiff the opportunity to exercise his contractual rights to "bump by seniority" based on his plant-wide seniority.  (Ex. B, ABC's Sept. 30, 2010 Correspondence.)  In the offer letter, ABC stated that based on seniority the position would be a Merchandiser position.  (*Id.*)  ABC's offer letter required Plaintiff to respond, in writing, within 15 working days whether he intended to accept the offer.  (*Id.*)

9.    On October 2 and 6, 2010, Plaintiff wrote to Local 377 and requested that the Union withdraw Grievance No. 11823. (Ex. C, Oct. 2 and 6, 2010 Correspondence.)  In his October 2, 2010 correspondence, Plaintiff also stated: "This serves to advise that I am in receipt of the Company's letter date 9/30/2010, mailed via USPS Certified Mail #7002-0510-000-7491-2152, postmarked October 1, 2010." (*Id.*)

10.    On October 12, 2010, Local 377 confirmed in writing that Grievance No. 11823 had been withdrawn. (Ex. D, Oct. 12, 2010 Correspondence.)

15272101v.3

11.     On October 15, 2010, Plaintiff wrote to ABC, but did not state his intention, one way or another, concerning the Merchandising position.  (Ex. E, Plaintiff's July 6, 2011 Deposition (Pl. Dep.), 228:8-229:14; Ex. F, Oct. 15, 2010 correspondence).

12.     As of October 21, 2010, ABC had still not received an answer from Plaintiff concerning its employment offer (15 working days after ABC's September 30, 2010 correspondence).  Therefore, ABC extended Plaintiff's deadline to respond to the offer.  (Ex. G, Nov. 10, 2010 correspondence).  However, ABC still received no response from Plaintiff concerning the offer.

13.     On October 22, 2010, Plaintiff wrote to the Union accusing the Union of "failing to act solely in the interest of the grievant, and refusing to protect my interest in all dealings with my Employer by way of refusing to process my grievance #11824 . . .." (Ex. H, October 22, 2010 Correspondence.)

14.     Accordingly, effective December 1, 2010, ABC terminated Plaintiff's employment pursuant to Article 14, Section 7, point D of the CBA, which provides:

> Any employee shall lose his seniority (terminated from employment):
>
> . . .
>
> D. If he fails to return to work within three (3) days after notice from the Company to return unless circumstances beyond his control prevent him from notifying the Company within three (3) days.  Such notice shall be made by registered letter.

(Ex. I, Dec. 13, 2010 correspondence; Ex. 4 & 5.)

15.     During his deposition in Case No. 4:11-cv-00149-KSM, Plaintiff testified that:

- He could not identify a single employee having less seniority than he did and who was hired into the Warehouse Department during Plaintiff's temporary layoff, and conceded that, as of September 14, 2010, he remained the least seniority in the Warehouse Department.  (Ex. E, Pl. Dep., 194:13-196:21; 209:20-211:21; 220:21-221:16.)

3

- He had received ABC's September 30, 2010 offer letter and never responded to ABC's offer, even though he *did* correspond with ABC after receiving the offer letter. (Ex. E, Pl. Dep. 197:11-198:1; 228:8-229:14.)

- He withdrew Grievance No. 11823. (Ex. E, Pl. Dep. 196:22-198:1; 225:2-226:10; 230:13-22; 233:8-9.)

- He knew as of November 17, 2010 that the Union had allegedly ceased acting on his behalf. (Ex. E, Pl. Dep. 243, 249-250.)

16.     On May 7, 2011, Plaintiff filed a charge with the National Labor Relations Board in which he signed a Declaration asserting, among other things, that the Union had allegedly "failed to represent him." (Ex. J, Pl. NLRB Charge.)

17.     On or about October 26, 2011, Plaintiff and ABC entered into a settlement agreement for Case No. 4:11-cv-00149-KSM, whereby Potts released all claims that he had or may have had against ABC, subject to certain specific and delineated exceptions. Specifically, only Grievances 11823 and 4956 were excluded from the release. (Dkt. 20, Settlement Agreement.) Therefore, all other grievances, including Grievance No. 11824, were waived and released by the settlement agreement.

18.     Despite the above evidence, Plaintiff (through his counsel Mr. Engler) filed the present action under 29 U.S.C. §185, alleging that ABC breached the CBA by failing to provide Plaintiff with his contractual rights to exercise his plant-wide seniority, that Plaintiff was improperly subjected to a temporary layoff and permanent layoff, and that the Union breached its duty to fairly represent him. Plaintiff bases his claims on Grievance Nos. 11823 and 11824. Plaintiff voluntarily withdrew Grievance No. 11823 and voluntarily settled Grievance No. 11824.

19.     On February 5, 2013, ABC's counsel advised Mr. Engler that Plaintiff's claims lacked a proper factual and legal basis. Further, on April 22, 2013, ABC's and the Union's counsel sent Mr. Engler letters pursuant to Rule 11 and included a copy of this joint Motion.

(Exs. K & L, April 22, 2013 Correspondence from C. McArdle and G. Faulkner, respectively.) Despite counsel's receipt of this Motion, Plaintiff did not file a motion to dismiss his claims within the requisite twenty-one days.

## ARGUMENT

20.    This Court has jurisdiction to impose sanctions under Fed. R. Civ. P. 11 against Plaintiff and his counsel. Rule 11 provides, in relevant part:

(a)    Representations to the Court. By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, -

(1)    it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2)    the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3)    the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4)    the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

21.    Rule 11 requires that an attorney certify to the best of his or her "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . [that] the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." FED. R. CIV. P. 11(b).

22.    In the Sixth Circuit, the test for imposing Rule 11 sanctions is whether the individual's conduct was reasonable under the circumstances. *Apostolic Pentecostal Church v.*

*Colbert*, 169 F.3d 409, 417 (6th Cir. 1999).  Not only does Rule 11 measure what was reasonable conduct at the time of pleading, it imposes a "continuing responsibility to review and reevaluate . . . pleadings and where appropriate modify them to conform to Rule 11."  *Merritt v. International Ass'n of Machinists and Aerospace Workers*, 613 F.3d 609, 626 (6th Cir. 2010) (citing *Runfola & Assoc., Inc. v. Spectrum Reporting II, Inc.*, 88 F.3d 368, 374 (6th Cir. 1996)).

23.     Sanctions imposed under Rule 11 are intended to be an integral aspect of the judicial process, and the Sixth Circuit has shown no reluctance to impose them where counsel failed to properly investigate the factual basis of a client's claims after a reasonable opportunity to do so.  *See Merritt*, 613 F.3d at 626; *Andretti v. Borla Performance Indus., Inc.*, 426 F.3d 824, 835 (6th Cir. 2005); *Mann v. G & G Mfg., Inc.*, 900 F.2d 953, 960 (6th Cir. 1990) (in affirming award of sanctions, noting, "[a] reasonable pre-filing inquiry would have revealed these facts to plaintiff's counsel.").

24.     In this lawsuit, Plaintiff claims that ABC hired new employees with "less plant-wide seniority" (Dkt. 1, Cmpl. ¶ 7), but plant-wide seniority does not govern temporary layoffs, as plainly stated in Article 14 Section 1 of CBA.  (Dkt. 1, Exs. 4&5).  Further, even after engaging in discovery through the prior lawsuit (which concerned the same common facts), Plaintiff could not identify any employees with less seniority (either classification or plant-wide seniority) who were placed into the Warehouse Loader position during his temporary layoff. (Ex. E, Pl. Dep., 194:13-196:21; 209:20-211:21; 220:21-221:16).  Plaintiff conceded that even as of September 14, 2010, he had the least seniority in the Warehouse Department.  (Ex. E, Pl. Dep., 209:20-211:2).  Plaintiff has no legitimate factual basis to assert that his temporary layoff was improper.

15272101v.3

25.     Plaintiff further claims that "[ABC] failed an refused to afford Potts his contractual rights to avoid being placed on permanent lay-off by exercising his plant-wide seniority." (Dkt. 1, Cmpl. ¶ 8). This allegation also has no basis in fact. It is undisputed that ABC offered Plaintiff the opportunity to use his plant-wide seniority to "bump" into a Merchandiser position , and that Plaintiff received ABC's offer and did not act upon it.

26.     Even so, there is no active grievance supporting his claim under 29 U.S.C. §185. As to Grievance 11824, the Settlement Agreement that Plaintiff executed in Case No. 4:11-cv-00149-KSM, unambiguously provides that the only grievances that survive are Grievance Nos. 11823 and 4956. As such, Grievance 11824 is a nullity.

27.     As to Grievance 11823, Plaintiff withdrew this grievance. Indeed, in correspondence dated October 2 and 6, 2010 to the Union, Plaintiff requested that the Union withdraw this grievance, and the Union confirmed the withdrawal of this grievance in correspondence dated October 12, 2010. (Ex. C, October 2, 2010, October 6, 2010, and October 12, 2010 Correspondence.) Moreover, Plaintiff admitted under oath that he withdrew this grievance. (Ex. E, Pl. Dep., 196:22-198:1; 225:2-226:10; 230:13-22; 233:8-9). As such, Grievance No. 11823 is also a nullity.

28.     In sum, by virtue of Plaintiff's own conduct, he has no active grievances upon which he can pursue his §301 claim and therefore the claim is barred by his failure to exhaust the grievance procedure. *Delcostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 163 (1983); *Winston v. General Drivers, Warehousemen & Helpers, Local 89*, 93 F.3d 251, 255 (6th Cir. 1996); *Poole v. Budd Co.*, 706 F.2d 181, 183 (6th Cir. 1983) ("It is axiomatic that an aggrieved employee must exhaust any exclusive grievance and arbitration procedures in a collective bargaining agreement prior to bringing a §301(a) suit against the employer."); *Aaron*

*v. Ford Motor Company*, 2011 WL 2149419, *2 (N.D. Ohio) (*citing Wiggins v. Chrysler Corp.*, 728 F. Supp. 463, 466 (N.D. Ohio, 1989)).

29.     Even setting aside the above facts, Plaintiff's claims are without merit for the simple fact that his claims are time barred.  The statute of limitations for hybrid §301 claims is six months.  It is well settled that the statute begins to run when an employee knew or should of known of the alleged acts given rise to the cause of action.  *Garrish v. Int'l Union, United Automobile, Aerospace, and Agricultural Implement Workers of America*, 417 F.3d 590, 594 (6th Cir. 2005).

30.     Here, Plaintiff asserts that the Union breached its duty of fair representation by failing to process his grievances and by only processing grievances for "politically favored individuals." (Dkt. 1, Cmpl. ¶11.)  According to his own allegations, Plaintiff knew of this alleged conduct as early as February 2012  - eight months before he filed his Complaint.  (Dkt. 1, Cmpl. ¶11.)

31.     However, Plaintiff's own admissions and conduct reveal that he actually knew of the alleged conduct long before this.  On October 22, 2010, Plaintiff wrote to the Union accusing the Union of "failing to act solely in the interest of the grievant, and refusing to protect my interest in all dealings with my Employer by way of refusing to process my grievance #11824 . . .." (Ex. H, October 22, 2010 Correspondence.)  Plaintiff also testified under oath that he knew as of November 17, 2010 that the Union had allegedly ceased acting on his behalf.  (Ex. E, Pl. Dep., 243, 249-250.)  Furthermore, on May 7, 2011, Plaintiff filed a charge with the National Labor Relations Board in which he signed a Declaration asserting, among other things, that the Union had allegedly "failed to represent him." (Ex. J, NLRB Charge.)  Given these facts, Plaintiff had

until either May 2011 or, at the latest, October 2011, to file his action. As he did not file the Complaint until October 26, 2012, his claims are time barred.

32. As evidenced herein, by maintaining his claims, Plaintiff and Plaintiff's counsel failed to comply with standards of legal practice in this Circuit, and thus sanctions are appropriate under Rule 11.

33. After having made more than one unsuccessful attempt to persuade Plaintiff's counsel to voluntarily dismiss Plaintiff's claims, ABC and Local 377 jointly request that the Court impose sanctions against Plaintiff and Plaintiff's counsel pursuant to Fed. R. Civ. P. 11(c), including, but not limited to, dismissal of the Complaint. Defendants further requests that those sanctions include an award of reasonable costs and attorneys' fees associated with its efforts to resolve this without court intervention and the preparation of this motion.

WHEREFORE, Defendants The American Bottling Company and Teamsters Local 377 respectfully request that this Court impose sanctions against David L. Engler and Plaintiff for maintaining the claims in Plaintiff's Complaint, that Plaintiff's claims be dismissed in their entirety, that Defendants be awarded reasonable costs and attorneys' fees, and any other relief that the Court deems appropriate.

**DATED: May 13, 2013**
Respectfully submitted,

AMERICAN BOTTLING COMPANY

By_____s/ Cintra B. McArdle_____
One of Its Attorneys

15272101v.3

TEAMSTERS LOCAL NO. 377


By     s/ George H. Faulkner
                One of Its Attorneys

Richard P. McArdle (admitted pro hac vice)
Cintra B. McArdle (admitted pro hac vice)
SEYFARTH SHAW LLP
131 South Dearborn Street - Suite 2400
Chicago, Illinois 60603
rmcardle@seyfarth.com
cmcardle@seyfarth.com

Joel R. Hlavaty
Frantz Ward
2500 Key Center
127 Public Square
Cleveland, OH 44114
(216) 515-1660
jhlavaty@frantzward.com

George H. Faulkner (0031582)
Joseph C. Hoffman, Jr. (0056060)
Joseph D. Mando (0082835)
Faulkner, Hoffman & Phillips, LLC
20445 Emerald Parkway, Suite 210
Cleveland, Ohio 44135
Faulkner@fhplaw.com
Hoffman@fhplaw.com
Mando@fhplaw.com

10